**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

| | |
|---|---|
| CITY OF LAS CRUCES and DOÑA ANA COUNTY,<br><br>　　　　　　Plaintiffs,<br>vs.<br><br>UNITED STATES OF AMERICA, UNITED STATES DEPARTMENT OF DEFENSE, and NATIONAL GUARD BUREAU,<br><br>　　　　　　Defendants. | CIVIL NO. _____<br><br>**COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF** |

The City of Las Cruces, New Mexico ("City") and Doña Ana County, New Mexico ("County") (collectively, "Plaintiffs"), by and through their attorneys, hereby allege as follows:

**INTRODUCTION**

1. This case arises under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), as amended by the Superfund Amendment and Reauthorization Act of 1986, 42 U.S.C. §§ 9601 *et seq*.

2. The City is a local government that owns land within the City limits and provides drinking water to over 100,000 people within and without the City limits.

3. The County is a local government that owns land within the City limits and provide drinking water outside of the City limits.

4. The drinking water system owned by the City and land owned by Plaintiffs were contaminated by the United States, the U.S. Department of Defense and the National Guard Bureau (collectively, "Defendants") during maintenance operations at a former National Guard Armory ("Armory") located near the northeast corner of East Hadley Avenue and North Solano Drive in Las Cruces, New Mexico.

5. Defendants released substances that are hazardous to human health and the environment into the soil and groundwater at the Armory. The release of hazardous substances created a plume of contaminated groundwater approximately 1.8 miles long and 0.5 mile wide. The United States Environmental Protection Agency ("EPA") has designated the area as a federal Superfund site, known as the Griggs & Walnut Ground Water Plume ("Site").

6. The City and County own property that EPA alleges are sources of contamination at the Site. EPA has named Defendants and Plaintiffs as parties responsible for cleanup costs at the Site.

7. Plaintiffs have spent millions of dollars on investigation and remediation of the Site, including but not limited to investigation of the nature and extent of contamination, installation of a water treatment system and associated infrastructure. Plaintiffs continue to incur additional costs of operating and maintaining the system and meeting additional EPA demands.

8. Upon information and belief, Defendants have spent nothing on investigation or remediation of the Site, despite demands by EPA that they do so.

9. Plaintiffs seek a declaration of responsibility and payment from Defendants for past, present, and future response costs incurred in response to Defendants' release of hazardous substances at the Site.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over the subject matter of this case pursuant to CERCLA, 42 U.S.C. § 9613(b).

11. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 2201 and 1331 because this action arises under the laws of the United States.

12. The United States has waived its immunity from cost recovery suits under CERCLA, 42 U.S.C. § 9620(a)(1).

13. Under 42 U.S.C. § 9613(b) and 28 U.S.C. § 1391(b), the District of New Mexico is the proper venue for this action. The causes of action alleged in this Complaint involve real property located within this judicial district; namely, real property located in and around the City of Las Cruces, Doña Ana County, State of New Mexico.

## PARTIES

14. The City was at all times relevant herein, and still is, an incorporated municipality existing under the laws of the State of New Mexico. The City owns property, including the former Armory, located within or near the Site. It also owns and operates a water utility that supplies drinking water to over 100,000 people.

15. The County was at all times relevant herein, and still is, a county existing under the laws of the State of New Mexico. The County owns property located within or near the Site that is currently used by its Fleet Management Department.

16. Defendant United States of America ("United States") was at all times relevant, and still is, the federal government, duly organized and empowered to form federal agencies including the United States Department of Defense ("DOD") and National Guard Bureau

("NGB"). The United States is responsible under the United States Constitution for the actions of such agencies.

17. Defendant DOD was at all relevant times, and still is, an agency of the United States, and responsible for the NGB as a joint activity.

18. Defendant NGB is an agency of the United States federal government organized as a joint activity of DOD, and was at all times relevant, duly organized and empowered to conduct operations at the Armory. The New Mexico National Guard owned, operated, or otherwise exercised control over the Armory from approximately 1947 through 1990. The New Mexico National Guard's interests are represented by NGB. As such, this Complaint refers to all activities conducted by the New Mexico National Guard as though they were conducted by NGB.

## FACTUAL BACKGROUND

19. From 1941 to 1965, the City owned the Armory. Between 1948 and 1965, the New Mexico State Armory Board ("Armory Board") leased the property from the City "for National Guard purposes." On December 6, 1965, the Armory Board acquired title to the Armory. Between 1962 and 1987, the Armory was subject to a construction agreement with the NGB.

20. Until 1948, the Armory property was open scrubland. From 1948 through 1990, the property was developed by Defendants as a National Guard Armory. Operations at the Armory included maintaining and storing military vehicles, anti-aircraft artillery cannons, and anti-aircraft weapon systems known as M42 Dusters, as well as headquartering the 642nd Maintenance Company and the National Guard Annual Training Equipment Pool.

21. On November 21, 1990, the City reacquired the Armory property. It currently is used as the Las Cruces Regional Aquatic Center.

22. During NGB's ownership and/or operation of the Armory, NGB personnel used solvents containing tetrachloroethylene ("PCE"), a volatile organic compound used as a solvent and degreaser. Military standards and specifications required the National Guard to use PCE solvent to clean equipment including engine components, small arms, and armament. Defendants complied with these standards and specifications and used solvents containing PCE to clean weaponry at the Armory.

23. PCE is a known carcinogen and listed as a CERCLA hazardous substance by EPA. The Maximum Contaminant Level ("MCL") for PCE in groundwater is 5 micrograms per liter (µg/L). The MCL for a hazardous substance is the limit above which EPA has determined that adverse effects to human health will be seen.

24. Defendants released PCE into the soil and groundwater on and through concrete pads and unpaved areas, ultimately creating a PCE-contaminated groundwater plume nearly two miles long.

25. In 1993, the New Mexico Environment Department Drinking Water Bureau detected PCE in water samples collected from two Las Cruces municipal water supply wells. By 2001, four City wells were found to be contaminated by PCE at levels above the MCL.

26. In 2001, EPA added the Site to the National Priorities List under CERCLA. The Site consists of a 3.5 billion gallon plume of PCE-contaminated groundwater that spans 1.8 miles by 0.5 mile. This plume, as shown through individual well contamination, affects the public water supply for the City, which supplies drinking water to over 100,000 people.

27. In 2003, EPA conducted field investigations at the Site to identify specific areas where PCE was released into the environment. EPA concluded that PCE was released at the Armory "prior to the current development in the vicinity, and possibly as part of episodic releases of waste solvent during activities at the former armory property."

28. In 2007, EPA again identified the Armory as a PCE source area in the Site's Record of Decision ("ROD"). In the ROD, EPA stated that "the historical operations at the former New Mexico Army National Guard facility…[are] land use activities…[that EPA] determined to be relevant to the Site and represent [a] source…of contamination in ground water."

29. In 2011, EPA identified NGB as a potentially responsible party ("PRP") under CERCLA in connection with its operations at the Armory and demanded payment of unreimbursed response costs.

30. Upon information and belief, Defendants have not paid EPA's past costs or any other costs of investigation and remediation of the Site.

31. By contrast, Plaintiffs have undertaken significant investigative and remedial measures to treat the contamination of groundwater caused by Defendants. Plaintiffs have completed a remedial investigation and feasibility study ("RI/FS") and constructed, and continue to operate and maintain, the remedial action, which includes but is not limited to a water treatment plant that treated over 430 million gallons of groundwater between 2012 and 2016.

32. Defendants have not reimbursed the City or County for any of their response costs to date, nor have they offered or agreed to abate the contamination or pay for future response costs.

**CAUSE OF ACTION: COST RECOVERY UNDER CERCLA**

33. Plaintiffs reallege and incorporate by reference the allegations of Paragraphs 1 through 32 above, as though set forth in full.

34. CERCLA, 42 U.S.C. § 9607, provides a right of action for private parties (including municipal and county governments) to recover the costs of responding to the release, or threatened release, of hazardous substances into the environment from past and present owners and operators of contaminated facilities or from those who arranged for the disposal of hazardous substances.

35. Defendants, and each of them, are "persons" under 42 U.S.C. § 9601(21).

36. The former Armory was a "facility" under 42 U.S.C. § 9601(9).

37. The substances and wastes (including, but not limited to, PCE) disposed of at the Site by Defendants and thereby released into the environment are "hazardous substances" under 42 U.S.C. § 9601(14).

38. Defendants, and each of them, were owners and/or operators of the Armory under 42 U.S.C. § 9601(20) at the time of the release and/or disposal of hazardous substances, including PCE, at the facility within the meaning of 42 U.S.C. § 9607(a)(2).

39. Defendants, by their own action, contract, agreement, or otherwise, arranged for the disposal or treatment of hazardous substances, including PCE, at the facility within the meaning of 42 U.S.C. § 9607(a)(3).

40. Plaintiffs have incurred and will continue to incur "necessary costs of response" with respect to the facility, as that term is used in 42 U.S.C. § 9607.

41. Plaintiffs' costs include, among other things: RI/FS costs; remedial design costs;

costs for construction, implementation, operation and maintenance of the remedial action; and additional expenses which will be detailed at trial.

42. Plaintiffs' past and future response actions and the costs thereby incurred have been and will continue to be carried out consistently with the National Contingency Plan, as that term is defined in 42 U.S.C. § 9601(31).

43. Pursuant to 42 U.S.C. § 9607(a)(2)-(3), Defendants are strictly liable to Plaintiffs for the costs Plaintiffs have incurred and will continue to incur in response to the release or threatened release of hazardous substances at the Site, plus interest thereon, at the maximum rate allowed by law, from the date Plaintiffs expended such funds.

## CAUSE OF ACTION: DECLARATORY RELIEF

44. Plaintiffs reallege and incorporate by reference the allegations of Paragraphs 1 through 43 above, as though set forth in full.

45. The Court has jurisdiction to award declaratory relief pursuant to CERCLA, 42 U.S.C. § 9613(g)(2) and the Declaratory Judgment Act, 28 U.S.C. § 2201(a).

46. There has arisen and now exists an actual, present, and existing dispute between Plaintiffs and Defendants. The parties have genuine and opposing interests, which are direct and substantial, relating to Defendants' liability and responsibility for future response costs necessary to abate the release or threatened release of hazardous substances at or from the Site.

47. The possibility of Plaintiffs incurring future costs of response necessary to abate the release or threatened release of hazardous substances at the Site is not unlikely, remote, or speculative.

48. Plaintiffs are entitled to entry of a judgment declaring that Defendants are strictly, jointly and severally liable under CERCLA for past and future costs necessary to respond to and abate the release or threatened release of hazardous substances at or from the Site. Such judgment shall be final, conclusive, and binding on any subsequent action or actions to recover further response costs or damages.

49. Plaintiffs further request that this Court, after entering the declaratory judgment prayed for herein, retain jurisdiction over this action to grant Plaintiffs such further relief against Defendants as is necessary and proper to effectuate the Court's declaration, including an award of costs and entry of an injunction to implement a judgment entered on Plaintiffs' claims under 28 U.S.C. § 2202.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment and relief against Defendants as follows:

1. An award of damages and costs to Plaintiffs, reflecting the costs that Plaintiffs have incurred and will continue to incur in response to the release or threatened release of hazardous substances at or near the facility, plus interest thereon, at the maximum rate allowed by law;

2. A declaration that Defendants are strictly, jointly and severally liable for costs of response incurred by Plaintiffs to date, and for the costs of response to be incurred by Plaintiffs in the future;

3. Pre-judgment interest on all damages awarded at the maximum rate allowed by law;

4. Leave of Court to conform its pleadings to the proof shown at trial;

5. Such other and further relief, including additional injunctive and declaratory relief, as this Court may deem just and proper.

DATED: August 9, 2017.

CITY OF LAS CRUCES

/s/ Marcia Driggers
Marcia Driggers
Attorney for City of Las Cruces
200 N. Church
P.O. Box 20000
Las Cruces, NM 88004
(575) 541-2128
mdriggers@las-cruces.org

DOÑA ANA COUNTY

/s/ Thomas R. Figart
Thomas R. Figart
Attorney for Doña Ana County
P.O. Box 2528
Las Cruces, NM 88004
(575) 525-5964
tomf@donaanacounty.org

MARTEN LAW PLLC

Jessica K. Ferrell, WSBA No. 36917
(*D.N.M.LR-Civ. 83.3(a) pro hac vice application forthcoming*)
Bradley M. Marten, WSBA No. 13582
(*D.N.M.LR-Civ. 83.3(a) pro hac vice application forthcoming*)
Attorneys for City of Las Cruces and Doña Ana County
1191 Second Ave, Suite 2200
Seattle, WA 98101
(206) 292 2600
jferrell@martenlaw.com
bmarten@martenlaw.com