**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

CITY OF LAS CRUCES and
DONA ANA COUNTY,

      Plaintiffs,

v.                                          Civ. No. 17-809 RB/GJF

UNITED STATES OF AMERICA,
UNITED STATES DEPARTMENT OF DEFENSE, and
NATIONAL GUARD BUREAU,

      Defendants.

## <u>ORDER AND STIPULATION REGARDING DISCOVERY PROCEDURE</u>

WHEREAS, Rule 26(f) of the Federal Rules of Civil Procedure states that the Parties must develop a proposed discovery plan that states the Parties' views and proposals on, among other things, "any issues about disclosure, discovery, or preservation of electronically stored information, including the form or forms in which it should be produced," Fed. R. Civ. P. 26(f)(3)(C);

WHEREAS, the Parties mutually seek to reduce the time, expense and other burdens of discovery of certain electronically stored information ("ESI") and privileged materials, as described further below, and to better define the scope of their obligations with respect to preserving such information and materials;

WHEREAS, the Parties therefore are entering into this Stipulation with the request that the Court enter it as an Order;

**NOW THEREFORE**, it is hereby **STIPULATED** and **ORDERED**:

# I.    DEFINITIONS

1.    The terms used in this stipulation and order that are also used in the Federal Rules of Civil Procedure have the same meaning that they have under the Federal Rules, unless otherwise provided in this stipulation and order. Whenever the terms set forth below are used in this stipulation and order, the following definitions apply:

(a)    "Draft," when used to describe either an electronic or hard copy document, means "a preliminary version of a document that has been shared by the author with another person (by email, print, or otherwise) or that the author no longer intends to finalize or to share with another person,"

(b)    "Duplicate," when used to describe either an electronic or hard copy document, means that the document does not show any facial differences, such as the inclusion of highlights, underlining, marginalia, total pages, attachments, markings, revisions, or the inclusion of tracked changes. Differences in system metadata fields, such as date created or modified, that do not affect the face of the document, are not relevant to determining whether the document is a duplicate.

(c)    "Parties" means the parties to this litigation, including their employees and authorized agents.

(d)    "Policy" means a regular practice at an entity that managers know about and expect to be carried out.

# II.    PRESERVATION

2.    <u>ESI That Is Not Reasonably Accessible.</u> The following categories of ESI listed below are not reasonably accessible in this litigation:

(a)    Data stored in a backup system for the purpose of system recovery or information restoration, including but not limited to, disaster recovery backup tapes, continuity

of operations systems, and data or system mirrors or shadows, if such data are routinely deleted or written over in accordance with an established routine system maintenance practice;

(b)     Voicemail messages;

(c)     Instant messages, such as messages sent on AOL Instant Messenger or Microsoft Communicator;

(d)     Text messages, such as cell phone to cell phone SMS messages;

(e)     Electronic mail sent to or from a personal digital assistant ("PDA"), smartphone (e.g., BlackBerry, iPhone), or tablet (e.g., iPad) provided that a copy of such email is routinely saved elsewhere;

(f)     Other electronic data stored on a PDA, smartphone, or tablet, such as calendar or contact data or notes, provided that a copy of such information is routinely saved elsewhere;

(g)     Logs of calls made from cellular phones;

(h)     Deleted computer files, whether fragmented or whole (nothing in this order authorizes the intentional deletion of ESI after the duty arose to preserve such ESI);

(i)     Data stored in random access memory ("RAM"), cache memory, or in temporary or cache files, including internet history, web browser cache and cookie files, wherever located;

(j)     Data stored on photocopiers, scanners, and fax machines;

(k)     Server, system, or network logs;

(l)     Electronic data temporarily stored by scientific equipment or attached devices, provided that the data that is ordinarily preserved as part of a laboratory report is, in fact, preserved in its ordinary location and form; and

(m)     Data stored on legacy systems that were no longer in use five years before the complaint was filed.

3.     Nothing in this Stipulation and Order prevents any Party from asserting, in accordance with the Federal Rules of Civil Procedure, that other categories of ESI are not reasonably accessible.

4.     The Parties need not preserve, for this litigation, the categories of ESI listed in paragraph 2 unless, on the date that this stipulation and order is entered by the Court, either Party has a Policy that results in the routine preservation of such ESI, or the Custodian has independent reason to believe the data is highly relevant.  In either case such Party shall continue to preserve such ESI in accordance with its Policy.

5.     <u>No Discovery of Material Not Required To Be Preserved</u>. The Parties shall not seek discovery of items that need not be preserved pursuant to paragraphs 2-4 above.  If any discovery request is susceptible of a construction that calls for the production of items that need not be preserved pursuant to paragraphs 2-4, such items need not be searched for, produced, or identified on a privilege log pursuant to Fed. R. Civ. P. 26(b)(5).

6.     <u>Use of Documents During Litigation</u>. Notwithstanding any other provision of this Order, the Parties may take any of the following actions with respect to documents and ESI without breaching their duty to preserve documents and ESI:

(a)     The Parties may continue to work, in the ordinary course of business, on documents that do not meet the definition of Draft in paragraph 1. However, the Parties shall preserve Draft documents for discovery.

(b)     The Parties may move unfiled documents or ESI into files or folders that adhere to an organizational scheme that was created before the complaint was filed in this matter.

Nothing in this paragraph prevents the Parties from implementing an organizational scheme that applies only to documents or ESI created after the complaint was filed in this matter.

(c)      The Parties may delete, overwrite, or wipe ESI from devices that are being replaced, upgraded, reimaged, disposed of, or returned at the end of lease, provided that the potentially relevant ESI is first copied to a new location in a manner that preserves the data, including metadata, that must be produced pursuant to Section VI of this Order.

(d)      The Parties may move data from one device to another, or from one location to another, provided that a copy of the ESI remains accessible in the first location or the new copy is created in a manner that preserves the data, including metadata, that must be produced pursuant to Section VI of this Order.

(e)      The Parties may load loose ESI into a enterprise content management system, provided that: (1) the enterprise content management system captures all of the metadata fields that must be produced under this order and does not convert the format of the ESI in a way that makes it significantly less accessible; or (2) the Parties maintain a copy of the ESI in its native format and make their production from this native file collection.

(f)      The Parties may upgrade, patch, reprogram, or customize software that stores relevant data, even if such actions alter the way data is maintained, stored, or viewed.

(g)      The Parties may take any of the following actions with respect to data in a database provided that it is part of the routine use of the database: input additional data; access data; update the software running the database; append new data; and modify existing data.

(h)      The Parties may edit or take down any data on a publicly accessible internet site. However, EPA shall maintain fully accessible on its publicly accessible internet site

all materials constituting the Administrative Record for EPA actions taken at the Griggs & Walnut Ground Water Plume Superfund Site, or else shall produce these materials in Discovery.

(i)      The Parties may compress, decompress, encrypt, or decrypt data subject to preservation in this matter provided that any data losses during such processes do not result in loss of the metadata required to be produced under this Order or significantly degrade the quality of the data.

(j)      The Parties may update social media sites, but may not take affirmative steps to delete relevant data posted before the filing of the Complaint.

7.      <u>Preservation Does Not Affect Discoverability or Claims of Privilege</u>.  By preserving documents or ESI for the purpose of this litigation, the Parties are not conceding that such material is discoverable, nor are they waiving any claim of privilege.

8.      <u>Other Preservation Obligations Not Affected</u>.  Nothing in this agreement affects any obligations of the Parties to preserve documents or information for purposes other than this litigation, such as pursuant to court order, administrative order, statute, or in response to other anticipated litigation.

### III.      COLLECTION

9.      <u>Filtering.</u>

(a)      The Parties must de-NIST electronic files, removing known, traceable software applications in the National Software Reference Library ("NIST List"), available at http://www.nsrl.nist.gov/Downloads.htm.

(b)      If a Producing Party proposes to apply other filters to limit ESI that is collected for processing and review (e.g., that identify system files, non-user generated files, or zero-byte files), the Producing Party shall provide information to the other Parties regarding the filters, how they work, and what impact they will have on the collections or productions. The

Parties shall meet and confer regarding such additional filters. The Parties may agree upon additional filters in writing without further action from the Court. If the Parties cannot agree, the Party seeking to apply the filter may file a motion for a protective order.

10. Deduplication.

(a) *Deduplication of e-mail.* The Parties must deduplicate emails processed from ESI across all custodians or volumes of electronic mail (where practicable), by:

(1) comparing the MessageID or UNID metadata fields; or

(2) calculating and comparing the MD5 or SHA-1 hash value based on the following files: to, from, cc, bcc, subject, body, and attachment names and Date Sent (normalized to EST Time).

(b) The Parties hereby stipulate and agree that in this matter there is a rebuttable presumption of evidence that an e-mail subject to this section correctly addressed to a recipient was actually delivered to that recipient's e-mail inbox.

(c) *Deduplication of ESI other than e-mail.* The Parties shall identify, based on MD5 or SHA-1 hash values, exact duplicates of electronic files other than e-mails that are larger than zero bytes and smaller than two gigabytes (i.e., approximately two billion bytes). The Parties shall, to the extent practicable, produce only one copy for each custodian that has possession or custody of the file.

11. Search Technology.

(a) Image files and image-only PDFs must be reviewed without culling by search terms or other technologies that rely primarily on text. The Parties may, however, perform OCR on image-only PDF documents and, thereafter, rely upon search terms to exclude non-responsive documents. In addition, the Parties may, as a general rule, omit audio and video

files from their productions unless a discovery request explicitly seeks the production of audio and video files.

(b)      If a Party intends to use search terms to respond to Discovery requests other than to comply with initial disclosure requirements under Rule 26(a) of the Federal Rules of Civil Procedure, it shall meet and confer with the other Parties to identify a mutually agreeable protocol for applying search terms.

(c)      Nothing in this paragraph obligates any Party to agree to perform an electronic search or to accept the results of an electronic search as a sufficient response to a discovery request.

12.      Third-Party Data. The Parties shall meet and confer before serving any subpoenas in this matter on commercial e-mail providers, such as Google™ or Yahoo™, or any social media companies such as Facebook™ or Twitter™.

13.      Privileged Materials Located in the Offices of Counsel. The Parties agree that, in response to general discovery requests, the Parties need not search for and produce, nor create a privilege log for, any privileged or work product material that is located in the offices of the U.S. Department of Justice or outside or in-house counsel for either Party, including counsel at EPA, Department of Defense and National Guard Bureau. The Parties shall not keep discoverable materials in the office covered by this paragraph unless a copy or duplicate of the materials is located elsewhere in the possession, custody, or control of the Party.

## IV.      PROCESSING

14.      The Parties shall use reasonable efforts to process ESI for production in accordance with Section VI of this Stipulation and Order. If a party identifies ESI that may be responsive but that cannot be processed with reasonable effort, e.g., corrupt files or password-protected files for which the password is not known, it shall promptly identify such ESI to the

requesting Party in a table that includes the following information: custodian name, filename, and file path.

15.     The Parties shall extract and process embedded files as though they were separate files.

## V.     REVIEW

**A.     Technology Assisted Review.**

16.     As of the date of this Stipulation, neither Party intends to use Technology Assisted Review, such as predictive coding. If any Party wishes to use Technology Assisted Review, it shall notify the other Parties and provide to them a proposed TAR protocol. The Parties shall then meet and confer in an attempt to negotiate an agreed-upon protocol. Unless otherwise ordered by the Court, the Parties shall not use TAR except in conformance with an agreed-upon protocol.

17.     This entire Section V shall apply to ESI as well as all other non-ESI evidence.

**B.     502(d) Order.**

18.     This Order invokes Rules 16(b) and 26(c) of the Federal Rules of Civil Procedure, as well as the protections afforded by Rule 502(d) of the Federal Rules of Evidence. Accordingly, the provisions in Rule 502(b) do not apply to the disclosure of communications or information in discovery in this matter whether ESI or all other non-ESI evidence.

19.     Because this matter involves several federal agencies, other governmental entities and facts that extend back in time many decades, the prosecution and defense of this action will require each Party to review and to disclose large quantities of information and documents, including electronically stored information, through the discovery process. As a result, page-by-page preproduction privilege review would likely impose an undue burden on the Parties' resources.

20. Each party is entitled to decide the appropriate degree of care to exercise in reviewing materials for privilege, taking into account the volume and sensitivity of the materials, the demands of the litigation, and the resources that the party can make available. Irrespective of the care that is actually exercised in reviewing materials for privilege, the Court hereby orders pursuant to Rule 502(d) of the Federal Rules of Evidence that disclosure of privileged or protected information or documents in connection with this litigation will not constitute or be deemed a waiver or forfeiture—in this or any other federal or state proceeding—of any claims of attorney-client privilege or work product protection that the disclosing Party would otherwise be entitled to assert with respect to the information or documents and their subject matter.

21. The Court further orders that because expedited or truncated privilege review may be utilized without penalty for the just, speedy, and inexpensive resolution of this matter, the disclosure of privileged or protected information or documents in discovery conducted in this litigation will be deemed unintentional, inadvertent, and compelled by order of this Court. Such disclosure will not constitute a waiver of the disclosing party's right to claim any privilege or protection, including without limitation the deliberative process privilege, that would have applied to the information or documents or their subject matter but for the disclosure, provided only that the party disclaiming waiver employed procedures reasonably designed to screen out privileged materials. This shall apply to ESI as well as all other non-ESI evidence.

22. Regardless of whether the procedures to screen out privileged materials were reasonable, the Parties shall not argue, in this forum or any other, that any privileges were waived as a result of disclosures in this litigation.

23. At any time during the course of the litigation up to the time of trial, if a Party determines that it has produced a document upon which it wishes to make a claim of privilege,

the producing Party shall, within 14 days of making such determination, give all counsel of record notice of the claim of privilege, and seek the prompt return of all designated material(s) (and copies) to the producing Party, or seek the destruction of all of the designated material(s), at the producing Party's option, except that the receiving Party may, at its discretion, allow copies of the subject document located on backup media to expire in lieu of returning them. The notice must identify each such document and the date it was produced. If the producing Party claims that only a portion of a document is privileged, the producing Party shall provide, along with the notice of the claim of privilege, a new copy of the document with the allegedly privileged portions redacted. Any party that complies with this paragraph will be deemed to have taken reasonable steps to rectify disclosures of privileged or protected information or materials.

24. If a Party identifies a document that appears on its face or in light of facts known to the Party to be subject to another Party's claim of privilege, the Party identifying the potential claim of privilege is under a good-faith obligation to notify the Party holding the potential claim of privilege. Such notification will not waive the identifying Party's ability to subsequently challenge any assertion of privilege with respect to the identified document. If the Party holding the potential claim of privilege wishes to assert a claim of privilege, it shall provide notice in accordance with Paragraph 23 above within 14 days of receiving notice from the identifying Party.

25. Upon receiving notice of a claim of privilege on a produced document, the receiving Party shall, in accordance with Fed. R. Civ. P. 26(b)(5)(B), promptly sequester the specified information and any copies it has and shall not use or disclose the information, except as provided by Fed. R. Civ. P. 26(b)(5)(B), until the claim is resolved. Copies of privileged documents or information that have been stored on electronic media that is not reasonably

accessible, such disaster recovery backup media, are adequately sequestered as long as they are not restored; if such data is restored, the receiving Party shall take steps to re-sequester the restored information. If the receiving Party disclosed the information before being notified, it shall take reasonable steps to prevent further use of such information until the claim is resolved.

26.     Notwithstanding the duties under Rule 26(b)(5)(B), absent an order expressly stating otherwise, a party may make derivative use of, and may pursue leads suggested by, any inadvertently produced privileged information known to the party before duty arose to return, sequester, or destroy the privileged information. The receipt of inadvertently disclosed privileged information shall not be the basis for disqualifying counsel from this action absent a showing of bad faith in either receiving the information or subsequent improper use of the information.

27.     If a Party wishes to dispute a claim of privilege asserted under this Order, such Party shall, within 14 days, move the Court for an order compelling disclosure of the information. The Party shall follow the procedures described in Fed. R. Civ. P. 26(b)(5)(B) and shall not assert, as a ground for compelling disclosure, the fact or circumstances of the disclosure. Pending resolution of the motion, the Parties shall not use the challenged information for any other purpose and shall not disclose it to any person other than those required by law to be served with a copy of the sealed motion. If the information is deemed to be discoverable, then the requesting party may retain the information and use it for any purpose permitted by the Federal Rules of Civil Procedure, Federal Rules of Evidence, or other applicable rule or procedure.

28.     If the requesting party does not dispute a claim of privilege made pursuant to Paragraph 23 or 24, or if the information is deemed to be privileged upon resolution of a dispute raised pursuant to Paragraph 27, then the requesting Party must promptly return the designated

material(s) (and copies and notes concerning its (their) contents) to the producing Party, or destroy all of the designated material(s), at the producing Party's option, except that the receiving Party may, at its discretion, allow copies of the subject document located on backup media to expire in lieu of returning them.. The Parties may stipulate to extend the time periods specified in Paragraphs 23, 24, or 27 above.

29.     Nothing in this order overrides any attorney's ethical responsibilities to refrain from examining or disclosing materials that the attorney knows or reasonably should know to be privileged and to inform the disclosing party that such materials have been produced.

30.     The Party wishing to assert a claim of privilege retains the burden, upon challenge pursuant to Paragraph 27, of establishing the applicability of the claimed privilege.

31.     This Order does not preclude a Party from voluntarily waiving any claims of privilege. The provisions of Rule 502(a) of the Federal Rules of Evidence apply when a Party uses privileged information to support a claim or defense.

**C.     Privilege Log**

32.     <u>Embedded e-mails</u>. An e-mail may be treated as a single document regardless of the number of embedded emails contained within the message body. The privilege log for an e-mail withheld under a claim of privilege, to the extent any is required, may identify the author, recipient(s), subject, dates and times based on the metadata from the top-level message, and is not required to include metadata from any e-mail embedded in the message body. However, if an e-mail contains both privileged and non-privileged communications, the non-privileged communications must be produced. This requirement may be satisfied by producing the original of the embedded, non-privileged e-mail, but if the original is not available, it may be satisfied by producing a redacted version of the privileged e-mail.

33.     The obligation to provide a log of privileged or work product materials pursuant to Rule 26(b)(5)(A) presumptively does not apply to:

(a)     Communications exclusively between a party and its trial counsel; Work product created by trial counsel, or by an agent of trial counsel other than a party or an employee of a party after August 9, 2017 (i.e., the date the Complaint was filed); or

(b)     Internal communications within (a) a law firm, (b) a legal assistance organization, (c) a governmental law office, or (d) a legal department of a client Party.

34.     Deliberative Process Privilege Claims. The Parties agree that the United States' assertion of deliberative process privilege may be made by first identifying documents withheld as deliberative process privileged on the privilege log and, second, providing a declaration supporting that assertion within 45 days after service of the privilege log.

## VI.     PRODUCTION

35.     Procedures for Production:     The following procedures apply to producing documents or ESI. Compliance with these procedures constitutes compliance with Federal Rule of Civil Procedure 34(b)(2)(E) for this matter.

(a)     TIFF Plus Text Productions. Except as stated otherwise below, ESI being produced by a Party shall be converted to 300 dpi, single-page, black-and-white (no shades of gray) TIFF images using CCITT Group IV compression. Each page must be branded with a unique Bates number, which must not be an overlay of the image. Unless otherwise agreed by the Parties, the TIFF images must be produced on optical media or USB hard drive, accompanied by: (1) an Opticon™  or IPRO® "cross reference file" which associates each Bates number with its corresponding single-page TIFF image file; and (2) a "text load file" containing each of the applicable metadata fields described in Appendix A. The text load file must contain Concordance® delimited text that will populate fields in a searchable flat database environment,

containing one line for each document. Nothing in this stipulation requires a Party to manually populate a metadata field in Appendix A (other than "Custodian" and "MD5Hash") if such fields cannot be extracted from a document.

        (b)      Paper documents:

        (1)      Documents printed on paper that is larger than 11 x 17 inches may, at the Producing Party's discretion, be produced on paper. Documents produced on paper must be produced as they are kept in the ordinary course of business or must be organized and labeled to correspond to the categories in the request.

        (2)      Documents printed on paper that is 11 x 17 inches or smaller must be scanned and produced on CD-ROM, DVD-ROM, or external hard drive.

        (c)      Word, WordPerfect, and PDF files.

        (1)      For Word, WordPerfect, and PDF files, the text load file must contain the full extracted text from the document, unless the document has been redacted during privilege review, in which case the load file may contain OCR text.

        (2)      For Word, WordPerfect, and PDF files that contain comments or tracked changes that are not part of the ordinary text, the TIFF images must be generated based on how the document appears when first opened using view settings contained in the file. The receiving party has the option, after reviewing the produced TIFF image, to request the native file.

        (d)      Microsoft PowerPoint files must be processed and produced as full color, half page, JPEG images with one slide per page. Any presenter notes must appear below each slide.

        (e)      E-mail.

(1)     If the producing party redacts any part of an e-mail before producing it, OCR text may be provided in place of extracted text.

(2)     E-mail attachments must be processed as though they were separate documents, and the text load file must include a field in which the producing Party identifies, for each e-mail, the Bates range of any attachment; and child documents shall follow sequentially the parent document wherever practical.

(f)     Microsoft Excel files and other spreadsheets (including text only comma delimited (CSV) or tab delimited text files) must be produced in native file format in a separate folder on the production media. The text load file must contain a field that identifies the file path of the native file corresponding to each document, and the Parties must provide a placeholder TIFF image that shows the name of the native file and has a Bates number.

(g)     Digital photographs must be produced as full color image files at their original resolution with Bates numbers branded onto them;

(h)     Before any Party produces any other kinds of electronic data, including data from databases, CAD drawings, GIS data, videos, etc., the Parties shall meet and confer to determine a reasonably useable form for the production.

36.     The receiving party has the option, after reviewing a black-and-white TIFF image, to enquire whether the original document contained color and, if so, to request a color image.

37.     Except as stated above, a Party need not produce the same electronically stored information in more than one form.

## VII.   EXPERT DISCOVERY

38.     Each Party shall not pursue through discovery, trial subpoena or otherwise:

(a)     Notes taken by a witness required to provide a report under Fed. R. Civ. P. 26(a)(2)(B);

(b)      Communications between a witness required to provide a report under Fed. R. Civ. P. 26(a)(2)(B) and a Party's representative—including, but not limited to, another witness required to provide a report under Fed. R. Civ. P. 26(a)(2)(B)—regardless of the form of the communications, except to the extent that the communications:

(1)      Relate to compensation for an expert's study or testimony;

(2)      Identify facts or data that a Party provided and that the expert considered in forming the opinions to be expressed; or

(3)      Identify assumptions that a Party provided and that the expert relied upon in forming the opinions to be expressed.

(c)      The Parties shall bear the costs of their own testifying experts in responding to discovery, and shall not require the Party seeking discovery to pay the other Party's testifying expert any fee for the time spent in responding to discovery.

## VIII.   MISCELLANEOUS PROVISIONS.

39.      Before filing any motion with the Court regarding electronic discovery or other evidence, the Parties shall meet and confer in a good faith attempt to resolve such disputes.

40.      Costs of Document Production.  Each Party shall bear the costs of collecting, processing, reviewing, and producing its own documents.

41.      Effect of Order.  The Parties' agreement to this Order is without prejudice to the right of any Party to seek an order from the Court to rescind or amend this Order for good cause shown. Nothing in this Order abridges the rights of any person to seek judicial review or to pursue other appropriate judicial action with respect to any discovery ruling made by the Court in this matter.

42.      Integration/Appendices. The following documents are incorporated herein by reference:

(a)     "Appendix A" is a table describing the fields to be included in the databases produced by each Party.

**IT IS SO ORDERED**.


_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE

| Name of Field | Type of field | Contents | | | | |
|---|---|---|---|---|---|---|
| | | E-mail | Word Processing or PDFs | Spreadsheets | Digital Photos | Paper |
| Bates Beg | Text | Bates number for the TIFF image of the first page | Bates number for the TIFF image of the first page | Bates number for the TIFF image of the first page, or, if spreadsheets are not TIFFed, the Bates number of the placeholder page | Bates number branded onto a TIFF file that has the same resolution as the native image file. | Bates number for the TIFF image of the first page |
| Bates End | Text | Bates number for the TIFF image of the last page | Bates number for the TIFF image of the last page | Bates number for the TIFF image of the last page or, if spreadsheets are not TIFFed, the Bates number of the placeholder page | Bates number branded onto the native image file | Bates number for the TIFF image of the last page |
| Attachment Range | Text | Bates number of the first page of the parent document and the last page of the last attachment. | "Attachments" include all embedded files and all documents (including e-mails) to which this file was attached or in which it was embedded. Bates number of the first page of the parent document and the last page of the last attachment is shown. | "Attachments" include all embedded files and all documents (including e-mails) to which this file was attached or in which it was embedded. Bates number of the first page of parent document and the last page of the last attachment is shown. | "Attachments" include all embedded files and all documents (including e-mails) to which this file was attached or in which it was embedded. Bates number of the first page of the parent document and the last page of the last attachment is shown. | "Attachments" include all document that were physically attached by clips, staples, or binding. Bates number of the first page of the parent document and the last page of the last attachment is shown. |
| Custodian | Text | <blank> | The name of the person who had primary control over the location from which the document was collected | The name of the person who had primary control over the location from which the document was collected | The name of the person who had primary control over the location from which the document was collected | The name of the person maintaining the file from which the paper was obtained |
| Sender Combined | Paragraph | "From" field | <blank> | <blank> | <blank> | <blank> |

| Name of Field | Type of field | Contents | | | | |
|---|---|---|---|---|---|---|
| | | E-mail | Word Processing or PDFs | Spreadsheets | Digital Photos | Paper |
| Addressee Combined | Paragraph | "To" field | <blank> | <blank> | <blank> | <blank> |
| CC Combined | Paragraph | "CC" field | <blank> | <blank> | <blank> | <blank> |
| BCC Combined | Paragraph | "BCC" field | <blank> | <blank> | <blank> | <blank> |
| Email Subject | Paragraph | "Subject" field | <blank> | <blank> | <blank> | <blank> |
| Email Sent Date | Date | The date and time the message was sent | <blank> | <blank> | <blank> | <blank> |
| Message ID | Text | For e-mails in Microsoft Outlook, the "Message ID" field; For e-mail stored in Lotus Notes, the UNID field | <blank> | <blank> | <blank> | <blank> |
| MD5 Hash | Paragraph | The MD5 hash value calculated based on addresses, subject line, body, and attachment names. | The MD5 hash value calculated when the file was collected (or, alternatively, when it was processed into the review database) | The MD5 hash value calculated when the file was collected (or, alternatively, when it was processed into the review database) | The MD5 hash value calculated when the file was collected (or, alternatively, when it was processed into the review database) | <blank> |
| File Name | Paragraph | <blank> | The name of the file | The name of the file | The name of the file | <blank> |
| Directory Path | Paragraph | <blank> | The name of the folder from which the file was obtained, including any parent folders that also contained responsive material. | The name of the folder from which the file was obtained, including any parent folders that also contained responsive material. | The name of the folder from which the file was obtained, including any parent folders that also contained responsive material. | The title of the folder in which the document was kept. |
| File_Path | Paragraph | <blank> | The path to the native file on the production media (if it is being provided) | The path to the native file on the production media | <blank> | <blank> |

| Name of Field | Type of field | Contents | | | | |
|---|---|---|---|---|---|---|
| | | E-mail | Word Processing or PDFs | Spreadsheets | Digital Photos | Paper |
| Extracted or OCR Text | Paragraph | Text extracted from the message body | Text extracted from the file. However, if the file does not contain text or if redactions were made, then OCR text shall be provided. | Text extracted from the file or if redactions were made, then OCR text shall be provided. | <blank> | OCR Text |