IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CITY OF LAS CRUCES, *et al.*,

    Plaintiffs,

v.                                                                  Civ. No. 17-809 JCH/GBW

UNITED STATES OF AMERICA, *et al.*,

    Defendants.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

This matter comes before the undersigned pursuant to the Court's Order of Reference (*doc. 249*), referring Plaintiffs' Motion to File Second Amended Complaint (*doc. 232*) for determination by the undersigned in accordance with 28 U.S.C. § 636(b)(1)(B). Only Defendant American Linen Supply of New Mexico, Inc. ("American Linen") opposes Plaintiffs' Motion. *Doc. 235*. The undersigned, having reviewed the Motion and all related filings (*docs. 233, 235, 237, 238*), having heard oral arguments (*doc. 278*), and being otherwise fully advised on the relevant law, recommends that Plaintiffs' Motion to File Second Amended Complaint be GRANTED.

**I.     BACKGROUND**

Plaintiffs bring the instant suit pursuant to the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 *et seq.* ("CERCLA"), seeking cost recovery and contribution to Plaintiffs' costs incurred in cleaning up a hazardous

waste site in Las Cruces, New Mexico, known as the Griggs & Walnut Ground Water Plume Superfund Site ("the Site"). *See generally doc. 79*.

Pursuant to CERCLA § 106(a), 42 U.S.C. § 9606(a), the U.S. Environmental Protection Agency ("EPA") pursued remedial action on the Site, due to high concentrations of a hazardous chemical called tetrachloroethylene or perchloroethylene ("PCE"). *Doc. 235-2* at 2. The EPA concluded that Plaintiffs were responsible persons under § 9607(a)(1)–(2) (as owners/operators of facilities that released PCE) and ordered Plaintiffs to implement and maintain a response action to clean up the Site. *Doc. 235-7*. During the administrative proceedings, the EPA considered other "Potentially Responsible Parties" ("PRPs"), including various entities in Las Cruces that have used PCE in dry-cleaning operations. The EPA ultimately did not pursue action against the dry cleaners, finding it unlikely that the dry cleaners contributed to contamination of the Site due to their distance from it and the lack of PCE concentrations between their facilities and the Site. *See doc. 238-3* at 2; *doc. 235-1* at 2.

Plaintiffs originally brought this suit against only the United States of America (through various sub-entities). *Doc. 1*. A scheduling order was issued setting discovery deadlines, including a deadline of July 9, 2018 for all parties to amend their pleadings and add parties. *Doc. 32* at 1. This deadline was ultimately extended to August 23, 2018 by agreement of the parties. *Doc. 59*.

On August 23, 2018, Plaintiffs filed an amended complaint ("First Amended Complaint") to which several new defendants were added. *Doc. 79*. These new defendants, including American Linen, are alleged to have engaged in dry cleaning using PCE, which was released into the surrounding soil and contributed to the contamination of the Site. *Id.* at ¶¶ 31–48. The liability of the dry-cleaning defendants is premised on their being owners and/or operators of facilities from which PCE was released. *Id.* at ¶ 57.

American Linen filed its answer to Plaintiffs' First Amended Complaint on October 19, 2018, in which it "affirmatively states that it has never engaged in dry cleaning operations" and "affirmatively states that it has never used PCE in its operations on its property." *Doc. 111* at ¶¶ 5, 32. This was American Linen's position both prior to and (until recently) throughout the present suit. *See docs. 233-4, 233-7; doc. 278* at 6.

As the parties proceeded through discovery, they sought multiple extensions of discovery deadlines, but no new deadline was ever established for amendments to the pleadings. *See docs. 87, 129, 146, 156, 180*. On August 21, 2019, the case was stayed by agreement of the parties. *Doc. 189*. The stay ultimately expired on July 17, 2020. *Doc. 214* at 2. During the stay, Plaintiffs settled their claims against the United States of America, pursuant to a consent decree which was entered by the Court on July 30, 2020.

*Docs. 216, 225*.  Additionally, Plaintiffs settled their claims against Defendant Rawson Leasing, LLC as of September 15, 2020.  *Doc. 236*.

Plaintiffs filed the instant Motion on August 26, 2020, over two years after the pleading amendment deadline.  *Doc. 232*.  Plaintiffs seek to amend their complaint to add new allegations particular to American Linen.  *Doc. 232-1*.  American Linen filed a response on September 9, 2020.  *Doc. 235*.  Briefing was complete as of September 23, 2020, upon the filing of Plaintiffs' reply.  *Doc. 237*.

**II.     LEGAL STANDARDS**

Because Plaintiffs are past the point where they may amend their complaint as a matter of course, they must obtain either Defendants' consent or the Court's leave in order to amend.  *See* Fed. R. Civ. P. 15.  The Court should "freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The decision to grant leave to amend a complaint is within the Court's discretion.  *Pallottino v. City of Rio Rancho*, 31 F.3d 1023, 1027 (10th Cir. 1994) (quoting *Woolsey v. Marion Labs., Inc.*, 934 F.2d 1452, 1462 (10th Cir. 1991)).  "Refusing leave to amend [under Rule 15] is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment."  *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993) (citation omitted); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962)).

4

However, when a party moves to amend a pleading after the deadline set in the scheduling order, it must satisfy Rule 16's good-cause standard in addition to the requirements of Rule 15. *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014) ("After a scheduling order deadline, a party seeking leave to amend must demonstrate (1) good cause for seeking modification under Fed R. Civ. P. 16(b)(4) *and* (2) satisfaction of the Rule 15(a) standard.") (emphasis added). Good cause "requires the moving party to show that it has been diligent in attempting to meet the deadlines, which means it must provide an adequate explanation for any delay." *Strope v. Collins*, 315 F. App'x 57, 61 (10th Cir. 2009) (unpublished) (quoting *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1205 n.4 (10th Cir. 2006)). *See also Gorsuch*, 771 F.3d at 1240 ("In practice, this standard requires the movant to show 'the scheduling deadlines cannot be met despite [the movant's] diligent efforts.'") (quoting *Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001)). "Rule 16(b)(4) is arguably more stringent than Rule 15" and may prevent amendments where, for example, the movant "knew of the underlying conduct but simply failed to raise [their] claims." *Husky Ventures, Inc. v. B55 Invs., Ltd.*, 911 F.3d 1000, 1019–20 (10th Cir. 2018) (quoting *Zisumbo v. Ogden Reg'l Med. Ctr.*, 801 F.3d 1185, 1195 (10th Cir. 2015) and *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1248 (10th Cir. 2015)).

### III.  ANALYSIS

The allegations that Plaintiffs seek to add to their complaint may be summarized by two general categories.  *See generally doc. 232-1.*  First, Plaintiffs seek to include additional allegations regarding the basis of American Linen's liability as an owner and/or operator of a facility from which hazardous substances including PCE were released.  *Doc. 232-1* at ¶¶ 46, 50, 57–61; *see* 42 U.S.C. § 4607(a)(1)–(2).  Second, Plaintiffs seek to assert a new theory of liability against American Linen as an "arranger" for disposal of hazardous substances including PCE.  *Doc. 232-1* at ¶¶ 31–32, 51–55, 61, 71, 77; *see* 42 U.S.C. § 4607(a)(3); *Burlington N. & Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 610–11 (2009).

At the hearing, the parties agreed that the first category of changes would not alter the evidentiary scope of Plaintiffs' case against American Linen, because the allegations of owner/operator liability are already in the First Amended Complaint. *Doc. 278* at 2–3.  Thus, the second category of changes (*i.e.*, the assertion of arranger liability) is at the heart of the instant Motion and is critical to determining whether leave to amend may be granted.

#### A.  Rule 16

Pursuant to Rule 16, the Court is required to issue a scheduling order that sets deadlines to amend the pleadings, add parties, complete discovery, and file motions. Fed. R. Civ. P. 16(b)(3)(A).  The purpose of requiring a deadline for amending pleadings

6

and adding parties is to "assure[] that at some point both the parties and the pleadings will be fixed."  Fed. R. Civ. P. 16 advisory committee notes to 1983 amendment.  Accordingly, when a pleading amendment deadline has passed, further pleading amendments are permitted "only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4); *Gorsuch*, 771 F.3d at 1240.

In their briefing, Plaintiffs contend that Rule 16's good-cause standard is inapplicable to the present motion because no pleading amendment deadline was set with respect to the dry-cleaning defendants.  *Doc. 237* at 4–5.  Plaintiffs have not identified any case law supporting an exception to the good-cause requirement where new parties are brought into a case, and I am unpersuaded.  *Doc. 278* at 2.  If Plaintiffs had any reason to believe that a new pleading amendment deadline might be required to apply with respect to the new defendants, then it was incumbent on Plaintiffs to seek an extension.

Because the final pleading amendment deadline in this case was August 23, 2018, Plaintiffs must satisfy good cause by showing that they were diligent in pursuing the proposed amendments and providing an adequately explanation for the delay.  *See Strope*, 315 F. App'x at 61.  Plaintiffs point to several pieces of evidence obtained after the amendment deadline which support the proposed amendment and justify the delay in seeking it.  This evidence is as follows:

7

(1) The March 22, 2019 deposition of Victor Jasso, a former employee of American Linen who was involved in its dry-cleaning operations in the 1970s and 1980s and observed the dumping of PCE waste by a third party acting on American Linen's behalf on bare soil near the Las Cruces Dam. *Doc. 233-5.*

(2) The March 29, 2019 deposition of Larry Hartman and the August 21, 2020 deposition of Raymundo Castillo, former employees of American Linen, confirming that American Linen historically engaged in dry cleaning using PCE. *Doc. 233-6; doc. 233-12.*

(3) Historical documents from the Las Cruces Urban Renewal Agency listing drums of PCE and dry-cleaning equipment among American Linen's possessions. *Doc. 233 at ¶ 10; doc. 233-8 at 3.* Plaintiffs assert that they discovered this evidence through an independent investigation on or about September 2019. *Doc. 232 at 4.*

(4) A Remedial Action Progress Report completed in April 2020, evaluating the progress of cleanup of the Site ("April 2020 Report"), and Plaintiffs' Supplemental Expert Report prepared by Steven O. Helgen based on the April 2020 Report (completed in August 2020). *Doc. 238-5; doc. 238-1.* Mr. Helgen draws several conclusions from the April 2020 Report concerning the dry-cleaning defendants' contribution to contamination of the Site. The most pertinent finding for purposes of the instant Motion is that the highest

concentration of PCE currently on the Site is at or near the Dam (where American Linen reportedly dumped PCE waste). *Doc. 238-1* at 8.

(5) A May 2020 letter by the New Mexico Environment Department ("NMED") to American Linen, finding that American Linen has historically used and released PCE into the surrounding soil and groundwater and requiring American Linen to submit an abatement plan. *Doc. 233-10* at 1–2.

(6) The September 18, 2020 deposition of Christopher Whitman, an employee of the NMED who investigated the report of dumping by Mr. Jasso and engaged in sampling at the Dam. *Doc. 238-4*.

I find that the majority of this evidence would not justify a finding that Plaintiffs were diligent in pursuing amendment. First, much of this evidence supports Plaintiffs' original allegations—that American Linen has historically engaged in dry-cleaning operations using PCE—but it does not specifically corroborate, nor is it necessary for, Plaintiff's new assertion of arranger liability. Clearly, Plaintiffs did not believe they required corroboration in order to bring American Linen into this case—even in the face of American Linen's consistent representations that it never engaged in dry-cleaning operations and never used PCE. To the extent that Plaintiffs' new evidence merely corroborates the fact of American Linen's dry-cleaning operations using PCE, it does not justify the delay in proposing the amendments. Second, the deposition of Mr. Jasso was completed in March 2019 (as was Mr. Hartman's corroborating deposition),

9

meaning that Plaintiffs had evidence of the alleged dumping of PCE waste more than a year before they moved to amend.[1] Third, the deposition of Mr. Whitman was taken after Plaintiffs filed this Motion, thus it does not help to explain Plaintiffs' timing.

Nonetheless, I find that the April 2020 Report and the subsequent expert analysis thereof were sufficiently important to justify the delay in seeking the proposed amendment. At the hearing, Plaintiffs' counsel provided further context on this Report. As Plaintiffs' counsel explained, the Report is an annual summary of the progress of Plaintiffs' cleanup of the Site, which has been produced each April since 2012. *Doc. 278* at 3. The annual report is based on sampling taken from various groundwater monitoring wells within the Site on a routine basis. *Id.* During the early years of the cleanup, the highest levels of PCE were elsewhere than at the Dam. *See doc. 238-5 at 5.* In 2015, the PCE levels at the well nearest the Dam began to rise and, in 2018, saw a notable spike. *Id.; doc. 238-1 at 6.* Plaintiffs' experts at first considered this spike anomalous. *Doc. 278* at 3. In 2019, sampling again showed high levels at the Dam, while the levels at other wells have decreased. *Doc. 238-5 at 5; doc. 238-1 at 8–11.* These 2019 samplings were first reported in April 2020. *Doc. 238-5 at 3.*

Plaintiffs' counsel further explained that the April 2020 Report is critical not merely because it corroborates Mr. Jasso's report, but more importantly because it

---

[1] The Court also acknowledges American Linen's evidence that Plaintiffs were on notice about Mr. Jasso's report as early as 2009. *See doc. 235-3 at 3; doc. 235-4 at 3.*

10

provides a basis to attribute harm to American Linen. *Doc. 278* at 3–4. As Plaintiffs' counsel explained, the mere fact that an entity has arranged for disposal of hazardous substances does not entitle a plaintiff to obtain contribution from that entity. *Id*. The plaintiff must show that the disposal caused actual harm in the form of increased response costs. *See Chevron Mining Inc. v. United States*, 863 F.3d 1261, 1269 (10th Cir. 2017) (noting that a prima facie case for CERCLA liability requires that the release of a hazardous substance "caused the plaintiff to incur necessary response costs"). Absent a causal link between American Linen's alleged dumping and Plaintiffs' incurrence of response costs, Plaintiffs reasonably concluded that arranger liability was not a viable claim. With the addition of the April 2020 Report, Plaintiffs' current theory is that unexpectedly high levels of PCE at the Dam have driven up Plaintiffs' response costs beyond what they had anticipated. *Doc. 278* at 3; *doc. 238-1* at 10–11. Accordingly, Plaintiffs now believe that American Linen's dumping at the Dam is responsible for an apportionable share of the response costs.

Based on the April 2020 Report, Mr. Helgen's Supplemental Expert Report, and Plaintiffs' counsel's supplementary explanations at the hearing, I find that Plaintiffs have adequately explained their failure to seek amendment before April 2020. The remaining question is whether Plaintiffs' delay from April 2020 to August 26, 2020 was also justified. First, the case was stayed from August 2019 until July 17, 2020. Consequently, Plaintiffs need only further justify the time from July 17th until August

11

26th.[2] At the hearing, Plaintiffs' counsel explained that the data in the April 2020 Report required expert analysis, particularly regarding the significance of the year-over-year trends in PCE levels at the various monitoring wells. *Doc. 278* at 5. Plaintiffs' counsel stated that the April 2020 Report was delivered to Mr. Helgen by May and Mr. Helgen produced his Supplemental Expert Report in August. *Id.* at 4. I find this explanation persuasive to explain why Plaintiffs did not seek to amend their complaint immediately upon receiving the April 2020 Report. It certainly justifies the additional 40-day delay.

In conclusion, the data revealed in the April 2020 Report (and the subsequent expert analysis of that data) provided material and new evidence supporting a viable arranger theory of liability. Given the nature of the manner in which the data was collected, Plaintiffs' lack of diligence was not the reason why the information was received well after the pleading amendment deadline. Moreover, the data required expert analysis, which the Plaintiffs were sufficiently diligent in having performed. Upon receipt of the expert analysis, Plaintiffs were diligent in seeking permission to amend their Complaint. I therefore recommend finding that Plaintiffs have established good cause to amend their complaint beyond the pleading amendment deadline.

---

[2] At the hearing, I queried Plaintiffs' counsel whether, given the long delay in seeking the pleading amendment, it was reasonable to rely on the stay as opposed to raising it with the Court as soon as possible. *Doc. 278* at 4–5. Whether or not that decision could undermine the finding of diligence, Defendant American Linen did not press this argument in its briefing or its oral argument, so the undersigned will not address it further.

**B. Rule 15**

A motion to amend a pleading may be defeated by showing "undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank*, 3 F.3d at 1365 (citation omitted). There is no argument here that Plaintiffs' proposed amendments are an attempt to cure deficiencies in the First Amended Complaint. I address each other potential basis to deny Plaintiffs' motion in turn.

    1. *Undue Delay*

The Tenth Circuit has held that objections of "undue delay" pursuant to Rule 15 require something more than mere untimeliness. *Minter*, 451 F.3d at 1205 (noting that the "[e]mphasis is on the adjective"). To determine whether a delay is undue, the Tenth Circuit "focuses primarily on the reasons for the delay." *Id.* at 1206. Under Rule 15, an amendment may be denied if it appears the plaintiff is attempting to make the complaint a moving target, to salvage a lost case by new theories of recovery, to raise "theories seriatim," or to knowingly delay raising an issue until the eve of trial. *Id.* (citations omitted).

For the same reasons that I recommend finding that Plaintiffs have satisfied good cause, I also recommend finding that the present motion is not unduly delayed. Plaintiffs have adequately explained their reasons for not asserting an arranger theory of liability any earlier than they did.

13

### 2. *Undue Prejudice*

Prejudice has been treated by the Tenth Circuit as the "most important[] factor in deciding a motion to amend the pleadings[.]" *Minter*, 451 F.3d at 1207. "Typically, courts will find prejudice only when an amendment unfairly affects non-movants in terms of preparing their response to the amendment." *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009) (citation and internal quotation marks omitted). Courts most often make such a finding "when the amended claims arise out of a subject matter different from what was set forth in the complaint and raise significant new factual issues." *Minter*, 451 F.3d at 1208. An amendment may be found to be prejudicial "if its timing prevents the defendant from pursuing a potentially promising line of defense[.]" *Id.* at 1209.

American Linen contends that "[a]lthough [it] need not demonstrate prejudice under the circumstances, it is clear that it will suffer prejudice if forced to defend against these belated claims at this time." *Doc. 235* at 13. American Linen's statement echoes that of the defendant in *Minter*, which unsuccessfully argued that the plaintiff's proposed amendments "would result in 'obvious' prejudice." 451 F.3d at 1208. "Obvious" or "clear" prejudice is not the same as *undue* prejudice. Any pleading amendment worth pursuing would presumably be prejudicial to the opposing party. As with undue delay, the emphasis is on the adjective. *Cf. id.* at 1205.

14

In its response, American Linen noted the then-looming discovery deadline of October 9, 2020. *Doc. 235* at 13; *see doc. 214*. Based on the concurrence of the parties, I have granted extensions specifically to accommodate the deposition of Plaintiffs' expert witnesses, in light of the experts' new findings. *Docs. 255, 276*. The most recent of these extensions should have resolved any concern that American Linen will be unable to complete these depositions as a result of Plaintiffs' belated amendments. *Doc. 276*. Moreover, American Linen has not indicated that any other discovery will be necessary to defend against Plaintiffs' proposed amendments. Finally, I note that no trial date has been set in this case. *Cf. Husky Ventures*, 911 F.3d at 1020–21 (denying leave to amend filed "on the eve of trial"). For these reasons, I recommend finding that American Linen will not be unduly prejudiced in its ability to respond to Plaintiffs' proposed amendments.

At the hearing, American Linen's counsel's primary argument of prejudice was based on the EPA's findings (or lack thereof) regarding American Linen's liability for contamination of the Site. *Doc. 278* at 6. The EPA proceedings concluded in 2017, before American Linen was brought into this suit. *See doc. 235-7*. The prejudice inquiry, for purposes of Rule 15, depends primarily on the *timing* of the amendments, *see Minter*, 451 F.3d at 1209, and not on the substance of the new allegations. To the extent that American Linen is challenging Plaintiffs' right to bring their proposed amendments *at all*, American Linen's argument invokes futility (which I address below), not prejudice.

15

In sum, I recommend finding that no undue prejudice would result to American Linen in granting Plaintiffs' motion.

   3. *Bad Faith*

Bad faith may be "inferred if a party seeks leave to amend for an improper purpose." *Rivera v. Volvo Cars of N. Am., LLC*, 2015 WL 12860553, at *4 (D.N.M. Feb. 9, 2015) (citation omitted). The gist of American Linen's argument is that the Court should infer a bad faith purpose from the lack of any "good faith explanation for why [Plaintiffs] have now targeted American Linen for prosecution after years of ignoring the improper disposal theory." *Doc. 235* at 18. As I previously found, Plaintiffs have adequately explained their reasons for not pursuing the arranger theory earlier. American Linen's arguments largely attack the credibility of the evidence on which Plaintiffs rely. *Id.* at 16–18. Whether Plaintiffs' evidence will prove out their theories of American Linen's liability is a question for the factfinder to resolve. It is not a proper consideration for purposes of the present Motion. I recommend rejecting American Linen's assertions of bad faith by Plaintiffs in bringing this Motion.

   4. *Futility*

"A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Jefferson Cty. Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999) (citations omitted). American Linen asserts that Plaintiffs'

16

claims cannot prevail under the applicable standard of review based on 42 U.S.C. § 9613(j), which provides:

> **(1)    Limitation**
> In any judicial action under this chapter, judicial review of any issues concerning the adequacy of any response action taken or ordered by the President shall be limited to the administrative record.  Otherwise applicable principles of administrative law shall govern whether any supplemental materials may be considered by the court.
> **(2)    Standard**
> In considering objections raised in any judicial action under this chapter, the court shall uphold the President's decision in selecting the response action unless the objecting party can demonstrate, on the administrative record, that the decision was arbitrary and capricious or otherwise not in accordance with law.

42 U.S.C. § 9613(j)(1)–(2).  American Linen's argument based on § 9613(j) is that Plaintiffs' claims cannot proceed because (1) the EPA has already found that American Linen is not a responsible party, (2) Plaintiffs cannot rely on evidence outside the administrative record to hold American Linen responsible, and (3) Plaintiffs cannot establish that the EPA's findings were "arbitrary and capricious."  *See doc. 235* at 14–16.

American Linen's citation to § 9613(j) is inapposite.  Plaintiffs are not seeking judicial review of any action taken by the EPA.  Plaintiffs have complied with the EPA's order to institute and maintain the response action on the Site.  Furthermore, CERCLA specifically contemplates that responsible persons, like Plaintiffs, will seek contribution from other PRPs: "Any person may seek contribution from any *other* person who is liable *or potentially liable* under section 9607(a) of this title, during or *following any civil action under section 9606* of this title or under 9607(a) of this title."  42 U.S.C. § 9613(f)(1)

(emphasis added). This statutory scheme was designed to promote the timely cleanup of hazardous substances by spreading costs. *Chevron Mining*, 863 F.3d at 1269. Under CERCLA, "*everyone* who is potentially responsible for hazardous-waste contamination may be forced to contribute to the costs of cleanup." *Id.* (quoting *United States v. Bestfoods*, 524 U.S. 51, 56 n.1 (1998)). *See also United States v. Occidental Chem. Corp.*, 200 F.3d 143, 150 (3d Cir. 1999) (noting that "bringing more parties into the cleanup effort" protects "against the risk that any one party may become unable or unwilling to perform the remedy").

Additionally, I find that the evidence from the administrative record is not as conclusive concerning American Linen's lack of liability as American Linen suggests. *See doc. 235* at 14. Early in the EPA's remediation efforts, in 2003, the EPA considered it "*unlikely* that the concentrations of PCE observed in ground water have migrated laterally from distant locations west of the known plume boundary, such as from the current and former dry cleaners in the vicinity of North Main Street." *Doc. 235-1* at 2 (emphasis added). This statement is the only indication from the evidence supplied by American Linen that the EPA rejected a finding of liability against any dry-cleaning entity.

The other evidence relied on by American Linen includes the EPA's 2007 Record of Decision, identifying Plaintiffs as PRPs and listing three source areas for the release of PCE, all properties owned and operated by Plaintiffs. *Doc. 235-2*. The portion of the

Record of Decision supplied by American Linen does not contain *any* findings regarding the potential responsibility of any dry-cleaning entity, let alone an "express[]" finding, *doc. 235* at 14, that American Linen is not a PRP. American Linen also supplies the EPA's administrative orders from 2009 and 2011 designating Plaintiffs as responsible parties and requiring them to undertake the response action to clean up the Site and the EPA's 2017 Unilateral Administrative Order finalizing the response action after a five-year review. *Docs. 235-5*, *235-6*, *235-7*. None of these orders address the potential responsibility of any dry-cleaning entity. Consequently, even if the Court were required to give deference to the EPA's findings,[3] American Linen does not identify any finding by the EPA that would preclude Plaintiffs from pursuing contribution from American Linen as a fellow PRP.

---

[3] Whether deference is required in this context is uncertain in the Tenth Circuit. Other circuit courts have held that the EPA's findings pursuant to 42 U.S.C. § 9606(a) are *not* entitled to deference: "Courts, not the EPA, are the adjudicators of the scope of CERCLA liability." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1507 n.24 (11th Cir. 1996) (citing *Kelley v. EPA*, 15 F.3d 1100, 1107–08 (D.C. Cir. 1994)).

## IV. Conclusion

For the foregoing reasons, I RECOMMEND that Plaintiffs' Motion to File Second Amended Complaint (*doc. 232*) be GRANTED and Plaintiffs be permitted to file the proposed Second Amended Complaint (*doc. 232-1*).

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**