IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CITY OF LAS CRUCES, et al.,

    Plaintiffs,

v.                                                                                           Civ. No. 17-809 JCH/GBW

UNITED STATES OF AMERICA, et al.,

    Defendants.

**MEMORANDUM OPINION AND ORDER
ADOPTING PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER is before the Court on Defendant American Linen Supply of New Mexico, Inc.'s Objections (Doc. 296) to the Magistrate Judge's Proposed Findings and Recommended Disposition ("PFRD") (Doc. 290), in which the Magistrate Judge recommends granting Plaintiffs' Motion to File Second Amended Complaint (Doc. 232). Having conducted an independent, *de novo* review of Plaintiff's motion, the attendant briefing (Doc. 235; Doc. 237), the parties' oral arguments (Doc. 278), and the Magistrate Judge's PFRD, the Court overrules Defendants' objections and adopts the PFRD.

**BACKGROUND**

On August 9, 2017, Plaintiffs filed suit against the United States of America, United States Department of Defense, and National Guard Bureau under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 *et seq.* ("CERCLA"), seeking contribution for Plaintiffs' response costs incurred in cleaning up a hazardous waste site known as the Griggs & Walnut Superfund Site. Doc. 1. A scheduling order was issued on January 21, 2018, establishing a pleading amendment deadline of July 9, 2018 for all parties. Doc. 32. The pleading

amendment deadline was ultimately extended to August 23, 2018. Doc. 59. On that date, Plaintiffs filed an amended complaint, adding several new defendants including American Linen Supply of New Mexico, Inc. (hereinafter, "Defendant"). Doc. 79. Over the next two years, the parties sought multiple extensions to discovery deadlines but did not seek any extension of the pleading amendment deadline. Docs. 87, 129, 146, 156, 180.

On August 26, 2020, Plaintiffs filed a Motion to File Second Amended Complaint (Doc. 232). Defendant filed a Response in opposition (Doc. 235), arguing that Plaintiffs failed to satisfy the requirements of Rules 15 and 16 of the Federal Rules of Civil Procedure. Defendant argued that Plaintiffs should be denied under Rule 15(a)(2) on grounds of undue delay, undue prejudice, futility, and bad faith. *Id.* at 12–18. Defendant also argued that Plaintiffs failed to satisfy good cause to permit their untimely amendment as required by Federal Rule of Civil Procedure 16(b)(4). *Id.* at 10–12. Pursuant to the Court's Order of Reference (Doc. 249), the Magistrate Judge heard oral arguments on November 2, 2020 (Doc. 278) and filed his PFRD on November 23, 2020 (Doc. 290). Defendant timely filed Objections to the PFRD on December 7, 2020. Doc. 296.

In his PFRD, the Magistrate Judge recommended granting Plaintiffs' motion and permitting the filing of a Second Amended Complaint. Doc. 290 at 1, 20. Regarding Rule 15, the Magistrate Judge found Defendant's arguments insufficient to defeat Plaintiffs' motion to amend. *Id.* at 13–19. Regarding Rule 16, the Magistrate Judge found that Plaintiffs had satisfied good cause by establishing that their proposed amendments were based on evidence unavailable to Plaintiffs prior to August 2020. *Id.* at 6–12. Specifically, the Magistrate Judge found that Plaintiffs did not possess evidence to support an assertion of liability against Defendant as an "arranger" for disposal of hazardous chemicals prior to the following series of events:

(1) Data sampling conducted in 2019 and 2020 at various groundwater monitoring wells ("GWMWs") within the Griggs & Walnut Superfund Site showed increased levels of perchloroethylene ("PCE"), a hazardous chemical, at a well located near the Las Cruces Dam (identified as GWMW 15-I), where it has been alleged that Defendant had arranged for the dumping of PCE waste onto bare soil. *See* Doc. 232 at 9–10; Doc. 238-5; Doc. 233-9.

(2) The 2019-2020 data samples were provided to Plaintiffs in a Remedial Action Progress report ("RAP") published in April 2020. Doc. 238-5.

(3) The April 2020 RAP was provided to Plaintiffs' expert, Steven O. Helgen, who conducted an analysis of the data therein and concluded that increased levels of PCE at GWMW 15-I were likely attributable to Defendant's dumping and were driving up Plaintiffs' response costs. Doc. 232 at 5; Doc. 233-9. Mr. Helgen's Supplemental Expert Report was completed on August 4, 2020. Doc. 232 at 2.

At the hearing, Plaintiffs' counsel provided further context on the above sequence of events. She explained that a spike in PCE levels at GWMW 15-I was first observed in 2018, but Plaintiffs' experts considered it anomalous. Doc. 278 at 3. It was only when the high levels at GWMW 15-I were observed again in 2019 that Plaintiffs' experts began to consider the spike significant. *Id*. Plaintiffs' counsel also explained that Plaintiffs (and their counsel) lack the scientific knowledge to draw conclusions from the data in the annual progress report without expert analysis. *Id*. at 5. Thus, it was only upon the production of Mr. Helgen's Supplemental Expert Report on August 4, 2020, that Plaintiffs determined that harm was attributable to Defendant as a result of its alleged dumping of PCE waste near the Las Cruces Dam. *Id*.

Based upon the evidence supplied by Plaintiffs in their briefing, as well as Plaintiffs' counsel's explanations at the hearing, the Magistrate Judge found that Plaintiffs had adequately

explained their delay in seeking the proposed amendments and therefore satisfied the good-cause standard of Rule 16(b)(4). Doc. 290 at 10–12.

## LEGAL STANDARDS

### I. 28 U.S.C. § 636(b)

Plaintiffs' Motion to File Second Amended Complaint (Doc. 232) was referred to the Magistrate Judge to conduct hearings and perform legal analysis pursuant to 28 U.S.C. § 636(b)(1)(B). *See* Doc. 249. Under that referral provision, the Court's standard of review of a magistrate judge's PFRD is *de novo*. *See* 28 U.S.C. § 636(b)(1)(C). When resolving objections to a magistrate judge's PFRD, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Moreover, "[i]ssues raised for the first time in objections to the magistrate judge's recommendation are deemed waived." *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996). *See also United States v. Garfinkle*, 261 F.3d 1030, 1031 (10th Cir. 2001) ("In this circuit, theories raised for the first time in objections to the magistrate judge's report are deemed waived.")

In adopting a PFRD over objections, the district court need not "make any specific findings; the district court must merely conduct a *de novo* review of the record." *Garcia v. City of Albuquerque*, 232 F.3d 760, 766 (10th Cir. 2000). "[T]he district court is presumed to know that de novo review is required. Consequently, a brief order expressly stating the court conducted de

4

novo review is sufficient." *Northington v. Marin*, 102 F.3d 1564, 1570 (10th Cir. 1996) (citing *In re Griego*, 64 F.3d 580, 583–84 (10th Cir. 1995)). "[E]xpress references to de novo review in its order must be taken to mean it properly considered the pertinent portions of the record, absent some clear indication otherwise." *Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42*, 8 F.3d 722, 724 (10th Cir. 1993). A "terse" order containing one sentence for each of the party's "substantive claims," which did "not mention his procedural challenges to the jurisdiction of the magistrate to hear the motion," was held sufficient. *Garcia*, 232 F.3d at 766. The Supreme Court has explained that "in providing for a 'de novo determination' rather than *de novo* hearing, Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations." *United States v. Raddatz*, 447 U.S. 667, 676 (1980) (quoting 28 U.S.C. § 636(b)) (citing *Mathews v. Weber*, 423 U.S. 261, 275 (1976)).

## II.     Federal Rules of Civil Procedure 15 and 16

The Tenth Circuit has held that "[a]fter a scheduling order deadline, a party seeking leave to amend must demonstrate (1) good cause for seeking modification under Fed. R. Civ. P. 16(b)(4) and (2) satisfaction of the Rule 15(a) standard." *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014).

Rule 16 of the Federal Rules of Civil Procedure provides that a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "In practice, this standard requires the movant to show the scheduling deadlines cannot be met despite the movant's diligent efforts." *Gorsuch*, 771 F.3d at 1240 (internal quotations omitted). "Rule 16's good cause requirement may be satisfied, for example, if a plaintiff learns new information through

discovery or if the underlying law has changed." *Id*. Therefore, a party seeking to amend its complaint after a scheduling order deadline must establish good cause for doing so. *Id*. at 1241.

Federal Rule of Civil Procedure 15(a)(2) provides that, after a responsive pleading has been served, "a party may amend its pleading only with the opposing party's written consent or the court's leave." The Rule specifies that "[t]he court should freely give leave when justice so requires." The purpose of the Rule is to provide litigants "the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *Hardin v. Manitowoc–Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982). "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993).

## ANALYSIS

Defendant does not raise any objections to the Magistrate Judge's findings regarding Rule 15(a)(2). Upon *de novo* review, the Court agrees with the Magistrate Judge's findings and concludes that Rule 15 does not bar Plaintiffs from amending their complaint.

Defendant objects to the Magistrate Judge's finding that Plaintiffs have satisfied the good-cause standard of Rule 16(b)(4). Doc. 296 at 3–11. Defendant's central objection is that the Magistrate Judge improperly relied on the arguments of Plaintiffs' counsel at the hearing to support his finding that Plaintiffs were diligent. *Id.* at 4. Defendant points to several pieces of evidence that it contends contradict Plaintiffs' counsel's arguments. *Id.* at 4–11.

As a general matter, the Court does not find any legal authority that prohibits relying on uncontradicted representations of counsel concerning the reasons for a party's conduct in litigation. The Tenth Circuit has indicated that the good-cause standard is met by providing "an adequate

6

explanation for any delay." *Strope v. Collins*, 315 F. App'x 57, 61 (10th Cir. 2009) (unpublished). Thus, statements by a party (or an organizational party's representative) concerning the reasons for delay are highly relevant to this inquiry. Defendant cites *In re Lang*, 293 B.R. 501, 513 (B.A.P. 10th Cir. 2003), for the proposition that "[a]ttorney argument, such as that offered by [Plaintiffs'] counsel at the Motion Hearing, is not evidence." Doc. 296 at 5. In that case, the Bankruptcy Appellate Panel considered a debtor's contention that her briefing and closing argument in an earlier trial controverted testimonial evidence on which the trial judge had relied. *In re Lang*, 293 B.R. at 512–13. The Panel found no abuse of discretion by the trial judge, noting the lack of any evidence controverting the testimony at issue. *Id.* at 513. The Court accepts the general principle that arguments of counsel may be insufficient on their own to controvert otherwise credible evidence, but the holding of *In re Lang* is of limited relevance to the present matter. The Magistrate Judge did not rely on the representations of counsel to the exclusion of any evidence on the record before him. To the contrary, the Magistrate Judge hinged his analysis primarily on the April 2020 annual progress report and the August 2020 supplemental expert report and cited Plaintiffs' counsel's statements at the hearing primarily to contextualize those reports. *See* Doc. 290 at 10–12.

Defendant presents several pieces of evidence that it contends contradict the representations of Plaintiffs' counsel. Doc. 296 at 4–11. An explanation that is contradicted by evidence cannot support an untimely motion to amend. *See Husky Ventures, Inc. v. B55 Invs., Ltd.*, 911 F.3d 1000, 1020 (10th Cir. 2018) (finding no good cause where evidence in the record contradicted movant's assertion of newly discovered information). Accordingly, the Court

considers the evidence presented by Defendant.[1]  *See* 28 U.S.C. § 636(b)(1) ("The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.").

Upon review, the Court concludes that the evidence relied on by Defendant does not clearly contradict Plaintiffs' arguments and, in fact, arguably supports them.  First, Defendant points to RAPs from 2016 and 2017, which show that PCE levels at GWMW 15-I began to increase prior to 2018.  *See* Doc. 296 at 6; Doc. 296-2; Doc. 296-3.  However, the increase in 2018 is significantly higher than the increases in other years, and other GWMWs show similar or greater increases during the same time.  *See, e.g.,* Doc. 296-3 at 2–3 (showing increases in 2015 and 2016 at GWMW 09-03 and GWMW 10-06).  The Court notes that the sampling data appears to vary considerably from year to year at each GWMW.  This arguably supports Plaintiffs' representations that a spike in one year may be considered anomalous.

Defendant next points to Mr. Helgen's 2019 Expert Report to demonstrate that Plaintiffs had all the information they required to pursue the "arranger" theory against Defendant at that time.  *See* Doc. 296 at 6; Doc. 296-1.  However, Mr. Helgen's 2019 Expert Report appears consistent with Plaintiffs' representations concerning how they understood the data from 2018 and earlier.  The portion of that report highlighted by Defendant includes a statement from the New Mexico Environment Department that releases near the Las Cruces Dam "*might* account for the GWMW-15 PCE concentration *anomaly*."  Doc. 296-1 at 3 (emphasis added).  This statement appears entirely consistent with the representations of Plaintiffs' counsel that the 2018 spike was treated as an anomaly, upon which Plaintiffs could not then conclude that releases at the Dam were

---

[1] The Court reviews this evidence solely to determine whether or not it contradicts or undermines Plaintiffs' explanations for why they have been untimely in seeking the proposed amendments.  The Court does not at this time determine whether this evidence supports Plaintiffs' underlying theory that the alleged dumping of hazardous chemicals near the Dam by Defendant caused Plaintiffs to incur increased response costs.  Nor does the Court make any finding here as to the scientific validity of Mr. Helgen's reports or of any position taken by Plaintiffs in reliance on those reports.

8

driving up their response costs. Overall, the 2019 report is tentative regarding Defendant's liability for response costs. After summarizing the reports of releases by Defendant, Mr. Helgen concluded that "only a small fraction of the PCE released in this area is likely to reach the groundwater, with much of the remainder evaporating." *Id.* at 2 (citation omitted). This conclusion is in stark contrast to the findings in the 2020 Supplemental Expert Report that "if no PCE had been released near the Las Cruces Dam, it is more likely than not that the remedial system could be shut down much earlier" and "PCE releases near the Dam are the primary driver of future remedial costs." Doc. 233-9 at 3, 4.

Defendant also argues that Mr. Helgen's 2020 Supplemental Expert Report contradicts Plaintiffs' representations because he "in no way indicates . . . that he considered the 2018 spike in PCE levels in GWMW 15-I, but then decided, based on some scientific principle, to wait another full year to see if that level was an 'anomaly.'" Doc. 296 at 7. As discussed, Mr. Helgen's 2019 Expert Report clearly describes the 2018 spike as an anomaly. Doc. 296-1 at 3. The fact that Mr. Helgen does not repeat this word in his supplemental report does not strike the Court as particularly meaningful. Nor does the Court find it meaningful that Mr. Helgen, in a declaration submitted by Plaintiffs (Doc. 283) in opposition to Defendant's currently pending Motion to Strike Supplemental Expert Reports of Steven Helgen and Peter Krasnoff (Doc. 260),[2] describes several similarities between the 2018 and 2019 RAPs. *See* Doc. 296 at 7. The existence of similarities does not contradict Plaintiffs' contention that the 2018 data at GWMW 15-I was initially treated as an anomaly.

---

[2] The Court emphasizes that Mr. Helgen's declaration was not submitted in connection with Plaintiffs' motion to amend and further notes that the Magistrate Judge did not consider it in his PFRD. Thus, Defendant's assertion that the declaration "attempts, after the fact, to address the absence of discussion about the [2018 spike] in Mr. Helgen's supplemental report and to downplay the significance of the data [from 2018]," Doc. 296 at 7, is wholly irrelevant here.

Based on the Court's review, there is nothing in the evidence cited by Defendant that clearly contradicts the representations of Plaintiffs' counsel. Defendant's arguments to the contrary invite this Court to apply a more rigorous standard of review than Rule 16(b)(4) demands. For example, Defendant argues, "Any reasonable and qualified hydrologist studying or investigating potential contributing factors to [Plaintiffs'] response costs at the Site had more than enough information to trigger further investigation before Mr. Helgen drafted and served his initial report . . . ." Doc. 296 at 6. The Court is not aware of any legal authority requiring application of a "reasonable and qualified hydrologist" standard to the question of good cause. Later, Defendant argues that "there is no scientific justification—and Mr. Helgen does not offer one—for continuing to delay investigation and analysis after the 2018 RAP." *Id.* at 8. Challenges to the scientific validity of a party's position are appropriate at a *Daubert* hearing or a trial on the merits; the Court finds no basis to consider such challenges on a motion to amend.

Because the evidence supplied by Defendant does not contradict Plaintiffs' stated reasons for their delay in seeking these amendments, the Court overrules Defendant's objections on this basis. Having disposed of Defendant's objections and conducted its own *de novo* review, the Court finds no error in the Magistrate Judge's PFRD and therefore adopts it as its own.

**IT IS THEREFORE ORDERED** that:

(1) Defendant American Linen's Objections (Doc. 296) are **OVERRULED**, and the Magistrate Judge's Proposed Findings and Recommended Disposition (Doc. 290) is **ADOPTED** upon *de novo* review; and

(2) Plaintiffs' Motion to File Second Amended Complaint (Doc. 232) is **GRANTED**.

_____
SENIOR UNITED STATES DISTRICT JUDGE