**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

CITY OF LAS CRUCES and DOÑA ANA COUNTY,

    Plaintiffs,

v.                                                    Civ. No. 17-809 JCH/GBW

UNITED STATES OF AMERICA, *et al.*,

    Defendants.

## ORDER GRANTING DEFENDANT'S MOTION FOR PROTECTIVE ORDER AND PLAINTIFFS' MOTION FOR PROTECTIVE ORDER AND GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO COMPEL AND FOR SANCTIONS

THIS MATTER comes before the Court on Defendant American Linen's Motion for Protective Order and to Quash Deposition Notice and Notice of Non-Appearance, *doc. 243*, Plaintiffs' Motion for Protective Order Quashing American Linen's Notices to Take Second Depositions of the Same Parties and Notice of Non-Appearance, *doc. 246*, and Plaintiffs' Motion to Compel Discovery and for Sanctions, *doc. 263*. Having reviewed the Motions, *docs. 243, 246, 263*, and their attendant briefings and exhibits, *docs. 247, 256, 257, 258, 264, 269, 270, 271, 279, 288*, and being fully advised in the premises, the Court GRANTS Plaintiffs' Motion for Protective Order and Defendant American Linen's Motion for Protective Order, and GRANTS in part and DENIES in part Plaintiffs' Motion to Compel Discovery and for Sanctions.

I.   **BACKGROUND**

Plaintiffs bring suit under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 et seq., seeking cost recovery and contribution to costs incurred in removing perchloroethylene ("PCE") and other hazardous substances from the Griggs & Walnut Ground Water Plume Superfund Site. *See doc. 79.* Initially, Plaintiffs raised claims against only Defendant United States of America ("United States") and various sub-entities, *doc. 1*, which subsequently counterclaimed against them, *doc. 20.* Plaintiffs later amended their complaint to add Defendant American Linen Supply of New Mexico, Inc. ("American Linen") and other dry-cleaning companies that allegedly contributed to the Site's contamination. *Doc. 55* at 2–3; *doc. 79.* A few months later, Defendant American Linen answered Plaintiffs' First Amended Complaint, counterclaimed against them, and crossclaimed against all other Defendants. *Doc. 111.*

A.   RULE 30(b)(6) DEPOSITION OF PLAINTIFFS

On March 25, 2019, Defendant United States noticed depositions of Plaintiffs pursuant to Rule 30(b)(6). *Doc. 247-4* at 1, 6. On May 6, 2019, Defendant United States advised Defendant American Linen and other Defendants that Plaintiffs and it had scheduled the depositions for May 29, 2019 and May 30, 2019. *Doc. 256-1* at 2. Later that day, Defendant American Linen informed the parties that its attorneys of record had scheduling conflicts on those dates. *Id.* at 1. It did not object to Plaintiffs sitting for

depositions on these dates since another attorney from the same firm as its counsel of record could attend the deposition telephonically on its behalf and it would depose Plaintiffs on additional topics in separate Rule 30(b)(6) depositions on a future date. *Id.*

The following day, Plaintiffs advised Defendant American Linen that it interpreted Rule 30(a)(2)(A)(ii) to limit all Defendants to one shared Rule 30(b)(6) deposition for each Plaintiff absent leave of the Court. *Doc. 247-5* at 2–3. They asked Defendant American Linen to notice its deposition topics and coordinate with other Defendants to find deposition dates amenable to all parties. *Id.* at 3.

On May 8, 2019, Defendant American Linen proposed alternative deposition dates and pledged to notice its deposition topics by May 13, 2019. *Id.* at 2. Two days later, Plaintiffs responded that they were available on some of the proposed dates and that one or both of them "may, as a courtesy, agree to not move for a protective order for one additional, albeit narrow, 30(b)(6) deposition." *Id.* at 1. However, they expressly withheld consent to such a deposition until they had received and evaluated the topics that Defendant American Linen wished to cover in it. *Id.* They also reiterated their request that Defendant American Linen coordinate with Defendant United States to facilitate a single Rule 30(b)(6) deposition on all topics. *Id.* Sometime on or after May 16, 2020, Defendant American Linen circulated its deposition topics amongst the parties. *See doc. 256-2* at ¶¶ 4–5; *doc. 271-1* at 2.

The parties dispute what happened next.  Jeffrey Wechsler, counsel for Defendant American Linen, swears that the parties agreed that American Linen would be allowed to depose Plaintiffs on these topics on a later date since these topics did not overlap with those noticed by Defendant United States.  *Doc. 256*-2 at ¶¶ 5–6.  Plaintiffs insist that no such agreement was reached.  *Doc. 270* at 5.  The record before the Court contains no statement in which Plaintiffs consent to another Rule 30(b)(6) deposition.

Regardless, on May 29, 2019 and May 30, 2019, Defendant United States deposed Plaintiffs under Rule 30(b)(6).  *Docs. 247-6, 247-7*.  Each deposition lasted over eight hours.  *Doc. 246* at 4.  Matthew Zidovsky, an attorney from the same firm as Defendant American Linen's counsel of record, attended these depositions but asked no questions since he had limited familiarity with the case.[1]  *Doc. 247-6* at 116:19–117:3; *doc. 247-7* at 135:9–14; *doc. 256-2* at ¶ 7.  Rather, when asked if American Linen had anything that it wished to ask Plaintiffs, Mr. Zidovsky stated, as instructed by Mr. Wechsler, that it "d[id] not have any questions at this time."  *Doc. 247-6* at 116:19–117:3; *doc. 247-7* at 135:9–14; *doc. 256-2* at ¶ 7.

In August 2019, the parties revisited the issue of Plaintiffs sitting for additional Rule 30(b)(6) depositions.  *See generally doc. 256-3*.  On August 5, 2019, Plaintiffs included these depositions in a list of outstanding proposed depositions that needed to

---

[1] On May 20, 2020, Mr. Zidovsky entered an appearance on behalf of Defendant American Linen.  *Doc. 215*.  At the time of the deposition, however, he was not among the attorneys identified to the Court as Defendant's counsel of record.

4

be scheduled before the discovery deadline.  *Id.* at 4.  Three days later, another

Defendant expressed a desire to notice topics for these depositions in conjunction with

American Linen.  *Id.* at 3.  Later that day, Defendant American Linen asked Plaintiffs

whether they wished to receive notices of Defendants' topics before or after setting the

dates for these depositions.  *Id.* at 1–2.  Any response from Plaintiffs is not in the record.

On August 21, 2019, the Court stayed the case at the parties' request to facilitate

their exploration of a global settlement.  *Docs. 188, 189.*  After several extensions, the

stay expired on July 17, 2020 without this settlement being reached.  *See docs. 192, 204,*

*209, 214.*  Since then, Plaintiffs have resolved their claims against all named Defendants

except for American Linen.[2]

---

[2] Plaintiffs and Defendant American Linen dismissed their claims and crossclaims respectively against Defendants Jose and Yvonne Coronado pursuant to Rule 41(a)(1)(A)(ii) in December 2018.  *Doc. 134.* Between August 2019 and December 2019, Plaintiffs settled their claims with Defendants The Lofts of Alameda, LLC and Chisholm's Village Plaza LLC.  *Doc. 200* at ¶ 3.  In January 2021, Plaintiffs and these Defendants jointly moved the Court to dismiss these claims with prejudice.  *Doc. 299.*  Plaintiffs, Defendant United States, and all other federal Defendants entered into a consent decree regarding their claims and counterclaims in July 2020.  *Doc. 225.*  Defendant American Linen dismissed its crossclaims against Defendant United States and the other federal Defendants in August 2020.  *Doc. 230.*  Plaintiffs settled their claims with Defendant Rawson Leasing Limited Liability Co. in September 2020.  *Doc. 236.* In January 2021, Plaintiffs and Defendant Rawson Leasing Limited Liability Co. jointly moved the Court to dismiss these claims with prejudice.  *Doc. 299.*  Based on the above, the only live claims are Plaintiffs' claims against Defendant American Linen and Defendants Does 1–5, Defendant American Linen's counterclaims against Plaintiffs, and Defendant American Linen's crossclaims against Defendants The Lofts at Alameda, LLC, Chisholm's Village Plaza LLC, Rawson Leasing Limited Liability Co., and Defendants Does 1–5.  Plaintiffs have obtained the Court's leave to file a Second Amended Complaint that, *inter alia*, drops their claims against Defendants Does 1–5 as well as their claims against Defendant United States and the other federal entities in light of the consent decree.  *Doc. 303.*  Plaintiffs and Defendants The Lofts at Alameda, LLC, Chisholm's Village Plaza LLC, and Rawson Leasing Limited Liability Co. have moved the Court to dismiss Defendant American Linen's crossclaims against these Defendants without prejudice.  *Doc. 299* (citations and internal quotations omitted).  The Court does not resolve that motion in this order.  The Court notes that Defendants The Lofts at Alameda, LLC, Chisholm's-Village Plaza LLC, and Rawson Leasing Limited Liability Co. had not previously responded to Defendant American Linen's crossclaims and that the only action that Defendant American Linen has

On September 25, 2020, the last day to notice depositions in compliance with the

Court's October 9, 2020 discovery deadline, Defendant American Linen noticed Rule

30(b)(6) depositions for Plaintiffs on sixty-four topics without leave of the Court. *Doc.*

*247-1* at 1–2, 7–8. Later that day, Plaintiffs advised American Linen of their intent to

move to quash and for a protective order from these notices because they had already

been deposed pursuant to Rule 30(b)(6) in this case. *Doc. 271-6*. On October 2, 2020,

Plaintiffs so moved. *Doc. 246*.

B.  DISCOVERY REGARDING DEFENDANT AMERICAN LINEN'S DRY-
    CLEANING OPERATIONS AND PCE USE

Starting on October 18, 2018 and continuing for just shy of two years, Defendant

American Linen repeatedly denied ever conducting dry-cleaning operations or using

PCE. *Doc. 111* at ¶¶ 5, 32 (Answer to First Am. Compl.); *Doc. 258-1* at 1–2 (Initial

Disclosures); *doc. 233-4* at ¶¶ 3, 4 (Aff. of Michael Lutz, Def. American Linen's President

and Chief Executive Officer ("2012 Affidavit")); *doc. 264-3* at 2, 10 (Def.'s Resps. to Pls.'

First Set of Interrogs. and Reqs. for Produc.). It also insisted that it had no documents

relating to any dry-cleaning operations or PCE use. *See doc. 264-3* at 15–18. Defendant

knew that a former employee, Victor Jasso, had reported it to the New Mexico

Environment Department for releasing PCE into the environment. *Doc. 258-2* at 125:5–

---

taking on these crossclaims since filing them on October 19, 2018 is to respond to the aforementioned
motion to dismiss. *Doc. 302*. Should the final resolution of the putative Second Amended Complaint not
moot the issue, the Court will address the prosecution of these cross claims in a future order.

15.  But the sole step that it took prior to denying categorically that it had ever operated a dry-cleaning facility or used PCE was to review its corporate records, which only date back ten years.  *Doc. 264-3* at 13; *doc. 269-2* at ¶ 3; *doc. 258-*2 at 73:6–17, 124:14–125:4.  It made no effort to obtain relevant information about its alleged dry-cleaning operations or PCE use from any current or former employees or documents that it did not possess but had practical ability to obtain.  *See doc. 264-3* at 13; *doc. 258-*2 at 124:14–125:4.

On March 11, 2019, Plaintiffs noticed the deposition of Defendant American Linen pursuant to Rule 30(b)(6).  *Doc. 243-1* at 1–2.  They requested the company to designate one or more individuals to testify on its behalf about ten topics and ten subtopics, including its dry-cleaning operations and use and disposal of PCE.  *Id.* at 4, 8–12.  Defendant designated Mr. Lutz to testify on all topics.  *See doc. 243* at 2.

Mr. Lutz prepared for the deposition solely by reviewing Defendant's corporate records.  *See doc. 258-*2 at 19:20–23, 73:2–17.  He did not interview any current or former employees.  *Doc. 258-2* at 19:20–23.  Nor did he investigate Mr. Jasso's allegations that the company had used PCE and released it into the environment.  *See doc. 243-2* at 125:2–15.  Rather, he discounted them as retaliation for firing Mr. Jasso for drinking on the job.  *See id.* at 125:21–24; *doc. 235-*4 at 121:4–122:10.  He also did not investigate the statements of Larry Hartman, a former employee, who testified before Mr. Lutz's deposition and in the presence of Defendant American Linen's attorney that he had witnessed the company engage in dry-cleaning operations when he was an employee

and that it was still conducting these operations in 1981 when he left it.  *Doc. 233-6* at

19:4–13; *doc. 258-2* at 125:16–20.

On April 1, 2019, Plaintiffs deposed Mr. Lutz.  *Doc. 243-2* at 1:17–18.  During the

deposition, Mr. Lutz repeatedly answered questions about Defendant's historical

operations from his personal knowledge, rather than Defendant's corporate knowledge.

*See doc. 258-2* at 73:2–5, 74:8–19, 96:2–4.  He also could not answer several questions

about Defendant's historical operations that predated his tenure with the company.  *Id.*

at 21:2–10, 46:5–11, 73:2–5, 74:8–19, 96:2–4, 122:19–124:13.

Due to Defendant American Linen's repeated representations that it never

conducted dry-cleaning operations using PCE and Mr. Lutz's inability to comment on

corporate operations that predated his tenure, Plaintiffs conducted their own

investigation of the company's historical operations.  *See doc. 264-1.*  The investigation

found evidence that American Linen, despite its insistence otherwise, had conducted

dry-cleaning with PCE prior to Mr. Lutz's tenure with the company.  *See, e.g.*, *doc. 200-

13* at 2, 4 (account payment authorization from August 22, 1972 stating that the

company had dry-cleaning equipment and PCE drums at its facility on 500 N. Main St.).

On September 24, 2020, Plaintiffs noticed another Rule 30(b)(6) deposition of

Defendant American Linen without seeking the Court's leave.  *Doc. 243-3* at 1–2.  They

ask it to designate one or more individuals to testify on its behalf about eight topics and

seven subtopics, including its historical dry-cleaning operations and PCE use.  *Id.* at 8–

11.  On October 2, 2020, Defendant moved for a protective order from this deposition and to quash its notice.  *Doc. 243*.

On October 5, 2020, Defendant American Linen changed its tune about its historical dry-cleaning operations and PCE use.  *Doc. 258-3* at 3.  It admitted, in its Answers and Responses to Plaintiff's Second Interrogatories and Requests for Production and First Requests for Admission, "that it conducted dry cleaning at 550 North Church beginning in approximately 1972" and "that any [d]ry [c]leaning [o]perations it conducted at 550 North Church Street from approximately 1972 until 1982 would have used PCE."  *Doc. 264-5* at 7–8.  It denied engaging in dry-cleaning operations at this facility after 1982.  *Id.* at 8–9.  It also asserted, with respect to its dry cleaning operations at other facilities at other times, that, after making a reasonable inquiry into Plaintiffs' requested admissions that included interviewing its employees and reviewing its records and the evidence adduced in discovery, it lacked sufficient information to admit or deny the alleged operations.  *Id.* at 7–9.  On January 22, 2021, Defendant American Linen supplemented its initial disclosures and discovery responses to account for this admission.  *Doc. 279* at 8; *doc. 300; doc. 301*.

On October 23, 2020, Plaintiffs moved the Court to compel Defendant American Linen to investigate its dry-cleaning operations and PCE use fully and completely and to supplement its disclosures and its responses to Plaintiffs' Interrogatories Nos. 5, 8, and 9 and Plaintiffs' Requests for Production Nos. 4, 7, and 8.  *Doc. 263* at 2, 8 n.12.

They also ask the Court to sanction Defendant for its inadequate investigation and document production, its false statements, its lack of supplementation of its discovery responses, and its failure provide a Rule 30(b)(6) designee (or Rule 30(b)(6) designees) who could testify to its corporate knowledge of its historical operations.  *Id.* at 3–7.

## II.   LEGAL STANDARDS

The discovery rules in the Federal Rules of Civil Procedure seek to make judicial proceedings less a battle of wits and more a search for the truth wherein "basic issues and facts are disclosed to the fullest practicable extent."  *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958).  They are to be construed liberally to achieve their intended purposes of "avoid[ing] surprise and the possible miscarriage of justice, … disclos[ing] fully the nature and scope of the controversy, … narrow[ing], simplify[ing], and fram[ing] the issues involved, and … enabl[ing] a party to obtain the information needed to prepare for trial."  8 Richard L. Marcus, *Federal Practice & Procedure Civil* § 2001 (3d ed. 2020) (footnotes omitted).

The parties' discovery disputes implicate Federal Rules of Civil Procedure regarding interrogatory responses, document production, deposing and re-deposing a corporate party, supplementation, compelling discovery, and sanctions.  The Court will review the standards of each in turn before turning to its analysis.

10

A.  DEPOSING A CORPORATION UNDER RULE 30(b)(6)

Rule 30(b)(6) allows a party to depose a corporation on topics noticed and described with reasonable particularity.  Fed. R. Civ. P. 30(b)(6).  "The law is well-settled that corporations have an 'affirmative duty' to make available as many persons as necessary to give 'complete, knowledgeable, and binding answers' on the corporation's behalf" to questions on noticed topics.  *Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.*, 497 F.3d 1135, 1146 (10th Cir. 2007) (quoting *Reilly v. NatWest Mkt. Grp., Inc.*, 181 F.3d 253, 268 (2d Cir. 1999)).  "The purpose behind designating a witness to represent the corporation is to prevent bandying, which is the practice of presenting employees for their depositions who disclaim knowledge of the facts known by other individuals within the organization."  *Gulfstream Worldwide Realty, Inc. v. Philips Elecs. N. Am. Corp.*, No. CIV 06-1165 JB/DJS, 2007 WL 5704041, at *4 (D.N.M. Oct. 24, 2007) (unpublished) (internal quotation marks and citation omitted).

A Rule 30(b)(6) designee, therefore, must testify based not solely on his personal knowledge of the noticed matters but also on "information known or reasonably available to the organization" as a whole.  Fed. R. Civ. P. 30(b)(6).  *See also United States v. Taylor*, 166 F.R.D. 356, 361 (M.D.N.C. 1996).  This requirement amounts to "an affirmative obligation to educate himself as to the matters."  *Peshlakai v. Ruiz*, No. CIV 13-0752 JB/ACT, 2014 WL 459650, at *22 (D.N.M. Jan. 9, 2014) (unpublished) (quoting *Concerned Citizens of Belle Haven v. Belle Haven Club,* 223 F.R.D. 39, 43 (D. Conn. 2004)).

Consequently, it "requires a good faith effort … to find out the relevant facts—to collect information, review documents, and interview employees with personal knowledge." *United States v. Magnesium Corp. of Am.*, No. 2:01-CV-40 DB, 2006 WL 6924985, at *4 (D. Utah. Nov. 27, 2006) (unpublished) (quoting *Wilson v. Lakner*, 228 F.R.D. 524, 528 (D. Md. 2005)). It may, and often does, extend to interviewing past employees, especially "where a corporation … no longer employs individuals who have memory of a distant event." *Taylor*, 166 F.R.D. at 361. *See also Berwind Prop. Grp., Inc. v Env't Mgmt. Grp., Inc*, 233 F.R.D. 62, 65 (D. Mass. 2005); *Gulfstream Worldwide Realty, Inc.*, 2007 WL 5704041, at *4, 7; *Magnesium Corp. of Am.*, 2006 WL 6924985, at *4. "[I]f it becomes obvious during the course of a deposition that the designee is deficient, the corporation is obligated to provide a substitute." *Dravo Corp. v. Liberty Mut. Ins. Co.*, 164 F.R.D. 70, 75 (D. Neb. 1995).

A Rule 30(b)(6) designee, however, "is not expected to perform with absolute perfection." *Pogue v. Nw. Mut. Life Ins. Co.*, No. 3:14-CV-598-CRS, 2017 WL 3044763, at *8 (W.D. Ky. July 18, 2017) (unpublished) (citing *QBE Ins. Corp. v. Jorda Enterprises, Inc.*, 277 F.R.D. 676, 691 (S.D. Fla. 2012)). "The mere fact that a designee could not answer every question on a certain topic does not necessarily mean that the corporation failed to comply with its obligation." *QBE Ins. Corp.*, F.R.D. at 691. Any expression of a lack of knowledge, however, "is itself an answer which will bind the corporation at trial." *Id.* at 690 (citations omitted).

12

B. APPLICABILITY OF RULE 30(a)(2)(A)(ii) TO RULE 30(b)(6) DEPOSITIONS

Rule 30(a)(2)(A)(ii) requires a party to obtain leave of the Court for a deposition "if the parties have not stipulated to the deposition and … the deponent has already been deposed in the case." Fed. R. Civ. P. 30(a)(2)(A)(ii). However, "[d]istrict [c]ourts are currently split on the issue of whether parties may take multiple 30(b)(6) depositions of a [party] without leave from the court, and no Court of Appeals appears to have directly addressed the issue." *McCarty v. Liberty Mut. Ins. Co.*, No. 15-cv-210-KHR, 2016 WL 8290151, at *3 (D. Wyo. Sept. 27, 2016) (unpublished) (citations omitted). *See also Kimberly-Clark Corp. v. Tyco Healthcare Retail Grp.*, No. 05-C-985, 2007 WL 601837, at *3 n.1 (E.D. Wis. Feb. 23, 2007) (unpublished) (noting that "there is some question about whether leave of the court is even required" to conduct a second Rule 30(b)(6) deposition).

The majority rule is that Rule 30(a)(2)(A)(ii) applies to Rule 30(b)(6) depositions since "[t]here is nothing in the text of Rule 30 that supports the conclusion that Rule 30(b)(6) depositions should be treated differently from depositions of individuals." *Foreclosure Mgmt. Co. v. Asset Mgmt. Holdings, LLC*, No. 07-2388-DJW, 2008 WL 3895474, at *3 (D. Kan. Aug. 21, 2008) (unpublished). *See also Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 244 F.3d 189, 192 (1st Cir. 2001); *Duran v. Sara Lee Corp.*, No. 1:11-CV-313, 2013 WL 12308200, *1–4 (W.D. Mich. May 3, 2013) (unpublished) (gathering cases); *State Farm. Mut. Auto. Ins. Co. v. New Horizont, Inc.*, 254 F.R.D. 227, 234–35 (E.D. Pa.

2008); *In re Sulfuric Acid Antitrust Litig.*, No. 03 C 4576, 2005 WL 1994105, at *1–3 (N.D.

Ill. Aug. 19, 2005) (unpublished).

The minority view is that Rule 30(a)(2)(A)(ii) does not apply to Rule 30(b)(6)

depositions because they "are different from depositions of individuals." *Quality Aero

Tech., Inc. v. Telemetrie Elekronik GmbH*, 212 F.R.D. 313, 319 (E.D.N.C. 2002); *see also

Cornell Rsch. Found., Inc. v. Hewlett-Packard Co.*, No. 5:01-CV-1974 (NAM/DEP), 2006 WL

5097357, at *6 n.6 (N.D.N.Y. Nov. 13, 2006) (unpublished).  This view enjoys

support from at least one scholar who believes that "the one-deposition provision could

be an obstacle to sensible handling of Rule 30(b)(6) organizational depositions."  8A

Richard L. Marcus, *Federal Practice & Procedure Civil* § 2104 (3d ed. 2020).  Mr. Marcus

posits that "the prime objective of the one-deposition provision in Rule 30(a) is to guard

against imposing burdens on an individual deponent."  *Id.*  From there, he argues that

"the likelihood of the sort of imposition the rule guards against is quite small" in the

Rule 30(b)(6) context because these "depositions are limited to certain enumerated

topics, rather than covering all matters within the scope of discovery" and "an

organizational party subject to a Rule 30(b)(6) notice may designate whomever it

chooses—or several different people—to testify."  *Id.*  He proposes, as a "sensible

method for applying the one-deposition provision to Rule 30(b)(6) depositions," that

courts "focus initially on the listing of topics for examination in the deposition notice"

and only consider a Rule 30(b)(6) deposition a second deposition under Rule 30(a)

where "the second notice lists the same topic as the first notice." *Id. But see* 7 Moore's Federal Practice, § 30.05[1][c] (3d ed. 2005) (arguing that Rule 30(a)(2)(ii) applies to Rule 30(b)(6) depositions).

The Court adopts the majority rule: Rule 30(a)(2)(A)(ii) applies to Rule 30(b)(6) depositions. The Federal Rules of Civil Procedure should be construed like statutes and accorded "their plain meaning." *Pavelic & LeFlore v. Marvel Ent. Grp.*, 493 U.S. 120, 123 (1989). "[W]hen [a court] find[s] the terms … unambiguous, judicial inquiry is complete." *Id.* (quoting *Rubin v. United States*, 449 U.S. 424, 430 (1981)). Rule 30(a)(2)(A)(ii) is neither vague nor unclear. It provides that "[a] party must obtain leave of court … if the parties have not stipulated to the deposition and … the deponent has already been deposed in the case." Fed. R. Civ. P. 30(a)(2)(ii). Nothing in this plain language renders Rule 30(a)(2)(A)(ii) inapplicable to Rule 30(b)(6) depositions. A corporation is a deponent just as much as an individual.

The Court finds the analysis underpinning the minority rule unconvincing. In *Quality Aero Technology, Inc.*, the District Court for the Eastern District of North Carolina held that "Rule 30(b)(6) depositions are different from depositions of individuals" because a Rule 30(b)(6) deposition is counted as a single deposition for the purposes of calculating the number of depositions in a case regardless of the number of witnesses designated and "no aspect of the Rules … either restricts a party to a single 30(b)(6) deposition or restricts the allotted time for taking a 30(b)(6) deposition." 212 F.R.D. at

15

319 (citing Fed. R. Civ. P. 30 advisory committee's note to 1993 amendment).  This

holding has at least two flaws.

First, this holding is inconsistent with the text of Rule 30.  *See, e.g., Foreclosure

Mgmt. Co.*, 2008 WL 3895474, at *3; *In re Sulfuric Acid Antitrust Litig.*, 2005 WL 1994105,

at *3.  The rule largely treats the depositions of corporations and individuals the same:

they are subject to the same reasonable notice requirements under Rule 30(b)(1); the

same advance notice requirement for the method of recording under Rule 30(b)(3)(A);

and the same document production rules under Rule 30(b)(2).  *See In re Sulfuric Acid*

*Antitrust Litig.*, 2005 WL 1994105, at *3; Fed. R. Civ. P. 30(b).  Counting a Rule 30(b)(6)

deposition as a single deposition for the purposes of Rule 30(a)(2)(A)(i), regardless of

the number of designees deposed, is further evidence of equal treatment.  It recognizes

that, regardless of how many witnesses a corporation designates to speak on noticed

topics, the corporation, not the individual designees, is the deponent.  *Cf. Harris v.*

*Koenig*, 271 F.R.D. 356, 368 (D.D.C. 2010) (holding re-deposing a designee in her

personal, rather than corporate, capacity does not implicate Rule 30(a)(2)(A)(ii)).

The text of Rule 30 treats corporate and individual deponents differently in two

ways, both of which seek to accommodate the inherent differences between corporate

and individual knowledge.  Rule 30(b)(6) requires the party noticing a corporate

deposition to "describe with reasonable particularity the matters for examination" in

the notice of deposition.  Fed. R. Civ. P. 30(b)(6).  This requirement recognizes that a

corporation, whose knowledge is an amalgamation of many individuals' knowledge and is spread amongst these individuals rather than possessed by a single one of them, cannot identify the right individual(s) to testify on its behalf without advance notice of the topics of that testimony.

Rule 30(d)(1) limits the deposition of an individual to one day of seven hours but does not so limit the deposition of a corporation (unless it only produces a single designee). Fed. R. Civ. P. 30(d)(1); Fed. R. Civ. P. 30(d) advisory committee's note to 2000 amendment. This rule strikes a balance between obtaining the knowledge possessed by a deponent and protecting the deponent "from the unlimited right of discovery given by Rule 26." Fed. R. Civ. P. 30(d) advisory committee's note. Where corporate knowledge is held by more than one individual, the reasonable balance requires granting one day of seven hours per Rule 30(b)(6) designee. *See* Fed. R. Civ. P. 30(d) advisory committee's note to 2000 amendment.

Accommodating the inherent differences between corporate and individual knowledge does not require exempting Rule 30(b)(6) from Rule 30(a)(2)(A)(ii). Even if it did, the drafters would have included a provision in the rule, or at least a comment in an Advisory Committee's Note. They did not, so there is no basis for the Court to ignore the plain text of Rule 30(a)(2)(A)(ii) and exempt Rule 30(b)(6) depositions from its requirements.

The holding of *Quality Aero Technology, Inc.* is also inconsistent with the purpose of Rule 30(a)(2)(A)(ii).  Depositions are expensive, burdensome endeavors, in addition to critical fact-finding tools.  Rule 30(a)(2)(A)(ii) balances these costs and benefits.  It gives parties an opportunity to obtain relevant information but limits the costs that depositions impose on parties and other witnesses and constrains the ability of litigants to weaponize depositions as mechanisms of harassment.  The Court disagrees with Mr. Marcus that the primary objective of Rule 30(a)(2)(A)(ii) is to protect only individuals from the burdens of repeat depositions.  *See* 8A Richard L. Marcus, *Federal Practice & Procedure Civil* § 2104.  "Taking serial depositions of a single corporation may be as costly and burdensome, if not more so, as serial depositions of an individual."  *New Horizont, Inc.*, 254 F.R.D. at 235.  Exempting Rule 30(b)(6) depositions from Rule 30(a)(2)(A)(ii) undermines its cost reduction and harassment-prevention purposes. The Court also disagrees with Mr. Marcus's proposal that it "focus initially on the listing of topics for examination in the deposition notice" and only apply Rule 30(a)(2)(A)(ii) where "the second notice lists the same topic as the first notice."  *See* 8A Richard L. Marcus, *Federal Practice & Procedure Civil* § 2104.  This proposal clashes with the text and purposes of Rule 30(a)(2)(A)(ii).  It disincentivizes litigants to notice all of their topics at once, opens the door for them to wield Rule 30(b)(6) depositions and their concomitant expenses as vexatious cudgels against corporations, and removes courts as the balancers of the costs, benefits, and fairness of additional Rule 30(b)(6) depositions.

The cumulative nature of the topics noticed for an additional Rule 30(b)(6) deposition is relevant to the inquiry but is more properly considered when deciding whether to grant leave for a party to conduct this deposition rather than whether a party must obtain a court's leave to do so in the first place.  *See* Fed. R. Civ. P. 30(a)(2) (requiring a court to grant leave to re-depose a deponent to the extent consistent with Rule 26(b)(2), which *inter alia,* bars unreasonably cumulative or duplicative discovery).

C.  RESPONDING TO INTERROGATORIES UNDER RULE 33(b)

Rule 33(b) requires that an officer or agent responding to an interrogatory on behalf of an incorporated party answer based on "the information available to the party."  Fed. R. Civ. P. 33(b)(1)(B).  This information is not limited to that which is maintained in the ordinary course of business or otherwise known and immediately available.  *Oklahoma v. Tyson Foods, Inc.*, 262 F.R.D. 617, 629 (N.D. Okla. 2009); *Miller v. Doctor's Gen. Hosp.*, 76 F.R.D. 136, 140 (W.D. Okla. 1977).  Rather, it extends to information that a party may obtain with reasonable effort, including that held by assignors, agents, representatives, current employees, and former employees, even if they are not personally known to the party.  *Nat'l Fire Ins. Co. of Hartford v. Jose Trucking Corp.*, 264 F.R.D. 233, 238 (W.D.N.C. 2010); *Essex Builders Grp., Inc. v. Amerisure Ins. Co.*, 230 F.R.D. 682, 685 (M.D. Fla. 2005); *Miller*, 76 F.R.D. at 140.

Information is not obtainable with reasonable effort if it requires "undue labor and expense" to obtain.  *Lynn v. Monarch Recovery Mgmt., Inc.*, 285 F.R.D. 350, 357 (D.

19

Md. 2012) (quoting 8B Charles Alan Wright et al., *Federal Practice & Procedure Civil* §§ 2174, 2177 (3d ed. 2012)).  A party responding to an interrogatory "is not required to make an extensive investigation" or "do the interrogating party's investigation for him." *Samsung Elecs. Am., Inc. v. Yang Kun Chung*, 321 F.R.D. 250, 282 (N.D. Tex. 2017); *Olmert v. Nelson*, 60 F.R.D. 369, 370 (D.D.C. 1973).

A party's answer to an interrogatory "must be complete, explicit, and responsive." *Milner v. Nat'l Sch. of Health Tech.*, 73 F.R.D. 628, 632 (E.D. Pa. 1977).  "Engaging in strained constructions of reasonably-framed requests in order to avoid providing information … is simply not permitted.*" JPMorgan Chase Bank, N.A. v. Neovi, Inc.*, No. 2:06-CV-0095, 2006 WL 3803152, at *5 (S.D. Ohio. Nov. 14, 2006) (unpublished).  If, after exerting a reasonable effort, "the answering party lacks necessary information to make a full, fair and specific answer to an interrogatory, it should so state under oath and should set forth in detail the efforts made to obtain the information." *Miller*, 76 F.R.D. at 140.

## D.  PRODUCING DOCUMENTS UNDER RULE 34

Rule 34(a) requires a party to produce designated documents that are "in [its] possession, custody, or control."  Fed R. Civ. P. 34(a)(1).  "'[C]ontrol' does not require that the party have legal ownership or actual physical possession of the documents at issue; rather, documents are considered to be under a party's control when that party has the right, authority, or practical ability to obtain the documents from a non-party to the action." *In re NTL, Inc. Secs. Litig.*, 244 F.R.D. 179, 195 (S.D.N.Y. 2007) (citations

omitted).  "The documents and records that a corporation requires in the normal course

of its business are presumed to be in its control unless the corporation proves

otherwise."  *Cooper Indus., Inc. v. British Aerospace, Inc.*, 102 F.R.D. 918, 920 n.2 (S.D.N.Y.

1984).  "Simply put, if a person, corporation, or a person's attorney or agent can pick up

a telephone and secure the document, that individual or entity controls it."  *Landry v.*

*Swire Oilfield Servs., LLC*, 323 F.R.D. 360, 382 (D.N.M. 2018).  Control does not exist,

however, if a document no longer exists, *Manning v. Gen. Motors*, 247 F.R.D. 646, 652 (D.

Kan. 2007), or where the document is a public record that is equally accessible to all

parties.  *McKellips v. Kumho Tire Co., Inc.*, 305 F.R.D. 655, 681 (D. Kan. 2015).

E.  SUPPLEMENTING DISCOVERY RESPONSES UNDER RULE 26(e)

Rule 26(e) requires a party who has made a disclosure under Rule 26(a) or

responded to an interrogatory or request for production under Rules 33 and 34 to

"supplement or correct its disclosure or response … in a timely manner if the party

learns that in some material respect the disclosure or response is incomplete or

incorrect, and if the additional or corrective information has not otherwise been made

known to the other parties during the discovery process or in writing."  Fed. R. Civ. P.

26(e)(1)(A).

Courts interpret the second conditional phrase "to require meaningful

disclosure."  *FOX Factory, Inc. v. SRAM, LLC*, No. 18-cv-00130-WJM-NYW, 2019 WL

1450622, at *3 (D. Colo. Apr. 2, 2019) (unpublished) (citing *Poitra v. Sch. Dist. No. 1 in the*

*Cnty. of Denver*, 311 F.R.D. 659, 666–67 (D. Colo. 2015)).  Supplementation is not required

if a party has disclosed new information or a change in position "in such a form and of

such specificity as to be the functional equivalent of a supplementa[tion]."  *L-3*

*Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*, 125 F. Supp. 3d 1155, 1169 (D. Colo. 2015).

*See also U.S. Aviation Underwriters v. Pilatus Bus. Aircraft, Ltd.*, 582 F.3d 1131, 1145 (10th

Cir. 2009); 8A Richard L. Marcus, *Federal Practice & Procedure Civil* § 2049.1 (3d ed. 2020).

Functional equivalents to a supplementation include additional or corrective

information presented in a response to a request for admission.  *Sinclair Wyo. Refin. Co.*

*v. A&B Builders, Ltd.*, No. 15-CV-91-ABJ, 2018 WL 4698788, at *5 (D. Wyo. Aug. 31, 2018)

(unpublished).  They do not include passing references to additional or corrective

information, such as those in a deposition, documents produced in discovery, or

correspondence between parties.  *Jama v. City & Cnty. of Denver*, 304 F.R.D. 289, 296–99

(D. Colo. 2014); *Poitra*, 311 F.R.D. at 666–67.

     "The timeliness of supplementation centers on when the disclosing-party

'reasonably should know that its disclosures [and/or discovery responses] are

incomplete or incorrect.'"  *Carroll v. SAFECO Ins. Co. of Am.*, No. 20-cv-00219-REB-

NYW, 2020 WL 7664731, *2 (D. Colo. Dec. 24, 2020) (unpublished) (citing *Jama*, 304

F.R.D. at 299–300).  "Supplementations need not be made immediately as each new item

of information is learned."  Advisory Committee Note to 1993 Amendments of Rule

26(e).  But, they "must occur in a fashion that will allow the opposing party to conduct

meaningful discovery and avoid undue delay in the progress of the case." *Carroll*, 2020 WL 7664731, *2 (internal quotations and citations omitted). There is no bright line for assessing a supplementation's timeliness. *Silvangi v. Wal-Mart Stores, Inc.*, 320 F.R.D. 237, 241 (D. Nev. 2017). Instead, "the key inquiry is whether the timing of the supplement[ion] is reasonable based on when the information was available to the [supplementing party]." *Id.* Factors courts consider in assessing timeliness include the supplementing party's diligence in obtaining additional or corrective information and the length of time that the party took to supplement after it obtained this information *Carroll*, 2020 WL 7664731, at *2 (citing *Jama*, 304 F.R.D. at 299–300 and *Harvey v. United States*, No. 04-cv-00188-WYD-CBS, 2005 WL 3164236, at *13 (D. Colo. Nov. 28, 2005)).

### F. COMPELLING DISCOVERY UNDER RULE 37(a)

Rule 37(a) allows a party to "move for an order compelling disclosure or discovery" after noticing other parties and all affected persons and making a good faith effort to confer with the party or person who has failed to provide the disclosure or discovery. Fed. R. Civ. P. 37(a)(1). Grounds to compel include failing to answer an interrogatory posed under Rule 33 or produce a document requested under Rule 34. Fed. R. Civ. P. 37(a)(3)(B)(iii), (iv).

Responses that are evasive or incomplete constitute a failure to answer or respond. Fed. R. Civ. P. 37(a)(4). A response to an interrogatory is evasive or incomplete where it does not furnish all information that was obtainable by the

responding party with reasonable effort.  *See Milner*, 73 F.R.D. at 632; *Miller*, 76 F.R.D. at

140.  A response to a request for production of documents is incomplete where it does

not include all documents that the responding party has the practical ability to obtain.

*See Landry*, 323 F.R.D. at 382; *In re NTL, Inc. Secs. Litig.*, 244 F.R.D. at 195.  "The party

moving to compel discovery has the burden of proving that the opposing party's

answers [are] incomplete."  *Duran v. Donaldson*, No. 1:09-cv-758 BB/DJS, 2011 WL

13152655, at *2 (D.N.M. June 2, 2011) (unpublished) (citing *Daiflon, Inc. v. Allied Chem.

Corp.*, 534 F.2d 221, 227 (10th Cir. 1976)).

### G.  IMPOSING SANCTIONS UNDER RULE 37

Rule 37 affords the Court broad discretion to sanction a party for unjustifiably

resisting discovery.  *Lee v. Max Int'l, LLC*, 638 F.3d 1318, 1320 (10th Cir. 2011).  "In

considering the imposition of sanctions, the [C]ourt must consider on a case-by-case

basis whether a party's failure was substantially justified or whether other

circumstances make the imposition of sanctions inappropriate."  *Starlight Int'l Inc. v.

Herlihy*, 186 F.R.D. 626, 646 (D. Kan. 1999) (citations omitted).  In determining the

appropriate sanction to impose, the Court must consider the purposes that sanctions

serve, which "include '(1) deterring future litigation abuse, (2) punishing present

litigation abuse, (3) compensating victims of litigation abuse, and (4) streamlining court

dockets and facilitating case management.'"  *Id.* at 647 (quoting *Resolution Trust Corp. v.

Williams*, 162 F.R.D. 654, 660 (D. Kan. 1995)).  "The sanction … imposed should be the

least severe of those available, which appears adequate to deter and punish the wrongdoer." *Id.* (citing *White v. Gen. Motors Corp.*, 908 F.2d 675, 685 (10th Cir. 1990)).

The sanctions that a Court may levy under Rule 37 and the procedural prerequisites for doing so depend on the nature of the discovery violation.  On motion and after giving an opportunity to be heard, the Court may sanction a party for (i) omitting information or witnesses from its initial disclosures; (ii) not answering properly served interrogatories or requests for production; (iii) not supplementing the information that it has provided in its disclosures and discovery responses in a timely manner; or (iv) failing to ensure that its Rule 30(b)(6) designee appears for a properly noticed deposition.  Fed. R. Civ. P. 37(c)(1), (d)(1)(A).

For the purposes of Rule 37(d), not answering properly served interrogatories and requests for production does not mean "anything less than … wholly fail[ing] to respond."  *State Farm Mut. Auto. Ins. Co. v. New Horizont, Inc.*, 250 F.R.D. 203, 220 (E.D. Pa. 2008) (quoting 8A Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, *Federal Practice & Procedure* § 2291 (3d ed. 2007)).  The Court may sanction a party for incomplete or evasive responses to interrogatories or requests for production pursuant to Rule 37(b) but only after it has first ordered the party to provide this discovery and the party has failed to obey this order.  *Lillie v. United States,* 40 F.3d 1105, 1109 (10th Cir. 1994); *New Horizont, Inc.*, 250 F.R.D. at 220–21; Fed. R. Civ. P. 37(b)(2).

For the purposes of Rule 37(d), "[p]roducing an unprepared witness [for a Rule 30(b)(6) deposition] is tantamount to a failure to appear at [this] deposition." *Herlihy*, 186 F.R.D. at 639 (quoting *Taylor*, 166 F.R.D. at 363). *See also Black Horse Lane Assoc. v. Dow Chem. Corp.*, 228 F.3d 275, 304 (3d Cir. 2000); *Resolution Trust Corp. v. S. Union Co., Inc.*, 985 F.2d 196, 197 (5th Cir. 1993). Courts, however, only sanction this functional nonappearance where it is done in bad faith, prejudices the opposing side, and disrupts proceedings. *See, e.g.*, *Live Face on Web, LLC v. Integrity Sols. Grp., LLC*, 421 F. Supp. 3d 1051, 1080 (D. Colo. 2019); *Berwind Prop. Grp.*, 233 F.R.D. at 65; *Herlihy*, 186 F.R.D. at 639–40; *Taylor*, 166 F.R.D. at 363.

## H.  IMPOSING SANCTIONS UNDER THE COURT'S INHERENT AUTHORITY

Beyond the provisions of the Federal Rules of Civil of Procedure, the Court "may impose sanctions on a party for misconduct in discovery under its inherent power to manage its own affairs." *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 106–07 (2d Cir. 2002). *See also Garcia v. Berkshire Life Ins. Co. of Am.*, 569 F.3d 1174, 1179 (10th Cir. 2009). This implied power is "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quoting *Link v. Wabasah R.R. Co.*, 370 U.S. 626, 630–31 (1962)). It "can be invoked even if procedural rules exist which sanction the same conduct." *Id.* at 49.

The Court, however, must exercise its inherent power to sanction with restraint as it is shielded from direct democratic controls.  *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980).  "[W]hen there is … conduct in the course of litigation that [can] be adequately sanctioned under the Rules, the [C]ourt ordinarily should rely on the Rules rather than the inherent power."  *Chambers*, 501 U.S. at 50.

## III.   ANALYSIS

Having reviewed the relevant legal standards, the Court turns to the merits of the parties' motions and finds the following: (A) the parties may not take additional depositions of each other at this time since the notices for these depositions violate Rule 30(a)(2)(A)(ii) and their requests for leave to conduct these depositions are belated requests to extend the fact-discovery deadline that have not been shown to satisfy the good cause standard of Rule 16(b)(4) and the good cause and excusable neglect standards of Rule 6(b)(1)(B); (B) Defendant American Linen's responses to Plaintiffs' Requests for Production Nos. 4, 7, and 8 are incomplete because it has not sought, and so cannot be said to have produced, all responsive documents that are within its control; and (C) Defendant American Linen's responses to Plaintiffs' Interrogatories Nos. 5, 8, and 9 are incomplete because they do not reflect all the information available to Defendant or address the entire temporal scope of the questions.

The Court also sanctions Defendant American Linen for failing to produce a Rule 30(b)(6) designee who was prepared to testify based on all the information reasonably

available to the corporation and not supplementing its initial disclosures and discovery responses in a timely manner. It does not sanction Defendant for the initial content of its discovery responses.

## A. RE-DEPOSING THE PARTIES UNDER RULE 30(b)(6)

Neither Defendant American Linen nor Plaintiffs may subject each other to additional Rule 30(b)(6) depositions at this time. The notices for their depositions, *docs. 247-1, 243-3*, are invalid under Rule 30(a)(2)(A)(ii) because the parties did not obtain the Court's leave to take these depositions before noticing them, the parties have all already been deposed pursuant to Rule 30(b)(6) in this case, and the parties have not stipulated to any additional Rule 30(6) depositions. Insofar as the parties' briefing contains *post hoc* requests for leave to take these depositions, the Court denies them pursuant to Rules 16(b)(4) and 6(b)(1)(B) since they constitute belated requests to extend the discovery deadline and have not been shown to satisfy these rules' good cause and excusable neglect standards.

### 1. *The Parties' Notices for Additional Rule 30(b)(6) Depositions Are Invalid*

The parties' notices to depose each other on October 9, 2020 pursuant to Rule 30(b)(6) are invalid under Rule 30(a)(2)(A)(ii). Rule 30(a)(2)(A)(ii) applies to Rule 30(b)(6) depositions and requires the parties to obtain the Court's leave to depose each other since they did not stipulate to these additional depositions and each has already been deposed in the case. *See supra* at 15–19; Fed. R. Civ. P. 30(a)(2)(A)(ii).

Defendant American Linen argues that Rule 30(a)(2)(A)(ii) does not apply to the additional depositions it noticed for Plaintiffs because the parties agreed in May 2019 that it "would be permitted to notice and take a second Rule 30(b)(6) deposition of Plaintiffs on separate topics" due to the unavailability of its counsel of record on the dates noticed by Defendant United States. *Doc. 256* at 4. The record before the Court reflects no such agreement. Rather, it contains several statements in which Defendant declares its intent to conduct these depositions but no statements from Plaintiffs agreeing to appear for them. *See generally doc. 247-5.* At most, Plaintiffs indicated in an email in May 2019 that they *may agree* to additional, short Rule 30(b)(6) depositions commensurate with any topics noticed if Defendants could not find a mutually agreeable dates for their Rule 30(b)(6) depositions. *Id.* at 1. Elsewhere in that email, however, Plaintiffs expressly declined to consent to the additional depositions until they had a received and evaluated the topics of Defendant American Linen and the other dry-cleaning Defendants. *Id.* Shortly before the Court stayed the case in August 2019, Plaintiffs also listed the proposed second Rule 30(b)(6) depositions in a list of outstanding depositions that the parties may wish to schedule before the close of discovery. *Doc. 256-3* at 4. Neither expressing the possibility of consenting to second, short Rule 30(b)(6) depositions nor reminding Defendant about them amounts to stipulating to additional Rule 30(b)(6) depositions.

Defendant American Linen also argues that "Plaintiffs could have demanded that [Defendant] United States notice its Rule 30(b)(6) [deposition] on a date when [its] lead counsel was available to question the witnesses." *Doc. 256* at 6.  This is not Plaintiffs' responsibility, however.  *Cf.* Fed. R. Civ. P. 30(a) advisory committee's note to 1993 amendment ("In multi-party cases, the parties on any side are expected to confer and agree as to which depositions are most needed, given the presumptive limit on the number of depositions they can take without leave of court.").

It might be argued that Rule 30(a)(2)(A)(ii) does not apply to Defendant American Linen's additional Rule 30(b)(6) depositions of Plaintiffs because Defendant has not yet taken Plaintiffs' depositions in this case.  Its counsel of record could not and did not attend Plaintiffs' depositions in May 2019 and the attorney who attended on its behalf did not ask Plaintiffs' designees any questions.  *Doc. 247-6* at 116:19–117:3; *doc. 247-7* at 135:9–14.  This argument, however, does violence to the text and purpose of Rule 30(a)(2)(A)(ii).

Textually, Rule 30(a)(2)(A)(ii) attaches the leave-of-court requirement in Rule 30(a)(2) to the deponent who "has already been deposed in this case," not the taker of the deposition.  *See* Fed. R. Civ. P. 30(a)(2)(A)(ii).  The use of passive voice renders the identities of the takers of the earlier deposition and/or the second deposition are immaterial to the rule's applicability.  If the drafters had wanted Rule 30(a)(2)(A)(ii) to

apply only where the party has already deposed the deponent in the case, they could have stated as such.

With respect to purpose, Rule 30(a)(2) seeks to protect deponents from the burdens posed by discovery and to limit the potential for litigants to abuse the liberal discovery process for vexatious ends. *See New Horizont, Inc.*, 254 F.R.D. at 235. Construing Rule 30(a)(2)(A)(ii) to not apply where a party not present for a deposition seeks to re-depose that deposition's deponent undermines these purposes. A party's presence or absence is better considered by courts when assessing whether to grant a party leave to subject a deponent to an additional deposition rather than whether their leave is required to do so. *See* Fed. R. Civ. P. 30(a)(2) (requiring a court to grant leave to re-depose a deponent to the extent consistent with Rule 26(b)(2), which *inter alia*, bars discovery that a party has had ample opportunity to obtain in the action).

2. *The Court Denies the Parties Leave to Depose Each Other Since Their Requests Do Not Satisfy Rules 16(b)(4) and 6(b)(1)(B)*

The Court denies Plaintiffs and Defendant American Linen leave at this time to subject each other to additional Rule 30(b)(6) depositions. Plaintiffs ask the Court to treat their Response to Defendant American Linen's Motion for Protective Order as a request for leave and reiterate this request in their Motion to Compel and for Sanctions. *Doc. 257* at 4; *doc. 263* at 2. Defendant has not filed a motion for the Court's leave to take additional Rule 30(b)6) depositions of Plaintiffs, but asks the Court in its Response to Plaintiffs' Motion for Protective Order to permit these depositions due to their

consistency with Rules 26(b)(1) and (2).  *See doc. 256* at 5.  The Court construes this as a request for leave to conduct these depositions.  *See, e.g., New Horizont, Inc.*, 254 F.R.D. at 235; *Burdick v. Union Sec. Ins. Co.*, No. CV 07-4028 ABC(JCx), 2008 WL 5102851, at *3 (C.D. Cal. Dec. 3, 2008) (unpublished).  The Court denies the parties' requests for leave because they do not satisfy the good cause standard of Rule 16(b)(4) and the good cause and excusable neglect standards of Rule 6(b)(1)(B).

The parties' request for leave to take additional Rule 30(b)(6) depositions of each other are belated requests to extend the fact-discovery deadline to take these depositions since the parties did not make them until that deadline passed.  Granting the parties' requests, therefore, requires the Court to find the following for each deposition: giving leave to conduct it is consistent with Rule 26(b)(1) and (2); (ii) good cause exists under Rules 16(b)(4) and 6(b)(1) to extend the fact-discovery deadline for the deposition; and (iii) the request for leave and extension of the fact-discovery deadline was untimely due to excusable neglect.  *See* Fed. R. Civ. P. 30(a)(2)(A)(ii); Fed. R. Civ. P. 16(b)(4); Fed. R. Civ. P. 6(b)(1)(B).

The parties only briefed the first issue.  *See generally docs. 243, 246, 256, 257, 263, 269, 270, 279, 288*.  Insofar as Plaintiffs' briefing touches on the latter two issues, they attribute their belated request for leave to opposing counsel's unavailability for the four weeks leading up to the discovery deadline.  *Doc. 257* at 4.  This explanation, however, does not address why Plaintiffs did not move the Court on an earlier date for leave to

take an additional deposition of Defendant American Linen or notice this deposition on an earlier date, either in the months immediately after the expiration of the stay or the months between the first Rule 30(b)(6) deposition and the imposition of the stay.  Based on the record before it, therefore, the Court cannot find that Plaintiffs have shown good cause under Rules 16(b)(4) and 6(b)(1) to extend the fact-discovery deadline for this deposition or that excusable neglect is the reason for their belated requests for leave to take this deposition and an extension of the discovery deadline to do so.

Plaintiffs also allege that Defendant American Linen has not served a single discovery request in the more than two years that it has been a party to this case.  *See doc. 246* at 3.  This assertion casts doubt as to whether Defendant has exercised the requisite diligence to show good cause for extending the fact-discovery deadline under Rule 16(b)(4).  *See Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014) (holding that the Rule 16(b)(4) good cause "standard requires the movant to show the scheduling deadlines [could not] be met despite the movant's diligent efforts" (citation and internal quotations omitted)).[3]  Defendant, for its part,

---

[3] The Court does not reach the question as to whether Defendant American Linen has exercised the requisite diligence to show good cause for an extension of the discovery deadline pursuant to Rule 16(b)(4).  Accounting for the stay from August 21, 2019 until July 17, 2020, Defendant has had approximately 390 days since filing its answer to conduct discovery on this case.  Discovery in this district routinely takes less than a year.  To show good cause to extend the October 9, 2020 discovery deadline to take Plaintiffs' Rule 30(b)(6) depositions, Defendant must show that it could not meet this deadline despite its diligent efforts during the ~390 days available to it to conduct discovery.  *See Gorsuch*, 771 F.3d at 1240.

does not rebut Plaintiffs' allegation or otherwise address the Rule 16(b)(4) and Rule 6(b)(1)(B) issues. *See doc. 256*.

The Court will not rule conclusively on the Rule 16(b)(4) and Rule 6(b)(1)(B) issues on the record before it. Rather, it finds that, at this time, neither party has shown that its request for leave satisfies Rule 16(b)(4) and Rule 6(b)(1)(B). Accordingly, it denies their requests without prejudice to the parties reiterating them in subsequent motions and without reaching the issue of whether granting leave for any of the desired depositions is consistent with Rule 26(b)(1) and (2).

## B. COMPELLING DEFENDANT AMERICAN LINEN TO PRODUCE ALL DOCUMENTS IN ITS CONTROL

Defendant American Linen's responses to Plaintiffs' Requests for Production Nos. 4, 7, and 8 are incomplete because it has not sought, and so cannot be found to have produced, all applicable documents that are within its control. Documents that Defendant controls include not only those that it possesses but also those that it has a practical ability to obtain. *Landry*, 323 F.R.D. at 382; *In re NTL, Inc. Secs. Litig.*, 244 F.R.D. at 195. Defendant, however, only searched its own records for responsive documents when responding to Plaintiffs' requests. It made no attempt to obtain responsive documents that it does not possess but has practical ability to obtain. *Doc. 264-3* at 13. Its responses, therefore, cannot be said to include all the documents that are within its

control.[4]  *See Alexander v Fed. Bureau of Investigation*, 194 F.R.D. 299, 301–02 (D.D.C. 2000)

(holding that a defendant had not produced all the documents that she controlled when

her responses stated that she had only produced documents that she possessed).

C.  COMPELLING DEFENDANT AMERICAN LINEN TO ANSWER
     INTERROGATORIES WITH ALL THE INFORMATION AVAILABLE TO IT

Turning to the matter of Defendant American Linen's responses to Plaintiffs'

First Set of Interrogatories, the Court finds that its responses to Interrogatories Nos. 5, 8,

and 9 are incomplete.  The responses neither reflect all the information that is available

to Defendant nor do they address the entire scope of the questions.  Defendant makes

several arguments otherwise, but none is convincing.

1.  *Defendant American Linen's Answers to Interrogatories Nos. 5, 8–9 Are Incomplete*

Defendant's responses to Interrogatories Nos. 5, 8, and 9 are deficient as they

neither reflect all information available to it about its operational history nor cover the

entire time period for which this information is sought.  Information that is available to

Defendant includes not only that which Defendant possesses but also that which is

---

[4] Defendant American Linen's response to Plaintiffs' Request for Production No. 8 exemplifies the inadequacy of its efforts to obtain responsive documents to date.  In this request, Plaintiffs ask Defendant to provide "any [d]ocuments that identify any agreements, contracts, or arrangements that [Defendant] ha[s] entered into with Laun-Dry Supply Company, Inc., LD Supply, and/or Linen Side Chemicals, including any and all contracts, agreements, invoices, or receipts for materials or supplies ordered or purchased that contained or may have contained PCE."  *Doc. 264-3*. at 18.  In its response, Defendant does not deny that responsive documents exist, only that *it* has them.  *Doc. 264-3* at 18.  Under *Cooper Industries, Inc.*, Defendant is presumed to have control of responsive documents about its business arrangements with these entities since it admitted in its Response to Plaintiffs' Interrogatory No. 9 that it is "a business customer" of them.  102 F.R.D. at 919–20 & n.2; *doc. 264-3* at 10–11.  As Defendant has made no attempt to obtain responsive documents from these entities, *see doc. 264-3* at 13, it has not rebutted this presumption.

obtainable with reasonable effort, including information found in documents that

Defendant controls but does not possess and information held by current employees

and former employees whose identities are known or reasonably ascertainable.  *See*

*Nat'l Fire Ins. Co. of Hartford*, 264 F.R.D. at 238; *Essex Builders Grp., Inc.*, 230 F.R.D. at 685;

*Miller*, 76 F.R.D. at 140.  It does not extend to information that is only obtainable

through extensive investigation.  *Yang Kun Chung*, 321 F.R.D. at 282.

Plaintiffs' Interrogatories Nos. 5, 8, and 9 seek information about Defendant's

dry-cleaning operations and PCE use since January 1, 1938.  *Doc. 264-2* at 7; *doc. 264-3* at

6–11.  In Interrogatory No. 5, Plaintiffs request Defendant to describe, *inter alia,* its dry-

cleaning operations during this time, the equipment, materials, and solvents used for

these operations, and practices pertaining to the use and disposal of these solvents.

*Doc. 264-3* at 6.  In its response, Defendant asserts, *inter alia*, that it "is a commercial

laundry service … and uniform supply company" and "at no point in time has [it]

operated a dry-cleaning facility or used PCE in any of its operations"  *Id.* at 2, 7.

In Interrogatory No. 8, Plaintiffs ask Defendant to identify and describe any

contracts, agreements, or other arrangements with persons or entities related to, *inter*

*alia*, the collection and disposal of solvents that may have contained PCE since January

1, 1938.  *Doc. 264-2* at 7; *doc. 264-3* at 10.  In response, Defendant states that it has no

such contracts, agreements, or other arrangements "because, to the best of its

36

knowledge, [it] has no conducted dry-cleaning operations in its business at any time." *Doc. 264-3 at 10.*

In Interrogatory No. 9, Plaintiffs request Defendant to describe its relationship to Laun-Dry Supply Company, Inc., LD Supply, and/or Linen Side Chemicals, including any orders or purchases of materials that may have contained PCE. *Doc. 264-2 at 7; doc. 264-3 at 10–11.* In response, Defendant has explained that it is "a business customer" of these entities and, "to the best of its knowledge, has not purchased materials or supplies that contained or may have contained PCE." *Doc. 264-3 at 11.*

Each of these three responses was incomplete at the time that Defendant gave it and remains incomplete today for two reasons. First, they are not based on all the information available to Defendant since they only contain information from its corporate records. *Doc. 264-3 at 13.* When responding, Defendant made no attempt to gather information available to it from current or former employees or any documents that it controls but did not possess. *See id.* Second, the responses do not address the full temporal scope of Plaintiffs' questions. Plaintiffs have requested information about Defendant's dry-cleaning operations and PCE purchases since January 1, 1938, *see doc. 264-2 at 7,* but Defendant's responses only cover operations since 2006 and purchases since the 1990s, *see doc. 258-2 at 122:19–124:13; doc. 264-3 at 6–11.* If Defendant lacks sufficient information to answer questions about operations that predate the 1990s, it should clearly state as such, provide what information it has, and articulate the efforts

that it has taken to obtain more information.  *See Miller*, 76 F.R.D. at 140; *Milner*, 73

F.R.D. at 632.  Until these two defects are remedied, Defendant American Linen's

answers to Interrogatories Nos. 5, 8, and 9 are neither complete nor based on all the

information that is available to it.

      2.   *Defendant American Linen's Explanations for Incomplete Answers are Inadequate*

      Defendant American Linen makes several unconvincing factual and legal

arguments about the completeness of its interrogatory responses.  First, it contends that

its "investigation of its historical operations was comprehensive" and could not include

interviews of former employees because "all of the people who worked [for it] during

the relevant time period are deceased or unknown to current … management."  *Doc.*

*279* at 5.  The record does not support this contention.  Defendant's personnel files do

not have the names and contact information of individuals who worked for it during

the time of its alleged dry-cleaning operations.  *Doc. 279-1* at 43:3–17.  However, in the

months preceding Defendant's responses to Plaintiffs' interrogatories, Mr. Lutz had a

conversation with a former employee who worked for Defendant at this time: Mr.

Watkins.  *Doc. 288-1* at 61:15–62:13.  Plaintiffs' initial disclosures also included the

address for Mr. Jasso, another former employee.  *Doc. 282-6* at 1.  Moreover, even if the

record did show that identities of all of Defendant's former employees from the relevant

time period are unknown to its current management, Defendant still has an obligation

to make a reasonable effort to obtain them.  This effort requires more than a mere search of corporate records.

Second, Defendant argues that caselaw does not obligate it "to undertake a sweeping investigation for additional relevant information that it did not possess at the time the case was filed or discovery was served." *Doc. 279* at 6.  This argument is a strawman.  Defendant is correct that caselaw imposes no such obligation upon it.  *See Yang Kun Chung*, 321 F.R.D. at 282.  However, caselaw does require Defendant to answer Plaintiffs' interrogatories based on the information available to it.  This includes not only information found in Defendant's corporate records but also information known by current and former employees or found in documents that Defendant controls but does not possess.  *See Nat'l Fire Ins. Co. of Hartford*, 264 F.R.D. at 238; *Essex Builders Grp., Inc.*, 230 F.R.D. at 685; *Miller*, 76 F.R.D. at 140.

Third, Defendant asserts that "'parties should anticipate the unavailability of certain information' that relates to decades-old corporate activity and events." *Doc. 279* at 7 (quoting *Barron v. Caterpillar, Inc.*, 168 F.R.D. 175, 177 (E.D. Pa. 1996)).  This argument misstates the issue.  The issue is not that Defendant failed to respond to Plaintiff's interrogatories with information about "decades-old corporate activity and events," but rather that Defendant's responses do not reflect all the information available to it about its operational history or cover the entire temporal scope of Plaintiffs' questions.  It might well be the case that, after gathering and reviewing all the

information available to it, Defendant will still not be able to provide information about these activities in its responses. *See Barron*, 168 F.R.D. at 177. But, nobody knows until Defendant has made a reasonable effort to gather and review this information.

Fourth, Defendant argues that changes to its discovery responses beyond those relevant to its recent admission that it conducted dry-cleaning operations using PCE from 1972 until late 1982 are unnecessary as "[i]t is well established that any knowledge possessed by former employees—for example, with respect to alleged purchases or releases of PCE—is not imputed to [it]." *Doc. 279* at 8–9 (citing 3 Fletcher Cyc. Corp. §§ 793, 807 (2020)). Defendant again misidentifies the issue. Sections 793 and 807 of the Fletcher Cyclopedia of the Law of Corporations address when notice to or knowledge held by a corporation's agents, officers, and employees is chargeable to the corporation itself. The issue under Rule 33(b), however, is not what information is *known* by a corporation, but rather what information is *available* to it. *See Pilling v. Gen. Motors Corp.*, 45 F.R.D. 366, 369 (D. Utah 1968). Information available to a corporation includes that possessed by former employees whose identities are known or reasonably available to the corporation and who may be located and interviewed with reasonable effort. *Nat'l Fire Ins. Co. of Hartford*, 264 F.R.D. at 238; *Essex Builders Grp., Inc.*, 230 F.R.D. at 685; *Miller*, 76 F.R.D. at 140.

D.  SANCTIONING DEFENDANT AMERICAN LINEN FOR DISCOVERY
VIOLATIONS

The Court only sanctions Defendant American Linen for failing to produce a

Rule 30(b)(6) designee who was prepared to testify based on all the information

reasonably available to the corporation and failing to supplement, in a timely manner,

the blanket denials of dry-cleaning operations and PCE use in its initial disclosures and

discovery responses.  Sanctioning Defendant for providing incomplete responses to

Plaintiffs' interrogatories and requests for production is improper at this time because

Defendant has not violated a court order compelling it to provide complete responses.

Likewise, sanctioning Defendant for initially providing incorrect information in its

discovery responses is inappropriate since there is no evidence that it did so willfully or

in bad faith.

1.  *Sanctions for Mr. Lutz's Unpreparedness at Defendant's Rule 30(b)(6) Deposition*

The Court sanctions Defendant American Linen for producing a Rule 30(b)(6)

designee who was not prepared to testify based on all information reasonably available

to the corporation.  During his deposition, Mr. Lutz, Defendant's designee, testified

repeatedly from his own personal knowledge, rather than from all information

reasonably available to the Defendant, because he did not make a good faith effort

before testifying to obtain information held by former employees or contained in

documents that Defendant does not possess but has practical ability to obtain.  This

approach is tantamount to Defendant not appearing for its Rule 30(b)(6) deposition.  *See*

41

*Black Horse Lane Assoc.*, 228 F.3d at 304; *Resolution Trust Corp.*, 985 F.2d at 197; *Herlihy*, 186 F.R.D. at 639; *Taylor*, 166 F.R.D. at 363.  It is sanctionable as such since Defendant's functional nonappearance prejudiced Plaintiffs, disrupted proceedings, and reflects a lack of good faith.  *See Live Face on Web, LLC*, 421 F. Supp. 3d at 1080; *Herlihy*, 186 F.R.D. at 640; *Taylor*, 166 F.R.D. at 363.

a.  MR. LUTZ'S INADEQUATE PREPARATION

Mr. Lutz was inadequately prepared for Defendant American Linen's Rule 30(b)(6) deposition because he did not make a good faith effort to educate himself on all the information reasonably available to the corporation about its historical dry-cleaning operations and PCE use.  A good faith effort includes not only reviewing the documents that Defendant possesses but also attempting to locate and review relevant documents that it controls and trying to find and interview former employees who may also have this knowledge.  *See Taylor*, 166 F.R.D. at 361; *Gulfstream Worldwide Realty, Inc.*, 2007 WL 5704041, at *4, 7; *Magnesium Corp. of Am.*, 2006 WL 6924985, at *4.

Mr. Lutz did not make the requisite effort because he readied himself for the Rule 30(b)(6) deposition solely by reviewing Defendant American Linen's corporate records, even though they only date back ten years and the noticed topics date back well beyond that.  *See doc. 243-1* at 7–12; *doc. 258-2* at 73:14–17; *doc. 269-4* at 75:20–22.  He made no attempt to review any documents that Defendant does not possess but has practical ability to obtain.  *See doc. 258-2* at 73:14–17; *cf. doc. 264-3* at 13.  He did not

discuss the noticed topics with a single employee, past or present, notwithstanding his unfamiliarity with the operations side of American Linen's historical business. *Doc. 258-2* at 19:20–23, 74:11–23. *See also doc. 243-2* at 42:3–6. Mr. Lutz knew that Mr. Jasso, a former employee, "had alleged that American Linen used and released PCE [in]to the environment," but made no effort to learn more about these claims, despite their direct relevance to Plaintiffs' noticed topics.[5] *See doc. 243-*2 at 125:5–24. Similarly, Defendant American Linen knew, via its attorney, that Mr. Hartman, another former employee, had testified to witnessing the company conduct cleaning operations using PCE while he was an employee. *See doc. 200-9* at 17:19–19:13, 28:12–29:8, 29:21–30:1, 32:13–17. Yet Mr. Lutz made no attempt to contact Mr. Hartman or otherwise learn more about the basis for his testimony. *See doc. 258-2* at 19:20–23, 74:11–23. Finally, Mr. Lutz had talked with Billy Watkins, a route service manager for Defendant at the time of its alleged dry-cleaning operations, months before his deposition, but did not make any attempt during his preparation to find him and obtain any information he may have about Defendant's historical operations. *See id.* at 19:20–23; *doc. 288-1* at 61:15–62:17.

As a result, during the Rule 30(b)(6) deposition, Mr. Lutz repeatedly testified from his personal knowledge, rather than all the information reasonably available to

---

[5] During his Rule 30(b)(6) deposition, Mr. Lutz reported that he "didn't put a lot of weight in Mr. Jasso's allegations based on his departure with the company." *Doc. 243-2* at 125:21–24. Defendant does not raise this assertion in its briefing for good reason: while any bias that Mr. Jasso may have against Defendant is relevant to his credibility as a witness at trial, it is irrelevant as to whether any information he had about Defendant's historical dry-cleaning operations was reasonably available to it at the time of Mr. Lutz's deposition.

Defendant American Linen.  *See doc. 243-2* at 41:16–42:6 (disclaiming knowledge of the

Defendant's non-delivery operations and employee training programs because he did

not experience them personally); *doc. 258-2* at 73:2–5 (disclaiming personal knowledge

of Defendant's dry-cleaning operations); *id.* at 74:8–19 (denying personal knowledge of

dry-cleaning operations because he had not worked on the company's operations side);

*id.* at 96:2–4 (disavowing personal knowledge of any soil samples taken on Defendant's

property).  Mr. Lutz also could not answer several questions about Defendant's

historical operations that predated his tenure with the company.  *Doc. 243-2* at 41:16–

42:2; *Doc. 258-2* at 21:2–10, 46:5–11, 73:2–5, 74:8–19, 122:19–124:13.

> b.  DEFENDANT AMERICAN LINEN'S EXPLANATIONS FOR MR. LUTZ'S LACK OF
>     PREPARATION ARE INADEQUATE

None of the factual and legal arguments that Defendant American Linen raises

about Mr. Lutz's inadequate preparation is convincing.  First, Defendant justifies Mr.

Lutz's paltry preparation, particularly him not interviewing any current or former

employees, on three grounds: (i) "there are no employees still working at [it] that

worked for the company between 1949 and late-1982 [*sic*], when the dry-cleaning

perhaps occurred"; (ii) "it does not have employment records, including contact

information, for employees that worked for the company between 1949 and late-1982

[*sic*]"; and (iii) "many employees that worked for the company during those years …

are dead."  *Doc. 269* at 4 (citations and footnote omitted); *see also id.* at 6; *doc. 279* at 5–6.

However, these assertions do not explain why Mr. Lutz failed to seek relevant

information from documents that Defendant controlled but did not possess.  Nor do

they explain why Mr. Lutz made no attempt to obtain relevant information from Mr.

Jasso, Mr. Hartman, or Mr. Watkins, three living former employees whose identities

were known to him.

The Court acknowledges that Defendant American Linen, through its attorney,

did question Mr. Jasso and Mr. Hartman during their depositions, taken ten days and

three days respectively before the deposition of Mr. Lutz.  *See doc. 200-9* at 1; *doc. 269-3*

at 1:14, 4:10; *doc. 269-4* at 1:18.  However, there is no evidence in the record that Mr. Lutz

reviewed transcripts of these individuals' depositions such that his testimony was

inclusive of their purported knowledge about Defendant's historical dry-cleaning

operations and represented Defendant's corporate position regarding their statements.

*See doc. 258-2* at 73:9–17; *doc. 288-1* at 19:11–20:14.  A corporate designee must review the

deposition testimony of prior fact witnesses, especially if they are former employees, so

that he "can state [the] corporation's position at the Rule 30(b)(6) deposition with regard

to the prior deposition testimony."  *Taylor*, 166 F.R.D. at 362.  The Court does not

consider the tight scheduling of depositions an excuse.  To the extent that it precluded

Mr. Lutz from familiarizing himself with and investigating the testimony of these ex-

employees, Defendant American Linen could have asked Plaintiffs to reschedule its

Rule 30(b)(6) testimony or sought a protective order from this Court.

Second, Defendant American Linen argues that,

> [w]hile various cases … indicate that interviewing 'past employees' might
> be part of a corporate defendant's burden in preparing for a Rule 30(b)(6)
> deposition, there is no case law holding that a corporation must engage in
> a broad investigation into the identity and whereabouts of every former
> employee from a given period of time in order to determine whether any
> one of them has potentially relevant information.

*Doc. 269* at 5 (citing *Taylor*, 166 F.R.D. at 361).  *See also doc. 279* at 6, 11.  Like its

counterpart in the context of Defendant's responses to Plaintiffs' interrogatories, this

argument is a strawman.  Nobody contends that Defendant must investigate and find

the whereabouts of every single former employee who may have information about its

purported dry-cleaning operations.  It only has to make a good faith effort to locate

former employees who may have this information and talk to those whom it finds.

*Magnesium Corp. of Am.*, 2006 WL 6924985, at *4; *Gulfstream Worldwide Realty, Inc.*, 2007

WL 5704041, at *4; *Taylor*, 166 F.R.D. at 361.

Third, Defendant American Linen cites two cases where district courts allegedly

ruled that Rule 30(b)(6) designees were adequately prepared for their depositions

despite not seeking information from former employees.  *Doc. 269* at 5–6 (citing *F.D.I.C.*

*v. 26 Flamingo, LLC*, No. 2:11-cv-01936-JCM-NJK, 2013 WL 3975006, at *6 (D. Nev. Aug.

1, 2013) (unpublished), and *Cupp v. Edward D. Jones & Co.*, No. 06-CV-145-GKF-SAJ,

2007 WL 982336, at *1 (N.D. Okla. 2007) (unpublished)); *doc. 279* at 7–8 (same).  None of

these cases, however, stands for the proposition that Defendant claims.

One case, in fact, stands for the opposite.  *See Cupp*, 2007 WL 982336, at *1.  In

*Cupp*, the District Court for the Northern District of Oklahoma held that the defendant's

Rule 30(b)(6) designee "was not fully prepared to address all of the issues noticed by the [p]laintiff" since it had not consulted with a former employee with applicable knowledge. *Id.* at 2. The District Court declined to sanction the defendant for its designee's unpreparedness because there was no bad faith or willful obstruction of the discovery process. *Id.* Instead, the District Court ordered the defendant "to make a good faith effort to locate [the former employee] so that the [p]laintiff ha[d] an opportunity to depose [him]" since the deficiencies in the Rule 30(b)(6) testimony related to this employee's mindset and thought process. *Id.*

The second case stands for the proposition that a party's Rule 30(b)(6) designee does not have to interview the former employees of a third party when noticed to testify as to the information reasonably available to the party about what the third party knows. *See 26 Flamingo, LLC,* 2013 WL 3975006, at *6. In *26 Flamingo, LLC,* the plaintiff sought a declaratory judgment after it was appointed as a bank's receiver, acquired title to property through a trustee sale subsequent to the property's owner defaulting on its loan payments to the bank, and received a demand letter from the defendant seeking payment of an interest in the property that had been assigned to it by the entity that had sold the property to the defaulting owner. *Id.* at *1. The District Court for the District of Nevada held that the plaintiff's Rule 30(b)(6) designee did not have to interview the bank's ex-employees when preparing to testify about what the bank knew about certain pre-default transactions because the plaintiff "as receiver [was] in no better position

than [the defendant] was to 'obtain the knowledge' of any ex-employees regarding the

underlying transaction." *Id.* at *6. *26 Flamingo, LLC* is therefore irrelevant to the issue at

bar. When deposing Defendant American Linen, Plaintiffs did not seek information

about its knowledge of a third party's operations. Rather, Plaintiffs sought information

about Defendant's own operations, information that may be held by its own ex-

employees. Defendant American Linen, as these employees' former employer, was, and

is, in a better position than Plaintiffs to obtain any relevant information that they may

possess.

Fourth, Defendant asserts that "parties should anticipate the unavailability of

certain information" if the topics of a Rule 30(b)(6) deposition "involve[] events or

operations that occurred no less than thirty-five years ago" since "it is not uncommon to

have a situation … where a corporation indicates that it no longer employs individuals

who have memory of a distant event or that such individuals are deceased." *Doc. 269* at

5 (quoting *Barron*, 168 F.R.D. at 177, and *Taylor*, 166 F.R.D. at 361). That may be true, but

it is not the issue. The issue is not that Mr. Lutz failed to testify on events and

operations that predate his tenure with the company. Rather, it is that he did not made

a good faith effort to prepare himself to do so. It might well be the case that, after

making the requisite effort to obtain all the information reasonably available to

Defendant American Linen about its historical operations, Mr. Lutz would have given

much of the same testimony about Defendant's lack of knowledge as to its historical operations.  Nobody knows, however, as the effort was not made.

Finally, Defendant American Linen argues that additional investigation would be fruitless given that it has no employment records for former employees, no contact information for these individuals, and no institutional memory of who they may be. *Doc. 279* at 7–8.  The Court disagrees since Defendant has made no effort to pursue at least two leads for information about its historical dry-cleaning operations, its PCE use, and the identities of former employees who may have information about these topics. First, despite Mr. Lutz talking to Mr. Watkins some months ago, Defendant has made no attempt to locate him and learn any information that he may have about its operational history or the identities of other former employees who may have this information.  Second, Defendant has made no attempt to obtain and review any documents that it does not possess but has practical ability to obtain, *see doc. 264-3* at 13, some of which may have relevant information about its historical dry-cleaning operations and PCE use or identify other persons who do.

   c.  SANCTIONS IMPOSED

The Court sanctions Defendant American Linen for the reasonable costs and attorney's fees incurred by Plaintiffs to depose Mr. Lutz on April 1, 2019 and bring the instant Motion to Compel and for Sanctions.  Rule 37(d)(3) requires the Court, at minimum, to order Defendant, its counsel, or both to pay the reasonable expenses,

including attorney's fees, caused by Mr. Lutz's unpreparedness unless it was

substantially justified or other circumstances make an award of expenses unjust.  *See*

*Black Horse Lane Assoc.*, 228 F.3d at 304, *Resolution Trust Corp.*, 985 F.2d at 197; *Herlihy*,

186 F.R.D. at 639; *Taylor*, 166 F.R.D. at 363; Fed. R. Civ. P. 37(d)(3).  The Court also has

the discretion to impose any of the following additional sanctions on Defendant:

> (i) directing that the matters embraced in the order or other designated
> facts be taken as established for the purposes of the action, as the
> prevailing party claims;
> (ii) prohibiting [Defendant] from supporting or opposing designated
> claims or defenses or from introducing designated matters in evidence;
> (iii) striking pleadings in whole or in part;
> (iv) staying further proceedings until the order is obeyed; … or
> (vi) rendering a default judgment against [Defendant]….

Fed. R. Civ. P. 37(b)(2)(A); *see* Fed. R. Civ. P. 37(d)(3).

In the context of an inadequately prepared Rule 30(b)(6) designee, courts impose

sanctions where the functional non-appearance reflects a lack of good faith, prejudices

the opposing side, and disrupts proceedings.[6]  *See Live Face on Web, LLC v. Integrity Sols.*

---

[6] Plaintiffs argue that the Tenth Circuit's decision in *Woodworker's Supply, Inc. v. Principal Mutual Life Insurance Co.*, 170 F.3d 985, 993 (10th Cir. 1999), identifies factors that the Court should consider when deciding whether to impose sanctions for discovery malfeasance.  *Doc. 263* at 5 (citing *Jama*, 304 F.R.D. at 296, *Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992), and *Markham v. Nat'l States Ins. Co.*, No. Civ.02-1606-F, 2004 WL 3019308, at *12 (W.D. Okla. 2004)).  The standard Plaintiffs articulate, however, is for sanctions pursuant to Rule 37(c) for failing to disclose or supplement, not Rule 37(d) for failing to appear for a deposition.  *See Woodworker's Supply, Inc.*, 170 F.3d at 993; *Jama*, 304 F.R.D. at 300.  Two of the cases Plaintiffs cite address the standard for sanctions under Rule 37(b) for failing to obey an order to provide or permit discovery.  *See Ehrenhaus*, 965 F.2d at 921; *Markham*, 2004 WL 3019308, at *12.  The Court does note, though, that the factors that the District Court for the Western District of Oklahoma considered in *Markham* for imposing a non-dispositive sanction for evidence spoliation pursuant to Rule 37(b)(2)(A) and its inherent authority are substantively equivalent to those considered by courts sanctioning under Rule 37(d).  *Compare id.* (weighing the degree of actual prejudice to the complaining party, the amount of interference with the judicial process, and the culpability of the offending party)

*Grp., LLC*, 421 F. Supp. 3d at 1080; *Herlihy*, 186 F.R.D. at 640; *Taylor*, 166 F.R.D. at 363.

The sanctions imposed generally do not exceed the reasonable expenses caused by the

designee's unpreparedness. *See Black Horse Lane Assoc.*, 228 F.3d at 281, 305 (costs and

attorney's fees associated with deposing the inadequately prepared designee and filing

the motion for sanctions); *Resolution Trust Corp.*, 985 F.2d at 197 (these costs and fees

plus those associated with identifying an appropriate Rule 30(b)(6) designee for the

deponent); *In re Application of Michael Wilson & Partners*, No. 06-cv-02575-MSK-KMT,

2009 WL 1193874, at *5 (D. Colo. Apr. 30, 2009) (unpublished) (fees and costs of retaking

the Rule 30(b)(6) deposition); *Live Face on Web, LLC*, 421 F. Supp. 3d at 1080 (all

reasonable expenses incurred as a result of the designee's unpreparedness); *Herlihy*, 186

F.R.D. at 650 (same).

Here, the Court sanctions Defendant American Linen for its failure to provide an

adequately prepared Rule 30(b)(6) designee since Mr. Lutz's unpreparedness prejudiced

Plaintiffs, disrupted proceedings, and reflects a lack of good faith.  Plaintiffs wasted

several hours deposing Mr. Lutz in March 2019 because he was unprepared and so

could not provide Defendant's informed, corporate position on its dry-cleaning

activities and Mr. Hartman's testimony about these activities.[7]  Due to Mr. Lutz's lack of

---

with, *e.g.*, *Live Face on Web, LLC*, 421 F. Supp. 3d at 1080 (weighing the prejudice to the party that noticed
the deposition, the disruption to proceedings, and good faith shown by the offending party).
[7] Mr. Lutz did provide a position on Mr. Jasso's testimony, implying that it is uncredible based on the
circumstances of his firing.  *See doc. 243-2* at 125:21–24.

preparedness, Plaintiffs also incurred additional costs to investigate Defendant's operational history.  *See doc. 263* at 10; *doc. 264-1.*

Mr. Lutz's inadequate preparation disrupted proceedings.  It prevented Plaintiffs from obtaining Defendant's informed corporate position on Mr. Hartman's testimony until October 5, 2020 when Defendant admitted to conducting dry-cleaning activities using PCE from approximately 1972 to late 1982.  It also has precluded Plaintiffs from obtaining all the information reasonably available to Defendant about these activities to date.

Mr. Lutz's unpreparedness also reflects a lack of good faith.  Plaintiffs' notice for the Rule 30(b)(6) deposition expressly advised Defendant that caselaw required its designee to prepare for this deposition required its designee to make a good faith effort to find out the relevant facts, including those held by former employees or found in documents Defendant had practical ability to obtain.  *See doc. 243-1* at 4 (citations omitted).  Mr. Lutz did not make this effort.  He knew that Plaintiffs were seeking information about Defendant's historical operations that predated his limited, personal knowledge about the company's operational history and the company's ten years of corporate records.  *See doc. 258-2* at 74:8–23; *doc. 269-4* at 75:20–22; *doc. 243-1* at 7, 9.  Nonetheless, he limited his preparation to a review of these records and made no attempt to learn information held by former employees—three of whose identities he knew—or contained in documents that Defendant, while not possessing, did control.

*See doc. 243-2* at 43:3–10; *doc. 258-2* at 19:20–23, 73:6–17; *doc. 288-1* at 61:15–62:13; *cf. doc. 264-3* at 13.

Accordingly, the Court sanctions Defendant American Linen for the reasonable costs and attorney's fees incurred by Plaintiffs to depose Mr. Lutz on April 1, 2019 and bring their Motion to Compel and for Sanctions.  Some of the costs and fees borne by Plaintiffs in bringing the instant motion relate to compelling complete responses to interrogatories and requests for production and an additional Rule 30(b)(6) deposition of Defendant.  Nonetheless, the Court finds it proper to assign the full costs of this motion to Defendant for three reasons.  First, Plaintiffs attempted in good faith to obtain the discovery without the Court's involvement.  *See* Fed. R. Civ. P. 37(a)(5)(A)(i). Second, Defendant's opposition to the motion to compel with respect to its discovery responses was not substantially justified since caselaw requires it to do more than respond with just the information and documents from its corporate records.  *See* Fed. R. Civ. P. 37(a)(5)(A)(ii).  Third, while Defendant's opposition to the motion to compel with respect to Plaintiffs' request for leave to re-depose it under Rule 30(b)(6) was substantially justified, this request composes a *de minimis* part of the costs and fees borne by Plaintiffs to bring the motion.  The sole argument that Plaintiffs make in support of this request is a single sentence that incorporates by reference their arguments from their response to Defendant's Motion for Protective Order.  *See doc. 263* at 8.

Imposing additional sanctions, such as the costs of Plaintiffs' research since the first deposition or sanctions listed in Rule 37(b)(2)(A), gives Plaintiffs a windfall and is inconsistent with the principle that this Court's sanctions should be the least severe of those available to deter and punish Defendant adequately. *See Herlihy*, 186 F.R.D. at 646. The Court has no doubt that Defendant's failure to produce a prepared Rule 30(b)(6) designee caused Plaintiffs to incur additional costs in researching Defendant's operational history. *See doc. 264-1.* However, there is no way to distinguish research that Plaintiffs would not have conducted but for Defendant's functional non-appearance at its Rule 30(b)(6) deposition from research that they would have conducted anyways. Plaintiffs have also had since April 1, 2019 to ask the Court to compel Defendant to provide a prepared designee for a Rule 30(b)(6) and could have avoided additional research costs by bringing their motion before they pursuing their research. They chose not to do so. The Court will not impose on Defendant the research costs that Plaintiffs have incurred as a result of this choice, even though it did contribute to them.

2. *Sanctions for Defendant's Delayed Supplementation*

The Court imposes additional sanctions on Defendant American Linen pursuant to Rule 37(c) for not supplementing its initial disclosures and interrogatory responses in a timely manner. Rule 26(e) required Defendant to supplement its these documents without undue delay upon learning that they contained incorrect information unless

corrective information had been communicated to Plaintiffs elsewhere in discovery in such a form and of such specificity as to be the functional equivalent of supplementation. *See U.S. Aviation Underwriters*, 582 F.3d at 1145; *L-3 Commc'ns Corp.*, 125 F. Supp. 3d at 1168–69; 8A Richard L. Marcus, *Federal Practice & Procedure Civil* § 2049.1. A reasonable litigant would have learned that the blanket denials of dry-cleaning operations and PCE use in Defendant's initial disclosures and discovery responses were incorrect during the deposition of Mr. Hartman on March 29, 2019 and taken steps to prove corrective information within a reasonable amount of time. Defendant, however, did not supplement these documents accordingly or provide the functional equivalent thereof until October 5, 2020, when it admitted it in response to Plaintiff's First Requests for Admission that it conducted had dry-cleaning operations using PCE from approximately 1972 to late 1982.

        a.   DEFENDANT HAD REASONABLE KNOWLEDGE THAT ITS DISCLOSURES AND DISCOVERY RESPONSES CONTAINED INCORRECT INFORMATION ON MARCH 29, 2019

Mr. Hartman's testimony, in conjunction with that of Mr. Jasso, provided Defendant American Linen with reasonable notice that its initial disclosures and discovery responses contained incorrect information. Defendant's initial disclosures assert that "Mr. Lutz is able to testify that [Defendant] has never been a dry-cleaning operation and has not used the substances alleged to have caused contamination in this lawsuit." *Doc. 258-1* at 1–2. Similarly, Defendant's responses to Plaintiffs' First Set of

Interrogatories deny that it has ever "operated a dry-cleaning facility or used PCE in any of its operations." *Doc. 264-3* at 2.  *See also id.* at 10.  On March 22, 2019, however, Mr. Jasso testified that he conducted dry-cleaning using PCE during his employment with Defendant. *Doc. 200-10* at 21:22–23, 23:16–24.  A week later, Mr. Hartman testified that he personally observed Mr. Jasso dry clean with PCE at one of Defendant's facilities. *Doc. 233* at 19:11–13, 19:16–20:20, 28:12–21.  This consistent testimony was sufficient to notice a reasonable litigant in Defendant's position that the denials of dry-cleaning operations and PCE use in its initial discourses and discovery responses were incorrect.

Defendant contends that it did not "beg[i]n to understand that its stated position about its dry-cleaning activity was incorrect" until after the deposition of Raymundo Castillo on August 21, 2020. *Doc. 279* at 8, 9–10; *doc. 233-12* at 1:16.  In support of this assertion, Defendant places great weight on its claim that "Mr. Jasso's credibility is at issue in this case because his report of the alleged [PCE] release came only after he was terminated from his position by Mr. Lutz for being under the influence of alcohol on the job." *Doc. 279* at 10.  This defense against the obligation to supplement in March 2019 fails for several reasons.

Most importantly, the inquiry is not when Defendant subjectively reached this understanding but rather when a reasonable litigant would have reached it. *See Carroll*, 2020 WL 7664731, *2; *Jama*, 304 F.R.D. at 299–300.  In March 2019, Mr. Jasso's testimony

was directly corroborated by Mr. Hartman's testimony. Defendant gives no reason why a reasonable litigant would not rethink its evaluation of Mr. Jasso based on this corroboration. Especially in the context of this corroboration, a reasonable litigant would have parsed its evaluation of Mr. Jasso's evidence. Specifically, one could reject his allegations of dumping as an attempt to retaliate against an ex-employer but credit his statements about the use of PCE in dry-cleaning operations. It seems particularly unlikely that Mr. Jasso would invent a story about dumping a substance that he did not know his employer used. Moreover, Defendant fails to explain why it apparently ignored Mr. Hartman's testimony that dry-cleaning was conducted by Defendant. Unlike Mr. Jasso, Defendant never attempts to impugn Mr. Hartman's credibility. Finally, even if the testimony of Mr. Jasso and Mr. Hartman alone was insufficient to immediately require a supplement retracting the denials of dry-cleaning operations, it absolutely demanded an urgent and intensive investigation into the veracity of the earlier responses. Instead, Defendant remained passive on this point until the deposition of Mr. Castillo.

Under these circumstances, a reasonable litigant would have supplemented its discovery responses in which it denied dry-cleaning operations on or about the end of March 2019. Defendant American Linen, though, failed to do so.

b.   Defendant Did Not Supplement Its Disclosures or Discovery
Responses in a Timely Manner

Defendant American Linen did not supplement its initial disclosures or

discovery responses in a timely manner after receiving reasonable notice that they

contained incorrect information.  The Court measures timeliness based on Defendant's

diligence in obtaining corrective information and the time that it took for it to

supplement thereafter.  *See Carroll*, 2020 WL 7664731, at *3.  It finds that Defendant,

exhibited passivity rather than diligence after Mr. Hartman's deposition on March 29,

2019 provided it with reasonable notice of the need to provide corrective information

about its dry-cleaning activities and PCE use.  Despite receiving additional evidence of

these activities from Plaintiffs on April 1, 2019 and December 26, 2019, *doc. 258-2* at

73:2–5; *doc. 200-12; doc. 200-13*, Defendant made no effort to reassess the content of its

initial disclosures and discovery responses until Mr. Castillo corroborated Mr.

Hartman's testimony almost seventeen months later during a deposition that Plaintiffs

organized.  *See doc.* 279 at 9–10.  Defendant then waited another month and a half to

provide Plaintiffs with corrective information about its dry-cleaning operations and

PCE use and even then, only did so four days before the close of fact discovery as a

response to Plaintiffs' requests for admission.  Eighteen months of passivity and delay

is unreasonable.

The Court acknowledges that the case was stayed for almost eleven of these

eighteen months.  The stay, however, does not absolve Defendant of its dilatoriness.

The stay suspended Defendant's obligation to supplement from August 21, 2019 until

July 20, 2020, but not its obligation to seek corrective information with diligence during

this time.  Even if it did, seven months of passivity and delay, the balance that remains

if the Court excludes the months of the stay from its calculations, is still unreasonable.

*See, e.g., Carroll*, 2020 WL 7664731, at *3 (finding that a five-month delay in

supplementation unreasonable).

       c.  Sanctions Imposed

      The Court sanctions Defendant American Linen for the reasonable costs Plaintiffs

incurred to investigate its dry-cleaning operations and PCE use from March 30, 2019 to

October 5, 2020.  Federal Rule of Civil Procedure 37(c) empowers the Court to order

Defendant to pay the reasonable expenses, including attorney's fees, caused by its

failure to supplement in a timely manner unless the failure was substantially justified or

harmless.  Fed. R. Civ. P. 37(c)(1)(A).  The Court also has the discretion to impose other

appropriate sanctions, such as those listed in Fed. R. Civ. P. 37(b)(2)(A) and enumerated

previously in this order.  Fed. R. Civ. P. 37(c)(1)(C).

      The determination of whether a failure to supplement "is justified or harmless is

entrusted to the broad discretion of the district court."  *Woodworker's Supply, Inc. v.

Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999) (internal quotations and

citation omitted).  Factors that guide this discretion include (i) the prejudice to the party

entitled to receive the supplementation; (ii) the ability of that party to cure this

prejudice; (iii) the extent to which allowing the undisclosed evidence would disrupt the trial; and (iv) the disclosing party's bad faith or willfulness.  *Id.*; *Jama*, 304 F.R.D. at 300. Here, the balance of these factors favors sanctions.

Defendant American Linen's failure to supplement its initial disclosures and discovery responses in a timely manner prejudiced Plaintiffs in the forms of increased researched expenditures and the opportunity cost of spending their time, energy, and money to obtain evidence of activities that Defendant now concedes.  As a result of Defendant's sworn statements that it never conducted dry cleaning operations or used PCE, Plaintiffs were forced to conduct public records research, subpoena third parties, interview dozens of potential witnesses and conduct additional depositions in order to prove the contrary.  *See doc. 264* at 6; *264-1.*  This research not only cost Plaintiffs money but prevented them from allocating more of their funds, time, and energy to obtaining evidence of factual matters that remain disputed.

Plaintiffs have limited ability to cure this prejudice.  To the extent that Plaintiffs require additional time for fact discovery due to Defendant's late supplementation, they could move the Court to reopen discovery for specific purposes.  However, they cannot themselves cure the additional expenses they incurred due to Defendant's dilatory supplementation or recoup the time and energy that they spent obtaining evidence of facts that Defendant now concedes.

Defendant American Linen's failure to supplement its initial disclosures and discovery responses in a timely manner did not disrupt trial. No trial date been set for this matter. Nor does Defendant's functional supplementation in its admission present previously undisclosed evidence necessitating additional discovery and a concomitant deferment of any trial date that could be set in the near future. Instead, the admission amends Defendant's long-held stance on its historical dry-cleaning operations and PCE use based on testimony provided former employees during discovery. Finally, the significant disruption and delay that the case has experienced is attributable to the parties repeatedly extending the stay to facilitate a global settlement, rather than Defendant's delayed supplementation. The Court doubts that Defendant's untimeliness materially contributed to these delays as its admissions has not changed the parties' settlement positions.

Defendant American Linen's failure to supplement its initial disclosures and discovery responses in a timely manner was willful. Defendant insists that it did not begin to understand that its stated position about its dry-cleaning activity was incorrect until after the deposition of Mr. Castillo on August 21, 2020. *Doc. 279* at 8, 9–10; *doc. 269-1* at 2. Given the evidence presented to Defendant about its dry-cleaning operations and PCE prior to that date, the Court considers this position one of willful ignorance. Mr. Hartman, whose testimony Defendant credits in is admission, *see id.* at 8, testified on March 29, 2019 that Defendant engaged in dry-cleaning activities with PCE. His

testimony was consistent with that of Mr. Jasso, who testified to the same a week

earlier, and corroborated by documentary evidence on December 26, 2019.  Defendant,

however, elected to ignore, rather than investigate, this evidence for eighteen months

until Plaintiffs' First Request for Admission forced it to revisit the issue of its dry-

cleaning activities.  This inaction was Defendant's deliberate, willful choice.[8]

　　　As the *Woodworker Supply* factors favor sanctions, the Court sanctions Defendant

American Linen for the reasonable costs, including attorney's fees, incurred by Plaintiffs

to research Defendant's dry-cleaning operations and PCE use from March 30, 2019 until

October 5, 2020.  The Court declines Plaintiffs' request to "designat[e] the facts that

American Linen conducted PCE dry cleaning and released [PCE] into the environment

as established for purposes of this case." *Doc. 263* at 2.  With respect to the first fact, the

parties no longer dispute that Defendant conducted dry-cleaning operations with PCE.

As for the second fact, such a draconian sanction would violate the principle that the

Court select the sanction that is the least severe of those available to deter and punish

Defendant adequately.  *See Herlihy*, 186 F.R.D. at 646.  Assigning Defendant the

reasonable costs caused by its failure to supplement its initial disclosures and discovery

---

[8] In the alternative, the Court finds that Defendant American Linen's failure to supplement its disclosures and discovery responses in a timely manner was negligent because a reasonable litigant would have learned that these documents contained incorrect information after Mr. Hartman's deposition on March 29, 2019 and not taken until October 5, 2020 to obtain and disclose corrective information.  Proceeding under this finding would not bar the Court from sanctioning Defendant for its untimely supplementation, nor change the Court's conclusion as to the appropriateness of sanctions. *See Jama*, 304 F.R.D. at 302.

responses in a timely manner is not only sufficient to deter it from future discovery

malfeasance, but also compensates Plaintiffs for the prejudice that they sustained but

cannot cure themselves.

   3.  *No Sanctions for Defendant's Incomplete Responses to Plaintiffs' Interrogatories and Requests for Production or Incorrect Statements about its Operational History*

   The Court does not sanction Defendant American Linen for responding to

Plaintiffs' interrogatories and requests for production with incomplete and now-

incorrect information.  Defendant's conduct is not sanctionable under Rule 37(d)

because Defendant has responded to Plaintiffs' interrogatories and requests for

production, albeit inadequately.  *See New Horizont*, 250 F.R.D. at 220–21.  Nor are

Defendant's inadequate responses sanctionable under Rule 37(b) since, before today,

the Court had not found them deficient and ordered Defendant to provide responses

based on all the information available to it and all the documents that it controls.  *See*

*Lillie*, 40 F.3d at 1109; Fed R. Civ. P. 37(b)(2).  This leaves the Court's inherent authority,

which requires more explanation.

   Defendant American Linen's incorrect statements are not sanctionable under the

Court's inherent power as there is insufficient evidence that they were made willfully or

in bad faith.  Courts have the inherent authority to sanction a party for willfully

providing incorrect or misleading answers to interrogatories or during a deposition.

*Chavez v. City of Albuquerque*, 402 F.3d 1039, 1042–44 (10th Cir. 2005); *Archibeque v.*

*Atchison, Topeka, & Santa Fe Ry. Co.*, 70 F.3d 1172, 1173–74 (10th Cir. 1995); *LaJeunesse v.*

*BNSF Ry. Co.*, 333 F.R.D. 649, 653–73 (D.N.M. 2019).  While Defendant has admitted that its repeated, categorical denials of its dry-cleaning operations and PCE use were incorrect, there is no evidence that it *knew* that its statements were incorrect when it made them.  Rather, the evidence shows that Defendant made the now-incorrect statements in the 2012 Affidavit, its Answer to Plaintiffs' First Amended Complaint, its initial disclosures, and its responses to Plaintiffs' First Set of Interrogatories and Requests for Production based upon its incomplete information about its historical operations since it did not fully investigate these operations before making the statements.  While a failure to investigate could be so complete as to constitute bad faith, the Court does not find that the current record supports such a finding against Defendant.[9]

The Court recognizes that, in addition to being incorrect, the information provided by Defendant American Linen did not and does not reflect all information available to it.  However, it does not sanction Defendant pursuant to its inherent power for providing incomplete information because the Federal Rules of Civil Procedure provide an adequate mechanism for addressing this.  *See Chambers*, 501 U.S. at 50.  The

---

[9] Plaintiffs contend that the Court does not have to find willfulness or intent in order to impose a non-dispositive sanction on Defendant American Linen for its incorrect statements.  *Doc. 263* at 5–7; *doc. 288* at 9–11.  Plaintiffs, however, do not direct the Court to, nor has the Court found in its research, a single case where a court used its inherent authority to sanction a party for providing statements that were consistent with the party's knowledge when it made them but turned out to be incorrect later.  *Markham*, the only case Plaintiffs cite for their contention, stands for the proposition that a court need not find willfulness to impose a non–dispositive sanction pursuant to Rule 37(b) and its inherent authority for violating a court order and withholding evidence.  2004 WL 3019308, at *12.

Court has ordered Defendant to provide complete discovery responses based on all the information reasonably available to it and all the documents that it controls.  Should Defendant fail to do so, Plaintiffs may seek sanctions under Rule 37(b).

## IV.    CONCLUSION

For the foregoing reasons, the Court: (i) GRANTS Plaintiffs' Motion for Protective Order without prejudice to Defendant American Linen seeking the Court's leave to take Plaintiffs' second Rule 30(b)(6) depositions in a subsequent motion; (ii) GRANTS Defendant American Linen's Motion for Protective Order without prejudice to Plaintiffs seeking the Court's leave to re-depose Defendant under Rule 30(b)(6) in a subsequent motion; (iii) DENIES Plaintiffs' Motion to Compel Discovery and for Sanctions with respect to its request for the Court's leave to re-depose Defendant without prejudice to Plaintiffs' seeking this leave in a subsequent motion; (iv) GRANTS Plaintiffs' Motion to Compel Discovery and for Sanctions with respect to compelling complete responses to Interrogatories Nos. 5, 8, and 9 and Requests for Productions Nos. 4, 7, and 8 and sanctioning Defendant American Linen for producing an inadequately prepared Rule 30(b)(6) designee and failing to supplement its initial disclosures and discovery responses in a timely manner; and (v) DENIES Plaintiffs' Motion to Compel Discovery and for Sanctions with respect to sanctioning Defendant American Linen for the initial content of its discovery responses.

IT IS HEREBY ORDERED that (i) the parties' notices for additional Rule 30(b)(6) depositions are QUASHED; and (ii) any party wishing to re-depose a party move the Court for leave to do so **within fourteen (14) days of this order**.

IT IS ALSO ORDERED that, **within five (5) days of this order,** Plaintiffs submit an affidavit detailing the reasonable expenses that they incurred to depose Mr. Lutz on April 1, 2019, investigate Defendant's dry-cleaning operations and PCE use from March 30, 2019 to October 5, 2020, and bring the instant Motion to Compel and for Sanctions. If Defendant American Linen wishes to contest the reasonableness of any expenses claimed by Plaintiffs, it is ORDERED to submit its objections **within five (5) days of Plaintiffs filing their affidavit**.

IT IS FURTHER ORDERED that Defendant American Linen do the following **within thirty (30) days of this order**: (i) identify and produce all documents responsive to Requests for Production Nos. 4, 7, and 8 that it has practical ability to obtain; (ii) make a reasonable effort to obtain information about its historical dry-cleaning operations and PCE use from all documents that it controls; (iii) make a reasonable effort to obtain information about its historical dry-cleaning operations and PCE use from former employees, like Mr. Watkins, whose identities are known or reasonably available to it; (iv) provide answers to Interrogatories Nos. 5, 8, and 9 that are based on all the information available to it and address the full temporal scope of the questions; and (v) supplement its response to Interrogatory No. 13 accordingly.

In an effort to head off further dispute and motion practice on this matter, the Court will comment briefly on what Defendant American Linen must do to comply with this order to compel.  Defendant American Linen must produce all documents responsive to Plaintiffs' Requests for Production Nos. 4, 7, and 8 that it has practical ability to obtain and catalog the steps that it has taken do so.  This catalog should, at minimum, list the individuals and entities from which it has sought responsive documents and describe the efforts that it has made to obtain responsive documents from each individual and entity.

Defendant must respond to Plaintiffs' Interrogatories Nos. 5, 8, and 9 based on all the information reasonably available to it about its historical dry-cleaning operations and PCE use.  This includes any information Defendant learns from identifying and reviewing relevant documents within its control and making a reasonable effort to interview former employees, like Mr. Watkins, whose identities are known or reasonably available to it.[10]  It also includes information that Defendant has gained from its communications with its current employees, its own investigation of its historical

---

[10] The identity of a former employee is reasonably available to Defendant American Linen if it is listed in a document that Defendant controls, known by a current employee, or known by a former employee whose identity is presently known to Defendant and who is capable of being interviewed with reasonable effort.  In addition to Mr. Watkins, Plaintiffs have identified Mr. Watkin's father, Ross Hartman, Larry Hartman, and Victor Jasso as former employees whose identities are known to Defendant via Mr. Lutz and who may have information about Defendant's dry-cleaning operations and use of PCE.  *Doc. 288* at 4. Defendant, however, has already made a reasonable effort to obtain the information that the latter two have about its historical operations by having its attorney attend their depositions and question them about its historical operations at this time.  *See doc. 269-3* at 4:10; *doc. 279-3* at 3:6–10.  Defendant has not questioned the former two about its historical operations because it believes them to be dead.  *See doc. 279-1* at 74:20–75:19.  Plaintiffs offer no evidence to refute this belief.

operations, the depositions of Mr. Jasso, Mr. Hartman, and Mr. Castillo, and any

relevant documents received from Plaintiffs.[11]

This obligation does not mean, as Plaintiffs allege, that Defendant American's

responses are incomplete unless they contain the following: "historical purchase

volumes, throughput, and use of PCE; suppliers and supplies; spills or releases, and the

steps taken to clean or mitigate them; PCE dry cleaning machines, and equipment

used." *Doc. 263* at 8. Plaintiffs seek documents and information from decades ago.

Any document that did contain this information may no longer exist or be within

Defendant's control. Similarly, persons who have this information may be deceased or

not identifiable and contactable with reasonable effort. It is therefore possible that

Defendant may produce all documents that it controls without producing documents

containing this information. Likewise, Defendant may exert a reasonable effort to

obtain all responsive information available to it and fail to find the detailed information

that Plaintiffs seek. *See Barron*, 168 F.R.D. at 177. If this happens, Defendant should

clearly state the aspects of Plaintiffs' interrogatories to which it lacks the necessary

---

[11] This documentation includes, but is not limited to, the following: (i) advertisements from the 1950s for dry-cleaning services at the company's facility on 525 N. Church Street (*doc. 200-12* at 2–4); (ii) an entry in a phonebook advertising dry-cleaning at the company's facility on 500 N. Main St. (*doc. 200-12* at 5); and (iii) an account payment authorization from 1972 stating that the company had dry-cleaning equipment and PCE drums at its facility on 500 N. Main St. (*doc. 200-13* at 2, 4). The Court catalogs these documents solely to identify sources available to Defendant that may have information about its historical dry-cleaning operations and PCE use. This catalog should not be construed to comment on these documents' authenticity or whether they are sufficient to establish any facts about Defendant's dry-cleaning operations and PCE use.

information to make a full, fair and specific answer and detail the efforts that it has

made to obtain the information.  *Miller*, 76 F.R.D. at 140; *Milner* 73 F.R.D. at 632.


　　　　**IT IS SO ORDERED**.

　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　GREGORY B. WORMUTH
　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE