IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CITY OF LAS CRUCES, *et al.*,

     Plaintiffs,

v.                                 Civ. No. 17-809 JCH/GBW

UNITED STATES OF AMERICA, *et al.*,

     Defendants.

**ORDER GRANTING AND DENYING IN PART AMERICAN LINEN'S FIRST
MOTION TO COMPEL WRITTEN DISCOVERY, SECOND MOTION TO COMPEL
WRITTEN DISCOVERY, MOTION TO DETERMINE SUFFICIENCY OF ANSWERS
TO REQUESTS FOR ADMISSION AND DEEM MATTERS ADMITTED, AND
MOTION TO MODIFY CASE MANAGEMENT DEADLINES; GRANTING
PLAINTIFFS' MOTION FOR PROTECTIVE ORDER QUASHING AMERICAN
LINEN'S RULE 30(b)(6) DEPOSITION NOTICES TO JACOBS ENGINEERING
GROUP, INC., DANIEL B. STEPHENS & ASSOCIATES, INC., AND JOHN
SHOMAKER & ASSOCIATES, INC. AND MOTION FOR PROTECTIVE ORDER
QUASHING PORTIONS OF AMERICAN LINEN'S RULE 30(b)(6) DEPOSITION
NOTICES TO THE CITY OF LAS CRUCES AND DOÑA ANA COUNTY; AND
DENYING AMERICAN LINEN'S MOTION TO COMPEL PLAINTIFFS TO
DESIGNATE WITNESSES PURSUANT TO FED. R. CIV. P. 30(b)(6) AND
37(a)(3)(B)(II)**

THIS MATTER comes before the Court on seven non-dispositive pretrial motions

related to reopened discovery on Plaintiffs' arranger claim: (i) American Linen Supply

of New Mexico, Inc.'s ("American Linen") First Motion to Compel Written Discovery

(*doc. 387*); (ii) American Linen's Second Motion to Compel Written Discovery (*doc. 388*);

(iii) American Linen's Motion to Determine Sufficiency of Answers to Requests for

Admission and Deem Matters Admitted (*doc. 390*); (iv) American Linen's Motion to

Compel Plaintiffs to Designate Witnesses Pursuant to Fed. R. Civ. P. 30(b)(6) and

37(a)(3)(B)(ii) (*doc. 389*); (v) Plaintiffs' Motion for Protective Order Quashing American

Linen's Rule 30(b)(6) Deposition Notices to Jacobs Engineering Group, Inc., Daniel B.

Stephens & Associates, Inc., and John Shomaker & Associates, Inc. ("JEGI," "DBSA,"

and "JSAI," respectively) (*doc. 384*); (vi) Plaintiff's Motion for Protective Order

Quashing Portions of American Linen's Rule 30(b)(6) Deposition Notices to the City of

Las Cruces and Doña Ana County (*doc. 386*); and (vii) American Linen's Motion to

Modify Case Management Deadlines (*doc. 385*).

Having reviewed the Motions and their attendant briefing (*docs. 400, 401, 404,

405, 406, 407, 408, 411, 413, 415, 416, 417, 418, 419*)—including American Linen's

resubmissions of corrupted exhibits (*docs. 409*) and belated submission of an omitted

exhibit (*doc, 420*)—having conducted a hearing on these Motions (*doc. 430*), and being

otherwise fully advised in the premises, the Court GRANTS IN PART AND DENIES IN

PART American Linen's First Motion to Compel Written Discovery, Second Motion to

Compel Written Discovery, Motion to Determine Sufficiency of Answers to Requests for

Admission and Deem Matters Admitted, and the part of American Linen's Motion to

Modify Case Management Deadlines on which the Court deferred ruling on August 26,

2021, *see doc. 397*; GRANTS Plaintiffs' Motions for Protective Orders Quashing

American Linen's Rule 30(b)(6) Deposition Notices to JEGI, DBSA, and JSAI, and

Portions of American Linen's Rule 30(b)(6) Deposition Notices to the City and County;

and DENIES American Linen's Motion to Compel Plaintiffs to Designate Witnesses

Pursuant to Fed. R. Civ. P. 30(b)(6) and 37(a)(3)(B)(ii).

## I.    BACKGROUND

Plaintiffs bring suit under the Comprehensive Environmental Response,

Compensation, and Liability Act, 42 U.S.C. § 9601 et seq. ("CERCLA"), seeking cost

recovery and contribution to costs incurred in cleaning up the Griggs & Walnut Ground

Water Plume Superfund Site ("the Site"), a hazardous waste site in Las Cruces, New

Mexico contaminated with perchloroethylene ("PCE").  *See generally docs. 79, 306.*  In

December 2017, the Environmental Protection Agency ("EPA") concluded, under 42

U.S.C. § 9607(a)(2), that Plaintiffs were liable as owners/operators for the Site's cleanup

costs.  *Doc. 235-7.*  The EPA considered other potentially responsible parties ("PRPs")—

including various dry-cleaning entities in Las Cruces— but decided to not pursue

CERCLA claims against these entities after finding it unlikely that PCE from their

facilities migrated eastward into the Site.  *See doc. 238-3* at 2; *doc. 235-1* at 2.

During the pendency of EPA proceedings, Plaintiffs filed suit in this Court.  *See*

*doc. 1.*  Initially, Plaintiffs only raised owner/operator and arranger claims against

Defendants United States of America, United States Department of Defense, and the

National Guard Bureau ("the United States Defendants") pursuant to 42 U.S.C. §

9607(a)(2) and (3).  *See generally id.*  In August 2018, Plaintiffs amended their complaint

to add owner/operator and contribution claims against American Linen and other

owners/operators of purported dry-cleaning facilities (collectively, "the Dry-Cleaning

Defendants") pursuant to 42 U.S.C. §§ 9607(a)(2), 9613(f)(1).  *See doc. 79* at ¶¶ 20–25, 57,

65 ("First Amended Complaint").  In February 2021, Plaintiffs amended their complaint

for a second time to add an arranger claim against American Linen pursuant to 42

U.S.C. § 9607(a)(3), *see doc. 306* ("Second Amended Complaint"), after obtaining the

Court's leave to do so, *see doc. 303*.  Between December 2018 and January 2021, Plaintiffs

settled and/or dismissed all claims against all Defendants except American Linen.  *See*

*doc. 134* (Jose and Yvonne Coronado); *doc. 225* (United States Defendants); *doc. 299*

(Defendants Chisholm's-Village Plaza, LLC; The Lofts of Alameda, LLC; and Rawson

Leasing Limited Liability Co.).

 Discovery in this case has proceeded in fits and starts, in part due to the Court

staying proceedings from August 2019 to July 2020 to facilitate negotiations between

Plaintiffs and the United States Defendants.  *See docs. 189, 214*.  Fact discovery closed on

October 9, 2020, *see docs. 214, 332*, except for American Linen's Rule 30(b)(6) depositions

of Plaintiffs, *see doc. 333; doc. 366* at 2.  Expert discovery closed on February 19, 2021.  *See*

*doc. 276* at 1; *doc. 332* at 4 n.1.

 On February 9, 2021, Plaintiffs and American Linen met and conferred about

reopening discovery as to the arranger claim that Plaintiffs had just raised in their

Second Amended Complaint.  *See doc. 313*.  In their Joint Status Report and Provisional

Discovery Plan ("JSR"), American Linen and Plaintiffs

agree[d] to a limited discovery period for purposes of exploring only the arranger claim added against American Linen in Plaintiffs' Second Amended Complaint (Doc. 306) and American Linen's forthcoming answer thereto, and any new counterclaims and cross-cross claims asserted therein Specific to Document 306, those allegations are made in paragraphs 24, 39, 41-51, 60 and, to a limited extent, 61-62. Inquiry on paragraphs 61-62 will be limited to necessary costs of response that Plaintiffs allege have increased as a result of alleged PCE releases near the Las Cruces Dam. … [N]o fact discovery will be permitted on any topic already encompassed by the [First] Amended Complaint…. To the extent that any of those paragraphs cited in Doc. 306 above relate to facts already pled (i.e., regarding any PCE releases at locations other than near the Dam), no discovery shall be allowed. Plaintiffs and American Linen may take discovery on any allegation, statement, claim, defense, denial or other averment made by American Linen in its forthcoming answer to Plaintiffs' Second Amendment Complaint that differs from or supplements those made in its Answer to Plaintiffs' Amended Complaint (Doc. 111).

*Id.* at 18-19 (footnote omitted).  Nine days later, this agreement collapsed.  *See doc. 318* at 2.  The Court ordered the parties to meet and confer again about discovery on the Second Amended Complaint and American Linen to file a motion to reopen discovery if the meet and confer process did not yield an agreement.  *See doc. 319* at 1-2.  After no agreement was reached, American Linen moved the Court for discovery on Plaintiffs' arranger claim.  *Doc. 325.*

On March 22, 2021, the Court granted in part American Linen's Motion to Permit Discovery on Plaintiffs' Arranger Claim.  *Doc. 332.*  It reopened discovery "on matters related to the factual and expert basis for Plaintiffs' arranger claim" since Plaintiffs raised this claim against American Linen for the first time after the close of discovery.  *Id.* at 6 (footnote omitted).  The Court defined the scope of reopened discovery as that to

5

which the parties had agreed during their February 9, 2021 meet and confer and

adopted verbatim the language that the parties had proposed in their JSR.  *See id.* at 6-7

(quoting *doc. 313* at 19).

The parties have disputed the scope of reopened discovery ever since.  On June

30, 2021, the Court held an informal status conference on this dispute.  *Doc. 366.*  During

that conference, the Court explained that whether a topic was discoverable "did not

turn on whether the question could have been asked during the previous discovery

period" but rather whether "it was closely related to the arranger claim as described in

the numbered allegations from the [Second] Amended Complaint listed in the

discovery order."  *Id.* at 3.  The Court clarified that reopened discovery extended "into

whether PCE readings on the Site's eastern boundary … could have been caused by

PCE sources other than the release at the dam," "the nature and size of the PCE plume

in the Site," and, in the modeling context, "the extent to which PCE from locations other

than the Dam Area contributed to the Site's contamination." *Id.* at 3–6.  The Court

further explained that "it considered questions about a spill of PCE at [American

Linen's] facility—some of which was vacuumed up and then released elsewhere and

some of which seeped into the ground—and how any such spill was cleaned up

appropriate." *Id.* at 5.

On July 19, 2021, reopened discovery closed.  *Doc. 332* at 9.  On August 6, 2021,

the Court extended the discovery motion deadline to August 20, 2021, *doc. 381* at 1, to

afford the parties additional time to meet and confer about their numerous discovery disputes.

On August 20, 2021, Plaintiffs and American Linen filed the seven discovery motions at bar. *See docs. 384, 385, 386, 397, 388, 389, 390.* The parties responded to these motions on September 3, 2021. *See docs. 400, 401, 404, 405, 406, 407, 408.* On September 10, 2021, American Linen refiled several exhibits whose original files had been corrupted. *Doc. 409.* Briefing was completed on the parties' seven discovery motions on September 17, 2021, when the parties filed their respective replies, *docs. 411, 413, 415, 416, 417, 418, 419.* On September 22, 2021, American Linen filed an exhibit that it had been omitted from one of its replies by mistake. *See doc. 420.* On October 6, 2021, the Court held a hearing on these motions. *See doc. 430.*

## II.   SCOPE OF REOPENED DISCOVERY

The Court begins its analysis by clarifying the scope of reopened discovery—a clarification necessitated by the parties reading language that they jointly proposed in radically different ways. Plaintiffs rely on the phrase "no fact discovery will be permitted on any topic already encompassed by the [First] Amended Complaint," to contend that the reopened discovery is limited to

> 1) the location at which American Linen arranged for PCE to be transferred to a pumper truck …; and 2) the location at which the PCE was ultimately disposed of, giving rise to the arranger claim: the area identified by Victor Jasso in his deposition near the Las Cruces Flood

> Control Dam … includ[ing] locations to which the PCE released by
> American Linen has traveled; specifically: east of CLC wells 19 and 21.

*Doc. 409-5* at 5; *see also 366* at 4.  By contrast, American Linen leans on the phrase

"American Linen may take discovery on any allegation, statement, claim,

defense, denial or other averment made … in its forthcoming answer to

Plaintiffs' Second Amendment Complaint that differs from or supplements those

made in its Answer to Plaintiffs' [First] Amended Complaint" to argue that

reopened discovery includes all discovery relevant to its new theory of the case:

PCE from Plaintiffs' facilities migrated to GWMW-15, causing the spike that

provides the foundation for Plaintiffs' arranger claim.  *See doc. 388* at 3-6; *doc. 389*

at 15-16; *doc. 390* at 2.  Neither interpretation for the scope of reopened discovery

is correct.

　　　Generally speaking, the Court has reopened discovery on (i) matters

whose relevance is new (or dramatically increased) as a result of Plaintiffs' newly

pled arranger claim and (ii) matters relevant to the arranger claim, even if

previously relevant to the pre-existing claims, depending upon their importance

to the arranger claim and whether American Linen fairly should have conducted

discovery on such matters given the pleadings prior to the amendment adding

the arranger claim.  In concrete terms, the Court finds the scope of reopened

discovery to include the following:

A.      With respect to PCE sources, this scope includes not only the locations at which American Linen allegedly arranged for and executed the disposal of PCE (e.g., its dry-cleaning facilities and the area near the Flood Control Dam where Jesus Villanueva purportedly dumped liquids removed from these facilities) but also other PCE sources located east of Interstate 25.[1]  It does not extend to any specific PCE source located west of Interstate 25.[2]  *See doc. 332* (expressly barring discovery on PCE release at locations other than those near the Dam).

B.      With respect to PCE fate and transport, the scope includes the fate and transport of PCE from specific sources located east of Interstate 25 and any PCE dumped by Mr. Villanueva near the Flood Control Dam; and the directional flow of groundwater within the entire Site[3] as well as the flow of groundwater to the area just past the eastern border of the Site such as the area of the alleged dumping, and other PCE sources located east of Interstate 25.  While the scope includes the directional flow of groundwater within the Site as a whole, it does not include further discovery tracing PCE to the surface at specific sources

---

[1] These sources include, but are not limited to, the former Smith & Aguirre Construction Yard (now the Home Depot on Telshor Blvd)., the Foothills Landfill, and the Roadrunner Landfill.

[2] These sources include, but are not limited to, the Former Municipal Airport, the County Maintenance Yard, the Walnut Street Storage Yard, and the Former Armory.

[3] The Court highlights that the scope of reopened discovery includes requests focused on the flow of groundwater within the Site as a whole, not just that from the Dam to GWMW-15 (or any other narrow construct).  While this more general area was squarely within the discovery parameters prior to the arranger claim, it is of substantially increased importance since the addition of that claim.

located west of Interstate 25.  In other words, discovery on directional flow of groundwater includes discovery on the particular question of whether PCE from the Site in general (but not a specific PCE source west of Interstate 25) migrated eastward under Interstate 25 to GWMW-15.  The permission to conduct discovery on the directional flow of groundwater may not be manipulated to backdoor discovery on specific PCE sources located west of Interstate 25 (e.g., by using groundwater flow to trace PCE back to specific sources west of Interstate 25).

C. Finally, regarding parties' contributions to the Site's contamination, the scope encompasses any arrangement by American Linen to dispose of PCE and the amount of PCE dumped under this arrangement.  It excludes the remaining parties' respective contributions to the Site's overall contamination, and the equitable apportionment of liability for this contamination.

Plaintiffs contend that reopened discovery does not include any alternative theories for the presence of PCE at GWMW-15—such as the eastward migration of PCE from the Site—since American Linen has not filed an answer to the Second Amended Complaint raising these theories as defenses, contentions, or averments.  *See doc. 406* at 7-9, 11; *doc. 408* at 19-20; *doc. 430* at 3.  Plaintiffs misconstrue the Court's order reopening discovery to require American Linen to plead theories negating the causation element of the arranger claim to obtain

discovery on them.  It may be common practice for parties to plead "bas[e]s to

negate an element of [their opponent's] prima facie case for relief" as defenses.

*Lane v. Page*, 272 F.R.D. 581, 598 (D.N.M. 2011); *see also Martinez v. Naranjo*, 328

F.R.D. 581, 598 (D.N.M. 2018).  Pleading so-called "negative defenses," however,

is not required to obtain discovery on them.  Their purported negation of an

element of a claim for relief makes them relevant to that claim for the purposes of

Federal Rule of Civil Procedure 26(b)(1) and the Court's order reopening

discovery on the arranger claim.

American Linen argues that the scope of reopened discovery includes sources

owned/operated by Plaintiffs and the United States Defendants west of Interstate 25,

these parties' contributions to the Site's contamination, and information central to the

equitable allocation of any liability that it incurs as an arranger.  *See doc. 387* at 8-9; *doc.*

*388* at 3-6; *doc. 389* at 15-16; *doc. 415* at 9.  These matters—particularly the first—have

some relevance to contesting the causation of element of Plaintiffs' arranger claim.

However, they run afoul of the plain language of the order reopening discovery, which

expressly bars discovery of PCE sources other than those near the Flood Control Dam

and precludes discovery on the contribution claims against Plaintiffs, the United States

Defendants, and other Dry-Cleaning Defendants that American Linen raised as

counterclaims and crossclaims in its Answer to Plaintiffs' First Amended Complaint.

*See doc. 332* at 7.

During the original discovery period, American Linen not only had ample opportunity to pursue discovery on equitable allocation of liability, other parties' contributions, and PCE sources owned or operated by those parties west of Interstate 25; it also had an obligation to do so. Proving its counterclaims and crossclaims required American Linen to establish that Plaintiffs and the United States Defendants owned or operated facilities that contributed to the Site's contamination and that any liability it incurred was inequitable. American Linen, though, decided that "there was little reason for [it] to conduct discovery on PCE releases, leaching, and migration on the inside [of] the boundaries of the Site," *doc. 388* at 3, since its theory for the case was that the absence of any PCE in the migration pathway between its facilities and the Site precluded it from being liable as an owner/operator of these facilities. *See id*. American Linen's decision to not pursue discovery on the equitable allocation of liability, other parties' contributions, and PCE sources owned or operated by these parties west of Interstate 25 makes the burdens and expenses of reopened discovery on these matters disproportional to their relevancy to Plaintiffs' arranger claim and American Linen's defenses to it. American Linen sat on its rights and neglected its obligations; now it must bear the consequences of that decision.

## III.   WRITTEN DISCOVERY DISPUTES

The Court GRANTS IN PART and DENIES IN PART American Linen's First Motion to Compel Written Discovery, Second Motion to Compel Written Discovery,

and Motion to Determine Sufficiency of Answers to Requests for Admission and Deem Matters Admitted.  The Court wades through this discovery morass by first recapping the background of the parties' dispute over written discovery, summarizing the applicable legal standards, and adjudicating common issues.  Then, the Court resolves Plaintiffs' objections to, and determines the sufficiency of their response to, each disputed discovery request.

A.  BACKGROUND TO WRITTEN DISCOVERY DISPUTE

The parties' written discovery dispute involves three sets written discovery requests propounded by American Linen on Plaintiffs: (i) American Linen's First Interrogatories, First Requests for Production ("RFPs"), and First Requests for Admission ("RFAs") to Plaintiff City of Las Cruces, served on April 19, 2021, *see doc. 339*; (ii) American Linen's First Interrogatories, First Requests for Production, and First Requests for Admission to Plaintiff Doña Ana County, served on June 18, 2021, *see doc. 358*; and (iii) American Linen's Second Interrogatories, Second Requests for Production, and Second Requests for Admission to Plaintiff City of Las Cruces, also served on June 18, 2021, *see id.*

1.  *American Linen's First Interrogatories, First Requests for Production, and First Requests for Admission to the City of Las Cruces*

Plaintiff City of Las Cruces timely responded to the first set of written discovery requests on May 17, 2021.  *See doc. 349* at 1.  In its responses, the City raised general

objections based on overbreadth, undue burden, privilege, exceeding the scope of reopened discovery, and requesting expert opinions and legal conclusions, *see doc. 387-1* at 3-9—only some of which the City incorporated into specific discovery responses, *see id.* at 9-31; *doc. 390-1* at 2-6. It also raised additional objections to specific discovery requests in its responses to them. *See id.* at 9-31; *doc. 390-1* at 2-6.

Twenty-one days later, on June 7, 2021, American Linen emailed the City of Las Cruces about these objections, *doc. 418-3*, initiating the meet and confer process about them at the very last minute, *see* D.N.M.LR-Civ. 26.6 (requiring parties to proceed under D.N.M.LR-Civ. 37.1 within twenty-one (21) days of service of an objection). On June 14, 2021, the parties reached an agreement wherein American Linen agreed to narrow its definition of the term "Dam" and serve amended versions of RFAs Nos. 4-5 and the City agreed to supplement its responses to Interrogatories Nos. 2, 4, 7-8, RFA No. 1, and RFPs responsive to the narrowed definition for Dam and "do [its] best to respond" to the narrowed versions of RFAs Nos. 4-5 within two weeks of their service. *See doc. 387-3; doc. 404-2*. Three days later, on June 17, 2021, American Linen served the City with amended versions of these RFAs. *See doc. 357*. Two months later, the City responded to these amended RFAs and served American Linen with supplemental responses wherein it raised additional objections and supplemented its answers to Interrogatories 4-9, RFA No. 1, and RFP No. 4. *See doc. 387-1* at 5-29; *doc, 390-1* at 2-6.

Two days later, American Linen filed its First Motion to Compel Written Discovery, asking the Court to overrule the City's general objections and the City's specific objections to Interrogatories Nos. 2-9 and RFPs Nos. 4-6 and compel the City to supplement its responses to these discovery requests. *See generally doc. 387*.  American Linen also filed its Motion to Determine Sufficiency of Answers to Requests for Admission and Deem Matters Admitted, asking the Court to overrule the City's general objections to its first set of RFAs and deem RFAs Nos. 1, 3-5 admitted. *See generally doc. 390*.  On October 5, 2021, the City supplemented its responses to these discovery requests for a second time, *see doc. 428*, withdrawing its reservation of rights with respect to general objections and its incorporations of expert reports and other documents in their discovery responses, *see doc. 430* at 11.  The following day, American Linen withdrew its Motions as to Interrogatories Nos. 2 and 8, RFP No. 5, and RFA No. 3 and Plaintiffs waived their arguments as to these motions' untimeliness under Local Rule 26.6. *See doc. 430* at 10-11.

2.   *American Linen's First Interrogatories, First Request for Production, and First Requests for Requests for Admission to Doña Ana County and Second Interrogatories, Second Requests for Production, and Second Requests for Requests for Admission to the City of Las Cruces*

Plaintiffs City of Las Cruces and Doña Ana County responded to the first set of written discovery requests on the County and the second set of written discovery requests on the City on July 22, 2021. *See doc. 377* at 1; *doc. 386-7* at 1 (extending the

deadline for "pending written discovery requests to July 22, 2021").  In their responses,

they raised general objections based on overbreadth, undue burden, privilege,

exceeding the scope of reopened discovery, and requesting expert opinions and legal

conclusions, *see doc. 388-1* at 2-5; *doc. 388-2* at 2-5—only some of which they

incorporated into specific discovery responses, *see doc. 388-1* at 6-9; *doc. 388-2* at 6-27.

They also raised additional objections to specific discovery requests in their answers to

them.  *See doc. 388-1* at 6-9; *doc. 388-2* at 6-27.

On August 3, 2021, American Linen informed Plaintiffs about deficiencies in

their responses to interrogatories and ROPs.  *See doc. 415-1* at 6-7.  Two days later, it

served them with a draft of its Second Motion to Compel Written Discovery.  *Id.* at 6, 9.

The following day, American Linen implicitly notified Plaintiffs that their responses to

the RFAs were deficient by informing them that it intended to file a motion about these

responses.  *See doc. 415* at 5-6.

On August 13, 2021, the parties met and conferred about the issues in the Second

Motion to Compel, but not the issues in the Motion to Determine Sufficiency of

Answers to Requests for Admission and Deem Matters Admitted.  *See doc. 409-10*.

During this conference, Plaintiffs agreed to supplement their responses to

Interrogatories Nos. 11-12 to the City, Interrogatories Nos. 3 and 7 to the County, and

RFPs Nos. 2-3, 5, and 13 to the County.  *See id.* at 1-2.  They also agreed to consider

withdrawing objections to Interrogatory No. 12 to the City and Interrogatories Nos. 4-10

to the County and to consider supplementing their responses to Interrogatories Nos. 6, 8-11 to the County. *See id.* At the conclusion of this conference, American Linen reiterated its concerns about the County's responses to its first set of RFAs and the City's responses to its second set of RFAs and proposed that the parties review these responses one by one. Plaintiffs, though, refused to do so since American Linen had not provided them with any information about its concerns before the meet and confer. *See doc. 407* at 6; *doc. 417* at 3.

One week later, on August 20, 2021, American Linen filed the instant Second Motion to Compel Written Discovery and the Motion to Determine Sufficiency of Answers to Requests for Admission and Deem Matters Admitted before receiving Plaintiffs' promised supplementation. *See docs. 388, 390.* Therein, it asks the Court to overrule Plaintiffs' general objections and specific objections to Interrogatories Nos. 11-12, RFP No. 11, and RFAs Nos. 6-7, 11, 13 to the City and Interrogatories Nos. 3-12, RFPs Nos. 2-3, 5, 7-10, 13, and RFAs No. 1-3, 5-8, 10 to the County, compel Plaintiffs to supplement their responses to these interrogatories and RFPs, and deem these RFAs admitted. *See doc. 388* at 7-26; *doc. 390* at 14-25.

On September 3, 2021, the County supplemented its responses to American Linen's first set of discovery requests to it and the City supplemented its responses to American Linen's second set of discovery requests to it. *See docs. 402, 403.* Two weeks later, the City again supplemented its responses. *See doc. 410.* On October 5, 2021,

Plaintiffs revised their responses to American Linen's first set of discovery requests to the County and second set of discovery requests to the City, *see doc. 428*, withdrawing their reservation of rights with respect to general objections and their incorporations of expert reports and other documents in their discovery responses, *see doc. 430* at 11.

The following day, American Linen withdrew its Second Motion to Compel Written Discovery as to Interrogatories 11-12 to the City, Interrogatories Nos. 3, 11 to the County, and RFP No. 5 to the County. It also withdrew its Motion to Determine Sufficiency of Answers to Requests for Admission and Deem Matters Admitted as to RFAs Nos. 7-8 to the County. Plaintiffs, for their part, waived their arguments as to these motions' untimeliness under Local Rule 26.6. *See doc. 430* at 10-11.

B.  LEGAL STANDARDS

1.  *Compelling Discovery Under Rule 37(a)*

Federal Rule of Civil Procedure 37(a) allows a party seeking discovery to "move for an order compelling … discovery" after noticing other parties and all affected persons and making a good faith effort to confer with the party or person from which discovery is sought. Fed. R. Civ. P. 37(a)(1). Grounds to compel include failing to answer an interrogatory posed under Rule 33 or produce a document requested under Rule 34. Fed. R. Civ. P. 37(a)(3)(B)(iii), (iv).

Responses that are evasive or incomplete constitute a failure to answer or respond. Fed. R. Civ. P. 37(a)(4). A response to an interrogatory is evasive or

incomplete where it omits information obtainable by the responding party with reasonable effort. *See Milner v. Nat'l Sch. of Health Tech.*, 73 F.R.D. 628, 632 (E.D. Pa. 1977); *Miller v. Doctor's Gen. Hosp.*, 76 F.R.D. 136, 140 (W.D. Okla. 1977). A response to a request for production of documents is incomplete where it omits documents that the responding party has practical ability to obtain. *See Landry v. Swire Oilfield Servs., LLC*, 323 F.R.D. 360, 382 (D.N.M. 2018); *In re NTL, Inc. Secs. Litig.*, 244 F.R.D. 179, 195 (S.D.N.Y. 2007). "The party moving to compel discovery has the burden of proving the opposing party's answers [are] incomplete." *Duran v. Donaldson*, No. 1:09-cv-758 BB/DJS, 2011 WL 13152655, at *2 (D.N.M. June 2, 2011) (unpublished) (citing *Daiflon, Inc. v. Allied Chem. Corp.*, 534 F.2d 221, 227 (10th Cir. 1976)).

2. *Motion to Determine the Sufficiency of an Answer or Objection to an RFA*

Federal Rule of Civil Procedure 36(a)(6) allows a party requesting an admission to move the Court to determine sufficiency of the responding party's answer or objection. Fed. R. Civ. P. 36(a)(6). An answer to a RFA is sufficient where the responding party admits the truth of the matter asserted, "specifically den[ies] it or state[s] in detail why [it] cannot truthfully admit or deny it." Fed. R. Civ. P. 36(a)(4).

Judges in this Court and its sister courts differ over the amount of detail that a responding party must provide when it lacks sufficient information to admit or deny an RFA. Rule 36(a)(4) allows the responding party to "assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has

made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny." *Id.*  The majority rule is that the responding party must detail the extent of its reasonable inquiry.  *See, e.g.*, *Hatchett v. United Parcel Serv., Inc.*, No. 13-cv-1183 MCA/SMV, 2014 WL 12786897, at *2 (D.N.M. Oct. 1, 2014) (unpublished); *Duran v. Curry Cnty. Adult Det. Ctr.*, No. 09-cv-0758 MCA/SMV, 2012 WL 12919373, at *5 (D.N.M. Dec. 31, 2012) (unpublished) (gathering cases); *A. Farber & Partners, Inc. v. Garber*, 237 F.R.D. 250, 254 (C.D. Cal. 2006); *House v. Giant of Maryland, LLC*, 232 F.R.D. 257, 262 (E.D. Va. 2005).  The minority rule is that the responding party must do no more than state that, after making a reasonable inquiry, it lacks sufficient information to admit or deny the RFA.  *See, e.g.*, *Stark-Romero v. Nat'l R.R. Passenger Co. (AMTRAK)*, 275 F.R.D. 551, 556-57 (D.N.M. 2011); *Adley Express Co. v. Highway Truck Drivers & Helpers Local No. 107*, 349 F. Supp. 436, 451–52 (E.D. Pa. 1972).

The Ninth Circuit is the only Court of Appeals that has weighed in on this issue. In *Asea, Inc. v. S. Pac. Transp. Co.*, 669 F.2d 1242 (9th Cir. 1981), the Ninth Circuit noted that "[t]he language of Rule 36(a) … permit[s] … a construction" in which "an answer complies with the requirements of [the Rule] if it states that the party has insufficient information to admit or deny the matter and that the party has made reasonable inquiry into all readily obtainable information."  669 F.2d at 1245–46.  That Court, though, elaborated that it was "not persuaded that an answer to a request for admission necessarily complies with Rule 36(a) merely because it includes a statement that the

party has made reasonable inquiry and that the information necessary to admit or deny the matter is not readily obtainable by him." *Id.* at 1246. Fearing that reading Rule 36(a)(4) to require an answering party to do no more than make this statement would "reduce a litigant's obligation to make 'reasonable inquiry' into a mere semantic exercise" and lead to discovery abuse, the Ninth Circuit simply held that a district court does not abuse its discretion by reading Rule 36(a)(4) to require a party declaring that it lacks sufficient information to admit nor deny a RFA to detail the extent of the inquiry it made before doing so. *Id.* at 1247.

The policy concerns animating the majority rule and the Ninth Circuit's holding in *Asea* are compelling. However, this Court concludes that requiring a responding party to detail the extent of its reasonable inquiry is not the best interpretation of Rule 36(a)(4)'s text. *See Stark-Romero*, 275 F.R.D. at 556–57. The Rule's directive that "[i]f a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it," Fed. R. Civ. P. 36(a)(4), creates a general requirement that any response that does not admit or deny a RFA provide a detailed explanation for why it is not possible to do so. The Rule's provision that "[t]he answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny," *id.,* specifies "what 'in detail' means for the common situation when the answering

party lacks information or knowledge" to do so, *Stark-Romero*, 275 F.R.D. at 556.

Reading Rule 36(a)(4) to require a person who lacked knowledge to admit or deny to

both make the specific statement required by the Rule and detail its reasonable inquiry

would render the requirement for the specific statement surplusage. *Id.*

Requiring a responding party to detail the extent of its reasonable inquiry also

clashes with the clear intent of Rule 36(a)(4)'s drafters.  In 1970, the Advisory

Committee amended Rule 36(a)(4) to clarify that parties must respond to RFAs based on

the information reasonably available to them.  Fed. R. Civ. 36(a) advisory committee's

note to the 1970 amendment.  When doing so the Committee emphasized that its

"revised rule requires only that the answering party make reasonable inquiry and

secure such knowledge and information as are readily obtainable by him" and "state

that he has taken these steps." *Id.*  It addressed concerns about sandbagging by noting

that Rule 37(c) subjects a responding party to sanctions after trial if the requesting party

proves that the requested admission is true, and the responding party lacked a

reasonable basis for believing that it might prevail on the matter.  *See id;* Fed. R. Civ. P.

37(c)(2).

Policy preferences cannot trump the plain meaning of Rule 36(a)(4) and the clear

intent of its drafters.  A response to a RFA is sufficient if it states that, after making a

reasonable inquiry, the responding party lacks sufficient information to admit or deny the request.[4]

C.  COMMON ISSUES

The parties' written discovery dispute raises the following common issues: (1) the permissibility of interrogatories and RFAs about expert opinion; (2) the timeliness of some of the City of Las Cruces' objections; (3) Plaintiffs' use of general objections; and (4) the adequacy of the meet and confer process.  The Court concludes the following: (1) discovery requests about expert opinion are appropriate at this stage in litigation; (2) the City's supplemental objections to American Linen's first set of discovery requests to it are untimely except for those already captured in its initial objections; (3) Plaintiffs' use of general objections is improper, except for those incorporated into a discovery response with an explanation for their applicability; and (4) American Linen failed to meet and confer in good faith about some of the Interrogatories and RFPs that are the object of its Second Motion to Compel Written Discovery, but summarily denying this Motion as to these discovery requests on that basis is inappropriate.

---

[4] While Rule 36(a)(4) does not require the City of Las Cruces to detail the extent of its reasonable inquiry into its RFA responses, Interrogatory No. 9 does.  *See doc. 387-1* at 25.  No analogous interrogatory requests this information from Doña Ana County, though.  *See generally doc. 388-2.*

1.   *Propriety of Interrogatories & Requests for Admission about Expert Opinions*

The Court overrules Plaintiffs' objections about American Linen's discovery

requests improperly seeking expert opinions.  These objections "reflect folklore within

the bar which holds that requests for admission [and interrogatories] need not be

answered if the subject matter of the request … addresses a subject for expert

testimony."  *House*, 232 F.R.D. at 262; *see also McKinney/Pearl Rest. Partners, L.P. v. Metro.*

*Life Ins. Co.*, 322 F.R.D. 235, 252–53 (N.D. Tex. 2016); *Baugh v. Bayer Corp.*, No. 4:11-cv-

525-RBH, 2012 WL 4069582, at *2 (D.S.C. Sept. 17, 2012) (unpublished).

The Federal Rules of Civil Procedure explicitly authorize interrogatories into

opinions and requests to admit their truth.  *See* Fed. R. Civ. P. 33(a)(2) (providing that

"[a]n interrogatory is not objectionable merely because it asks for an *opinion* or

contention that relates to fact or the application of law to fact…." (emphasis added)); *id.*

36(a)(1)(A) (allowing requests for admission on "any matters within the scope of Rule

26(b)(1) relating to … facts, the application of law to fact, or *opinions* about either"

(emphasis added)).  Discovery relating to opinions "can be most useful in narrowing

and sharpening the issues, which is a major purpose of discovery."  Fed. R. Civ. P. 33

advisory committee's note to 1970 amendment; *see also* Fed. R. Civ. P. 36 advisory

committee's note to 1970 amendment.

Where a responding party has already retained experts and disclosed those

testifying, courts routinely overrule objections to discovery requests requiring the party

to consult an expert or provide an expert opinion.  *See, e.g.*, *McKinney*, 332 F.R.D. at 252–53; *Drutis v. Rand McNally & Co.*, 236 F.R.D. 325, 330 (E.D. Ky. 2006).  Before that stage in proceedings, this Court and a few others have sometimes sustained objections to interrogatories and RFAs for seeking expert opinions prematurely.  *See, e.g.*, *Heredia v. Sunrise Senior Living*, No. 8:18-cv-01974-JLS, 2020 U.S. Dist. LEXIS 137763, at *17 (C.D. Cal. July 20, 2020) (unpublished); *Osuagwu v. Gila Reg'l Med. Ctr.*, CIV NO. 11-00001 MV/DJS, 2011 WL 13150558, at *3 (D.N.M. Dec. 2, 2011) (unpublished); *Roberts v. Heim*, 130 F.R.D. 424, 427-28 (N.D. Cal. 1989).  Other courts have simply required parties to answer discovery requests with the knowledge and information that they presently possess or can obtain after reasonable inquiry and supplement their responses once they have retained and consulted with experts and received these experts' reports.  *See, e.g.*, *Jobson v. United States ex rel. Dep't of Veteran Affairs*, No. CIV-17-574-SLP, 2018 WL 8299885, at *5 (W.D. Okla. Aug. 27, 2018) (unpublished); *Nat'l R.R. Passenger Corp. v. Cimarron Crossing Feeders, LLC*, No. 16-cv-1094-JTM-TJJ, 2017 WL 1408226, *3 (D. Kan. Apr. 20, 2017) (unpublished); *Lemaster v. Collins Bus. Corp.*, No. 11-CV-2128 JTM/KGG, 2012 WL 5199738, at *2 (D. Kan. Oct. 22, 2012) (unpublished).

Here, Plaintiffs have been working with expert witnesses since 2019.  Their experts have produced numerous reports about their claims against American Linen and other former Defendants, *see docs. 151, 166, 175, 227*, including initial and rebuttal reports about Plaintiffs' arranger claim.  *See docs. 344, 361*.  Plaintiffs have reasonable

access to all the information that they require to provide complete answers to interrogatories and RFAs about expert opinions and must do so to the extent that they have not already.

2. *Untimeliness of the City of Las Cruces' Supplemental Objections*

The Court overrules the bolded objections in the City of Las Cruces' supplemental responses to American Linen's First Interrogatories, First Requests for Production, and First Requests for Admission to it to the extent that these objections are not raised in the City's initial objections to these discovery requests. Federal Rule of Civil Procedure 33(b)(4) provides that "[a]ny ground not stated in a timely objection [to an interrogatory] is waived unless the court, for good cause, excuses the failure." Fed. R. Civ. P. 33(b)(4). Federal Rules of Civil Procedure 34 and 36 contain no analogous provision for RFPs or RFAs, but courts have similarly interpreted them to waive any objection to a RFP or RFA that is not stated specifically in a timely response absent a showing of good cause. *See, e.g., Robinson v. Arkansas City*, No. 10-1431-HAR, 2012 WL 1674255, at *4 (D. Kan. May 14, 2012) (unpublished) (RFPs); *Wagner v. St. Paul Fire & Marine Ins. Co.*, 238 F.R.D. 418, 423 (N.D.W. Va. 2006) (RFAs). The City makes no argument for good cause. Rather, it contends that its supplemental objections provide further details about its initial, timely objections in light of the Court's illumination of the scope of reopened discovery during a status conference. *See doc. 405* at 7–8.

Therefore, these supplemental objections are waived to the extent that they do not fall within the scope of a preexisting objection.

### 3.   *Impropriety of Plaintiffs' General Objections*

The Court deems Plaintiffs' general objections waived for all discovery requests to which their response does not incorporate a general objection by reference and explain its applicability.[5]  Plaintiffs preface each of their responses to American Linen's three sets of written discovery requests with numbered blanket objections, *see doc. 387-1* at 3–9; *doc. 388-1* at 2–5; *doc. 388-2* at 2–5, some of which they incorporate by number into specific answers, *see doc. 387-1* at 10, 11, 21, 23, 25, 27; *doc. 388-1* at 6, 9.  This Court and other courts have long found general objections to discovery requests inconsistent with the express requirement in Federal Rule of Civil Procedure 33(b)(4), and the implicit requirement in the rules for other discovery requests, that objections to discovery are stated with specificity.  *See, e.g., Heuskin v. D&E Transport, LLC*, Civ. No. 19-957 MV/GBW, 2020 WL 1450575, at *3 (D.N.M. Mar. 25, 2020) (unpublished) ("*Heuskin I*"); *Smash Tech., LLC v. Smash Sols., LLC*, 335 F.R.D. 438, 446 (D. Utah 2020);

---

[5] Plaintiffs may have withdrawn their general objections during the hearing when they withdrew their reservations of rights with respect to these general objections.  *See doc. 430* at 11.  Plaintiffs did not expressly state that they were withdrawing their general objections as well but noted that they considered the Court's opinion in *Heuskin v. v. D&E Transport, LLC*, Civ. No. 19-957 MV/GBW, 2020 WL 1450575, at *3 (D.N.M. Mar. 25, 2020) "well-taken" and had withdrawn their reservation of rights to comply with it.  *Id.*  Compliance with *Heuskin I* also requires the withdrawal of general objections that are not incorporated by reference into a specific discovery response with an explanation of applicability.  In the event that Plaintiffs did not withdraw general objections that do not fit this description in their most recent supplementations (*docs. 427, 428*), the Court overrules them here.

*Futreal v. Ringle*, No. 7:18-CV-00029-FL, 2019 WL 137587, at *3 (E.D.N.C. Jan. 8, 2019)

(unpublished); *D.J. Simmons, Inc. v. Broaddus*, No. CIV 99-1105 JP/LFG, 2001 WL

37125080, at *2 (D.N.M. July 10, 2001) (unpublished).  Specificity requires a showing of

how a particular discovery request is irrelevant, immaterial, unduly burdensome,

overly broad, or otherwise objectionable.  *Heuskin I*, 2020 WL 1450575, at *3; *Smash Tech*,

335 F.R.D. at 446.

Plaintiffs' general objections do not make this showing.  None of them explain

how any specific discovery request (or part of a request) is objectionable.  Rather, they

incant a ground for an objection, sprinkle some caselaw or a citation to the record after

the incantation, and conclude, without any analysis whatsoever, that the objection

applies.  *See doc. 387-1* at 3–9; *doc. 388-1* at 2–5; *doc. 388-2* at 2–5.  Untethered to any

discovery request, these general objections are too conclusory and boilerplate to

constitute valid objections on their own.

Plaintiffs incorporate some of their general objections into specific discovery

responses.  Most incorporations, though, are conclusory.  *See, e.g., doc. 387-1* at 11 ("The

City specifically incorporates its General Objection 7."); *doc. 388-1* at 6 ("The City

specially incorporates General Objections 2 and 6."); *doc. 388-2* at 8 ("The County

specifically incorporates its General Objection 6.").  Like the general objections, these

conclusory incorporations fail to explain how the incorporated objection applies to the

discovery request and therefore do not constitute valid objections.

Some incorporations, though, provide an explanation for how the general objection applies to the discovery request.  *See, e.g.*, doc. 388-1 at 6 (incorporating a general objection about cumulativeness and explaining that the City answered the interrogatory and many related questions during its Rule 30(b)(6) deposition).  Since these incorporations state with specificity how a general objection applies to a discovery request, they constitute a specific objection to that request.

4.  *Adequacy of the Parties' Meet & Confer*

American Linen failed to meet and confer adequately about Interrogatories Nos. 4-10 and RFPs Nos. 2-3, 13 to the County.  Federal Rule of Civil Procedure 37(a)(1) requires a party seeking discovery to meet and confer in good faith with a responding party before moving the Court to compel discovery.  Fed. R. Civ. P. 37(a)(1).  The meet and confer process "is not simply a technical hoop through which a litigant must jump. Rather, [it] is intended to reduce litigation costs and expedite the ultimate disposition of litigation by having counsel, in good faith, attempt to resolve discovery disputes before they ripen into a formal motion."  *Farris v. Roberts*, CIVIL No. 12-221 MV/LFG, 2013 WL 12164704, at *1 (D.N.M. May 3, 2013) (unpublished); *see also OsteoStrong Franchising, LLC v. Richter*, Civ. No. 18-1184 WJ/JFR, 2019 WL 11585220, at *3 (D.N.M. July 3, 2019) (unpublished) (observing that the meet and confer process "fulfills the delay and expense cost saving provisions of the Civil Justice Reform Act").  "Failing to meet and confer in good faith before filing a motion not only adds to the expense and delay in the

29

litigation process, it also consumes valuable judicial resources." *OsteoStrong*, 2019 WL
1158220, at *3.

Meeting and conferring requires the parties to "deliberate, confer, converse,
compare views, or consult with a view to resolve the dispute without judicial
intervention." *Cotracom Commodity Trading Co. v. Seaboard Cop.*, 189 F.R.D. 456, 459 (D.
Kan. 1999).  The process "has an element of concurrence, simultaneous occurrence, and
contemporaneousness." *Benavidez v. Sandia Nat'l Labs.*, 319 F.R.D. 696, 723 (D.N.M.
2017).  It is not satisfied by the exchange of letters or emails sent days apart or "cursory
and perfunctory emails or letters which simply restate each other's positions on the
items of discovery." *Id.*

Meeting and conferring in good faith bars a party seeking discovery from filing a
motion to compel discovery that the responding party has promised to supplement
unless supplementation has been unduly delayed.  *See Zuniga v. Bernalillo Cnty.*, Civ.
No. 11-877 RHS-ACT, 2013 WL 12333609, at *3 (D.N.M. Jan. 10, 2013) (unpublished).
Good faith further precludes parties from turning down an offer to confer on the
discovery dispute, *see LaFleur v. Teen Help*, 342 F.3d 1145, 1152 (10th Cir. 2003); *Lipscher
v. Equifax Info. Servs.*, CIVIL NO. 11-509 BB/LFG, 2011 WL 13277215, at *3 (D.N.M. Dec.
7, 2011) (unpublished), or extend deadlines to facilitate conferring if informal resolution
remains possible, *Benavidez*, 319 F.R.D. at 724.  Good faith also prohibits parties from
"maintaining an untenable position at worst or a tenuous position at best" during the

meet and confer process. *W. Bend Mut. Ins. Co. v. Zurich Am. Ins. Co.*, 308 F. Supp. 3d 954, 958-59 (N.D. Ill. 2018).

American Linen did not complete the meet and confer process about Interrogatory No. 7 and RFPs Nos. 2-3, 13 to the County in good faith before filing its Second Motion to Compel Written Discovery as to them. On August 13, 2021, the County promised to supplement its responses to these requests. *See doc. 409-10*. American Linen, though, filed its motion a week later, rather than giving the County adequate time to do so. It matters not that the County's subsequent supplementation did not moot the parties' entire dispute. The chance that supplementation would have done so—as it did for Interrogatory No. 3 to the County, *see doc. 430* at 10; *see generally doc. 415* (making no argument as to Interrogatory No. 3 after receiving the County's supplemented response)—required American Linen to not file its Motion until it had received and reviewed the County's promised supplementation or supplementation had become unduly delayed. *See Zuniga*, 2013 WL 12333609, at *3. To the extent that the looming discovery motion deadline prompted American Linen to file its motion earlier, the proper recourse was to move the Court to extend that deadline to facilitate this supplementation (either jointly with Plaintiffs or over any objection).

Similarly, American Linen did not finish the meet and confer process about Interrogatories Nos. 4-6 and 8-10 in good faith because it filed its Second Motion to Compel Written Discovery as to these discovery requests before it received a final

decision from the County about whether it would withdraw objections, and/or supplement its responses, to these interrogatories.  At the parties' meet and confer on August 13, 2021, the County pledged to consider withdrawing its objections to Interrogatories Nos. 4-5 and consider withdrawing its objections to and supplementing Interrogatories Nos. 6, 8-10.  *See doc. 409-10*.  American Linen, though, filed its Motion as to these interrogatories seven days later before the County had a chance to finish its consideration and potentially resolve the disputes about these interrogatories without the Court's intervention.

Plaintiffs also contend that American Linen did not meet and confer in good faith about the RFAs to the County.  The Court disagrees.  The County refused American Linen's offer to meet and confer about these RFAs at the parties' conference on August 13, 2021, *see doc. 407* at 6, despite good faith participation in the process requiring the County to meet and confer with American Linen regarding American Linen's concerns about the County's RFA responses, *see Lipscher*, 2011 WL 13277215, at *2.  The County's reason for doing so was that American Linen had not detailed its bases for objecting to its RFA responses before the conference.  *Doc. 407* at 6.  While receiving this information before the conference may have facilitated a more rapid meet and confer process, the Court does not find that it was necessary in this case.  The County's objections and answers to the RFAs raise many of the same issues about expert opinions, legal

conclusions, and scope that American Linen found concerning in the County's interrogatory responses about which the County received a full explanation of concerns.

On occasion, this Court has held that a party's failure to complete the meet and confer process in good faith before filing a discovery motion is a sufficient basis to deny that motion summarily. *See, e.g., Lipscher*, 2011 WL 13277215, at *3. This harsh remedy is inappropriate here, though. *See Benavidez*, 319 F.R.D at 724-25; *Zuniga*, 2013 WL 12333609, at *3. The complexity and numerosity of the various discovery disputes coupled with the looming discovery deadlines leads the Court to excuse American Linen's limited meet and confer failures.

## D.  DISCOVERY REQUESTS TO THE CITY OF LAS CRUCES

The Court compels the City of Las Cruces to supplement its discovery responses to some, but not all, of the disputed discovery requests and does not deem it to have admitted to any RFA.  Specifically, the Court compels the City to supplement its responses to RFAs Nos. 6-7 and Interrogatories Nos. 4-7 and 9. It also narrows the scope of Interrogatory No. 3 and RFP No. 6 to fall within the scope of reopened discovery and compels the City to supplement its responses to these discovery requests accordingly.  As for the remaining disputed discovery requests, the Court deems the City's responses to RFA No. 1 sufficient, sustains the City's objections to RFA Nos. 11 and 13, and RFP No. 11, overrules the City's objections to RFP No. 4 but deems the City's response to it sufficient, and does not deem the City to have admitted RFAs Nos.

4-5 by serving its responses to amended versions of these RFAs more than thirty days after service.

　　1.　*Request for Admission No. 1 to City of Las Cruces*

The Court overrules the City of Las Cruces' objections to RFA No. 1 and deems its supplemented response sufficient.  In RFA No. 1, American Linen asks the City of Las Cruces to "[a]dmit that 'pumping at wells CLC 54 and CLC 57, between 1988 and 2002, caused the eastward migration of the PCE plume to GWMW-15.'"  *Doc. 390-1* at 2 (quoting a report produced in discovery).  The City specifically and timely objected to this request as outside the scope of the reopened discovery and seeking an expert opinion.  When it supplemented its response, it also untimely and improperly objected to the request as overly broad and vague by incorporating a general objection by reference.  *Id.*

None of the City's timely objections have merit.  The objection as to expert opinion and incorporated general objection to vagueness and broadness are invalid for the reasons detailed in "Common Issues," above.  *See supra* at 25-29.  The objection to the RFA exceeding the scope of reopened discovery fails since the request seeks information about the flow of groundwater and the effect that pumping at certain city wells had on this flow.

The City's supplemented answer to RFA No. 1 is sufficient, notwithstanding its meritless objections.  The City first responded to this RFA by stating that "the cited

document contains the statement quoted." It also stated that, after making a reasonable

inquiry, "the information it knows or can readily obtain is insufficient to enable [it] to

admit or deny [the] Request .... at this time … as it asks whether the statement, without

qualification, is true, and discovery and expert evaluation is ongoing." *Id.* This

statement is itself a sufficient answer to the RFA. *See* Fed. R. Civ. P. 36(a)(4); *supra* at 22-

23.

The City, though, went even further as Interrogatory No. 9 requires it to provide

the factual and legal basis for its inability to admit or deny RFA No. 1 and list the

documents and persons it consulted when determining that it could not admit this RFA.

*See doc. 387-1* at 25.  On August 18, 2021, the City supplemented its response to provide

additional information about why it could not admit or deny the RFA at this time.  *See*

*doc. 383*.  It explains that the report cited in RFA No. 1 provides no basis or context for

the quoted statement and that JSAI's groundwater modeling does not support it.  *Doc.*

*390-1* at 2–3 (citing to figures in a rebuttal report from Plaintiffs' expert and 2019

groundwater program evaluation report).  It also explains that JSAI now estimates that

pumping at these wells began in 1990, rather than 1988.  *Id.* at 3 (citing to a June 2021

report from JSAI).

American Linen argues that the request must be admitted because it is "a

verbatim quote from the City's own hydrology and modeling consultant" and Steven

Helgen, one of the City's experts, "gives a similar opinion in his initial report."  *Doc. 390*

at 7.  The RFA, though, does not ask whether the City's consultants and experts have ever stated that pumping at wells CLC 54 and CLC 57, between 1988 and 2002, caused the eastward migration of the PCE plume to GWMW-15.  It asks whether the statement itself is true.  Previous opinions of Mr. Helgen and the City's consultants may be imputed to the City itself, *see* Fed. R. Evid. 801(d)(2)(D), and are clearly relevant to the factfinder's ultimate determination about the RFA's truth.  But the City does not have to adopt its experts' and consultants' previous opinions as true just because they once gave them.  Simply put, opinions change, including those held by litigants, their experts, and their consultants as they obtain more facts.

American Linen also argues that the City's supplementation was untimely and prejudicial and is sanctionable as such.  *See doc. 390* at 11.  Failure to supplement timely pursuant to Rule 26(e) is the providence of Rule 37(c)(1), rather than Rule 36(a)(6) under which American Linen brings its Motion with respect to RFA No. 1.  Procedural issues aside, the paltry record before the Court about the City's supplementation and any prejudice that American Linen incurred from it is insufficient for the Court to award sanctions at this time.

The determination of whether a failure to supplement "is justified or harmless is entrusted to the broad discretion of the district court."  *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999) (internal quotations and citation omitted).  Factors that guide this discretion include (i) the prejudice to the party

entitled to receive the supplementation; (ii) the ability of that party to cure this prejudice; (iii) the extent to which allowing the undisclosed evidence would disrupt the trial; and (iv) the disclosing party's bad faith or willfulness. *Id.*; *Jama v. City & Cnty. of Denver*, 304 F.R.D. 289, 300 (D. Colo. 2014).

The sole prejudice alleged here is that the timing of the supplementation prevented American Linen from questioning Mr. Helgen about the content of the City's supplemental answer to RFA No. 1 during his deposition and otherwise seeking discovery on and litigating the factual issue of whether pumping at wells CLC 54 and CLC 57 caused the eastward migration of the PCE plume to GWMW-15. *See doc. 390* at 10-11; *doc. 417* at 11. The City's supplementation, though, did not change its substantive position to RFA No. 1: after conducting a reasonable inquiry, it lacks sufficient information to admit or deny the RFA. *See doc. 390-1* at 2-3. American Linen provides no explanation for why it needed the additional detail that the City provided for its inability to admit or deny the RFA to question Mr. Helgen about whether pumping at CLC 54 and 57 caused the eastward migration of PCE from the Site to GWMW-15— especially when the eastward flow of PCE is central to American Linen's defense to the arranger claim and Mr. Helgen had previously contended in an expert report that this flow would have transported PCE eastward under Interstate 25 to GWMW-15, *doc. 388-5* at 3. Nor has American Linen shown that the detail the City provided in its supplemental response is materially different from any testimony that Mr. Helgen

provided about this subject during his deposition (such that its disclosure after the
deposition robbed American Linen of the opportunity to question Mr. Helgen about
material differences).[6]

Instead, American Linen attacks the City's supplemental response to RFA No. 1
for providing "numerous claims that were not contained in [Mr. Helgen]'s expert report
on the arranger claim" such as the existence of a high conductivity zone and the
inability of PCE to migrate laterally across this zone.  *Doc. 390* at 11; *see also doc. 417* at 11
(characterizing the claims as "new arguments … raising new technical reports for the
first time after the close of discovery").  This attack, though, is a disguised challenge to
the sufficiency of Mr. Helgen's expert reports.  The supplemental response is expert
opinion about the flow of groundwater and PCE.  *See doc. 390-1* at 3.  If American Linen
was unaware about this opinion until it received the supplemental response to RFA No.
1, the prejudice arises not from any delay in the City's supplementation, but rather the
failure of any of Plaintiffs' experts to disclose this opinion in an expert witness report.
Where opinion is omitted from expert witness reports, Rule 37(c)(1) requires the Court

---

[6] Because the Court finds, on the record before it, that the timing the City of Las Cruces' supplementation
of its response to RFA No. 1 has not prejudiced American Linen, it need not, and does not, consider the
issue of whether that supplementation was timely. The Court notes, though, that American Linen's
contention that the City should have included the supplemental content in its original response, *see doc.
390* at 11, is meritless: this content clearly relies, at least in part, on JSAI's June 2021 report and the City's
expert's June 2021 rebuttal report, *see doc. 390-1* at 3, and so could not have been in included in an answer
provided in May 2021.

to bar testimony about it unless the omission is harmless or justified. *See Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 952 (10th Cir. 2002).

The Court will not rule on the sufficiency of Mr. Helgen's expert reports or whether Mr. Helgen may testify about the opinions expressed in the City's supplemental response to RFA No. 1 under this procedural posture or on the record before it. American Linen's decision to make this argument in a Rule 36(a)(6) motion about the sufficiency of the City's response to RFA No. 1 has not adequately noticed Plaintiffs that the propriety of Mr. Helgen's expert reports and the extent of his testimony are at issue. American Linen also cites to no evidence in support of its contention that the content of the supplemental response is "new" and not contained in any of Mr. Helgen's expert reports. The Court will not "sift through" the extensive record in this case to find complete copies of these reports (should they even exist in the record) and compare their content to the content of the supplemental response. *See S.E.C. v. Thomas*, 965 F.2d 825, 827 (10th Cir. 1992).

2. *Requests for Admissions Nos. 4 & 5 to City of Las Cruces*

The Court does not deem the City to have admitted RFAs Nos. 4 and 5 by not responding to amended versions of them within thirty days of their service since the timing of the City's responses did not prejudice American Linen. In RFA No. 4, American Linen originally asked the City to "[a]dmit [that] the materials dumped at the Dam by Jesus Villanueva were diluted." *See doc. 390-1* at 4. After agreeing during the

parties' meet and confer on June 14, 2021, to narrow the definition of Dam and serve an amended version of this request, *doc. 387-3*, American Linen served a revised version of this request on June 17, 2021, *doc. 357*, that asked whether materials were diluted with water and cited to portions of Mr. Jasso's deposition, *doc. 390-1* at 4. The City responded to this request over two months later on August 18, 2021, *doc. 383*, by admitting that Mr. Jasso had testified that the materials dumped at the Dam by Mr. Villanueva had been diluted with water and stating that, after making a reasonable inquiry, it lacked sufficient information to admit or deny the truth of this testimony, *doc. 390-1* at 5.

Similarly, in RFA No. 5, American Linen originally asked the City to "[a]dmit [that] the concentration of PCE in the materials dumped by Jesus Villanueva is unknown." *See doc. 390-1* at 6. After agreeing during the parties' meet and confer on June 14, 2021, to serve an amended version of this request, *doc. 387-3*, American Linen served a revised version of this request on June 17, 2021, *doc. 357*, that clarified that the dumping occurred at the Dam and cited to portions of Mr. Jasso's deposition, *doc. 390-1* at 6. The City responded on August 18, 2021, *doc. 383*, by admitting that "the exact concentration of PCE in the materials dumped at the Dam is unknown to [it] at this time" and stating that, after making a reasonable inquiry, it lacked sufficient information to admit or deny the concentration was incapable of being determined, *doc. 390-1* at 6.

Even if the City's responses to the amended versions of RFAs Nos. 4 and 5 were untimely, deeming the amended requests admitted is inappropriate as American Linen has not shown any prejudice arising from the timing of the City's responses.  Federal Rule of Civil Procedure 36(a)(3) provides that "[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter."  Fed. R. Civ. P. 36(a)(3).  This Court, as others routinely do, will decline to deem a RFA admitted based on a belated response where the requesting party fails to show prejudice arising from the delay.  *See Beatty v. United States*, 983 F.2d 908, 909 (8th Cir. 1993); Richard L. Marcus, *Federal Practice & Procedure* § 2257 n.8 (3d. ed 2021) (gathering cases).  American Linen makes no argument that the City's delayed responses to the amended versions of RFAs Nos. 4 and 5 have prejudiced it.  *See generally docs. 390, 417*.  Therefore, the Court does not deem RFA No. 4 or RFA No. 5 to be admitted.

3.  *Request for Admission No. 6 to City of Las Cruces*

The Court overrules the City of Las Cruces' objections to RFA No. 6, deems the City's response insufficient, and requires the City to supplement it.  In this RFA, American Linen asks the City to "[a]dmit that municipal pumping conditions created cones-of-depression that caused migration of PCE to City Wells 19 and 21 and the area near GWMW-15."  *Doc. 390-2* at 2.  The City objected to this response for being vague and for seeking an expert opinion.  *Id*.  Subject to these objections, it also explained that,

after a reasonable inquiry, it lacked sufficient information to admit or deny the request

for an admission. *Id.* at 2-3.

Neither of the City's objections has any present merit. The City's objection based

the RFA seeking expert opinion is invalid for the reasons detailed in "Common Issues,"

above. *See supra* at 25-26. The City's objection to the vagueness of the term "cone of

depression" was never proper since the term is an industry term of art for an effect that

a well may have on the groundwater surrounding it and was used as such by the City's

own expert to describe the effect of municipal pumping on PCE flow. *See McKellips v.*

*Kumho Tire Co., Inc.*, 305 F.R.D. 655, 679 (D. Kan. 2015) (finding that "component" was

not vague or ambiguous because the responding party's own expert used it as a term of

art in an affidavit); *doc. 389-4* at 3. The City's objections to the vagueness of "the area

near GWMW-15," and "caused migration" are no longer appropriate now that

American Linen has qualified that the former means "the area east of City Wells 19 and

21 to GWMW-15" and the latter means a cause of migration rather than the exclusive

cause of migration. *See doc. 390* at 16.

The City's response to RFA No. 6 is deficient notwithstanding it taking a form

authorized by Rule 36(a)(6) since it manifests a belief that the RFA is requesting a

statement about the sole cause of PCE migration. In response to RFA No. 6, the City

states that it "has made a reasonable inquiry and the information it knows or can

readily obtain is insufficient to enable [it] to admit or deny [the RFA] at this time"

42

because the "multitude of factors [that] have influenced the migration of PCE in groundwater at the … Site" prohibit it from "admitting or denying that a single factor 'created' certain conditions and 'caused' the historical migration of PCE." *Doc. 390-2* at 2-3. Since RFA No. 6 (as clarified by American Linen) does not ask whether municipal pumping conditions were the sole factor that caused certain migration of PCE, the City must update its response to admit, deny, or detail why it can neither admit nor deny that these conditions were one of the factors that caused this migration.

4. *Request for Admission No. 7 to City of Las Cruces*

The Court overrules the City of Las Cruces' objections to RFA No. 7, deems the City's response insufficient, and requires the City to supplement it. In this RFA, American Linen asks the City to "[a]dmit that pumping of City of Las Cruces Wells 19 and 21 was discontinued to hinder lateral transport of PCE eastward." *Doc. 390-2* at 3. The City objects to this response for seeking an expert opinion and as overly broad, vague, and improper for using undefined terms such as "cone-of-depression" and "caused migration." *Id.*

The City's objections are meritless. The City's objection based the request asking for expert opinion is invalid for the reasons detailed in "Common Issues," above. *See supra* at 25-26. The City's objection based on vagueness references terms from RFA No. 6 that are not present in RFA No. 7 and so lacks the specificity required to constitute a valid objection.

The City's response to RFA No. 7 is deficient notwithstanding it taking a form authorized by Rule 36(a)(6) since it ignores Rule 36(a)(4)'s requirement that the respondent "fairly respond to the substance of the matter."  A fair response is one responsive to "the 'essential truth contained within the request.'"  *S.E.C. v. Goldstone*, 300 F.R.D. 505, 515 (D.N.M. 2014) (quoting *Havenfield v. H&R Block*, 67 F.R.D. 93, 97 (W.D. Mo. 1973)).  "If the responding party finds the wording of a request for admission imprecise, he should set forth a qualified answer that fairly meets the substance of the request."  *House*, 232 F.R.D. at 262.  A fair response to a RFA about causation where the RFA is ambiguous as to whether "proposition x" was a cause, or the sole cause, of "proposition y," requires the responding party to provide a qualified response about the propositions' causal relationship if able to do so.  *See* Fed. R. Civ. P. 36(a)(4).

The City provides no such qualified response here.  Instead, it states that, after making a reasonable inquiry, it lacks sufficient information to admit or deny whether the pumping in City Wells 19 and 21 was discontinued to hinder lateral transport of PCE eastward because "[a] multitude of factors have influenced the pumping rates of wells at the … Site at different points in time, which prohibits the City from admitting or denying that a single goal or reason was the impetus."  *Doc. 390-2* at 3.  This response ignores that a good faith response to the essence of RFA No. 7 would also touch on whether hindering lateral transport was one of many goals or reasons for discontinuing pumping at these City wells.  Therefore, the City must update its response to RFA No. 7

44

to admit or deny whether pumping in City wells 19 and 21 was discontinued, in part, to hinder lateral transport of PCE eastward.

    5.   *Request for Admission No. 11 to City of Las Cruces*

The Court sustains the City of Las Cruces' objection to RFA No. 11 for exceeding the scope of reopened discovery. In this RFA, American Linen asks the City to "[a]dmit that surface releases of PCE at the Former Municipal Airport have contributed some amount of groundwater contamination to the plume of PCE at the Site." *Doc. 390-2* at 6. This RFA exceeds the scope of reopened discovery since it seeks discovery about the City's contribution to the Site's contamination and a PCE source located west of Interstate 25.

    6.   *Request for Admission No. 13 to City of Las Cruces*

The Court sustains the City of Las Cruces' objection to RFA No. 13 for exceeding the scope of reopened discovery. In this RFA, American Linen asks the City to "[a]dmit that [it] has previously contended that it should be responsible for a 25% allocated share of total response costs from the … Site." *Doc. 390-2* at 7. This RFA exceeds the scope of the reopened since it seeks discovery about the City's contribution to and its share of responsibility for the Site's contamination.

7.  *Interrogatory No. 9 to City of Las Cruces*

The Court compels the City of Las Cruces to supplement its response to

Interrogatory No. 9 with a list of the sources that it consulted during its reasonable

inquiries into RFAs Nos. 3-8 and an explanation of its inability to admit or deny RFAs

Nos. 6-10.  In Interrogatory No. 9, American Linen requests that the City to "state the

factual and legal basis for [its] qualified admission, denial, or other response with

specificity"—including the identity of the persons or documents upon which the City

relied upon in responding—for each response to a RFA propounded on it that is not an

unqualified admission.  *Doc. 387-1* at 25.  The RFAs falling within the ambit of this

interrogatory are RFAs Nos. 1 and 3-10 since the City admitted RFA No. 2, *see doc. 390-1*

at 3, and objected to RFAs Nos. 11-13 instead of providing a response, *see doc. 390-2* at 6-

8.  The Court assesses the City's response to Interrogatory No. 9 by analyzing the

explanations that it provided in its responses to RFAs Nos. 1, 3-10 since that is where

the City provided the responsive factual and legal bases for these non-admissions.  *See*

*doc. 387-1* at 25; *doc. 405* at 16.

The City's supplemental response to RFA No. 1 provides the factual and legal

basis for the City's non-admission to this RFA, including the documents and persons

upon which the City relied to determine that it lacked sufficient information to admit or

deny that pumping at certain city wells from 1988 to 2002 caused the eastward

migration of the PCE plume to GWMW-15.  *See doc. 390-1* at 2-3.  By contrast, the City's

46

responses to RFAs Nos. 9-10 lack any explanation for why the City lacks sufficient

information to admit or deny that "PCE from the upper hydrogeologic zone migrated

through the gravel pack annulus of City Well 18 into the lower hydrogeologic zone

prior to the year 2013" or that "when City Well 18 is not pumping, PCE in the upper

hydrogeologic zone migrates …  through the gravel pack annulus of City Well 18 to the

lower hydrogeologic zone by gravity."  *Doc. 390-2* at 4-5.  Instead, these responses just

reference a "detailed discussion of CLC Well 18" in a section of Mr. Helgen's rebuttal

report.  *See id.*  Such "[r]esponses by reference to another document are … insufficient."

*Heuskin I*, 2020 WL 1450575, at *3 (citing *Yazzie v. Law Offices of Farrell & Seldin*, CIVIL

No. 10-292 BB/LFG, 2010 WL 11450784, at *2 (D.N.M. Oct. 1, 2010) (unpublished)).

Therefore, the City must explain how the information in Mr. Helgen's rebuttal report

prevents it from admitting RFAs Nos. 9-10.

The adequacy of the City's supplemental responses to RFAs Nos. 3-8 fall

between RFA No. 1 and RFAs Nos. 9-10.  These responses explain the factual and legal

basis for the City's non-admissions to these RFAs but fail to identify the documents and

persons upon which the City relied to make these responses.  The City's supplemental

response to RFA No. 3 implies that it considered Mr. Jasso's testimony when

formulating its response but does not explain whether it considered other information

available to it from documents or any other person when determining that it lacked

sufficient information to admit or deny that the "arrangement between American Linen

47

and Jesus Villanueva was for the removal of water from a pressure washer during the still cleaning process." *Doc. 390-1* at 4.  Similarly, the City's supplemental response to RFA No. 4 suggests that it considered Mr. Jasso's and Mr. Villanueva's testimonies when crafting its response but does not explain whether it considered any other information from documents or any other person when deciding that it lacked sufficient information to admit or deny that "the materials dumped at the dam by Jesus Villanueva were diluted with water." *See id.* at 4-5.  As for the City's response to RFA No. 5, it contains no information about what sources the City considered to determine that it could not admit or deny that the "concentration of PCE in the materials dumped at the Dam by Jesus Villanueva is unknown." *See id.* at 6.  Finally, the City's responses to RFAs Nos. 6-8 do not elucidate what documents and persons upon which the City relied to find that "[a] multitude of factors" have influenced the migration of PCE in groundwater at the Site and the pumping rates of wells at the Site and that, as a result, it lacked sufficient information to admit or deny that a single factor created certain groundwater conditions, caused the historical migration of PCE, or prompted changes in the pumping at certain city wells.  *See doc. 390-2* at 2-4.[7]

---

[7] The Court has found the explanations that the City provided for its inability to admit or deny RFAs Nos. 6-7 deficient.  *See supra* at 41-45.  The Court does not consider the propriety of the explanation that the City provided in RFA No. 8 since American Linen's Motion to Determine the Sufficient of Answers to Requests for Admission and Deem Matters Admitted does not include this RFA.  *See generally doc. 390*.  It does note, though, that, if the City's response to RFA No. 8 contains from the same deficiency as the City's response to RFA No. 7 as to the appropriate response to an ambiguous RFA about causation, the City must supplement RFA No. 8 within a reasonable time pursuant to Rule 26(e).

8.  *Interrogatory No. 3 to City of Las Cruces*

The Court narrows the scope of Interrogatory No. 3 to exclude sources west of

Interstate 25 and compels the City of Las Cruces to supplement its answer to it.  In

Interrogatory No. 3, American Linen asks the City to

> [i]dentify all sources of PCE or potential sources of PCE that are known to
> [it], suspected by [it], or which [it knows] to have been alleged by any
> party in this case, expert in the case, or any other person, within a two and
> a half (2.5) mile radius of the … Site, but specifically not including any
> sources where PCE is known, suspected, or alleged to have been released
> west of Mesquite Street (for all sources north of the intersection of
> Mesquite Street and Idaho Avenue) or west of El Paseo Road (for all
> sources south of the intersection of El Paseo Road and Idaho Avenue)…

*Doc. 387-1* at 11-12.  The City objects to this interrogatory for being "overly broad,

vague, and improper, and unintelligible" due to not clarifying the specific point from

which the 2.5-mile radius is measured, falling outside the scopes of Rule 26(b) and

reopened discovery, and seeking information that the City does not control or is

publicly available.  *Id.* at 12-13.

Except for the objection related to the scope of reopened discovery, the City's

objections are meritless, abandoned, or waived.  The City waived its objection based on

Rule 26(b) by not raising it until it supplemented its response to this Interrogatory.  *See*

*supra* at 25-26.  The City abandoned its objections to broadness and vagueness and the

burden of providing information that it does not control or that is "publicly available or

otherwise obtainable from a more convenient or less burdensome source," *doc. 387-1* at

12-13, by not reasserting them in its response brief, *see DIRECTV, Inc. v. Puccinelli*, 224

F.R.D. 677, 681 (D. Kan. 2004); *doc. 405* at 11-12.  Interrogatory No. 3 exceeds the scope

of reopened discovery because it includes PCE sources west of Interstate 25 but may be

tailored to omit these sources.  *See Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 6450 (10th

Cir. 2008).

 Therefore, the Court narrows the scope of Interrogatory No. 3 to request the City

to identify all sources, or potential sources, of PCE that are known to it, suspected by it,

or which it knows to have been alleged by any party in this case, expert in this case, or

any other person that are located east of Interstate 25 and are within a two and a half

(2.5) mile radius of the Site's perimeter.

 The City's current response to Interrogatory No. 3 is not responsive to its

narrowed scope.  The City initially responded to this Interrogatory by stating that "the

expert reports prepared for this litigation by Steven Helgen and Peter Krasnoff and the

materials reviewed and relied upon by those experts are potentially responsive to [it]."

*Doc. 387-1* at 13.  The City, though, has since withdrawn this response for not

complying with this Court's holding in *Heuskin I* that responses to interrogatories that

incorporate other documents by reference are inappropriate.  *See doc. 430* at 11.  This

withdrawal leaves Interrogatory No. 3 unanswered.  Therefore, the City must

supplement its response to the Interrogatory by providing information responsive to its

narrowed scope.

9. *Interrogatories Nos. 4–5 to City of Las Cruces*

The Court overrules the City of Las Cruces' objections to Interrogatories Nos. 4–5 and compels it to provide the requested descriptions and years of construction for any man-made condition within a one thousand (1000) foot radius from the area marked in black pen on Exhibit 2 of Mr. Jasso's deposition that may affect groundwater flow. These conditions include, but are not limited to, any responsive conditions created in the Las Cruces Environmental Restoration Project, any responsive conditions shown in *doc. 387-9* and *doc. 387-10* (e.g., the unidentified structure and the pond), and any responsive conditions identified in expert reports and documents that the City incorporated by reference into its initial and supplemental answers.  If the Environmental Restoration Project did not create responsive conditions, the conditions depicted in *doc. 387-9* and *doc. 387-10* are not responsive conditions, or the expert reports and documents that the City incorporated by reference in its answers contain no responsive conditions, the City's supplemental response to Interrogatory No. 4 should state as such.

In Interrogatories Nos. 4–5, American Linen asks the City to "[d]escribe any man-made condition within a one-thousand (1000) foot distance from the Dam that [it] know[s] may affect or does affect the natural migration of groundwater…" and to "state the years for which the condition was the subject of any construction activities."  *Doc. 387-1* at 13, 15.  The City objected to these Interrogatories as overly broad, vague,

outside the scope of reopened discovery, and improperly seeking expert work product and expert opinion. *Id.* at 14–15.

The City's objections are abandoned or waived. The City abandoned all its objections to Interrogatories Nos. 4 and 5 by not reasserting and explaining them in its response brief, *see DIRECTV*, 224 F.R.D. at 681; *doc. 405* at 12-13. Instead, in that brief, the City objected to the proportionality of these interrogatories because they require its experts to review more than 1,300 pages of documents and pass judgment on man-made conditions that may affect groundwater. *See doc. 405* at 12. The City, though, waived this objection by not showing any good cause for its failure to raise it in its initial response. *See* Fed. R. Civ. P. 33(b)(4); *doc. 387-1* at 13-15.

Turning to the City's responses to these interrogatories, its response to Interrogatory No. 4 is deficient unless, due to the City's most recent supplementations and revisions, *see docs. 427, 428*, the response now describes all responsive man-made conditions known to the City with reasonable effort, including, but not limited to, any conditions listed in the expert reports and other documents that the City incorporated by reference in its initial and first supplemental responses, any conditions created by the Las Cruces Environmental Restoration Project, and any conditions depicted in *doc. 387-9* and *doc. 387-10*.

The City's initial response to Interrogatory No. 4 directs American Linen to expert reports that may contain descriptions of responsive man-made conditions. *See*

*doc. 387-1* at 14.  In its first supplemental response, the City lists GWMW-15 and City

Wells 54 and 57 as responsive man-made conditions and notes that documents

produced in response to RFP No. 2 contain responsive information.  *Id.*  The City has

since withdrawn its references to these documents and expert reports to comply with

*Heuskin I*, 2020 WL 1450575, at *3.  *See doc. 430* at 11.  The City, though, needs to identify

and describe the responsive man-made conditions (other than GWMW-15 and City

Wells 54 and 57) that these documents and reports contain or clarify that these

documents contain no other responsive man-made conditions.

Doc. 387-9 and *doc. 387-10* depict a structure and a pond, both of which are

located within one thousand feet of the area marked in black pen on Exhibit 2 of Mr.

Jasso's deposition.  The Court cannot determine from the record whether either

condition has the potential to affect the natural migration of groundwater or whether

the pond is man-made.  If either condition is man-made and has the potential to affect

the natural migration of groundwater, the City must identify and describe it in its

response to Interrogatory No. 4.

The Court cannot determine from the record before it whether the Las Cruces

Environmental Restoration Project created any man-made conditions within one

thousand feet of the area marked in black pen on Exhibit 2 of Mr. Jasso's deposition that

may affect groundwater flow.  Should any such conditions exist, the City must provide a description of them in its response to Interrogatory No. 4.[8]

American Linen maintains that the City's supplemental response to Interrogatory No. 4 is lacking since it "does not mention any lift stations, stormwater mains, sewer mains, or other conditions potentially affecting the flow of groundwater at the Dam."  *Doc. 387* at 15; *see also doc. 418* at 9 (noting that the City has not described any "engineered 'clay-lined cells'" and clarifying that the term "Dam" means "the specific point that Victor Jasso identified in Exhibit 2 of his deposition").  American Linen, however, fails to point the Court to specific responsive conditions for which the City has not provided a description.  *See doc. 387* at 13-15; *doc. 418* at 9-10.  The Court cannot compel the City to provide descriptions for conditions responsive to Interrogatory No. 4 that American Linen has not shown to exist.  *See Hiscox Dedicated Corp. Member Ltd. v. Olla Grande, Inc.*, No. CIV 09-24 JH/LFG, 2010 WL 11623672, at *6 n.1 (D.N.M. Feb. 10, 2010) (unpublished).  It does emphasize, though, that the City must provide this description for all responsive conditions that it can identify with

---

[8] In their briefing about Interrogatories Nos. 4 and 5, the parties spent a couple of paragraphs discussing a document that the City has already produced: a June 2011 Las Cruces Dam Environmental Restoration Project Report by the U.S. Army Corps of Engineers that the City incorporated by reference into its first supplemental response to Interrogatory No. 5.  *See doc. 387* at 14-15; *doc. 405* at 13.  American Linen does not request that the Court take any action in response to the timing of this report's production, *see doc. 387* at 14-15, so the Court does not.  The Court, though, shares Plaintiffs' confusion as to how the timing of this report's production prejudiced American Linen despite American Linen receiving more than one thousand pages about the Environmental Restoration Project in the City's initial response to American Linen's first set of written discovery requests on May 17, 2021.

reasonable effort.  *See Lynn v. Monarch Recovery Mgmt., Inc.*, 285 F.R.D. 350, 357 (D. Md. 2012); *Miller*, 76 F.R.D. at 140.

If the City supplements its response to Interrogatory No. 4 to describe additional responsive man-made conditions, it must supplement its response to Interrogatory No. 5 accordingly to state the years during which any responsive condition was subject to any construction activities.  The City's response to Interrogatory No. 5, though, is not deficient for not describing the nature of these construction activities, as American Linen contends, *see doc. 418* at 10; *doc. 418-3*.  American Linen may desire this information; but it did not request it in Interrogatory No. 5.  *See doc. 387-1* at 15 (requesting only "the years for which [each man-made condition responsive to Interrogatory No. 4] was the subject of any construction activities" and not a description of the activities themselves).  Therefore, the City does not have to describe the nature of construction activities at conditions responsive to Interrogatory No. 4.  *See Guidance Endodontics, LLC v. Dentsply Int'l, Inc.*, 728 F. Supp. 2d 1170, 1199-1200 (D.N.M. 2010) (not compelling the party respond to an interrogatory to produce information that the plain language of the interrogatory did not request).

10. *Interrogatory No. 6 to City of Las Cruces*

The Court compels the City of Las Cruces to supplement its answer to Interrogatory No. 6 with the actual information requested rather than directing American Linen to documents containing this information.  In this Interrogatory

American Linen asks the City to "[i]dentify all information known to [it] regarding the effect nearby wells have had drawing contaminated groundwater toward or away from GWMW-15." *Doc. 387-1* at 16.  The City initially responded by objecting to the broadness inherent in the term "all information" and directing American Linen to expert reports containing potentially responsive information.  *Id*.  It then supplemented its response with an objection based on the Interrogatory seeking expert opinion and a list of additional documents containing responsive information.  *See id.*

The City's objections are waived or meritless.  The City waived its objection to the Interrogatory seeking expert opinion by not making it in its initial response.  *See* Fed. R. Civ. P. 33(b)(4).  Even if it had not, the objection is meritless for the reasons detailed in "Common Issues," above.  *See supra* at 25-26.  The City's objection based on the broadness of the term "all information" due to "[d]iscovery and expert evaluation being on going" is specious.  *See JPMorgan Chase Bank, N.A. v. Neovi, Inc.*, No. 2:06-CV-0095, 2006 WL 3803152, at *5 (S.D. Ohio. Nov. 14, 2006) (unpublished) ("Engaging in strained constructions of reasonably-framed requests in order to avoid providing information … is simply not permitted.").  Given the supplementation requirement of Federal Rule of Civil Procedure 26(e), the term "all information" clearly means all the information that is presently reasonably available to the City.  Such information falls within the scope of discovery.  *See* Fed. R. Civ. P. 33(b)(1)(B).

The City's initial and supplemental responses are deficient.  Except for five sets of documents (USEPA0036772, JSP-0075765, JSP-0077736-JSP0077796, and JSP-0069292), the City directed American Linen to expert reports and documents produced in discovery that contain responsive information rather producing that information in its response.  *See doc. 387-1* at 16-20.  The City must produce the responsive information instead of directing American Linen to documents that contain it.  *See In re Urethane Antitrust Litig.*, No. 04-MD-1616-JWL-DJW, 2006 WL 1895456, at *4 (D. Kan. July 7, 2006) (unpublished); *Heuskin I*, 2020 WL 1450575, at *3; *Yazzie*, 2010 WL 11450784, at *2.  However, this production does not require the City to reproduce every quote in every document about the effect that wells near GWMW-15 have had on drawing contaminated groundwater toward or away from this monitoring well.  Rather, the City must just provide all information reasonably available to it about which wells have affected groundwater migration to and from GWMW-15, what effect these wells had on groundwater migration (eastward, westward, or otherwise), and when this effect occurred.  Responsive information does not extend to include the City's responses to the effect that its wells had on groundwater migration, such as changing the amount of pumping occurring at certain wells.  The production of responsive information shall not be construed as an admission about the ultimate truthfulness of that information.

11. *Interrogatory No. 7 to City of Las Cruces*

The Court compels the City of Las Cruces to supplement its answer to

Interrogatory No. 7 to either state additional facts known to it or believed by it about

the alleged dumping or clarify that the only such responsive facts are those produced in

its first supplemental response to this Interrogatory.  Interrogatory No. 7, American

Linen asks that, if the City of Las Cruces contends that Mr. Villanueva dumped the

contents of a septic hauler truck into the soil at the Dam, it "identify all facts known or

believed by [it] regarding the alleged dumping (for example, the year the dumping took

place, the nature of the contents of the tank, how many instances of dumping took

place, where the contents were retrieved from, any persons who witnessed suction of

the materials)."  *Doc. 387-1* at 21.

The City objected to this Interrogatory based on lack of clarity in the phrase

"facts known or believed by you," and to the extent that it sought information available

from less burdensome sources or information or information not within the City's

control.  *See id.*  However, the City abandoned these objections by not raising them in its

response brief.  *See DIRECTV*, 224 F.R.D. at 681; *doc. 405* at 15-16.

Turning to the City's answer, as supplemented on August 18, 2021, it is deficient

since it incorporates expert reports and other documents by reference without

reproducing the responsive facts that they contain.  In the City's original answer, it

inappropriately directed American Linen to the following documents containing

responsive information: the transcripts and associated exhibits for the depositions of

Mr. Jasso, Christopher Whitman, and Raymundo Castillo, New Mexico Environmental

Department ("NMED") reports about Mr. Jasso's complaint, its experts' reports, and

materials upon which its experts relied in their reports. *Doc. 387-1* at 21.  In the City's

first supplemental answer, it provides requested information about time of the alleged

dumping, the nature of the contents of the tank, the number of times dumping

occurred, where the contents dumped came from, and the persons who witnessed the

dumping based on the testimony of Mr. Jasso and its expert Mr. Krasnoff's opinion

about the concentration of PCE in the substance dumped at the Dam. *Id.* at 22-23.  The

supplemental answer inappropriately incorporates the reports of Plaintiffs experts

about the "contents of the materials dumped at the Dam based on the physical evidence

in the soil and groundwater viewed in conjunction with Mr. Jasso's testimony." *Id.* at

22.  It also contains no responsive information from the transcripts and associated

exhibits for the depositions of Mr. Whitman and Mr. Castillo, NMED reports about Mr.

Jasso's complaint, and the materials upon which the City's experts relied in their

reports, despite the City's earlier representation that these documents contained

responsive information. *See id.* at 21-23.  The City, therefore, must supplement its

response to Interrogatory No. 7 to state the incorporated opinions of its experts about

the contents of the materials dumped at the Dam and either reproduce additional,

relevant facts from the depositions of Mr. Whitman and Mr. Castillo, NMED reports

about Mr. Jasso's complaint, and materials relied upon by Plaintiffs' experts or clarify that these documents do not contain responsive facts known to or believed by the City additional to those list in its first supplemental response.

12. *Request for Production No. 4 to City of Las Cruces*

The Court overrules the City of Las Cruces' objections to RFP No. 4 but deems its response, as supplemented on August 18, 2021, sufficient.  In this RFP, American Linen asks the City to produce "all studies or models … of groundwater flow or contamination for any area within a two and a half (2.5) mile radius of the Dam authored from 1970 until the present."  *Doc. 387-1* at 27.  In addition to incorporating general objections without explaining their applicability, the City objects to this request as overbroad, unduly burdensome, and not proportional to the needs of the case under Rule 26(b), vague due to the lack of clarity in the term "the Dam," and seeking expert work product.  *Id.* at 27-28.

The City's objections are abandoned or moot.  Following the parties' meet and confer, *doc. 387-3*, American Linen mooted the objection to vagueness by providing a narrowed definition for the term "Dam."  *See doc. 387-1* at 2.  The City abandoned its objections to broadness by not reasserting them with any specificity in its response brief, *see DIRECTV*, 224 F.R.D. at 681; *doc. 405* at 16-18.  Similarly, the City abandoned its objections based on burdensomeness and proportionality by not "demonstrating that the time or expense involved in responding to requested discovery is unduly

burdensome," e.g., by "provid[ing] sufficient detail and explanation about the nature of the burden in terms of time, money, and procedure required to produce the requested documents." *Dentsply Int'l, Inc. v. Lewis & Roca, LLP*, No. 1:12-CV-00104-MCA/ACT, 2013 WL 12246642, at *3 (D.N.M. May 21, 2013) (unpublished) (citing *Gen. Elec. Cap. Corp. v. Lear Corp.*, 215 F.R.D. 637, 641 (D. Kan. 2003)).

Turning to the City's response, the Court finds the City's production in response to RFP No. 4 sufficient.  In its initial response to RFP No. 4, the City produced over 2400 pages of documents.  *See doc. 387-1* at 28.  In its first supplemental response, the City directed American Linen to ten different responsive studies and models.  *See id.*  During the hearing, the City explained that it cannot provide American Linen with a copy of JSAI's computer model since it is proprietary software that the City does not have license to distribute.  *See doc. 430* at 11.  The City also explained that it had supplemented its response a second time to provide American Linen with this model's input and output files.  *Id.*  American Linen has not directed the Court to a single document responsive to RFP No. 4 that the City controls, but has not produced, *see doc. 387* at 25-26; *doc. 418* at 12, and so has not borne its burden of proving that the City's response to RFP No. 4 is deficient, *see Collins v. Grey Hawk Transp., LLC*, No. CV 20-869 JCH/CG, 2021 WL 3931131, at *2 (D.N.M. Sept. 2, 2021) (unpublished) (citing *Daiflon, Inc. v. Allied Chem. Corp.,* 534 F.2d 221, 227 (10th Cir. 1976)).

The Court, though, notes that the City waited until its response brief to clarify that it had not withheld any documents pursuant to its objections.  *See doc. 405* at 17; *doc. 387-1* at 27-29.  Federal Rule of Civil Procedure 34(b)(2)(C) expressly obligated the City to state whether it was withholding documents pursuant to an objection when it made its objections.  *See* Fed. R. Civ. P. 34(b)(2)(C).  American Linen informed the City of this defect in its response to RFP No. 4 on June 7, 2021.  *See doc. 418-3* at 11-12.  The City's violation of the plain language of the discovery rules and failure to correct it after receiving notice of it are inexcusable.  The advisory committee added Rule 34(b)(2)(C) to the Federal Rules of Civil Procedure to avert the precise scenario in which the City's response to RFP No. 4 left American Linen: a state of confusion "that frequently arises when a producing party states several objections and still produces information, leaving the requesting party uncertain whether any relevant and responsive information has been withheld on the basis of the objections."  Fed. R. Civ. P. 34(b) advisory committee's note to the 2015 amendment.  The Court's overruling of the City's objections and the City's clarifying statement in its briefing have ended this state of confusion, but it never should have existed in the first place.

13. *Request for Production No. 6 to City of Las Cruces*

The Court overrules the City of Las Cruces' objections to RFP No. 6 except as to the scope of reopened discovery; narrows the scope of RFP No. 6 to request documents identifying unpermitted releases of PCE, hazardous substances associated with dry

cleaning and industrial laundry operation, and unidentified hazardous substances; and compels the City to supplement its response accordingly.  In this RFP, American Linen asks the City to produce "all documents identifying unpermitted releases of 'hazardous substances' (as defined under CERCLA) within a 2,500-foot radius of the area identified in black pen in Exhibit 2 of Victor Jasso's deposition."  *Doc. 387-1* at 30.  In addition to incorporating general objections and objections to other discovery responses inappropriately without explaining their applicability, the City objects to this request for seeking a legal conclusion and expert work product and exceeding the scope of reopened discovery by requesting the City to "research potential support for American Linen's defenses" and relating to hazardous substances other than PCE, the contaminant at issue.  *Id.* at 31.

The City's objections are abandoned or meritless except for its objection about the releases of hazardous substances other than PCE falling outside the scope of reopened discovery.  The City abandoned its objection about expert work product by not reasserting it in its response brief.  *DIRECTV*, 224 F.R.D. at 681; *doc. 405* at 16-18.  As for the objection to the request seeking legal conclusions, the City contends that any response to this request entails an implicit admission that a particular alleged source involved a "release" for the purposes of CERCLA.  *Doc. 405* at 17.  The Court, though, addresses this concern by clarifying that the production of documents in response to

this request will not constitute an admission that any source of hazardous materials therein involved a "release" for CERCLA purposes.

RFP No. 6 exceeds the scope of reopened discovery since it requests documents about the release of all hazardous substances. Only the releases of PCE and hazardous substances associated with dry cleaning and industrial operation are relevant to this lawsuit. The City contends that only the release of PCE falls within the scope of reopened discovery. *Doc. 387-1* at 31; *doc. 405* at 17-18. This contention, though, ignores that Mr. Krasnoff, Plaintiff's expert, opines in his rebuttal report that other chemicals in the Dam soil samples are associated with dry cleaning and industrial laundry operation and were found in soil samples collected near American Linen's facilities. *See doc. 406-3* at 8-9. Sources for these chemicals east of Interstate 25 other than American Linen's alleged dumping fall within the scope of reopened discovery as they are relevant to negating the allegations that American Linen's alleged dumping caused the PCE readings at GWMW-15.

The Court narrows the scope of RFP No. 6 to fall within the scope of reopened discovery. *See Regan-Touhy*, 526 F.3d at 650. The Court limits RFP No. 6 to request all documents identifying unpermitted releases of PCE, hazardous substances associated with dry cleaning and industrial laundry operation, and unidentified hazardous substances within a 2,500-foot radius of the area identified in black pen in Exhibit 2 of Victor Jasso's deposition. The City must supplement its response to RFP No. 6 by

producing any unproduced document responsive to this narrowed version of RFP No. 6.

14. *Request for Production No. 11 to City of Las Cruces*

The Court sustains the City of Las Cruces' objection to RFP No. 11 for exceeding the scope of reopened discovery and does not compel the City to produce any documents in response to it.  In this RFP, American Linen asks the City to "[p]roduce all documents in [its] possession, custody, or control related to the October 2017 complaint of spills of automotive fluids at 1501 East Hadley Avenue."  *Doc. 388-1* at 9.  1501 East Hadley Avenue is the address of a maintenance facility operated by the Fleet Department of the City of Las Cruces at the former Crawford Municipal Airport.  *See doc. 387-5* at 2; *388* at 22; *doc. 409-11*.  Therefore, this RFP exceeds the scope of reopened discovery by seeking the production of documents about the City's contribution to the Site's contamination and PCE sources located west of Interstate 25.

E.  DISCOVERY REQUESTS TO DOÑA ANA COUNTY

The Court compels Doña Ana County to supplement its discovery responses to some, but not all, of the disputed discovery requests and does not deem it to have admitted to any RFA by providing a deficient or belated response.  Specifically, the Court overrules the County's objections to Interrogatory No. 4, narrows Interrogatory No. 6 and RFPs Nos. 2 and 13 to fall within the scope of reopened discovery, and

compels the County to supplement its responses to these discovery requests. The Court also sustains the County's objection to parts of Interrogatories Nos. 9-10, finds its response to the unobjectionable part of Interrogatory No. 9 sufficient, and compels the County to supplement its response to the unobjectionable part of Interrogatory No. 10. The Court also overrules the County's objections to RFA No. 10 and Interrogatories Nos. 5 and 7 but deems its responses sufficient. Finally, the Court sustains at least one of the County's objections to RFAs Nos. 1-3 and 5-6, Interrogatories Nos. 8 and 12, and RFPs Nos. 3 and 7-10, and does not require the County to provide a substantive response.

    1. *Request for Admission No. 1 to Doña Ana County*

The Court sustains Doña Ana County's objection to RFA No. 1 for exceeding the scope of reopened discovery and does not require the County to provide a substantive response. In this RFA, American Linen asks the County to "[a]dmit that surface releases of PCE at the County Maintenance Yard have contributed some amount of groundwater contamination to the plume of PCE at the Site." *Doc. 390-3* at 2. This RFA exceeds the scope of reopened discovery since it seeks discovery about the County's contribution to the Site's contamination and a PCE source west of Interstate 25.

2.  *Request for Admission No. 2 to Doña Ana County*

The Court sustains Doña Ana County's objection to RFA No. 2 for exceeding the scope of reopened discovery and does not require the County to provide a substantive response.  In this RFA, American Linen asks the County to "[a]dmit that the highest detection of PCE in groundwater at the Site to date is 70 micrograms per liter in April 2012 at CLC 18."  *Id.* at 3.  "CLC 18 is the municipal well located at the County Maintenance Yard" within the Site and west of Interstate 25.  *Doc. 390* at 20; *see also doc. 387-7* at 4; *doc. 389-4* at 4.  Therefore, RFA No. 2 exceeds the scope of discovery by requesting an admission about a PCE source west of Interstate 25 and the fate and transport of PCE from specific sources west of Interstate 25.  Groundwater flow falls within the scope of reopened discovery and the location of the highest detection of PCE in groundwater has some relevancy to groundwater flow.  However, discovery related to groundwater flow cannot be used to obtain discovery on an issue that more closely relates to matters falling outside the scope of reopened discovery.

3.  *Request for Admission No. 3 to Doña Ana County*

The Court sustains Doña Ana County's objection to RFA No. 3 for exceeding the scope of reopened discovery and does not require the County to provide a substantive response.  In this RFA, American Linen asks the County to "[a]dmit that PCE releases at the County Maintenance Yard were a cause in fact of PCE soil vapor detected by

SVMP01." *Doc. 390-3* at 3.  This RFA exceeds the scope of reopened discovery since it seeks discovery about a PCE source west of Interstate 25.

4.  *Request for Admission No. 5 to Doña Ana County*

The Court sustains Doña Ana County's objection to RFA No. 5 for exceeding the scope of reopened discovery and does not require the County to provide a substantive response.  In this RFA, American Linen asks the County to "[a]dmit that hydrocarbons were found below the water table during the hydrogeologic investigation by Souder, Miller & Associates of a leaking underground storage tank at the County Maintenance Yard in 1997." *Id.* at 5.  By seeking information about whether substances spilled at the Yard migrated to groundwater, *see doc. 390* at 22, this RFA seeks information about the County's contribution to the Site's contamination and a PCE source west of Interstate 25.  Therefore, it exceeds the scope of reopened discovery.

5.  *Request for Admission No. 6 to Doña Ana County*

The Court sustains Doña Ana County's objection to RFA No. 6 for exceeding the scope of reopened discovery and does not require the County to provide a substantive response.  In this RFA, American Linen asks the County to "[a]dmit that [it] has previously contended it should be responsible for a 25% allocated share of total response costs from the … Site." *Doc. 390-3* at 5.  This RFA exceeds the scope of the

reopened discovery since it seeks discovery about the County's contribution to the Site's contamination.

6. *Request for Admission No. 10 to Doña Ana County*

The Court overrules Doña Ana County's objections to RFA No. 10 but deems the County's response sufficient.  In this RFA, American Linen asks the County to "[a]dmit that the alleged arrangement between Jesus Villanueva for disposal of PCE dry cleaning waste began and concluded between the summer of 1982 and the winter of 1982." *Id.* at 9.  In addition to incorporating several general objections without explaining their applicability, the County objects to this request for seeking information that it does not control, for being overly broad and vague due to its ambiguity as to whether the applicable period is from January 1982 to July 1982 or July 1982 to December 1982, and for requesting an improper legal conclusion due to overlap between the term "arrangement" and CERCLA liability.  *Id.* at 9-10.

The County's objections are meritless.  The objection to the RFA for seeking information that the County does not control is addressed in the County's substantive answer, where it states that, after making a reasonable inquiry, the information that is readily available to it is insufficient to enable it to admit or deny this request.  *See doc. 407* at 20.  In its Motion, American Linen has clarified that the applicable period is from the summer of 1982 until the winter of 1982.  *See doc. 390* at 24.  Similarly, American Linen has clarified that, by arrangement, it does not mean arrangement for the purposes

of CERCLA liability but rather the informal relationship between Mr. Villanueva and American Linen.  *Id.* at 24-25.

Notwithstanding these objections, the County's response to this RFA is sufficient. The County admits that the request accurately portrays Mr. Jasso's testimony about the arrangement between Mr. Villanueva and American Linen, but states that, after making reasonable inquiry, it lacks sufficient information to admit or deny whether the alleged arrangement between Mr. Villanueva for disposal of PCE dry cleaning waste began and concluded between the summer of 1982 and the winter of 1982.  *Doc. 390-3* at 10.  This statement is a sufficient answer to the RFA.  *See* Fed. R. Civ. P. 36(a)(4); *supra* at 22-23.

### 7.  *Interrogatory No. 4 to Doña Ana County*

The Court overrules Doña Ana County's objections to Interrogatory No. 4 and compels it to supplement its response by clarifying where JSAI's report accounted for changes in pumping stress and reproducing responsive information in documents to which it refers American Linen for that information.  In Interrogatory No. 4, American Linen asks the County to state the factual and legal basis for any contention that "the water table at the Site does not slope downward to the east to monitoring well nest GWMW-15 east of Interstate 25 resulting in lateral plume transport continuing to the east side of Interstate 25 into the vicinity of the Las Cruces Dam area where additional PCE was allegedly discharged."  *Doc. 388-2* at 8.  In addition to incorporating general objections without providing an explanation for their applicability, the County objects

to this interrogatory as overly broad for not providing a timeframe, for asking for expert opinion, for being cumulative to expert reports and expert depositions, and for exceeding the scope of reopened discovery by asking about the water table at the Site in general.

The County's objections are meritless and abandoned.  The County abandoned all of its objections by not raising them in its response brief.  *See DIRECTV*, 224 F.R.D. at 681; *doc. 406* at 15-17.  The objection based on the interrogatory seeking expert opinion is also invalid for the reasons set forth above in "Common Issues."  *See supra* at 25-26. Further, the objection based on the scope of the reopened discovery is inappropriate because information about the slope of the water table is information about groundwater flow, which falls within the scope of reopened discovery.

The County's initial and supplemental responses are deficient.  The County first responded to this interrogatory by stating that "the slope of the water table has changed over time as shown in USMNG0002811."  *Doc. 388-2* at 9.  It elaborated that the slope "has been dominated by a drawdown cone located between CLC Well 18 and I-25 since at least 1947," except for a period in the early 2000s before the initiation of remedial pumping in 2012 when certain city wells were offline due to the presence of PCE above the maximum contaminant level.  *Id.*  With respect to whether the downward and eastward slope of the water table has transported the PCE plume east of Interstate 25 near the area where additional PCE was allegedly discharged, the County emphasized,

summarizing a rebuttal expert report,[9] that a groundwater model prepared by JSAI in 2006 that accounted for changes in pumping stress did not transport PCE from EPA-identified sources to GWMW-15 and that "PCE had to be added to the model in the Dam area for the predictive model runs used to assess remedial pumping duration." *Id.* The County, though, does not direct American Linen to where that JSAI model accounted for pumping stress. It must do so since the model is part of the factual basis for its contention that the slope of the water table did not transport PCE to the area of the alleged arranged discharge.

The County supplemented its response to Interrogatory No. 4 by referring American Linen to expert depositions, reports, and declaration. *Doc. 406-3* at 4-5. Such a reference is inappropriate. *See In re Urethane Antitrust Litig.*, 2006 WL 1895456, at *4; *Heuskin I*, 2020 WL 1450575, at *3; *Yazzie*, 2010 WL 11450784, at *2. If parts of these depositions, reports, and declarations contain the County's factual and legal basis for contending that the slope of the groundwater table did not transport PCE to the area of its alleged arranged dumping, the County must reproduce those parts in its answer to this interrogatory.

---

[9] American Linen's objection to the County's citation to the rebuttal expert report in its response, *see doc. 388* at 16, is inappropriate as it conflates merely referring a party to an expert report with summarizing, and adopting, the content of an expert report.

8. *Interrogatory No. 5 to Doña Ana County*

The Court overrules Doña Ana County's objections to Interrogatory No. 5 but deems the County's response sufficient.  In Interrogatory No. 5, American Linen asks the County to state the factual and legal basis for any contention that "the alleged releases of PCE dry cleaning waste described in paragraph 24 of Plaintiffs' Second Amended Complaint (or any equivalent allegations in subsequent amendments) would not, based on the large distance to the water table (over 200 ft) result in only a small fraction of the PCE released in this area reaching the groundwater with much of the remainder evaporating." *Doc. 388-2* at 10.  In addition to incorporating general objections without providing an explanation for their applicability, the County objects to this interrogatory for seeking expert opinion and being cumulative of several expert reports and expert depositions.  *Id.* at 10-11.

The County's objections are abandoned or meritless.  The objection based on the interrogatory seeking expert opinion is invalid for the reasons set forth above in "Common Issues."  *See supra* at 25-26.  The County also abandoned its objections to the interrogatory being cumulative and seeking expert opinion by not raising them in its response.  *See DIRECTV*, 224 F.R.D. at 681; *doc. 406* at 15-17.

Beyond invalidating the County's objections, the Court cannot ascertain why American Linen has moved it to compel further response to this interrogatory.  Unlike Interrogatories Nos. 4 and 6 to the County, American Linen does not point to any defect

in the County's substantive response in its briefing.  *See doc. 388* at 13-18; *doc. 415* at 10-

11.  Therefore, American Linen has not discharged its burden of showing that the

County's response to Interrogatory No. 5 is deficient.  *See Collins*, 2021 WL 3931131, at *2

(citing *Daiflon, Inc.*, 534 F.2d at 227).

9.  *Interrogatory No. 6 to Doña Ana County*

The Court overrules Doña Ana County's objections to Interrogatory No. 6,

narrows the Interrogatory to fall within the scope of reopened discovery, and compels

the County to supplement its answer.  In Interrogatory No. 6, American Linen asks the

County to "describe the fate and transport of the PCE including (e.g. the distance in feet

that the PCE was transported laterally west, the transmissivity for each year the PCE

traveled west, whether the PCE migrated eastward at any time, and whether the PCE

commingled with any other contaminant plumes)" if it contends that "PCE released at

the Dam initially migrated westward toward CLC Well 18."  *Doc. 388-2* at 11.  In

addition to incorporating general objections without providing an explanation for their

applicability, the County objects to this Interrogatory for being cumulative to reports

and depositions and "seek[ing] a level of detail which cannot be provided" and expert

opinions.  *Id.* at 11-12.

The objections are meritless or abandoned.  The County abandoned its objection

to the Interrogatory's cumulativeness by not raising it in its response brief.  *See*

*DIRECTV*, 224 F.R.D. at 681; *doc. 406* at 15-17.  The objection about expert opinion is

meritless for the reasons detailed in "Common Issues," above.  *See supra* at 25-26.  The

County cites to no legal authority for the proposition that a party does not have to

provide responsive information where it is too detailed.  *See doc. 388-2* at 12; *doc. 406* at

17-18.  The County must make a reasonable effort to find the responsive information

that is reasonably available to it.  *Lynn*, 285 F.R.D. at 357; Fed. R. Civ. P. 33(b)(1)(B).  If,

after making this effort, it has not found responsive information at the level of detail

requested, "it should so state under oath and should set forth in detail the efforts made

to obtain the information."  *Miller*, 76 F.R.D. at 140.

The Court, though, narrows the scope of Interrogatory No. 6 to request only

information about the fate and transport of PCE from PCE sources located east of

Interstate 25, including any PCE dumped by Mr. Villanueva near the Dam.  *See*

D.N.M.LR-Civ 26.5(a) (authorizing the Court to fashion discovery to meet special

circumstances *sua sponte*).  Information about the rate of westward transport of PCE

west of Interstate 25 and the commingling of any PCE west of Interstate 25 falls outside

the scope of reopened discovery.

As for the County's answer to Interrogatory No. 6 (as narrowed), the Court finds

it deficient.  The County states "that fate and transport of PCE to the west from the Dam

depends on the hydraulic gradient and the hydraulic conductivity of aquifer material."

*Doc. 388-2* at 12.  Then, it improperly directs American Linen to several expert reports

for an illustration of the historical gradient, transmissivity values, and data from which

gradients may be estimated.  *Id.*  At no point does the County clarify the distance in feet that the PCE was transported laterally west, the transmissivity for each year the PCE traveled, or whether PCE east of Interstate 25 commingled with other contaminant plumes in that area.  *See id.*

The County must supplement its answer with its express positions about the the distance in feet that the PCE east of Interstate 25 was transported westwards, the transmissivity for each year that PCE east of Interstate 25 traveled west, and whether this PCE commingled with any other contaminant plumes east of Interstate 25.  If the County does not have an express position about these topics, it must clearly state as such and explain why it does not, including the specifics of the reasonable effort that it took to review all information reasonably available to it to obtain a position.  *See Miller*, 76 F.R.D. at 140.  The County cannot direct American Linen to information in expert reports.  *In re Urethane Antitrust Litig.*, 2006 WL 1895456, at *4; *Heuskin I*, 2020 WL 1450575, at *3; *Yazzie*, 2010 WL 11450784, at *2.  If responsive information is in these reports, the County must reproduce it in its response to this interrogatory.

10. *Interrogatory No. 7 to Doña Ana County*

The Court overrules the Doña Ana County's objections to Interrogatory No. 7 and deems its response, as supplemented on September 3, 2021, sufficient.  In Interrogatory No. 7, American Linen asks the County to "state the factual and legal basis" for any contention "that the detections of PCE soil vapor by NMED in 2010, as

described in the Christopher Whitman deposition, were not caused by surface runoff from the upgradient Foothills Landfill or urban runoff from surrounding developed areas." *Doc. 388-2*. The County objects to this interrogatory for seeking expert opinion, requesting information contained in expert reports and expert depositions, and exceeding the scope reopened discovery by asking about the Foothills Landfill. *Id.*

The County's objections are meritless or abandoned. The objection based on the interrogatory seeking expert opinion is invalid for the reasons set forth above in "Common Issues." *See supra* at 25-26. The County waived its objection to the interrogatory's cumulativeness by not raising it in its response. *See DIRECTV*, 224 F.R.D. at 681; *doc. 406* at 17. The objection to interrogatory as exceeding the scope of the discovery order is inappropriate because the Foothills Landfill and the urban runoff sources east of Interstate 25 fall within the scope of reopened discovery.

The County's supplemented response to Interrogatory No. 7 is sufficient. The County inappropriately incorporated expert rebuttal reports by reference in its initial response. *Doc. 388-2* at 13. Its supplemented response, though, summarizes the parts of these reports that contest the proposition that the detections of PCE soil vapor by NMED in 2010, as described in the Mr. Whitman deposition, were caused by surface runoff from the upgradient Foothills Landfill or urban runoff from surrounding developed areas. *See doc. 406-3* at 7-9. American Linen's reply brief, submitted after the

County supplemented its answer, makes no argument as to the supplemented answer's inadequacy.  *See doc. 415* at 10-11.

11. *Interrogatory No. 8 to Doña Ana County*

The Court sustains Doña Ana County's objection to Interrogatory No. 8 for exceeding the scope of reopened discovery and does not require the County to provide a substantive response.  In Interrogatory No. 8, American Linen asks that, if the County contends "that response costs can be allocated on a percentage basis by individual source area," it "state how [it] contend[s] percentages are assigned as between: (1) the County Maintenance Yard; (2) the Former Municipal Airport; (3) the Walnut Street Storage Yard; (4) the Former Armory; and (5) releases of PCE at the Dam forming the basis of [its] 'arranger liability' claim."  *Doc. 388-2* at 14.  This RFA exceeds the scope of reopened discovery since it seeks discovery about Plaintiffs' contributions to the Site's contamination.

12. *Interrogatory No. 9 to Doña Ana County*

The Court sustains Doña Ana County's objection to parts of Interrogatory No. 9 for exceeding the scope of reopened discovery and finds its answer, as revised to withdraw improperly incorporated expert reports, sufficient.  In Interrogatory No. 9 American Linen asks the County to state the amount in kilograms that it "contend[s] w[as] released from the following source areas: (1) the County Maintenance Yard; (2)

the Former Municipal Airport; (3) the Walnut Street Storage Yard; (4) the Former

Armory; and (5) releases of PCE at the Dam forming the basis of [its] arranger liability

claim." The County objected to this Interrogatory for calling for legal conclusions,

expert work product, and expert opinions; exceeding the scope of reopened discovery;

and not requesting information about the amount of PCE in kilograms released at

facilities owned or operated by American Linen. *Doc. 388-2* at 15-16.

Except for the objection about the scope of reopened discovery, the County's

objections are meritless or abandoned. The County abandoned its objections to the

Interrogatory for seeking legal conclusions and expert work product and not seeking

information about quantities of PCE released at American Linen facilities by not raising

them in its response. *See DIRECTV*, 224 F.R.D. at 681; *doc. 406* at 17-18. The objection

based on the Interrogatory seeking expert opinion is also invalid for the reasons set

forth above in "Common Issues." *See supra* at 25-26. The objection based on the

interrogatory exceeding the scope of reopened discovery is appropriate because the

County Maintenance Yard, the Former Municipal Airport, the Walnut Street Storage

Yard, and the Former Armory are all PCE sources west of Interstate 25 and not within

the scope of reopened discovery.

The County's answer to Interrogatory No. 9 as to the quantities of PCE released

at the Dam is sufficient. The County states in response to this Interrogatory that it

"does not 'contend' any exact amount of PCE was released at the surface of the alleged

sources listed in Interrogatory No. 9." *Doc. 388-2* at 16.  In its initial response, it

improperly directed American Linen to its experts' reports for information about "PCE

volumes relevant to this litigation," *id.*, but has since withdrawn this reference, *see doc.*

*430* at 11.  The County, though, is advised that the Court construes its answer to state

that it does not contend that the amount of PCE released at the Dam exceeded any

weight or volume either.  If the County contends otherwise, it must supplement its

answer accordingly.

     13. *Interrogatory No. 10 to Doña Ana County*

The Court sustains Doña Ana County's objection to parts of Interrogatory No. 10

for exceeding the scope of reopened discovery and finds its answer to the

unobjectionable part of this Interrogatory insufficient.  In Interrogatory No. 10,

American Linen asks the County to "[i]dentify the facts and opinions that form the basis

of [its] answer to Interrogatory No. 9." *Doc. 388-2* at 17.  The County incorporates the

specific objections it made to Interrogatory No. 9.  For the same reasons as Interrogatory

No. 9, these objections are meritless or abandoned except for the objection about

Interrogatory No. 10 exceeding the scope of reopened discovery as to PCE sources areas

other than the alleged dumping at the Dam.

The County's response to Interrogatory No. 10 is insufficient.  It states that the

facts and opinions forming the basis for this answer were included in its response to

Interrogatory No. 9.  *Id*.  There, the County explains that "this case deals with releases of

PCE which took place decades ago" and that "exact amounts of PCE released decades ago—while theoretically quantifiable—cannot be determined where evidence and data is lacking." *Id.* at 16.  Other than improperly incorporating and then withdrawing expert reports, *see doc. 388-2* at 16; *doc. 430* at 11, the County has not identified and reproduced the facts and opinions which led it to conclude that evidence for the exact amounts of PCE released decades ago at the Dam is lacking.  It must do so.

14. *Interrogatory No. 12 to Doña Ana County*

The Court sustains Doña Ana County's objection to Interrogatory No. 12 for exceeding the scope of reopened discovery and does not require the County to provide a substantive response.  In Interrogatory No. 12, American Linen asks the County to state the factual and legal basis for any contention "that Plaintiffs' contribution of PCE to the Site can be distinguished from all other PRPs (for the purpose of *Gore* factor[10] analysis)" except "former dry cleaners or other sources of PCE in the vicinity of North Main Street."  *Doc. 388-2* at 18.  This interrogatory exceeds the scope of reopened discovery since it seeks discovery about Plaintiffs' contribution to the Site's contamination.

---

[10] The *Gore* factors are an approach proposed by Senator Albert Gore to apportion contribution claims under 42 U.S.C. § 9613(f)(1).  *United States v. Colo & E. R.R. Co.*, 50 F.3d 1530, 1536 n.6 (10th Cir. 1995).

15. *Request for Production No. 2 to Doña Ana County*

The Court narrows RFP No. 2 to fall within the confines of reopened discovery and compels Doña Ana County to respond to it.  In RFP No. 2, American Linen asks the County to "[p]roduce all documents concerning detections of PCE at any area within the Site and all areas other than west of the Site that have not already been produced by any party or dismissed party in this case."  *Id.* at 20.  This RFP exceeds the scope of reopened discovery because it requests documents about PCE detections west of Interstate 25.  But the Court may tailor it to omit these sources.  *See Regan-Touhy*, 526 F.3d at 650.  Therefore, the Court restricts RFP No. 2 to request documents about the detection of PCE in areas that are both within the Site and east of Interstate 25 and compels the County to respond to it, either by producing documents or stating that no responsive documents exist and detailing its attempts to find them.

16. *Request for Production No. 3 to Doña Ana County*

The Court sustains Doña Ana County's objections to RFP No. 3 for being overbroad and unduly burdensome and does not require the County to produce any documents in response to it.  RFP No. 3 asks the County to "[p]roduce all documents mentioning the term 'American Linen' that have not already been produced by any party o[r] former party in this case, but not including [various types of work product or privileged information]."  *Doc. 388-2* at 20–21.  The County objects to this RFP for being so broad and burdensome that it constitutes an impermissible fishing expedition.  *See id.*

at 21 (citing *Martinez v. Padilla*, 19-889 JCH/GJF, 2021 WL 309065, at *3 (D.N.M. Jan. 29,

2021) (unpublished)).  Fishing expeditions take many forms.  Rather than fishing for

relevant documents with a rod, reel, and a carefully-selected lure (i.e., narrow tailoring),

this RFP trawls through the ocean of documents that the County controls, hoping to net

them.  Given American Linen's long-term presence in downtown Las Cruces, this RFP's

bycatch would not be dolphins, sea turtles, or coral but tax documents, property deeds,

and public safety records.  The Court will not license such an expedition.  *See Melo-*

*Fernandez v. Bearden*, CV 20-0081 SCY/JHR, 2020 WL 7353880, at *2 (D.N.M. Dec. 15,

2020) (unpublished); *Landry*, 323 F.R.D. at 375.

      17. *Requests for Production Nos. 7-10 to Doña Ana County*

      The Court sustains Doña Ana County's objections to RFPs Nos. 7-10 for being

overbroad, unduly burdensome, and exceeding the scope of reopened discovery, and

does not require the County to produce any documents in response to them.  In RFPs

Nos. 7-9, American Linen asks the County to "[p]roduce all comments, revisions,

redlined drafts, and other communications by" DBSA, JSAI, and Terracon Consultants,

Inc. "directed towards documents, reports, memoranda, and analysis related to the Site

that have not already been produced in this case."  *Doc. 338-2* at 23-24.  In RFP No. 10,

American Linen asks the County to "[p]roduce all comments, revisions, redlined drafts,

and other communications by the City of Las Cruces Utilities (by and through its agents

and employees …) directed towards documents, reports, memoranda, and analysis

related to the Site that have not already been produced in this case." *Doc. 338-2* at 25. The County objects to these RFPs as overbroad, unduly burdensome, and beyond the scope of reopened discovery. *Id.* at 23-25.

RFPs are overly broad and unduly burdensome where the documents requested are of minimal relevance and the burden of producing them is substantial. *See Franklin v. United States*, CIVIL NO. 12-1167 KBM/LFG, 2013 WL 11336864, at *2, *4 (D.N.M. Aug. 28, 2013) (unpublished). "[A] party resisting facially overbroad or unduly burdensome discovery need not provide specific, detailed support." *Baylon v. Wells Fargo Bank, N.A.*, Civ. No. 12-52 KG/KBM, 2013 WL 12164723, at *3 (D.N.M. Nov. 20, 2013) (unpublished) (quoting *Mackey v. IBP, Inc.*, 167 F.R.D. 186, 197 (D. Kan. 1996)). But "if it is not obvious from the face of the discovery request that it is overly broad and unduly burdensome, the party objecting to the discovery on the grounds that it is overly broad and unduly burdensome must provide affidavits or other evidence to support the objection." *Id.* (citing *Wagner v. Dryvit Sys., Inc.*, 208 F.R.D. 606, 610 (D. Neb. 2001)).

RFPs Nos. 7-10 are facially overbroad and unduly burdensome and extend to content outside the scope of reopened discovery. The comments, revisions, redlined drafts, and other communications by DBSA, JSAI, Terracon Consultants, Inc., and the City of Las Cruces Utilities that are directed towards various documents related to the Site contain not only content falling inside the scope of reopened discovery, but also

84

content about PCE sources west of Interstate 25, other parties' contributions to the Site's

contamination, and other issues that fall outside this scope.  Producing these materials

would require the County to review historical records and communications going back

decades for responsive materials, cross-reference these materials with responsive

materials that have already been produced in this case to avoid duplicate production,

segregate the parts of the non-duplicative materials that fall within the scope of

reopened discovery from those that do not, and identify and withhold those materials

that were prepared in anticipation of litigation.

American Linen fails to show that these RFPs will yield sufficient relevant

information within the scope of reopened discovery to justify requiring the County to

bear this large temporal and financial burden.  Each of American Linen's arguments for

these RFPs' relevancy falls outside this scope.  First, American Linen notes that these

materials will likely be relevant to the arranger claim because "DBSA and JSAI have

conducted detailed analyses of the Site, releases at Plaintiffs' facilities, and the fate and

transport of those releases."  *See doc. 388* at 25.  The assessed facilities, though, lie west

of Interstate 25 so releases of PCE at them and the fate and transport of that PCE is

beyond the scope of the reopened discovery.  Second, American Linen emphasizes that

DBSA, JSAI, and Terracon Consultants, Inc. assisted Plaintiffs in identifying other PRPs,

including the New Mexico State Armory Board.  *Id.* at 26.  The identities of other PRPs,

though, are relevant to the allocation of cleanup costs and other parties' contributions to

the Site's contamination, not to whether American Linen is liable as an arranger. Finally, American Linen asserts that DBSA and JSAI used evidence adduced by Plaintiffs to model PCE flow and transport for the purpose of allocating response costs between Plaintiffs and the United States Defendants. *See id.* at 25-26. Plaintiffs' and the United States Defendants' contributions to the Site's contamination, though, fall outside the scope of reopened discovery.

The Court has the discretion to narrow down and tailor overly broad and unduly burdensome discovery requests, *see Regan-Touhy*, 526 F.3d at 650. However, it has not been able to identify narrower versions of RFPs No. 7-10 that are not unduly burdensome. Conceivably, the Court could eliminate concerns about these RFPs exceeding the scope of discovery by narrowing them to request comments, revisions, redlined drafts, and other communications directed towards parts of documents related to topics within the scope of reopened discovery, such as groundwater flow or PCE sources and releases east of Interstate 25. Identifying responsive materials and redacting non-discoverable content, though, would still impose a substantial burden on the County. The Court cannot determine whether that burden would be proportional to the value of the discovery. Therefore, it will not exercise its discretion to narrow RFPs Nos. 7-10. *See Punt v. Kelly Servs.*, 862 F.3d 1040, 1047 (10th Cir. 2017) ("[M]agistrate judges [are] not required to exercise [their] discretion to … assume counsel's responsibility of framing an appropriate discovery request.").

18. *Request for Production No. 13 to Doña Ana County*

The Court sustains Doña Ana County's objection to RFP No. 13 for exceeding the scope of discovery, overrules its remaining objection, narrows this RFP to request documents about causes of PCE at GWMW-15 that are located east of Interstate 25, and compels the County to produce documents responsive to this narrowed request. In RFP No. 13, American Linen asks the County to "[p]roduce all documents in [its] possession, custody, or control, of causes of PCE at GWMW-15 other than dumping by Jesus Villanueva." *Doc. 388-2* at 27. The County objects to this request for exceeding the scope of reopened discovery and being overbroad and undefined because it asks the County to evaluate whether theoretical potential sources of contamination at GWMW-15 could provide a defense for American Linen. *Id.*

Only the objection about the scope of reopened discovery has merit. RFP No. 13 exceeds the scope of discovery by requesting documents about sources for the PCE at GWMW-15 that are located west of Interstate 25. The Court, though, exercises its discretion to narrow RFP No. 13 to request only documents about causes of PCE at GWMW-15 other than PCE sources located west of Interstate 25 and dumping by Mr. Villanueva. *See Regan-Touhy*, 526 F.3d at 650. The objection based on lack of definition is exaggerated because the necessary evaluation is quite limited. If a document contains a theoretical cause of PCE contamination at GWMW-15 that falls within the scope as narrowed by the Court above and alternative to dumping by Mr. Villanueva, the

County must produce it.  Producing such a document, of course, shall not constitute an admission about the truth of the document's contents.

### F.  REASONABLE EXPENSES, INCLUDING ATTORNEY'S FEES

The parties shall bear their own costs, including attorney's fees, for American Linen's First Motion to Compel Written Discovery (*doc. 387*), American Linen's Second Motion to Compel Written Discovery (*doc. 388*), and American Linen's Motion to Determine Sufficiency of Answers to Requests for Admission and Deem Matters Admitted (*doc. 390*).  Federal Rule 37(a)(5)(C) gives the Court the discretion to apportion the reasonable expenses for motions for protective orders that are granted in part and denied in part.  Fed. R. Civ. P. 37(a)(5)(C).  Here, both Plaintiffs and American Linen "have gone farther than is permissible in seeking and resisting discovery," but "neither has taken a position so unjustified as to warrant the imposition of costs."  *See Payne v. Howard*, 75 F.R.D. 465, 472 (D.D.C. 1977).  Now that the dust of the parties' written discovery disputes has settled (at least to some degree), neither party is "an overall winner or loser."  *See Caruso v. Coleman Co.*, 157 F.R.D. 344, 350 (E.D. Pa. 1994) (internal quotation marks omitted).  Therefore, awarding expenses to either side is inappropriate.

## IV.  ORAL DISCOVERY DISPUTES

The Court GRANTS Plaintiffs' Motions for Protective Orders for the Rule 30(b)(6) Depositions of JEGI, DBSA, JSAI, the City of Las Cruces, and Doña Ana County

and DENIES American Linen's Motion to Compel Plaintiffs to Designate Witnesses Pursuant to Fed. R. Civ. P. 30(b)(6) and 37(a)(3)(B)(ii). Since these discovery disputes involve fewer common issues, the Court will summarize their shared applicable legal principles and then address each dispute in turn.

## A. LEGAL STANDARDS

Rule 30(b)(6) allows a party to depose a corporation on topics noticed and described with reasonable particularity. Fed. R. Civ. P. 30(b)(6). "The law is well-settled that corporations have an 'affirmative duty' to make available as many persons as necessary to give 'complete, knowledgeable, and binding answers' on the corporation's behalf" to questions on noticed topics. *Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.*, 497 F.3d 1135, 1146 (10th Cir. 2007) (quoting *Reilly v. NatWest Mkt. Grp., Inc.*, 181 F.3d 253, 268 (2d Cir. 1999)). The reasonable particularity requirement ensures that a Rule 30(b)(6) deponent is "not faced with an 'impossible task' in preparing its representatives" to testify on noticed topics. *Heuskin v. D&E Transp., LLC*, No. CV 19-957 MV/GBW, 2020 WL 3051578, at *2 (D.N.M. June 8, 2020) (unpublished) ("*Heuskin II*") (quoting *McBride v. Medicalodges, Inc.*, 250 F.R.D. 581, 584 (D. Kan. 2008)). It requires a party noticing a Rule 30(b)(6) deposition to "take care to designate, with painstaking specificity, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute." *Cotton v. Costco Wholesale Corp.*, No. 12-2731-JWL, 2013 WL 3819975, at *1 (D. Kan. July 24, 2013) (unpublished).

Matters noticed for a Rule 30(b)(6) deposition must also fall within the scope of discovery, i.e., be "relevant to any party claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b).  Where a deponent shows that a noticed topic is not stated with reasonable particularity, is unduly burdensome, or is outside the scope of discovery, the Court must issue a protective order.  *See Heuskin II*, 2020 WL 3051578, at *2.

B.  RULE 30(b)(6) DEPOSITIONS OF JEGI, JSAI, AND DBSA

American Linen may not proceed with the depositions of JSAI, DBSA, or JEGI as currently noticed.  Not only are many of the topics noticed unduly burdensome and lacking in reasonable particularity, but many of the potential questions posed by American Linen exceed the scope of reopened discovery and impermissibly solicit expert testimony from a fact witness.  The Court does not spend time and space identifying which topics do not suffer from these defects or may be modified to avoid them since American Linen did not serve any of the notices for JSAI's, DBSA's, and JEGI's Rule 30(b)(6) depositions within the deadlines set by Local Rule 30.1.

1.  *Background*

a.  JSAI & DBSA RULE 30(B)(6) DEPOSITIONS

American Linen has been attempting to take JSAI's and DBSA's Rule 30(b)(6) depositions since June 3, 2021, when it sent Plaintiffs draft notices for these two depositions.  *See doc. 409-1* at 1.  On June 9, 2021, Plaintiffs' counsel confirmed that it

could accept service on behalf of JSAI and DBSA. *Doc. 409-6.* For several weeks, the parties met and conferred about the noticed topics, both in a telephonic conference and over email. *See generally docs. 408-2, 408-3.* During this time, the parties set JSAI's and DBSA's depositions for July 13, 2021, provided that that they reached an agreement on the proper scope for these depositions beforehand. *Doc. 409-3* at 2.

On June 30, 2021, the parties met with the Court to obtain greater clarity about the scope of reopened discovery. *See doc. 366.* Hypothesizing that the issue might be the broadness of the topics noticed, rather than the questions that American Linen intended to ask, the Court proposed that American Linen reduce several of its questions within these topics to writing so that the parties could have a more productive meet and confer about them that American Linen could use to draft narrower topics. *See id.* at 5–6.

On July 6, 2021, American Linen withdrew its notices for DBSA's and JSAI's depositions, asked Plaintiffs to confirm DBSA's availability for a Rule 30(b)(6) deposition on July 13, 2021, and JSAI's availability for a Rule 30(b)(6) deposition on August 3-5, 2021, and explained that it would be re-noticing these depositions topics "to comport with the Court's comments from the status conference." *Doc. 416-1* at 1. Two days later, Plaintiffs informed American Linen that the deadline to take DBSA's deposition had passed since Local Rule 30.1 required American Linen to notice this deposition at last fourteen days before taking it and the reopened discovery was closing

eleven days later on July 19, 2021.  *Doc. 416-2* at 4-5.  The following day, July 9, 2021,

American Linen unilaterally served JSAI and DBSA with subpoenas and notices of

topics for Rule 30(b)(6) depositions for July 19, 2021, the last day of the reopened

discovery period.  *Doc. 389-3*.  The only change that American Linen made to the

deposition notices was adding several example questions for noticed topics.  The topics

themselves were unchanged.

American Linen noticed the following topics for DBSA's deposition: (i) the

identification of PCE source areas to the Site east of N. Solano Drive; (ii) groundwater

flow and transport at the Site, including fate and transport of PCE, contamination to

and from GWMW-15, modeling and analysis of hydrogeologic zones, groundwater

elevations and contours presently and historically, and groundwater recharge rates; (iii)

the suitability, fitness, and reliability of alternative fate and transport models for

analyzing PCE contamination at the Site, including without limitation VLEACH and

BIOCHLOR fate and transport models; (iv) the scope of DBSA's role and contractual

obligations with respect to the Site; and (v) the substance and content of fifteen

documents as related to the arranger claim and American Linen's "contentions"[11] about

that claim.  *See doc. 389-2* at 9-19.

---

[11] Since American Linen has not filed an answer, it uses the phrase "Defendant's Contentions" to refer to its "defenses" for the purposes of Rule 30(b)(6) deposition notices.  These contentions are: (1) PCE from one or more of the County Maintenance Yard, the Former Armory, or Former Municipal Airport was laterally transported by eastward groundwater flow to the vicinity of GWMW-15; (2) based on a large distance to the water table, only a fraction any PCE released at the Dam, would likely reach the groundwater, with much of the remainder evaporating; (3) any materials released by Mr. Villanueva and

American Linen noticed the following topics for JSAI's deposition: (i) the first three topics identified above for DBSA; (ii) the scope of JSAI's role and contractual obligations with respect to the Site; and (iii) substance and content of fifteen documents as related to the arranger claim and American Linen's contentions about that claim. *See doc 389-1* at 9-21.

b. JEGI RULE 30(B)(6) DEPOSITION

American Linen attempted to schedule JEGI's deposition during the discovery period but did not hear back from it about whether it would sit for a deposition until July 6, 2021. *See doc. 401* at 4. That day, American Linen informed Plaintiffs that it would be noticing this company's deposition for July 12, 2021, a day that the parties had left open for an unspecified American Linen deposition. *See doc. 416-1* at 1. Two days later, Plaintiffs responded that Local Rule 30.1 and Federal Rule of Civil Procedure 30(b)(6) precluded American Linen from taking the deposition on that date since no notice for the deposition had been served and the parties had not yet met and conferred on the notice's topics. *Doc. 416-2* at 2-3. Later that day, American Linen served a notice to take the Rule 30(b)(6) deposition of JEGI on July 12, 2021. *See doc 384-3* at 1.

---

Mr. Jasso at the Dam were diluted with water and the total volume of PCE in the materials was insignificant; (4) Plaintiffs cannot determine the amount of PCE allegedly released at the Dam by Mr. Villanueva and Mr. Jasso; and (5) surface runoff from the topographically upgradient Foothills Landfill or urban runoff cannot be ruled out as the cause of detections of PCE at the Dam. *Doc. 389-1* at 3-4; *doc. 389-2* at 3-4. American Linen has not pled these contentions because it filed a motion to dismiss, instead of an answer, to Plaintiffs' Second Amended Complaint. Failure to plead these defenses, though, does not itself bar discovery on them because they are relevant to negating the causation element of Plaintiffs' arranger claim.

American Linen noticed the following topics for JEGI's deposition as they "relate" to the Plaintiffs' arranger claim and its contentions about it: (i) investigations that JEGI (in dates unknown) and the New Mexico Environment Department (in 1999) did about the Site's contamination; (ii) any work that JEGI has done at the Site since the EPA entered its decision; (iii) JEGI's knowledge about suspected potential responsible parties ("PRPs") and groundwater fate and transportation; (iv) allocation of response costs amongst known and suspected PRPs; and (v) the substance and content of six documents. *See generally doc. 394-3.*

c.   MOTIONS ON JSAI'S, DBSA'S, AND JEFG'S RULE 30(B)(6) DEPOSITIONS

On August 20, 2021, after the noticed depositions did not occur and the parties' subsequent efforts to meet and confer about their propriety and scope broke down, American Linen filed a Motion to Compel Plaintiffs to Designate Witnesses Pursuant to Fed. R. Civ. P. 30(b)(6) and 37(a)(3)(B)(ii) (*doc. 389*) and Plaintiffs filed a Motion for Protective Order Quashing American Linen's Rule 30(b)(6) Deposition Notices to Jacobs Engineering Group, Inc., Daniel B. Stephens & Associates, Inc., and John Shoemaker & Associates, Inc. (*doc. 384*).

On September 3, 2020, the parties filed responses on their cross motions for protective order and to compel. *See docs. 401, 408.* On September 10, 2021, American Linen refiled several exhibits to its discovery motions since their original files had been

corrupted.  *See doc. 409*.  Briefing was completed on the parties' motions on September

17, 2021, when the parties filed their respective replies.  *See docs. 411, 412, 416, 423*.

2.  *Plaintiffs Have Standing to Seek Protective Orders for Rule 30(b)(6) Depositions Noticed to Nonparties*

The Court must determine whether Plaintiffs have standing to challenge the

depositions noticed for JEGI, JSAI, and DBSA, before it can address the numerous

procedural and substantive issues that they raise.  It finds that Plaintiffs have standing

to both seek a protective order for the deposition notices pursuant to Rule 26(c) and to

quash the subpoenas for these depositions under Rule 45(d)(3).

Rule 26(c) gives parties like Plaintiffs standing to challenge testimony

subpoenaed from a nonparty on the grounds that the information sought is irrelevant to

any claim or defense, unduly burdensome, or otherwise merits the issuance of a

protective order.  *See, e.g.*, *Artis v. Murphy-Brown LLC*, No. 7:14-CV-237-BR, 2018 WL

3352639, at *2 (E.D.N.C. July 9, 2018) (unpublished); *Baptiste v. Ctrs., Inc.*, No. 5:13-CV-

71-Oc-22PRL, 2013 WL 3196758, at *2 (M.D. Fla. June 21, 2013) (unpublished); *G.K. Las

Vegas Ltd P'shp v. Simon Prop. Grp., Inc.*, No. 2:04-cv-01199-DAE-GWF, 2007 WL 119148,

at *3 (D. Nev. Jan. 9, 2007) (unpublished); *Washington v. Thurgood Marshall Acad.*, 230

F.R.D. 18, 21-22 (D.D.C. 2005).  Since Rule 30(b)(6) topics that are not defined with

reasonable particularity are unduly burdensome, Plaintiffs also have standing to raise

arguments about the particularity of noticed topics.

American Linen contends that Plaintiffs lack standing to challenge the notice for JEGI's Rule 30(b)(6) deposition by citing to caselaw about the standing requirements to quash a subpoena. *Doc. 401* at 3-4. Plaintiffs need not quash the subpoena underlying JEGI's Rule 30(b)(6) deposition to obtain a protective order for topics noticed for that deposition. *See, e.g.*, *Artis*, 2018 WL 3352639, at *2; *Baptiste*, 2013 WL 3196758, at *2; *G.K. Las Vegas*, 2007 WL 1191498, at *3; *Thurgood Marshall Acad.*, 230 F.R.D. at 21-22.

Even if they did, Plaintiffs have the standing to do so to the extent that the topics noticed for the deposition exceed the limits of the reopened discovery and did not comply with local rules. While generally, "a party has no standing to challenge a subpoena to a nonparty." *Trujillo v. Bd. of Ed. of Albuquerque Pub. Schs.*, Nos. CIV 02-1146 JB/LFG, CIV 03-1185 JB/LFG, 2007 WL 2296916, at *1 (D.N.M. June 26, 2007) (unpublished), a longstanding exception to this rule exists where "the subpoena infringes upon the [party's] legitimate interests," *id.*; *see also E.E.O.C v. 704th HTL Operating, LLC*, Civil No. 11-845 BB/LFG, 2012 WL 1216142, at *2 (D.N.M. Apr. 3, 2012) (unpublished). These interests include compliance with courts' discovery orders and local rules. *See Minnesota Supply Corp. v. Raymond Corp.*, No. Civ. 99-832 JRTFLN, 2002 WL 31898162, at *2 (D. Minn. Dec. 27, 2002) (unpublished) (quashing subpoenas seeking discovery after the deadline in the court's scheduling order). Here, Plaintiffs have an interest in ensuring that American Linen does not use the tools available to it during

reopened discovery to obtain discovery that falls outside the reopening's scope and that

depositions are noticed in compliance with local rules.

### 3. *Most Topics Noticed by the JSAI, JEGI, & DBSA Depositions Are Not Defined with Reasonable Particularity*

Turning to the substance of JSAI, JEGI, and DBSA's depositions, the

overwhelming majority of the topics noticed for them fail Rule 30(b)(6)'s reasonable

particularity requirement by seeking testimony on these consultants' investigations,

work, and authored documents "as [they] relate[] to" the paragraphs in the Second

Amended Complaint that comprise the arranger claim and/or American Linen's

contentions about that claim.  *Doc. 389-1* (15 of 19 topics for JSAI); *doc. 389-2* (15 out of

19 topics for DBSA); *doc. 384-3* (9 out of 13 topics for JEGI).

Many courts, including this one, have found that omnibus phrases like "related

to" violate the particularity requirement since they provide no "basis upon which an

individual or entity can reasonably determine what information may or may not be

responsive."  *Trustees of Boston Univ. v. Everlight Elecs. Co.*, Civil Actions Nos. 12-cv-

11935-PBS, 12-cv-12326-PBS, 12-cv-12330-PBS, 2014 WL 5786492, at *3 (D. Mass. Sept. 24,

2014) (unpublished) (citing *W. Res., Inc. v. Union Pac. R.R.*, No. 00-2043-CM, 2002 WL

1822430, at *2 (D. Kan. July 23, 2002) (unpublished), and *Twigg v. Pilgrim's Pride Corp.*,

No. 3:05-CV-40, 2007 WL 676208, at *9 (N.D.W. Va. Mar. 1, 2007) (unpublished)); *see also*

*Baylon*, 2013 WL 12164723, at *3.  Courts allowing parties to use these phrases do so

where they are tailored to specific, narrow categories of information.  *See, e.g., In re*

*Motor Fuel Temperature Sales Pracs. Litig.*, No. 07-MD-1840-KHV, 2009 WL 959493, at *5

(D. Kan. Apr. 3, 2009) (unpublished) (allowing discovery requests for all information

and documentation relating to a party's use of specific equipment in particular

locations).

     No such narrow tailoring exists here.  American Linen seeks testimony about the

substance and content of documents as they "relate[]" to the entire arranger claim

and/or its contentions about to it.  The sole potential limit for some of the noticed topics

is the number of pages in the noticed document.  *See, e.g., doc. 389-1* at 11 (noticing six

pages of a document for JSAI Topic No. 5).  Page counts, though, are a poor limit as a

few pages may still contain content on a variety of issues, about each of which the

deponent must familiarize itself—a process that entails more than just reading the

pages in question.  But even if page counts were sufficient to tailor some of American

Linen's notices, several noticed documents have hundreds of pages.  *See doc. 389-1*

(requiring JSAI to familiarize itself with 310 pages, 1,351 pages, 705 pages, and 715

pages for Topics Nos. 1, 10, 11, and 19 respectively); *doc. 389-2* (requiring DBSA to

familiarize itself with 119 pages, 730 pages, 682 pages, 1,351 pages, 705 pages, and 715

pages for Topics Nos. 9-13 and 19 respectively).

4.   *The Depositions of JSAI and DBSA Are Unduly Burdensome as Currently Noticed*

The absence of specificity for many of the topics noticed for JSAI's and DBSA's depositions makes them unduly burdensome.  Rule 26(c) gives the Court discretion to issue a protective order for good cause to protect a person "from … undue burden or expense."  Fed. R. Civ. P. R. 26(c).  Unless discovery is unduly burdensome on its face,

> [t]he party resisting [it] as unduly burdensome bears [the] burden of showing facts demonstrating that the time or expense involved in responding to requested discovery is unduly burdensome; this includes the obligation to provide sufficient detail and explanation about the nature of the burden in terms of time, money, and procedure….

*Lewis & Roca*, 2013 WL 12246642, at *3 (citing *Lear Corp.*, 215 F.R.D. at 641).  Generally, the resisting party discharges this burden "by submitting affidavits or offering evidence revealing the nature of the burden."  *Id.* at *4 (citing *DIRECTV*, 224 F.R.D. at 688–89).

The Court need not reach the question of whether topics noticed for JSAI's and DBSA's depositions are facially overbroad because both environmental consultants have provided affidavits detailing the burdens that preparing to testify on the noticed topics would impose upon them.  In an affidavit, Steven Finch, JSAI's vice president, estimates that, even though he wrote several of the noticed reports, *see doc. 408-5* at ¶¶ 10, 12, "it would take [him] at minimum the equivalent of six weeks of billable time (approximately 240 hours) to review the reports contained in [the noticed] topics, the underlying data referenced in the reports, and prepare to answer questions during the deposition," *id.* at ¶ 17, in part because many of these reports contain references to

thousands of pages of other documents, *id.* at ¶ 11.  Spending this much time preparing

for the Rule 30(b)(6) deposition would divert his attention from nine active projects

about water supply, water rights, and ongoing monitoring for environmental permit

compliance.  *Id.* at ¶ 22.

Similarly, in an affidavit, Nicole Sweetland, the President of Geo-Logic

Associates, of which DBSA is a wholly owned subsidiary, estimates that "it would take

[her] at minimum the equivalent of four to six weeks of billable time (approximately 160

to 240 hours) to review the reports contained in [the noticed] topics, the underlying data

referenced in the reports, and prepare to answer associated questions during the

deposition," *doc. 408-4* at ¶ 22, in part because many of the reports reference other

lengthy documents that she must also review, *see id.* at ¶ 20.  Spending this much time

preparing for a Rule 30(b)(6) deposition would take Ms. Sweetland away from important

company tasks, such as supervising her direct reports, completing end-of-the-year

performance reviews, attending two or three board of directors' meetings, preparing at

least two expert reports, participating in at least two arbitration matters, and reviewing

reports on approximately ten projects that are non-litigation in nature.  *Id.* at ¶ 26.

American Linen contends that the burden its noticed topics imposes on JSAI and

DBSA is not undue for two broad reasons.  First, it disputes the size of the burden

imposed.  *See doc. 401* at 5.  It emphasizes that courts routinely allow the deposing party

to notice more topics than it has noticed to JSAI and DBSA.  *See doc. 401* at 5 (gathering

cases).  This argument mistakenly reduces burdensomeness to a single variable: the

number of topics noticed.  Burdensomeness is a product of the topics' broadness and

complexity, not just their quantity.  Thus, nineteen broad topics not defined with

reasonable particularity may be more burdensome than ten times that many specific,

narrow topics.  American Linen also disputes the extent of the burdens imposed by

claiming that it is merely seeking to have DBSA authenticate six of the reports, *doc. 416* at

12 (citing *doc. 389-2* at 15-19) and noting that the reason many reports are so long (such

as the 1,350 page one noticed in JSAI Topic No. 11 and DBSA Topic No. 12) is that they

contain appendices with raw data for reference, *doc. 401* at 7.  These claims ignore that

DBSA must prepare to testify to these reports as noticed, which includes testimony on

the raw data in the appendices and on issues well beyond authentication.  If American

Linen had wished to exclude these issues and data from the scope of the depositions, it

could have noticed narrower topics (or agreed to amend the noticed topics to narrow

their scope as it did for DBSA and JSAI Topic No. 17, *see doc. 401* at 15).

Second, American Linen claims any burden imposed by its notices is

proportionate to the needs of the case, *Doc. 416* at 10, noting that future response costs

are estimated to exceed ten million dollars and a judgment against it for most of these

costs would likely bankrupt it, *see doc. 389* at 20.  Each of the injuries that it cites to

support this claim, though, suffers from the same flaw: the inquiry it claims is involved

is much smaller than the inquiries actually noticed.

American Linen emphasizes that "both parties' experts rely on the reports, diagrams, modeling, and simulated data from JSAI and DBSA," *doc. 401* at 14; *see also doc. 389* at 12, 14, 17, and it needs to depose these consultants to inquire into the foundations of Plaintiffs' experts' opinions, *doc. 389* at 12.  American Linen is entitled to inquire into the reports, diagrams, modeling, and simulated data on which Plaintiffs' experts rely for their reports about the arranger claim.  American Linen, though, did not narrow its notices about DBSA's and JSAI's reports to the portions of them cited, reproduced, or otherwise used in Plaintiffs' experts' reports.  It noticed entire reports "as [they] relate to" Plaintiffs' arranger claim, and its five contentions against it.  *See generally docs. 389-1, 389-2*.

American also contends that it "needs to learn more about the reports cited in the Notices and the circumstances that surround the creation and conclusions of those reports," to "determine what factors the companies relied upon when they determined that groundwater flow would carry PCE at the Site east to the Dam, or when their modeling showed that 25% of the contamination at the entire Site was attributable to the City, 25% to the County, and 50% to the United States."  *Doc. 401* at 13.  Inquiry into Plaintiffs' and the United States' contributions to the Site's contamination falls outside the scope of reopened discovery.  Conversely, inquiry about what factors the companies relied upon to determine that groundwater would carry PCE at the Site east to the Dam is appropriate.  Again, though, American Linen did not just notice this narrow issue (or

other specific issues), but rather how entire reports relate to Plaintiffs' arranger claim and its five contentions against it.

Finally, American Linen explains that testimony from JSAI is necessary to assess which side, American Linen or Plaintiffs, has a better understanding about its models' explanation for PCE appearing near GWMW-15. *Id.* at 14.  Like several of the specific inquiries that American Linen has cited to justify its notices, this inquiry is appropriate (so long as it does not seek JSAI to offer present opinions about why its model shows PCE appearing near GWMW-15, *see infra* at 105-108).  Again, though, this is not a specific inquiry that American Linen noticed.

5.  *Most Topics and Many Example Questions for JSAI's, DBSA's, and JEGI's Depositions Exceed the Scope of Reopened Discovery*

Most topics noticed for JSAI's, DBSA's, and JEGI's depositions exceed the scope of reopened discovery by inquiring into PCE sources west of Interstate 25.  One of American Linen's "contentions" on which it seeks discovery is that PCE from one or more of the County Maintenance Yard, the Former Armory, or Former Municipal Airport was laterally transported by eastward groundwater flow to the vicinity of GWMW-15.  *See doc. 389-1* at 3-4, 9-21 (fifteen of nineteen topics noticed for JSAI's deposition); *doc. 389-2* at 3-4, 9-19 (sixteen out of nineteen topics noticed for DBSA's deposition); *doc. 384-3* at 2-4 (twelve out of thirteen topics noticed for the JEGI deposition).  Questions about the County Maintenance Yard, the Former Armory, or

Former Municipal Airport are inappropriate as they are PCE sources west of Interstate 25.

Several of the potential questions that American Linen provides for noticed topics exceed the scope of reopened discovery by seeking information about Plaintiffs' and the United States Defendants' contributions to the Site and PCE sources west of Interstate 25.  The following noticed topics and potential lines of questioning exceed the scope of reopened discovery by seeking information about Plaintiffs' and the United States Defendants' contributions to the Site's contamination and the appropriate apportionment of liability for the Site: (i) questions in JSAI Topic No. 2 and DBSA Topic No. 3 about whether the EPA's remedial investigation in 2006 provides sufficient analysis of the nature and extent of contamination to select a remedy; (ii) DBSA Topic No. 5, Question (c) about whether the groundwater remedy will ultimately collect and treat water from CLC 10—a well located west of Interstate 25 and the Site; (iii) JEGI Topic No. 5, Question (b), JEGI Topic No. 6, Question (c), and JEGI Topic No. 8, Question (c) about whether the County Maintenance Yard is likely the largest contributor of PCE to the Site; and (iv) JEGI Topic No. 12 about the allocation of response costs among known and suspected PRPs at the Site.

The following potential lines of questioning exceed the scope of reopened discovery by seeking discovery about PCE sources west of Interstate 25: (i) DBSA Topic No. 1, Question (d) about whether PCE contributions at CLC 18—a municipal well

104

located at the County Maintenance Yard—may have come from shallower depths (thus from the Yard itself); (ii) questions in JSAI Topic No. 3 and DBSA Topic No. 4 about the cause of PCE soil vapor concentrations at the County Maintenance Yard, the Former Municipal Airport, and the Former Armory; (iii) JSAI Topic No. 5, Question (c) and DBSA Topic No. 8, Question (c) about the basis of JSAI's and DBSA's conclusions that PCE released at the Former Armory would travel in the east to southeast direction toward City Wells Nos. 18, 19, 21, and 27; (iv) JSAI Topic No. 6, Question (c) about whether PCE concentrations at GWMW-01 support a finding that PCE was released at the County Maintenance Yard; (v) DBSA Topic No. 6 Question (b) about DBSA's conclusion that PCE at GWMW-3 (a monitoring well west of the Site) is from the Armory; (vi) JSAI Topic No. 7 Question (c) about whether the detection of PCE at 70 micrograms per liter at CLC 18 supports a finding that PCE was released at the County Maintenance Yard; (vii) JEGI Topic No. 5, Questions (a), (c), (d), and (e), JEGI Topic No. 6, Questions (b), (d), and (e), and JEGI Topic No. 8, Questions (b), (d), and (e) about whether the County Maintenance Yard, the Former Municipal Airport, and the Former Armory were properly identified as potentially responsible parties for the Site.

6.  *Expert Opinion*

Many of the lines of questioning that American Linen proposes for noticed topics seek inadmissible expert opinion from JEGI, JSAI, and DBSI, none of which a party has designated as a Rule 26 expert witness.  "Courts … disallow[] Rule 30(b)(6) testimony

where the information sought is more properly within the purview of expert

testimony." *DarbeeVision, Inc. v. C&A Mktg., Inc.*, Case No. CV 18-0725 AG (SSx), 2019

WL 2902697, at *7 (C.D. Cal. Jan. 28, 2019) (unpublished) (citing *Sierra Club v. BNSF Ry.*

*Co.*, CASE NO. C13-0967-JCC, 2016 WL 4528452, at *3 (W.D. Wash. Aug. 30, 2016)

(unpublished), and *Trustees of Boston Univ.*, 2014 WL 5786492, at *4); *see also Dealer*

*Comput. Servs., Inc. v. Curry*, No. 12 Civ. 3457 (JMF)(JLC), 2013 WL 499520, at *5

(S.D.N.Y. Feb. 7, 2013) (unpublished); *Dagdagan v. Vallejo*, 263 F.R.D. 632, 635-36 (E.D.

Cal. 2009); *Silva v. San Pablo Police Dep't*, Case No. 16-cv-04360-VC (KAW), 2018 WL

358789, at *2-3 (N.D. Cal. Jan 11, 2018) (unpublished).

Expert testimony takes the form an opinion offered based on skill, experience,

training, or education, rather than personal perception.  *See* Fed. R. Evid. 701, 702.  It is

exempt from the requirement that a witness may only testify about matters to which he

has personal knowledge.  Fed. R. Evid. 602. Witnesses providing expert testimony

"must be designated as Rule 26 experts and prepare a report setting forth their

opinions." *Dagdagan*, 263 F.R.D. at 635.

Testimony about the contents of models, reports, and other documents prepared

by JSAI, JEGI, and DBSA is not expert testimony.  *See Greenfield MHP Assocs., L.P. v.*

*Ametek, Inc.*, Case No.: 3:15-cv-015250-GPC-AGS, 2018 WL 1989961, at *4 n.6 (S.D. Cal.

Feb. 14, 2018) (unpublished); *SmithKline Beecham Corp. v. Apotex Corp.*, Nos. 99-CV-4304,

00-CV-4888, 01-CV-0159, 01-CV-2169, 99-CV-2926, 00-CV-5953, 02-CV-1484, 00-CV-1393,

00-CV-6464, 01-CV-2602, 01-CV-1027, 01-CV-3364, 01-CV-2981, 03-CV-3365, 2004 WL
739959, at *4 (E.D. Pa. Mar. 23, 2004) (unpublished).  Neither is testimony about the
information JSAI, JEGI, and DBSA did (or did not) consider in drafting these documents
or arriving at opinions that these entities have *previously* stated.  However, testimony
about the *current* opinions of JSAI, JEGI and DBSA on topics about which they lack
personal knowledge is expert opinion which would be inappropriate to seek from them
at this time.  Current opinions include opinions about the truthfulness of previously-
stated opinions.

Numerous potential questions listed by American Linen for the noticed
depositions elide the crucial distinction between investigating the circumstances
surrounding previously-expressed opinions and seeking present opinions.  As does its
briefing.  *See, e.g.*, *doc. 389* at 8 (arguing that American Linen can depose JSAI on
"whether pumping conditions caused migration of PCE to the area east of City Wells 19
and 21" because JSAI previously said that it did); *doc. 401* at 19 (arguing that "[i]t is a
fact that municipal well pumping caused migration of contaminants").  American
Linen's potential questions impermissibly ask JSAI, JEGI, and DBSA to express present
opinions on a variety of expert issues, such as the current and historical direction of
groundwater flow and transport, the accuracy of groundwater data, the responsiveness
of groundwater to municipal pumping, the causes and extent of PCE migration, the
causes of PCE soil vapor concentrations at certain locations, the conclusions that may be

drawn from groundwater and contamination models, and the extent to which models and transport scenarios reflect observed conditions. *See generally docs. 389-1, 389-2; 384-3.*

### 7. *Untimely Service of JEGI's, JSAI's and DBSA's Deposition Notices*

Substantive issues aside, the notices for JEGI's, JSAI's, and DBSA's Rule 30(b)(6) depositions are also untimely. None of them comply with Local Rule 30.1, which requires that "[s]ervice of notice of deposition in accordance with Fed. R. Civ. P. 30(b) must be made at least fourteen (14) days before the scheduled deposition." D.N.M.LR-Civ. 30.1. American Linen noticed the depositions of JSAI and DBSA ten days before the date set for their depositions and the deposition of JEGI four days before the date set for its deposition.

American Linen contends that its notices for the depositions of JSAI and DBSA are timely because the parties had been meeting and conferring about these depositions for months and it had previously served Plaintiffs with notices for them (which it later revised following the parties' status conference with the Court). *See doc. 401* at 20-22. Corresponding about a deposition before Local Rule 30.1's deadline, though, does not exempt that deposition's notice from this deadline. *See New Mexico ex rel. Balderas v. Real Estate Law Ctr., P.C.*, 429 F. Supp. 3d 996, 1011 (D.N.M. 2019). Nor does providing a draft notice (a notice that identifies possible deposition topics but does not state the time and place for the deposition). *See United States v. N.M. State. Univ.*, No. 1:16-cv-

00911-JAP-LF, 2018 WL 1353014, at *3-4 (D.N.M. Mar. 15, 2018) (unpublished); Fed. R.

Civ. P. 30(b)(1) (requiring deposition notice to state the time and place of a deposition).

     As this Court has previously observed, compliance with Local Rule 30.1 is

particularly important for Rule 30(b)(6) depositions. *See Gulfstream Worldwide Realty,*

*Inc. v. Philips Elecs. N. Am. Corp.*, NO. CIV 06-1165 JB/DJS, 2007 WL 5704041, at *7

(D.N.M. Oct. 24, 2007) (unpublished) (vacating a notice for a Rule 30(b)(6) deposition

where "the amount of time required for the designated witness to be prepared [was]

substantial, and [the deposing party] did not comply with the notice requirements for

deposition under local rule 30.1").  The Rule 30(b)(6) deponent needs time to review the

topics to determine which person(s) to designate to answer them, and the designee(s)

need time to prepare to answer questions about these topics based all "information

known or reasonably available to the [deponent]."  Fed. R. Civ. P. 30(b)(6).  A draft

notice provides the deponent with some idea about the matters on which its designee(s)

must testify.  However, since a draft is subject to change, negotiation, and revocation,

deponents may not start preparing to testify on its topics until the draft is finalized and

official notice is received.

     American Linen contends that the notices for JSAI's and DBSA's Rule 30(b)(6)

depositions were timely since it "did not vacate or otherwise communicate to Plaintiffs

that the[y] were canceled."  *Doc. 401* at 21.  This contention ignores the record and

Federal Rule of Civil Procedure 30(b)(1)'s requirement that deposition notices "state the

time and place of the deposition and, if known, the deponent's name and address." Fed. R. Civ. P. 30(b)(1).  For the purposes of Local Rule 30.1, notice of a deposition is served once every element required by Rule 30(b) has been served—which, in the context of Rule 30(b)(6), is the list of reasonably particularized deposition topics, the time and place of the deposition, and the deponent's name and address.  *See* Fed. R. Civ. P. 30(b)(1), (6).  Thus, service of American Linen's "draft notices" for these depositions was complete on June 17, 2021, when the parties agreed that the deposition would occur on July 13, 2021.  *See doc. 409-3* at 2.  American Linen, though, withdrew these notices on July 6, 2021, to reissue them with potential questions for its topics.  *Doc. 416-1* at 1.

As for the operative notices, on July 9, 2021, American Linen reissued notices for JSAI's and DBSA's Rule 30(b)(6) depositions—to which it added potential questions for the same noticed topics—and reset the depositions for July 19, 2021.  *See doc. 389-3*. Even if the Court were to find that the addition of potential questions did not change the date on which American Linen provided notice of the Rule 30(b)(6) topics from June 3, 2021, to July 9, 2021, American Linen did not provide notice that July 19, 2021 was the new date until July 9, 2021, less than fourteen days before that date.  Therefore, Plaintiffs did not receive complete notice of these depositions, as defined in Rule 30(b)(1), within the timeline required by Local Rule 30.1.

The Court is not unsympathetic to the bind in which American Linen found itself this past July.  JEGI did not respond to its efforts to set a deposition date until July 6,

2021, at which point only thirteen days remained in the discovery period.  Timely

noticing a Rule 30(b)(6) deposition for this company was not possible within the

existing deadline for reopened discovery.  As for JSAI and DBSA, American Linen has

been trying to take these consultants' depositions since the beginning of June 2021 and

withdrew timely-served notices for these depositions on July 6, 2021, to add potential

questions (misinterpreting the Court's advice to reduce several of its questions to

writing so that the parties could better meet and confer about the noticed topics, *see doc.*

*366* at 5-6, to obligate it to include potential questions in its deposition notices).  At that

point, it was impossible to re-notice these depositions in compliance with Local Rule

30.1.  The way out of the bind, though, was to move the Court to extend the discovery

deadline (which American Linen eventually did), not to serve untimely notices.

## C. RULE 30(b)(6) DEPOSITIONS OF PLAINTIFFS

Turning to the other disputed depositions, American Linen may not depose

Plaintiffs on "Complete Site History Topics"—Topics Nos. 19-29 for the City of Las

Cruces and Topics Nos. 11-21 for Doña Ana County.  These topics request testimony

about (i) Plaintiffs' prior positions on the content of draft or final Unilateral

Administrative Orders, draft or final Records of Decisions, and documents entitled

"Identification of PCE Release Areas in the Vicinity of the Griggs and Walnut Ground

Water Plume," "Remedial Investigation Report, Version 1.2, Griggs and Walnut

Ground Water Plume Superfund Site, Las Cruces, New Mexico," and "Ground-Water-

Flow and Solute Transport Model for the Griggs and Walnut Superfund Site, Las Cruces, New Mexico" ("Model"); (ii) investigations, analyses, or evaluations done by Plaintiffs to assess their positions; (iii) and the Plaintiffs' prior statements about the Site's appropriate PRPs. *Doc 386-1* at 5-11; *doc. 386-2* at 5-10. Deposition on these topics is unduly burdensome. It imposes a significant preparatory burden on Plaintiffs and is expected to generate information that is only marginally relevant to the parties' claims and defenses.

1. *Background*

On March 25, 2021, the Court granted American Linen leave to take second Rule 30(b)(6) depositions of Plaintiffs, *doc. 333*, on topics within the scope of the original discovery period, *see doc. 366* at 2. Two and a half months later, American Linen sent Plaintiffs a list of "tentative Rule 30(b)(6) deposition topics." *Doc. 386-3*. Plaintiffs objected to many topics on work product, relevancy, and other grounds, so the parties started the process of meeting and conferring. *See doc. 386-4* at 1-2. On June 17, 2021, American Linen served a revised set of topics. *See id* at 1. A week later, Plaintiffs objected to several of the noticed topics, particularly the "Complete Site History Topics" on the grounds of work product. *Id.* at 1-2.

Following the parties' informal status conference with the Court, *doc. 366*, on July 9, 2021, American Linen served revised notices on Plaintiffs, *doc. 386-6*. On July 12, 2021, the parties met and conferred on these topics, and agreed to move forward with

the deposition of Robert Garza, Plaintiffs' Designee on City Topics Nos. 9-18 and 32-35 and County Topics 9-10 and 24-25. *See doc. 386-7* at 1. American Linen also agreed to receive written responses from Plaintiffs on City Topics Nos. 1-8 and 30 and County Topics No. 1-8 and 22 in lieu of taking their depositions on these topics and to reissue narrowed versions of the Complete Site History Topics. *Id.* at 1-4.

On July 16, 2021, American Linen took a combined four-hour deposition of Mr. Garza on City Topics 9-18, 32-35 and County Topics Nos. 9-10 and 24-25. Three days later, discovery closed. *Doc. 332.* On August 5, 2021, American Linen reissued the Complete Site History Topics and City Topic No. 31. *See doc. 386-1* at 2, 5-11; *doc. 386-2* at 2, 5-10. Therein, "[t]aking into account the Court's suggestions [during the informal status conference] 'to reduce high-level questions about the Site's contamination to writing to allow the deponent to prepare better,'" *doc. 400* at 2 (quoting *doc. 366* at 6), American Linen noticed potential questions for the disputed Complete Site History Topics, but otherwise left these topics unchanged.

After the parties' meet and confer process did not resolve the propriety of the Complete Site History Topics, Plaintiffs moved the Court for a protective order against them on August 20, 2021. *Doc. 386.* American Linen responded on September 3, 2021. *Doc. 400.* Briefing was complete on September 17, 2021, *doc. 412*, with the filing of Plaintiffs' reply, *doc. 411.*

2.  *Discovery on the Complete Site History Topics is Unduly Burdensome*

Discovery on the Complete Site History Topics is unduly burdensome.  As noted

earlier, unless discovery is unduly burdensome on its face,

> [t]he party resisting discovery as unduly burdensome bears [the] burden of
> showing facts demonstrating that the time or expense involved in responding to
> requested discovery is unduly burdensome; this includes the obligation to
> provide sufficient detail and explanation about the nature of the burden in terms
> of time, money, and procedure….

*Lewis & Roca*, 2013 WL 12246642, at *3 (citing *Lear Corp.*, 215 F.R.D. at 641).  Generally,

the resisting party discharges this burden "by submitting affidavits or offering evidence

revealing the nature of the burden."  *Id.* at *4 (citing *DIRECTV*, 224 F.R.D. at 688–89.

Here, discovery on each of the Complete Site History Topics is unduly

burdensome on its face since each of the topics, by their plain text, far exceeds

information which would be relevant to the parties' claims and defenses and imposes

substantial preparatory burdens on Plaintiffs.  Topics 19-26 and 28-29 for the City and

Topics 11-18 and 20-21 for the County require them to review at least 3,405 pages from

the administrative record—not to mention countless pages of other materials cited in

these pages—and offer little to limit the specific issues on which Plaintiffs should

prepare to testify.  Rather, the scope of these topics extends to any position that Plaintiffs

have ever had on any part of these materials and the investigations, analyses, and

evaluations that they conducted to inform each of these unidentified positions.

American Linen identifies specific inquiries that it intends to pose, but these inquiries are

illustrative, not exhaustive. *See doc. 386-1* at 5-11; *doc. 386-2* at 5-10. As for Topic 27 to

the City and Topic 19 to the County, inquiry into Plaintiffs' previous statements,

comments, communications, or positions about the appropriate PRPs for the Site spans

decades. The materials associated with Plaintiffs' investigation of the New Mexico State

Armory Board and the Natural Guard Bureau alone spans thousands of pages. *See doc.*

*386* at 18 n.32. And the New Mexico State Armory Board and the National Guard

Bureau are not the only potential PRPs about which American Linen seeks Plaintiffs'

previous statements, comments, communications, and positions.

Turing to the issue of relevancy, the Complete Site History Topics have at most

marginal, potential relevancy to the parties' contribution claims under 28 U.S.C. § 9613.

For topics like these whose relevancy "is not readily apparent on [their] face, the party

seeking discovery has the burden to show [their] relevancy." *Lewis & Roca*, 2013 WL

12246642, at *3 (citing *Cardenas v. Dorel Juvenile Grp., Inc.*, 232 F.R.D. 377, 382-83 (D. Kan.

2005)). According to American Linen, by deposing Plaintiffs on these topics, it "seeks to

learn: (1) how Plaintiffs responded; (2) what information they relied upon when they

responded; and (3) why they waited over fifteen years to implicate the dry cleaners"

after the EPA told Plaintiffs that Plaintiffs' facilities caused the Site's contamination and

they were responsible for its clean-up. *Doc. 400* at 6. It contends that these topics are

relevant to not only "operative affirmative defenses such as (1) laches and [its]

arguments that the claims are time barred; and (2) waiver and estoppel" but also the equitable allocation of clean-up costs under 28 U.S.C. § 9613.  *Id.*

The first contention is meritless since CERCLA abrogates traditional equitable defenses to liability and limits affirmative defenses to those enumerated in in 28 U.S.C. § 9607(b).  *See California ex rel. California Dep't of Toxic Substances Control v. Neville Chem. Co.*, 358 F.3d 661, 672 (9th Cir. 2004) (holding that waiver and estoppel are not defenses to CERCLA liability); *Blasland, Bouck & Lee, Inc. v. North Miami*, 283 F.3d 1286, 1304 (11th Cir. 2002); (holding that estoppel is not a defense to CERCLA liability); *Munster v. Sherwin-Williams Co., Inc.*, 27 F.3d 1268, 1270 (7th Cir. 1994) (holding that laches is not a defense to CERCLA liability); *Velsicol Chem. Corp. v. Enenco, Inc.*, 9 F.3d 524, 530 (6th Cir. 1993) (same); *United States v. Aceto Agric. Chem. Corp.*, 872 F.2d 1373, 1378 (8th Cir. 1989); *Smith Land & Improvement Corp. v. Celotex Corp.*, 851 F.2d 86, 90 (3d Cir. 1988) (holding that caveat emptor is not a defense to CERCLA liability).

The second contention has limited merit.  American Linen insists that "Section 9613 requires [the] Court to consider Plaintiffs' acts, omissions and positions taken during the administrative proceedings, as well as the investigations, analyses, and evaluations that guided those."  *See doc. 400* at 7.  The only authority it cites for this proposition, *JPMorgan Chase Bank v. Liberty Mutual Insurance Co.*, 209 F.R.D. 361, 363 (S.D.N.Y. 2002), *see id.* at 7 n.2, is inapposite.  In that case—which concerned a contracts dispute rather than CERCLA liability—the plaintiff sought, pursuant to Rule 30(b)(6), to

"compel each defendant surety company to produce a witness who would identify

those facts each defendant had learned *after* issuing … surety bonds that led that

defendant to now claim that [certain] purported performance contracts [for which the

defendant had issued the bonds] were actually disguised loans." *JP Morgan Chase Bank*,

209 F.R.D. at 363.  The District Court for the Southern District of New York refused to

compel that testimony since the knowledge that surety companies gained after issuing

the bonds was irrelevant to the parties' claims, noting that "the parties' respective

obligations and liabilities are a function of what they knew, and what they disclosed or

failed to disclose, at the time they entered their contractual relationships, not

thereafter." *Id.*

American Linen pulls this notation out of the contracts context to argue that

"[t]he extent of Plaintiffs' obligations and liabilities are a function of what they knew at

the time they entered into various agreements and negotiations with EPA." *Doc. 400* at

7 n.2.  This case, though, is not about contract law, where doctrines of mistake and

fraud render contracts voidable and necessitate inquiry into parties' knowledge at

contract formation.  This case is about CERCLA, and 28 U.S.C. § 9613 provides Plaintiffs

with a cause of action against entities like American Linen that were not part of any

EPA enforcement action.  *See Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 161

(2004) (holding that a party may only seek contribution under 28 U.S.C. § 9613 after it

has been sued under 28 U.S.C. § 9106 or 28 U.S.C. § 9107(a)); *United States v. Kramer*, 757

F. Supp. 397, 412 (D.N.J. 1991) ("[W]hen other PRPs have not been named in an action brought by the government under [section 107], CERCLA provides a right under section 113 for named PRPs to seek contribution from other PRPs to apportion response costs equitably.").

At most, the Court may, but is not required, to consider Plaintiffs' acts, omissions, and positions during administrative proceedings when allocating the Site's clean-up costs under 28 U.S.C. § 9613.  *See United States v. Colo. & E. R.R. Co.*, 50 F.3d 1530, 1536 (10th Cir. 1995) ("To resolve contribution claims, … [i]n any given case, a court may consider several factors, a few factors, or only one determining factor, depending on the totality of the circumstances presented to the court." (internal ellipsis, quotation marks, and citation omitted)).  Plaintiffs' conduct during administrative proceedings could implicate equitable doctrines like laches, waiver, and estoppel, which courts may consider when assigning clean-up costs.  *See Munster*, 27 F.3d at 1270. Though, "many courts look to the 'Gore Factors,' proposed as a moderate approach to joint and several liability by Senator Albert Gore," *Colo. & E. R.R.*, 50 F.3d at 1536 n.5, or the "Torres Factors" developed by Judge Torres in *United States v. Davis*, 31 F. Supp. 2d 45, 63 (D.R.I. 1998), *see, e.g.*, *Lockheed Martin Corp. v. United States*, 35 F. Supp. 3d 92, 122 (D.D.C. 2014), none of which includes equitable principles like laches, waiver, and estoppel, *see id.*

At this stage of proceedings, the Court need not decide what equitable factors it will use to allocate the Site's clean-up costs.  It could consider equitable principles like laches, waiver, and estoppel when doing so, but the mere potential that it may do so is insufficient to justify the substantial preparatory burden that the Complete Site History Topics pose to Plaintiffs.  Therefore, American Linen may not depose Plaintiffs on these topics.

### D.  REASONABLE EXPENSES, INCLUDING ATTORNEY'S FEES

Pursuant to Federal Rules of Civil Procedure 26(c)(1)(3) and 37(a)(5), the Court awards Plaintiffs the reasonable expenses that they incurred to bring their Motions for Protective Order Quashing American Linen's Rule 30(b)(6) Deposition Notices to JEGI, DBSA, and JSAI (*doc. 384*) and to oppose American Linen's Motion to Compel Plaintiffs to Designate Witnesses Pursuant to Fed. R. Civ. P. 30(b)(6) and 37(a)(3)(B)(ii) (*doc. 389*).  Those rules require the Court, if it grants a motion for a protective order or denies a motion to compel, to award reasonable expenses, including attorney's fees, to the prevailing party.  *See* Fed. R. Civ. P. 26(c)(1)(3); Fed. R. Civ. P. 37(a)(5)(A).  While Rule 37(a)(5) excuses this requirement if one of three circumstances apply, the Court finds none of those circumstances are present here.  *See* Fed. R. Civ. P. 37(a)(5)(A).[12]

---

[12] Rule 37 also requires that a party be given an opportunity to be heard prior to the imposition of costs. However, this requirement is met where, as here, the prevailing party sought costs in their briefing to which the opposing party had an opportunity to respond.  *See, e.g., Knights Armament Co. v. Optical Sys. Tech., Inc.* 254 F.R.D. 470, 472 (M.D. Fla. 2008).

Specifically, the Court concludes that the JSAI, DBSA, and JEGI deposition notices'

untimeliness, the plain violation of Rule 30(b)(6)'s reasonable particularity requirement,

and the concomitant undue burden prevent a finding that American Linen's position

was substantially justified or that an award of expenses would be unjust.  While it is a

very close call, the Court finds that American Linen's position opposing a protective

order quashing portions of American Linen's Rule 30(b)(6) deposition notices to the

City of Las Cruces and Doña Ana County (*doc. 386*) was substantially justified based

upon its understanding of relevant equitable matters.

## V.     MODIFYING THE DEADLINE FOR REOPENED DISCOVERY

The Court GRANTS AND DENIES IN PART the part of American Linen's

Motion to Modify Case Management Deadlines on which it previously deferred ruling.

American Linen has shown good cause to reopen discovery to afford it the opportunity

to re-notice and take Rule 30(b)(6) depositions for JSAI and DBSA, but not any other

deponent.

### A.  BACKGROUND

On March 22, 2021, the Court reopened discovery as to Plaintiffs' arranger claim

through July 19, 2021.  *Doc. 332.*  Following the service of expert reports at the end of

April and May, *see docs. 344, 351*, American Linen sought to take JSAI's and DBSA's

Rule 30(b)(6) depositions since the expert reports reproduce diagrams from, and cite to,

reports that these consultants have prepared, *see doc. 385* at 13-14.  From June and

August 2021, as detailed above, *see supra* at 90-93, the parties met and conferred about the topics for these depositions and sought informal mediation from the Court about the scope of its discovery order and the propriety of the topics noticed for these depositions. *See generally docs. 408-2, 408-3, 409-1, 409-3, 430.*  Meet and confer and mediation efforts failed to resolve the parties' differences so JSAI's and DBSA's depositions did not occur before the July 19, 2021 deadline.

On August 20, 2020, American Linen moved the Court to stay deadlines for *Daubert* and dispositive motions and the pretrial order and to extend the deadline for reopened discovery to facilitate the following depositions: Plaintiffs' deposition of Zia Engineering (American Linen's environmental consultant); American Linen's depositions of Plaintiffs on the Complete Site History Topics; and American Linen's depositions of JSAI, DBSA, and a seventh unidentified fact witness. *Doc. 385* at 19. After ordering and receiving expedited briefing on the issue of the stay, *see docs. 391, 393, 394,* the Court granted American Linen's Motion to Modify Case Management Deadlines as to the stay and deferred ruling on the issue of reopening discovery, *doc. 397.* On September 3, 2021, Plaintiffs filed a response on this issue. *See doc. 404.* Two weeks later, American Linen filed its reply, *see doc. 419,* completing briefing on the deferred part of the motion, *see doc. 421.*

During the hearing on the parties' discovery motions, the Court expressed a willingness to allow limited depositions on JSAI and DBSA on short list of specific

questions if American Linen covered the reasonable costs that these consultants would incur to prepare for, and testify at, these depositions. *See doc. 430* at 9-10. The unavailability of American Linen's expert precluded the parties from meeting and conferring about particular questions during the hearing's recess. Thus, the Court ordered the parties to meet and confer about these questions within ten days of the hearing and inform the Court if they could not reach a stipulation about them. *Id.* at 15-16. Twelve days later, the parties met and conferred about these questions and failed to reach an agreement about the propriety of sixteen questions. *See doc. 431.*

## B.  LEGAL STANDARD

Under Federal Rules of Civil Procedure 16(b)(4), the Court may only reopen discovery for good cause shown. See Fed. R. Civ. P. 16(b)(4). Courts consider combinations of the following factors when determining whether a movant has good cause:

> (1) whether trial is imminent; (2) whether the request is opposed; (3) whether the non-moving party would be prejudiced; (4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court; (5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court; and (6) the likelihood that the discovery will lead to relevant evidence.

*Smith v. United States*, 834 F.2d 166, 169 (10th Cir. 1987) (gathering cases).

In the Tenth Circuit and many of its sister circuits, the fourth factor – the movant's diligence – is paramount. *See Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank*

*Ass'n*, 771 F.3d 1230, 1240 (10 Cir. 2014); *Alioto v. Town of Lisbon*, 651 F.3d 715, 720 (7th

Cir. 2011); *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000); *Sosa v.

Airprint Sys.*, 133 F.3d 1417, 1418 (11th Cir. 1998); *Johnson v. Mammoth Recreations, Inc.*,

975 F.2d 604, 609 (9th Cir. 1992).  Here, good cause does not exist unless "the movant

[shows] the 'scheduling deadlines cannot be met despite [his] diligent efforts.'" *Gorsuch*,

771 F.3d at 1240 (quoting *Pumpco. v. Schenker Intern*, 204 F.R.D. 667, 668 (D. Col. 2018)).

Consistent with this requirement, the Tenth Circuit has found good cause where the

movant (i) has acted diligently; and (ii) modification does not prejudice his opponent,

*see Rimbert v. Eli Lilly and Co.*, 647 F.3d 1247, 1254–56 (10th Cir. 2011), or his opponent's

acts and omissions contributed to the need for modification, *see Summer v. Missouri Pac.

R.R. Sys.*, 132 F.3d 599, 605–06 (10th Cir. 1997).  Conversely, the Tenth Circuit has found

that good cause does not exist where the movant does not adequately explain every

delay that led to the need for modification.  See *Husky Ventures, Inc. v. B55 Invs., Ltd.*,

911 F.3d 1000, 1020 (10th Cir. 2018); *Minter v. Prime Equipment Co.*, 451 F.3d 1196, 1205

n.4 (10th Cir. 2006).

## C.  ANALYSIS

The *Smith* factors favor reopening discovery to afford American Linen the

opportunity to take limited depositions of JSAI and DBSA, but not of an unidentified

seventh fact witness.  The issues of whether discovery should be reopened to facilitate

Plaintiffs' deposition of Zia Engineering and American Linen's deposition of Plaintiffs

on the Complete Site History Topics are moot.  The parties agreed to take Zia

Engineering's deposition out of time, *see doc. 385* at 14, and the Court has found that

deposing Plaintiffs on the Complete Site History Topics is unduly burdensome.

The first *Smith* factor counsels in favor of reopening discovery for the depositions

of JSAI, DBSA, and the unidentified seventh fact witness.  Trial is nowhere close to

imminent.  No date has been set and the case is stayed as to dispositive motions,

*Daubert* motions, and the pretrial order until the Court rules on not only the discovery

motions that are the object of this order, but also American Linen's Motion to Dismiss

Plaintiffs' Second Amended Complaint (*doc. 317*).  *See doc. 397* at 2.

The second and third *Smith* factors cut against reopening discovery but not in

any meaningful way.  Plaintiffs oppose the reopening.  *See generally doc. 404.*  But

allowing American Linen to re-notice and take the depositions of JSAI, DBSA, and an

unidentified seventh fact witness only prejudices Plaintiffs to the extent that it requires

them to prepare for and defend three additional depositions.  This prejudice is not

undue.  The Court's order reopening discovery authorized American Linen to take up

to seven depositions (in addition to second Rule 30(b)(6) depositions of Plaintiffs).  *See*

*doc. 332* at 8.  To date, American Linen has taken four.  Requiring Plaintiffs to defend

three depositions that they would have had to defend during reopened discovery but

for the parties' inability to reach an agreement about the appropriate scope for these

depositions' notices does not expose Plaintiffs to undue prejudice, especially since the Court is limiting authorized depositions to a short list of questions.

1.   Smith *Factors (4), (5), and (6) as to JSAI and DBSA*

*Smith* factors (4), (5), and (6) all favor reopening discovery to allow American Linen to take JSAI's and DBSA's Rule 30(b)(6) depositions.  Regarding *Smith* factor (4), as detailed above in the Background section for the parties' cross motions to compel and for protective order on JSAI's and DBSAI's Rule 30(b)(6) depositions, *see supra* at 90-93, American Linen diligently sought to take these depositions, noticing the topics for the beginning of June 2021 and meeting and conferring with Plaintiffs about these topics' propriety ever since.

Plaintiffs argue that American Linen has not shown good cause under *Smith* factor (4) since it failed to conduct discovery during the reopened period in good faith. *See doc. 404* at 12 (citing *Lawson v. Spirit AeroSystems, Inc.*, No. 18-1100-EFM-ADAM, 2020 WL 473295, at *3, *8 (D. Kan. Jan. 29, 2020) (unpublished), *Advanced Optics Elecs., Inc. v. Robins*, 769 F. Supp. 2d 1285, 1313 (D.N.M. 2010), *Landry*, 323 F.R.D. at 402, *Escandon v. Los Angeles Cnty.*, 584 F. App'x 517, 519-20 (9th Cir. 2014) (unpublished), and *Rahn v. Hawkins*, 464 F.3d 813, 822 (8th Cir. 2006), *abrogated on other grounds by Rivera v. Illinois*, 556 U.D. 148 (2009)).

The persuasive authority that Plaintiffs cite addresses situations distinct from the one at bar.  *See Lawson*, 2020 WL 473295 at *3, *8 (finding a party's motion to compel

discovery untimely under local rules since the movant had failed to respond to the producing party's repeated attempts to meet and confer); *Robins*, 769 F. Supp. 2d at 1314 (finding that a party had not shown good cause to extend the discovery deadline to obtain discovery that it had not propounded during the discovery period); *Landry*, 323 F.R.D. at 402 (finding good cause to extend the court-ordered deadline for a party to produce court-ordered documents); *Escandon*, 854 F. App'x at 519-20 (finding that a district court had not abused its discretion by refusing to extend the discovery deadline where the movant had not sought discovery during the discovery period for several months); *Rahn*, 464 F.3d at 822 (finding that a district court had not abused its discretion by refusing to extend pretrial deadlines where the movant had spent the pretrial period filing frivolous motions instead of completing discovery).

Nonetheless, the Court agrees with the proposition that it has the discretion to find that a party has not diligently sought discovery where the party has obstructed the process of receiving the discovery sought. To some extent, American Linen has done so here by noticing topics for JSAI's and DBSA's depositions that were unduly burdensome, exceeded the scope of reopened discovery, sought expert opinion from lay witnesses, and were not defined with reasonable particularity, *see supra* at 97-108, as well as refusing to modify these topics during the meet and confer process. The Court, though, finds that the parties' shared confusion about the scope of reopened discovery

mitigates some of American Linen's intransigence and makes it appropriate to give American Linen one final opportunity to depose JSAI and DBSA.

*Smith* factor (5) also supports reopening discovery to allow American Linen to take JSAI's and DBSA's depositions since the possibility that discovery might be reopened on this matter has been foreseeable since June 2021. The parties have been meeting, conferring, and corresponding about these depositions and their appropriate scope since June 11, 2021. *See doc. 408-2* at 1. When they reached an impasse, they reached out to the Court, which failed to resolve the parties' dispute about these depositions and the scope of discovery in a status conference on June 30, 2021. *Doc. 366*.

Finally, *Smith* factor (6) favors reopening discovery to take JSAI's and DBSA's depositions since such discovery is very likely to lead to relevant evidence. JSAI's testimony is critical for American Linen to understand the models, diagrams, and simulated data upon which the parties' experts rely, and American Linen requires this understanding to challenge Plaintiffs' experts on these topics at trial or move the Court to exclude their testimony in a *Daubert* motion. *See doc. 385* at 13-14. Testimony about these models and reports may also bear directly on, or lead to information directly bearing on, American Linen's contentions about alternative explanations for contamination found near GWMW-15. *See id.* at 17. DSAI's testimony is similarly expected to lead to the discovery of important facts because it has performed extensive hydrologic analysis about the Site. *See id.*

2. Smith *Factors (4), (5), and (6) as to Seventh Fact Witness*

*Smith* factors (4), (5), and (6) all counsel against reopening discovery to allow American Linen to depose an unidentified seventh fact witness, even if the deponent is JEGI. American Linen's briefing is silent on the identity of the seventh fact witness that it seeks to depose, *see doc. 385* at 19 (requesting that discovery be extended so the parties may conduct the deposition of "a seventh witness of American Linen's choosing"), except for noting that the deposition of JEGI "is highly relevant to Plaintiffs' contention that they did not cause any meaningful amount of contamination and that the contamination under their facilities was caused by every other party in this case," *id.* at 18. Since American Linen has not identified this fact witness, the Court cannot assess the extent to which it diligently sought to depose that witness during the reopened discovery period, the extent to which it has been foreseeable that discovery might be reopened to facilitate that witness's deposition, and the extent to which deposing this witness will lead to the discovery of relevant information. Therefore, American Linen has not borne its burden for *Smith* factors (4), (5), and (6), particularly the paramount showing that it could not depose this seventh witness during the reopened discovery period despite its diligent efforts.

D. PROPRIETY OF QUESTIONS PROPOSED FOR DBSA'S AND JSAI'S DEPOSITIONS

The propriety of the disputed questions that American Linen has proposed for DBSA's and JSAI's depositions is not expressly before the Court.  The questions are presented to the Court for review in a letter summarizing the parties' meet and confer efforts about them, *see doc. 431*, rather than in a motion with attendant briefing.  Plaintiffs' objections to these questions, though, raise the same issues discussed in this order, chiefly the scope of reopened discovery and seeking expert opinion from fact witnesses.  *See id.* at 4-6, 8-10.  Therefore, for the sake of judicial economy and reducing litigation costs, the Court will address whether these questions fall within the scope of reopened discovery and, if so, whether there is some other basis to prevent them from being asked at the limited depositions of JSAI or DBSA.

1. *JSAI Questions*

Only two of the seven disputed questions for JSAI's deposition are appropriate. Questions Nos. 3, 4, 9, and 13 improperly seek expert testimony from a lay witness, while Questions Nos. 9 and 11 impermissibly seek information that falls outside the scope of discovery.

i. JSAI QUESTION NO. 1

The Court considers Question 1 to JSAI appropriate.  In this question, American Linen asks JSAI "[i]n November of 2006, what led [it] to state it was 'obvious there were

pumping conditions that created a cone-of-depression that caused migration of PCE to City Wells 19 and 21, and to the area east of City Wells 19 and 21 near GWMW-15.'"  *Id.* at 4 (quoting USEPA0017948).  Plaintiffs object to this question as exceeding the scope of reopened discovery and seeking expert opinion from a fact witness.  *Id.*

This question falls within the scope of reopened discovery since it asks about the general migration of PCE under Interstate 25 to GWMW-15 without seeking discovery on specific PCE sources west of Interstate 25.  While the question relates to an expert opinion—pumping conditions created a cone-of-depression that caused migration of PCE to certain areas—it does not request JSAI to provide its present expert opinion. Instead, the Court interprets it as seeking the factual considerations which underpinned a previously expressed opinion.  As such, the question is proper.

ii.    JSAI QUESTION 3

The Court considers Question 3 to JSAI inappropriate because it seeks expert opinion from a fact witness.  In this question, American Linen asks JSAI

> Is a likely cause of the historical-transient model's difficulty in "simulat[ing] PCE migration to the eastern side of the Site" that "pumping from City Wells 18 and 27 disrupts the eastward migration of PCE toward City Wells 19 and 21," and the "average pumping rates allocated for each of the stress period in the model do not account for the specific period when City Wells 18 and 27 were not pumping but City Wells 19 and 21 were being pumped."

*Doc. 431* at 4 (quoting USEPA0017934).  Like Question 1, this question contains an expert opinion: a cause for the model's difficulty in simulating PCE migration.

Question 3, though, is inappropriate since it asks JSAI, a lay witness, to provide

its present opinion about the truth of the expert opinion that the question

contains, rather than whether JSAI previously expressed such an opinion and the

circumstances that led it to do so.

### iii.    JSAI QUESTION 4

The Court, as it construes Question 4 to JSAI, considers it inappropriate for

seeking an expert opinion from a fact witness.  In this question, American Linen asks

JSAI "[h]ow does Figure 21 of [its] 2006 groundwater flow and solute transport report

depict 'groundwater conditions affecting PCE distribution and migration' towards the

direction of GWMW-15." *Id.* (quoting USEPA0017872, USEPA0017875, and

USEPA0017972).  It would seem that Question 4 impermissibly seeks a present opinion

from JSAI about the groundwater conditions affecting PCE migration.  As such, it is not

based on personal perception, but rather scientific, technical, and specialized

knowledge.  However, questions about what JSAI tried to depict in Figure 21 when it

created it and the factual bases for the conclusions illustrated in Figure 21 would be

appropriate.

### iv.    JSAI QUESTION 6

The Court considers Question 6 to JSAI permissible.  In this question, American

Linen asks JSAI "[i]sn't it true that, in 2006, [it] gave an estimated 'travel time from the

western edge of the primary PCE plume (near the County yard) to the known eastern

edge (near GWMW-15)' of approximately 1 to 8 years." *Id.* at 5 (quoting USEPA001783). Plaintiffs object to this question as exceeding the scope of reopened discovery and seeking expert opinion.

This question falls within the scope of reopened discovery since it asks about the general migration of PCE from west to east near GWMW-15 without seeking discovery on specific PCE sources west of Interstate 25. This question does not solicit expert testimony because, while the accuracy of an estimate that JSAI has previously provided about PCE migration is expert opinion, whether JSAI gave that estimate falls within the company's personal perception.

v.   JSAI QUESTION 9

The Court considers Question 9 to JSAI inappropriate because it seeks both expert testimony from a fact witness and information outside the scope of discovery. In this question, American Linen asks

> Isn't it true that, when the groundwater flow and solute transport model was updated—as described in the November 5, 2009 and April 19, 2012 technical memoranda—the groundwater-flow component of the groundwater flow and solute transport model to City Wells 19 and 21 calibrated, and the additional modeling verified PCE originating from the EPA-Identified Source Areas "would migrate to the current position of the commingled PCE plume."

*Id.* at 5 (quoting JSP-0050913 and JSP-0054898). This question exceeds the scope of discovery because it seeks discovery about PCE from the EPA-Identified Source Areas, specific sources west of Interstate 25. It also impermissibly seeks expert testimony by

asking JSAI to give fresh opinions about when the model calibrated (i.e., produced outcomes consistent with data about the Site) and whether modeling showed that PCE originating from certain areas would migrate to the current position of the commingled PCE plume.  Such opinions are based on scientific, technical, and specialized knowledge rather than personal perception and therefore may not be solicited from a lay witness.

     vi.     JSAI QUESTION 11

The Court considers Question 11 to JSAI inappropriate because it exceeds the scope of reopened discovery.  In this question, American Linen asks JSAI

> Isn't it true that the conceptual site model accepted by JSAI is that PCE from the EPA-Identified Source Areas migrated east to GWMW-15 by "[p]umping from nearby municipal wells pull[ing] the plume eastward to the edge of the clay layer and then downward into the zone screened by the municipal wells (Layer 1)."

*Id.* (quoting JSP-0058493, JSP-0066571, JSP-0075746, and JSP-0023102).  This question exceeds the scope of discovery since it seeks discovery about PCE from the EPA-Identified Source Areas, specific sources west of Interstate 25.  However, an acceptable version of this question would substitute the phrase "PCE from west of Interstate 25" for the phrase "PCE from the EPA-Identified Source Areas."  With this change, the question would fall within the scope of reopened discovery because it focuses on groundwater flow within the Site.

As it understands Question 11, the Court does not believe that it improperly seeks an expert opinion as Plaintiffs claim.  The Court construes Question 11 to ask JSAI

whether, in its earlier reports and opinions, it started an understanding that PCE

migrated east due to the pumping of municipal wells.  As such, this question is one of

fact and appropriate.

      vii.    JSAI QUESTION 13

      The Court considers Question 13 to JSAI inappropriate since it seeks expert

testimony from a fact witness.  In this question, American Linen asks JSAI "[h]ow

"'[p]umping at wells CLC 54 and CLC 57, between 1988 to 2002, cause[d] the eastward

migration of the PCE plume to GWMW-15."  *Id.* at 5 (quoting JSP-0066571 and JSP-

0069293, and citing JSP-0075751).  This question solicits expert testimony by requesting

JSAI's present opinion for how pumping at certain city wells caused PCE migration, a

matter that does not fall within JSAI's personal perception.  The question would not be

inappropriate on this ground, though, if JSAI has previously expressed an opinion on

the matter and the question requested testimony from JSAI about whether it did express

the opinion or the factual bases underlying the earlier opinion.  Question 13 does not

exceed the scope of reopened discovery as Plaintiffs claim, *see id.* at 6, because it focuses

on groundwater flow within the Site without seeking discovery on specific PCE sources

west of Interstate 25.

      2.  *DBSA Questions*

      None of the nine disputed questions for DBSA are appropriate on their face.

Questions 2 and 4 are appropriate provided that certain preconditions are met.

Questions 1, 8, 11, and 16 are impermissible because they exceed the scope of discovery by soliciting testimony on the EPA-Identified Source Areas, specific PCE sources located west of Interstate 25. Questions 5-7 and 11 are inappropriate because they seek expert testimony from a fact witness.

     i.    DBSA QUESTION 1

The Court considers Question 1 to DBSA inappropriate as it exceeds the scope of reopened discovery. In this question, American Linen asks DBSA "[w]hen [it] assisted JSAI in 'preparing a site-specific ground-water-flow and solute-transport model for the Site,' did such assistance involve analysis of PCE transport from the EPA Identified Source Areas to GWMW-15." *Id.* at 8 (quoting USEPA0017900). This question exceeds the scope of discovery because it seeks discovery about PCE from specific sources west of Interstate 25, the EPA-Identified Sources. An acceptable version of this question would substitute the phrase "PCE from west of Interstate 25" for the phrase "EPA Identified Source Areas." Thus modified, it falls within the scope of reopened discovery as it would be focused on groundwater flow within the Site. The Court notes Plaintiffs' assertion that DBSA "did not conduct groundwater modeling analysis." *Id.* If this assertion is accurate, DBSA may simply answer this question "no."

     ii.    DBSA QUESTION 2

The Court considers Question 2 to DBSA appropriate so long as DBSA expressed the opinion quoted in the question about the effect that pumping conditions had on

PCE migration.  In Question 2, American Linen asks DBSA "[h]ow was it 'obvious there

were pumping conditions that created a cone-of-depression that caused migration of

PCE to City Wells 19 and 21, and to the area east of City Wells 19 and 21 near GWMW-

15.'"  *Id.* (quoting USEPA0017948).  The question does not exceed the scope of

discovery, as Plaintiffs claim, *see id.*, because it seeks testimony about groundwater flow

within the Site without inquiring into whether that PCE is attributable to any specific

source west of Interstate 25.  If DBSA previously expressed the opinion quoted therein,

the Court construes Question 2 to seek the factual bases for the statement.  As such, it

would be a statement of fact.  But if DBSA did not provide the quoted opinion, the

question impermissibly seeks expert opinion from it by implicitly requesting it to affirm

the veracity of an opinion that it did not express.  Finally, this question is not

duplicative to JSAI Question 1, as Plaintiffs allege, *see id.*, because, if both JSAI and

DBSA expressed an opinion about the effect that pumping conditions had on PCE

migration, the factual premises may have been different.

     iii.    DBSA QUESTION 4

The Court considers Question 4 to DBSA appropriate so long as DBSA, rather

than JSAI, created and ran the model about which the question seeks testimony.  The

question asks DBSA "[i]sn't it true that, when the groundwater flow and solute

transport model was initially run in 2006, it did not include water-level data from

outside the PCE plume area."  *Id.* (citing JSP-0053462).  Plaintiffs claim that this question

is directed at the wrong entity because, JSAI, not DBSA, performed the modeling.  In some instances, a party may seek testimony from a Rule 30(b)(6) deponent about information held by a third party.  *See, e.g.*, *F.D.I.C. v. 26 Flamingo, LLC*, No. 2:11-cv-01936-JCM-NJK, 2013 WL 3975006, at *7 (D. Nev. Aug. 1, 2013) (unpublished) (requiring a Rule 30(b)(6) deponent to provide a designee to testify about the knowledge and intent of a bank for which the deponent was a receiver).  Doing so here, though, is inappropriate because posing the question to JSAI (if JSAI created and ran the groundwater model in 2006) is a less burdensome way of obtaining the same information.

    iv.    DBSA QUESTION 5

The Court considers Question 5 to DBSA inappropriate because it seeks expert testimony from a fact witness.  In this question, American Linen asks DBSA whether "CLC Wells 19, 21, 54, and 57 (the wells east of the City and County facilities) [were] the wells that had a hydraulic influence on PCE transport that required a groundwater extraction rate of 1,080 gpm to overcome."  *Id.* (citing USEPA0007067).  Similar to Question 13 to JSAI, this question solicits expert testimony by requesting DBSA's present opinion for how pumping at certain city wells affected PCE migration, a matter that falls within DBSA's scientific, technical, or specialized knowledge rather than its personal perception.

v.    DBSA QUESTION 6

The Court considers Question 6 to DBSA inappropriate because it too seeks

expert testimony from a fact witness.  In this question, American Linen asks DBSA

whether "it [is] true that the groundwater trough has been east of the County

Maintenance Yard and the Former Municipal Airport since at least 1990, with a flat

hydraulic gradient extending East to the bedrock horst near the Foothills Landfill."  *Id.*

at 9 (citing JSP-0053468 and USNMNG0002811).  Similar to Question 5, this question

solicits expert testimony by asking DBSA to express a present opinion about

groundwater flow and gradient, matters that are the product of scientific, technical, or

specialized knowledge rather than personal perception.

vi.    DBSA QUESTION 7

The Court considers Question 7 to DBSA inappropriate because it seeks expert

testimony from a fact witness.  In this question, American Linen asks DBSA whether

"the zone of flat hydraulic gradient between GWMW-15 to the bedrock horst at the

Foothills Landfill ("old City of Las Cruces Landfill") causes contaminant migration east

of GWMW-15 to be negligible."  *Id.* at 9 (citing JSP-0054867).  Similar to other disputed

questions, this question solicits expert testimony by requesting DBSA to express a

present opinion about hydraulic gradient and PCE migration, matters that are the

product of scientific, technical, or specialized knowledge rather than its personal

perception.

vii.    DBSA QUESTIONS 8

The Court considers Question 8 to DBSA inappropriate as it exceeds the scope of

reopened discovery.  In this question, American Linen asks DBSA about "[w]hat

observations [it] ma[d]e about PCE transport and groundwater flow between the EPA-

identified facilities and GWMW-15 in the 2009 update to the groundwater flow and

solute transport model for the … Site."  *Id.*  This question exceeds the scope of discovery

because it seeks discovery about PCE from specific sources west of Interstate 25.  An

acceptable version of this question would substitute the phrase "parts of the Site west of

Interstate 25" for the phrase "the EPA-identified facilities."  As modified, the question

would be focused on groundwater flow within the Site, which falls within the scope of

reopened discovery and seeks a factual response.

viii.    DBSA QUESTION 11

The Court considers Question 11 to DBSA inappropriate for the same reasons it

considered Question 9 to JSAI inappropriate.  In Question 11, American Linen asks

DBSA

> Isn't it true that, when additional groundwater flow and solute transport
> modeling was performed in 2012, the groundwater-flow component of the model
> to City Wells 19 and 21 calibrated, and the additional modeling verified PCE
> from the EPA-Identified Source Area "would migrate to the current position of
> the commingled PCE plume."

*Id.* (quoting JSP-0050913 and JSP-0050911).  This question is materially identical to JSAI

Question 9, which asks whether the groundwater flow and solute transport model to

City Wells 19 and 21 calibrated after the model was updated in 2009 and 2012 and whether additional modeling verified that PCE from EPA-Identified Sources Areas would migrate to the commingled plume.  *Id*. at 5.  For the same reasons as JSAI Question 9 to JSAI, Question 11 to DBSA impermissibly seeks expert opinion and information outside the scope of reopened discovery.

     ix.    DBSA QUESTION 16

Finally, the Court considers Question 16 to DBSA inappropriate as it exceeds the scope of reopened discovery.  In this question, American Linen asks DBSA

> If [it] reviewed the sections of the annual Groundwater Program Evaluation Reports prepared by John Shomaker & Associates, Inc. describing historical groundwater flow and transport of PCE from the EPA-Identified Source Areas to GWMW-15 [and] comment[ed], critique[d], or otherwise question[ed] the description of historical PCE transport to GWMW-15 before incorporating it into [its] annual remedial action progress reports.

*Id*. at 10.  This question exceeds the scope of discovery because it seeks discovery about PCE from EPA-Identified Source Areas, specific PCE sources west of Interstate 25.  An acceptable version of this question would substitute the phrase "west of Interstate 25" for the phrase "the EPA-Identified Source Areas."  As modified, it is focused on the groundwater flow within the Site and appropriate.

E.  REASONABLE EXPENSES, INCLUDING ATTORNEY'S FEES

The parties shall each bear their own expenses arising from American Linen's Motion to Modify Case Management Deadlines (*doc. 387*).  Plaintiffs request "the Court

order American Linen to pay the costs and fees incurred in responding to" this Motion,

but fail to cite to any authority for the proposition that the Court may award costs and

fees after adjudicating a motion to modify pretrial deadlines pursuant to Rule 16(b)(4).

*See doc. 404* at 15.  Even if authority existed, the Court finds that an award of costs and

expenses is inappropriate here because it has granted and denied the Motion in part.

**VI.    CONCLUSION**

For the reasons above, the Court GRANTS IN PART and DENIES IN PART

American Linen's First Motion to Compel Written Discovery (*doc. 387*), its Second

Motion to Compel Written Discovery (*doc. 388*), its Motion to Determine Sufficiency of

Answers to Requests for Admission and Deem Matters Admitted (*doc. 390*), and the

part of its Motion to Modify Case Management Deadlines (*doc. 385*) on which the Court

previously deferred a ruling.  The Court also DENIES American Linen's Motion to

Compel Plaintiffs to Designate Witnesses Pursuant to Fed. R. Civ. P. 30(b)(6) and

37(a)(3)(B)(ii) (*Doc. 389*) and GRANTS Plaintiffs' Motions for Protective Orders for the

Rule 30(b)(6) Depositions of JEGI, DBSA, JSAI, the City of Las Cruces, and Doña Ana

County (*Docs. 384, 386*).

IT IS ORDERED THAT the notices for the JEGI, DBSA, and JSAI  Rule 30(b)(6)

depositions (*docs. 384-1, 384-2, 384-3*), Topics Nos. 19-29 in the First Amended Notice of

Deposition to the City of Las Cruces Pursuant to Federal Rule of Civil Procedure

30(b)(6) (*doc. 386-1*), and Topics Nos. 11-21 in the Notice of Deposition to Doña Ana

County Pursuant to Federal Rule of Civil Procedure 30(b)(6) (*doc. 386-2*) are QUASHED.

IT IS ALSO ORDERED THAT**, within fourteen (14) days of the issuance of this**

**Order**, the City of Las Cruces shall supplement its responses to RFA Nos. 6-7, RFP No.

6, and Interrogatories Nos. 3-7 and 9, and Doña Ana County shall supplement its

responses to Interrogatories Nos. 4, 6, 10, and RFPs Nos. 2 and 13.

IT IS FUTHER ORDERED that the deadline for reopened discovery is

EXTENDED through **December 17, 2021**,[13] for the sole purpose of American Linen

taking JSAI's and DBSA's Rule 30(b)(6) depositions.[14]  Within **seven (7) days of the**

**issuance of this order**, the parties shall meet and confer to resolve the twelve questions

that American Linen will notice JSAI, the twelve questions that American Linen will

notice DBSA, and the date(s) for these entities' depositions in the first part of December

2021.[15]  If a dispute remains following the meet and confer, any motion to compel by

American Linen shall be due **within seven (7) days of the meet and confer** and notify

---

[13] This deadline provides American Linen with two days after the conclusion of Jeffrey J. Wechsler's notice of unavailability for him to take JSAI's and DBSA's depositions.  *See doc. 382* at 1.

[14] As the Court explained during the hearing, *see doc. 430* at 7, American Linen shall bear the reasonable expenses that JSAI and DBSA incur to prepare for and testify at these depositions.

[15] Given the confusion on the number of questions that American Linen could notice JSAI and DBSA, *see doc. 431* at 1-2, the Court considers it proper to allow American Linen to re-notice questions for JSAI's and DBSA's depositions. The questions noticed, though, must either come from the bank of thirty-six questions that American Linen submitted to Plaintiffs on October 11, 2021, *see id.* at 1, or be an amended version of one these questions (modified to eliminate concerns about exceeding the scope of reopened discovery and soliciting expert testimony from a fact witness).  If further discovery dispute arises, the Court is optimistic that the parties can apply the reasoning in this order to reduce the number of disputed questions, if not eliminate the dispute altogether, without its intervention.

the Court of the date set in December 2021 for the depositions.  Any response by

Plaintiffs shall be due **within five (5) days of American Linen's motion**, and any reply

by American Linen shall be due **within (2) days of Plaintiffs' response**.

IT IS FINALLY ORDERED that, **by November 26, 2021**, that Plaintiffs shall file

an affidavit detailing the reasonable expenses, including attorney's fees, that they

incurred to bring their Motion for Protective Order Quashing American Linen's Rule

30(b)(6) Deposition Notices to JEGI, DBSA, and JSAI (*docs. 384*) and to oppose American

Linen's Motion to Compel Plaintiffs to Designate Witnesses Pursuant to Fed. R. Civ. P

30(b)(6) and 37(a)(3)(B)(ii) (*doc. 389*).  If Plaintiffs use an Excel spreadsheet to calculate

these expenses, they shall send a soft copy of that spreadsheet to the Court's proposed

text inbox (wormuthproposedtext@nmd.uscourts.gov) with American Linen on carbon

copy.  If American Linen wishes to contest the reasonableness of any expenses claimed

by Plaintiffs, its objections shall be due **within five (5) days of Plaintiffs filing their**

**affidavit**.

**IT IS SO ORDERED.**

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE