## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

CITY OF LAS CRUCES and
DOÑA ANA COUNTY,

      Plaintiffs,

v.                                              Civ. No. 17-809 JCH/GBW

UNITED STATES OF AMERICA, *et al.*,

      Defendants.

## ORDER DIRECTING DEFENDANT AMERICAN LINEN SUPPLY OF NEW MEXICO, INC. TO PAY ATTORNEY'S FEES AND COSTS

THIS MATTER comes before the Court on the Affidavit of Jessica K. Ferrell in Response to Court Order Granting in Part and Denying in Part Plaintiffs' Motion to Compel and for Sanctions (*doc. 308*).  Having reviewed the Affidavit, its attached exhibits, and Defendant American Linen Supply of New Mexico, Inc.'s ("American Linen) objections (*doc. 316*), and being fully advised in the premises, the Court AWARDS Plaintiffs $79,491.41 in attorney's fees and costs for American Linen's failure to prepare an adequately prepared Rule 30(b)(6) designee, failure to timely supplement its disclosures and discovery responses, and substantially unjustified opposition to Plaintiffs' Motion to Compel and for Sanctions.

## I.   BACKGROUND

On February 1, 2021, the Court sanctioned American Linen "for producing an inadequately prepared Rule 30(b)(6) designee and failing to supplement its initial disclosures and discovery responses in a timely manner." *Doc. 304* at 65.  It directed Plaintiffs to submit an affidavit detailing the reasonable expenses and fees that they incurred to (i) depose American Linen's inadequately prepared Rule 30(b)(6) designee on April 1, 2019; (ii) investigate American Linen's dry-cleaning operations and use of perchloroethylene ("PCE") from March 30, 2019, to October 5, 2020; and (iii) file their motion to compel and for sanctions (*doc. 263*).  *Id.* at 66.

On February 8, 2021, Plaintiffs timely filed an affidavit of expenses and fees.  *Doc. 308*.  They claim expenses and fees totaling $228,135.46 broken down as follows: (i) $30,899.33 in fees and expenses for the Rule 30(b)(6) deposition ($27,918.00 in fees and $2,981.33 in expenses); (ii) $129,746.89 in fees and expenses for investigating American Linen's dry-cleaning and PCE use ($123,780.89 in fees and $5,966.00 in expenses); and (iii) $67,489.24 in fees to bring their motion to compel and for sanctions.  *See generally doc. 308-2*.  On February 16, 2021, American Linen filed objections to Plaintiffs' affidavit and the Court's sanctions order.  *Docs. 315, 316*.  On May 11, 2021, the Honorable Judith C. Herrera overruled these objections.  *Doc. 348*.

## II.    LEGAL STANDARD

"A reasonable attorney's fee is reasonable compensation, in light of all the circumstances, for the time and effort expended by the attorney for the party, no more and no less." *Centennial Archaeology, Inc. v. AECOM, Inc.*, 688 F.3d 673, 679 (10th Cir. 2012) (quoting *Blanchard v. Bergeron*, 489 U.S. 87, 93 (1989)) (cleaned up).  "'[R]easonable' does not necessarily mean actual expenses." *Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 879 (5th Cir. 1988).  Rather, to determine reasonable attorneys' fees, the Court "must arrive at a 'lodestar' figure by multiplying the hours plaintiffs' counsel reasonably spent on the litigation by a reasonable hourly rate." *Jane L. v. Bangerter*, 61 F.3d 1505, 1509 (10th Cir. 1995).

## III.    ANALYSIS

American Linen raises three types of objections to Plaintiffs' claimed expenses and fees: (i) the fees and expenses are unreasonable, *see doc. 316* at 10-17; (ii) its misconduct is not a but-for cause of all claimed fees and expenses, *see id.* at 4-10; and (iii) the total fees and expenses sought is disproportional to its failure to supplement its initial disclosures and discovery responses in a timely manner, *see id.* at 3.  The first two objections have merit and prompt the Court to reduce the claimed fees and expenses to a reasonable sum for tasks caused by the sanctioned conduct.  To the extent that the third objection contests something other than the reasonableness of Plaintiffs' claimed costs, the Court finds it unconvincing.

3

A.  REASONABLENESS OF CLAIMED EXPENSES AND ATTORNEYS' FEES

Only $$79,491.41 of the claimed $228,135.46 in attorneys' fees and expenses is reasonable.  Plaintiffs' claimed sum is a product of rates that exceed local rates without justification, excess hours on tasks necessitated by American Linen's misconduct, hours spent on tasks not necessitated by this conduct, and expenses that are not reimbursable in full or in part.

1.  *Reasonableness of Plaintiffs' Claimed Attorney Rates*

Based on the evidence before the Court, Plaintiffs have failed to establish that the hourly rates claimed for their attorneys and paralegals are reasonable.  "The establishment of hourly rates in awarding attorneys' fees is within the discretion of the trial judge who is familiar with the case and the prevailing rates in the area."  *Lucero v. City of Trinidad*, 815 F.2d 1384, 1385 (10th Cir. 1987).[1]  The rate "should reflect rates in effect at the time the fee is being established by the court, rather than those in effect at the time the services were performed."  *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983).  "Unless the subject of the litigation is so unusual or requires such special skills that only an out-of-state attorney possesses, the fee rates of the local area should be applied even when the lawyers seeking fees are from another area."  *Lippoldt v. Cole*, 468

---

[1] *Lucero* and many of the cases to which the Court cites in this award assess the reasonableness of attorney's fees claimed pursuant to 42 U.S.C. § 1988.  The Tenth Circuit has held that this caselaw is applicable to attorney's fees and expenses awarded pursuant to Federal Rule of Civil Procedure 37.  *See Centennial Archeology*, 688 F.3d at 680.

F.3d 1204, 1225 (10th Cir. 2006) (internal quotation marks and citations omitted).  These

rates are what "lawyers of reasonably comparable skill, experience, and reputation in

the relevant community," *id*. at 1224-25, "practicing in the area in which the litigation

occurs would charge for their time," *Ramos*, 713 F.2d at 555.

Presently, the Court sees no reason to depart from New Mexico rates in this case.

CERCLA litigation is specialized and complex.  *See Pakootas v. Teck Cominco Metals, Ltd.*,

No. CV-04-256 LRS, 2009 WL 10671390, at *2 (E.D. Wash. Dec. 21, 2009); *Rhodes v. Cnty.

of Darlington,* 833 F. Supp. 1163, 1174 (D.S.C. 1992).  But the prevailing local rate for

CERCLA representation captures this specialization and complexity.  Plaintiffs' sole

arguments for departing from this rate are conclusory statements about "the complex

and specialized nature of this case" and passing references to the small size of the New

Mexican legal market.  *See doc. 308* at ¶ 10.  These conclusory statements are insufficient

to establish that this CERCLA case is more complicated than the usual CERCLA case.

*Cf. Pakootas*, 2009 WL 10671390, at *2 (departing from the prevailing market rate for a

CERCLA case that posed a novel question of the statute's applicability to the activities

of a foreign corporation).  Passing reference to the number of attorneys in New Mexico

does not establish that the local bar cannot provide Plaintiffs with representation

commensurate to that which they are receiving from out-of-market counsel.  The local

bar may be small, but it has several firms practicing CERCLA litigation.  *See doc. 316* at

13 n.7.  The Court has no evidence that these firms are incapable of replicating the

representation that Plaintiffs are receiving from their chosen counsel.[2] *Cf. Reazin v. Blue Cross & Blue Shield, Inc.*, 899 F.2d 951, 983 & n.49 (10 Cir. 1990) (affirming a district court's departure from the prevailing market right where the local market could not replicate the expertise, experience, and resources of an out-of-market law firm).

Plaintiffs, as the fee applicants, bear the burden to produce evidence—in addition to their attorney's own affidavit—that their requested rates align with the local market rate for CERCLA litigation by comparable counsel. *See Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). "Evidence 'is typically established through the affidavits of local attorneys who practice in the same field as the attorneys seeking the fees.'" *Strobel v. Rusch*, No. CIV 18-0656 RB/JFR, 2021 WL 371575, at *2 (D.N.M. Feb. 3, 2021) (quoting *Mosaic Potash Carlsbad, Inc. v. Lintrepid Potash, Inc.*, No. 16-CV-0808 KG/SMV, 2018 WL 2994412, at *3 (D.N.M. June 14, 2018)). "Only if the district court does not have adequate evidence of prevailing market rates for attorney's fees may it, 'in its discretion, use other relevant factors, including its own knowledge, to establish the rate.'" *Mosaic*, 2018 WL 2994412, at *1 (quoting *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1257 (10th Cir. 1998), and citing *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1234 (10th Cir. 2000)).

---

[2] Plaintiffs, of course, are free to retain whatever counsel they wish to represent them before the Court. Their freedom to pay out-of-market rates for representation, though, does not require the Court to award fees at those rates.

The evidence before the Court about the prevailing market rates for CERCLA litigation in New Mexico is inadequate.   By Plaintiffs' own admission, they have produced no evidence about the local market rate for CERCLA litigation by comparable counsel.  *See doc. 308* at ¶ 7.  The only evidence in the record about this rate comes from American Linen.  In a declaration, Jeffrey J. Wechsler, American Linen's counsel, recounts the rates that his firm is charging American Linen in this case and asserts that "[i]t is [his] understanding that these rates are commensurate for litigation with those charged by other New Mexico attorneys with similar levels of experience and expertise in the practice of environmental law…."  *See Doc. 316-3* at ¶¶ 2-6.  Self-serving affidavits like this one, though, lack sufficient evidentiary weight to preclude consideration of other indicia for the local market rate.  *See Stone v. Deagle*, Civil Action No. 05-cv-01438-RPM-CBS, 2007 WL 4150298, at *2 (D. Colo. Nov. 19, 2007) (considering caselaw to determine a reasonable hourly rate when the only evidence offered by the parties was self-serving affidavits); *cf. Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 556 (7th Cir. 1999) ("An attorney's self-serving affidavit alone cannot satisfy the plaintiff's burden of establishing the market rate for that attorney's services.").

Considering the complexity of this case, Mr. Wechsler's affidavit, the Court's own knowledge, and other indicia of the New Mexico rate for CERCLA litigation—particularly recent caselaw about the hourly rates for commercial and complex

litigation in New Mexico—the Court finds that the following are reasonable hourly rates for the attorneys and paralegals retained by Plaintiffs:

$400/hour for Bradley Marten, a managing partner who is nationally recognized as a top environmental lawyer, has more thirty-five years of environmental law experience, and clerked for the U.S. District Court for the Western District of Washington. *See doc. 316-3* at ¶¶ 3, 5 (asserting $250/hour for a senior counsel with forty-five years of experience and national recognition as a "leading attorney in the area of environmental law" was commensurate with the local rate); *cf. Strobel v. Rusch¸* No. CIV 18-0656 RB/JFR, 2021 WL 371575, at *2–3 (D.N.M. Feb. 3, 2021) (awarding $400/hour for an "of counsel" attorney with nearly fifty years of experience in a trademark and copyright case that "was neither high-end nor complex"); *Daniel & Max, LLC v. BAB Holding Co.*, Civ. No. 19-173 GJF/GBW, 2019 WL 3936865, at *2 (D.N.M. Aug. 20, 2019) (awarding $450/hour in a breach of contract case for an attorney who had clerked on the U.S. Supreme Court and had "over thirty years of complex federal experience as a shareholder of a major New Mexico law firm"); *Fallen v. GREP Sw., LLC*, 247 F. Supp. 3d 1165, 1198 (D.N.M. 2017) (finding four years ago that a rate of $375/hour approached the "upper end" of the market for "a very experienced partner engaged in complex, multi-party commercial litigation").

$390/hour for J. Trey Phillips, a partner with more than thirty years of experience in complex litigation, six of which were as First Assistant Attorney General for the State

of Louisiana. *See doc. 316-3* at ¶¶ 3, 5 (asserting $250/hour for a senior counsel with forty-five years of experience and national recognition as a "leading attorney in the area of environmental law" was commensurate with the local rate); *cf. Strobel*, 2021 WL 371575, at *2–3 (awarding $400/hour for an "of counsel" attorney with nearly fifty years of experience in a trademark and copyright case that "was neither high-end nor complex"); *Fallen*, 247 F. Supp. 3d at 1198 (finding four years ago that a rate of $375/hour approached the upper end of the market for a very experienced partner engaged in complex, multi-party commercial litigation).

$380/hour for Stephen Odell, a partner with twenty-five years of environmental litigation experience who handled many of Oregon's consequential environmental disputes as an Assistant U.S. Attorney for the District of Oregon for almost twenty years and clerked for both the Ninth Circuit Court of Appeals and the U.S. District Court for the District of Oregon. *See doc. 316-3* at ¶¶ 3, 5 (asserting $250/hour for a senior counsel with forty-five years of experience and national recognition as a "leading attorney in the area of environmental law" was commensurate with the local rate); *cf. Got Prods. LLC v. Zepto LLC*, No. CIV 18-0893 RB/LF, 2020 WL 1288568, at *3 (D.N.M. Mar. 18, 2020) (awarding $375/hour for a founding partner with more than twenty years of commercial litigation experience in a breach of contract case that was not high end or complex); *Fallen*, 247 F. Supp. 3d at 1198 (finding four years ago that a rate of $375/hour

approached the upper end of the market for a very experienced partner engaged in complex, multi-party commercial litigation).

$360/hour for Jessica Ferrell, a partner with national recognition and fifteen years of experience in CERCLA and other environmental litigation.  *See doc. 316-3* at ¶¶ 2, 5 (asserting that $250/hour for a shareholder with nineteen years of experience and national recognition as a "leading attorney in the area of environmental law" was commensurate with the local rate); *cf. Auge v. Stryker Corp.*, No. 14-cv-1089 KG/SMV, 2017 WL 4355974, at *4 (D.N.M. Sept. 28, 2017) (awarding $350/hour for a partner experienced in patent litigation four years ago); *XTO Energy, Inc. v. ATD, LLC*, No. CIV 14-1021 JB/SCY, 2016 WL 5376322, at *1, *10, *14 (D.N.M. Aug. 22, 2016) (awarding $350/hour to a partner with thirteen years of experience and national recognition as a top insurance lawyer in a high-end insurance case five years ago).

$225/hour for Jennifer Hammitt, a senior associate with ten years of experience, seven of which were at the Environmental Protection Agency's Office of General Counsel.  *See doc. 316-3* at ¶¶ 3, 5 (asserting that $175/hour for a sixth-year associate with experience in environmental and natural resource law was commensurate with the local rate); *cf. XTO Energy*, 2016 WL 5376322, at *1, *10, *14 (D.N.M. Aug. 22, 2016) (awarding $200/hour five years ago to a sixth-year associate in a high-end insurance case); *Daniel & Max*, 2019 WL 3936865, at *2 (D.N.M. Aug. 20, 2019) (awarding $190/hour in a breach of contract case to an associate of unknown experience).

$190/hour for Dave Medeiros, a local contract attorney with thirty-four years of experience (half of which was as in-house counsel for Plaintiffs as a local government attorney) who was retained for his unique expertise and familiarity with the case and has not entered an appearance. *See Lippoldt*, 468 F.3d at 1225 (holding that a district court did not abuse its discretion by considering the extent of local counsel's responsibility when identifying that counsel's rate); *doc. 316-3* at ¶¶ 3, 5 (asserting that $250/hour for a special counsel with forty-five years of experience and national recognition as a "leading attorney in the area of environmental law" was commensurate with the local rate).

$175/hour for Sarah Wightman, an associate with at least two of years of experience, and $150/hour for Jack Ross, a first-year associate. *See doc. 316-3* at ¶¶ 3, 5 (asserting that $175/hour for a sixth-year associate with experience in environmental and natural resource law was commensurate with the local rate); *cf. Strobel*, 2021 WL 371575, at *2–3 (awarding $150/hour for a first-year associate in trademark and copyright case that "was neither high-end nor complex"); *Got Prods.*, 2020 WL 1288568, at *2-3 (awarding $175/hour for a second-year associate in a breach of contract case that was not high end or complex).

$90/hour for experienced CERCLA paralegals like David Baker and Marina Goodrich. *See doc. 316-3* at ¶ 6 (asserting that 60/hour for paralegals experienced in environmental litigation, including those with more than twenty years of experience, is

commensurate with the local rate); *cf. Got Prods.*, 2020 WL 1288568, at *3 (awarding

$85/hour to paralegals in a breach of contract case that was not high end or complex);

*Payne v. Tri-State Careflight, LLC*, No. CIV-14-1044 JB/KBM, 2016 WL 5376321, at *13

(D.N.M. Aug. 16, 2016) (finding that $90/hour was a reasonable rate for paralegal

services in a wage and hour dispute).

> 2.   *Reasonableness of Plaintiffs' Claimed Attorney Hours*

Turning to the issue of reasonable hours, many of the hours claimed by Plaintiffs

for tasks related to the Rule 30(b)(6) deposition, the investigation of American Linen's

dry-cleaning operations and PCE use from March 30, 2019, to October 5, 2020, and their

Motion to Compel and for Sanctions are unreasonable.  "Counsel for the party claiming

the fees has the burden of proving hours to the district court by submitting meticulous,

contemporaneous time records that reveal, for each lawyer for whom fees are sought,

all hours for which compensation is requested and how those hours were allotted to

specific tasks."  *Case*, 157 F.3d at 1250.  The Court must then scrutinize such records to

"ensure that the … attorneys have exercised 'billing judgment'" by "winnowing the

hours actually expended down to the hours reasonably expended."  *Id.* (quoting *Ramos*,

713 F.2d at 553); *see also Ramos*, 713 F.2d at 553 ("It does not follow that the amount of

time *actually* expended is the amount of time *reasonably* expended.").

The Court assesses reasonableness based on the following factors: (i) whether the

task would normally be billed to a paying client; (ii) the amount of time spent on a

given task; (iii) the complexity of the task; (iv) the number of reasonable strategies pursued; (v) the responses necessitated by maneuvering of the other side; and (vi) duplication. *See Case*, 157 F.3d at 1250. The Court, though, need not "identify and justify each disallowed hour" or "announce what hours are permitted for each legal task." *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1202 (10th Cir. 1986). Instead, the Court may impose "[a] general reduction of hours claimed in order to achieve what the court determines to be a reasonable number" so long as it provides sufficient reason for doing so. *Id; see also id.* (affirming a district court's percent reduction of hours to account for the excessive time an inexperienced counsel spent preparing the case); *Jane L.*, 61 F.3d at 1510 (affirming a district court's percent reduction of hours to account for the failure of "sloppy and imprecise time records … to document adequately how plaintiffs' attorneys utilized large blocks of time"); *Carter v. Sedgwick Cnty.*, 36 F.3d 952, 956 (10th Cir. 1994) (affirming a district court's percent reduction of hours to eliminate "hours that were unnecessary, irrelevant and duplicative").

Here, Plaintiffs have generally provided detailed summaries of tasks their attorneys and paralegals completed, broken down by month, timekeeper, and hours expended measured in six-minute increments. *See doc. 308* at ¶ 31; *see generally doc. 308-2.* Their hours claimed for each task reflect billing judgment. *See doc. 308* at ¶ 31 (explaining that the hours claimed for reflect "contemporaneously recorded individual billing entr[ies]"); *see generally doc. 308-2* (citing to an invoice number for all hours

claimed except for those spent preparing the affidavit and exhibits in February 2020).

For hours spent on tasks related to multiple defendants, Plaintiffs have reduced the

billed time claimed proportionately.  *See doc. 308* at ¶ 31 n.11.  The Court's task,

therefore, is to "look at the hours expended on each task to determine if they are

reasonable" and reduce hours claimed in excess of "what the court determines to be a

reasonable number."  *See Case*, 157 F.3d at 1250.

i.   RULE 30(B)(6) DEPOSITION

The Court reduces the time awarded for noticing and preparing for American

Linen's Rule 30(b)(6) deposition.  For a deposition lasting just over four hours, Plaintiffs

claim a total of 76.55 hours: (i) 13.65 hours by Ms. Ferrell, Ms. Hammitt, and Ms.

Wightman drafting, revising, and serving the notice for the deposition; (ii) 3.6 hours by

Ms. Ferrell and Ms. Hammitt meeting and conferring about that notice; (iii) 19.5 hours

by Ms. Ferrell, Ms. Hammitt, and Mr. Baker drafting and revising an outline for the

deposition; (iv) 11.2 hours by Mr. Baker gathering and preparing materials and exhibits

for the deposition; (v) 1.1 hours by Ms. Ferrell and Ms. Hammitt reviewing materials

and conferring with experts about the deposition; (vi) 9.8 hours by Ms. Ferrell and Ms.

Hammitt on other unspecified preparation; (vii) 10.3 hours by Ms. Ferrell and Mr.

Medeiros driving to and attending the deposition, and (viii) 7.4 hours by Ms. Ferrell,

Ms. Hammitt, Ms. Whitman, and Mr. Medeiros reviewing the deposition's transcript

and corresponding with American Linen about its designee's inadequate preparation.[3] *See doc. 308-2* at 2-7, 35.

The 13.65 hours claimed by Plaintiffs' attorneys for noticing the Rule 30(b)(6) deposition is excessive. CERCLA litigation may be complex and generate substantial quantities of documentation and discovery that require review. But identifying Rule 30(b)(6) deposition topics is not a uniquely complicated matter. The lack of complexity is particularly true here where, except for inquiring as to the factual basis for three of American Linen's prior statements, the ten topics noticed are general inquiries about the company's corporate history; employee training; historical dry-cleaning activities, equipment, and suppliers; and other matters relevant to CERCLA owner/operator claims. *See doc. 243-1* at 8-12. To eliminate excessive time, the Court reduces the number of hours claimed for each attorney to notice the deposition by fifty percent.

Similarly, the time claimed by Plaintiffs' attorneys and paralegals to outline, gather materials for, and otherwise prepare for the Rule 30(b)(6) deposition is also excessive. To eliminate unreasonable time claimed for outlining and gathering deposition materials and account for the lack of detail provided for other unspecified, additional preparation, the Court reduces the number of hours claimed for outlining,

---

[3] As part of the calculation of this total, the Court considers time that Ms. Hammitt spent corresponding with American Linen about the Rule 30(b)(6) deposition on June 3, 2019, *see doc. 308-2* at 7, as responsive to the Rule 30(b)(6) deposition, rather than to the investigation of American Linen's PCE use and dry-cleaning history.

creating background documents and exhibits, and other unspecified preparation by one third. *Cf. Lintz v. Am. Gen. Fin., Inc.*, 87 F. Supp.2d 1161, 1168 (D. Kan. 2000) (holding that 44.7 hours was an excessive amount of time to spend preparing for and taking the deposition of a party's corporate representative and reducing the amount of time award to 16.7 hours).

Time claimed by Ms. Ferrell to travel to Las Cruces, New Mexico for the deposition is recoverable and reasonable. In *Ramos*, the Tenth Circuit held that where "there is no need to employ counsel from outside the area … travel expenses for [out-of-area] counsel between their offices and the city in which the litigation is conducted should [not] be reimbursed." 713 F.2d at 559. Courts in this Circuit apply *Ramos* to bar the award of "travel-related hours billed by out-of-state counsel" to travel to the state of litigation. *See, e.g., Utah Physicians for a Healthy Env't, Inc. v. Diesel Power Gear, LLC*, Case No. 2:17-cv-00032-RJS, 2021 WL 254268, at *20-21 (D. Utah Jan. 26, 2021).[4] The Court, though, does not modify the hours claimed for Ms. Ferrell's air travel to El Paso, Texas for this deposition because she spent the flight preparing to take the deposition. *See doc. 308-2* at 3. (Though, per above, the Court does reduce the time claimed for this preparation by thirty-three percent due to its lack of specificity. *See supra* at 14-15.). Nor does the Court reduce the number of hours claimed by Ms. Ferrell to travel from El

---

[4] By contrast, time traveling within New Mexico is reimbursable at an attorney's full reasonable rate, *see Ysasi v. Brown*, No. CIV 13-0183 JB/CG, 2015 WL 403930, at *19 (D.N.M. Jan. 7, 2015), even for out-of-market counsel, *see Utah Physicians*, 2021 WL 254268, at *21.

Paso to Las Cruces to take the deposition from 6.1 to 4.2 hours (the number of hours

claimed by Mr. Medeiros to attend the deposition telephonically).  A state line divides

El Paso and Las Cruces, but their geographic proximity—just over fifty miles—makes

them a single legal market for many types of litigation.  The Court finds that the better

reading of *Ramos* is a prohibition against awarding fees and expenses incurred solely

because the prevailing party hired an out-of-market (rather than out-of-state) counsel.

*See Ramos*, 713 F.2d at 559 (referring to out-of-area counsel, rather than out-of-state

counsel).

The remaining hours claimed for work on the Rule 30(b)(6) deposition are

reasonable.  Claiming hours for both Ms. Ferrell's and Mr. Medeiros' attendance at the

deposition is appropriate.  *See Ysasi v. Brown*, No. CIV 13-0183 JB/CG, 2015 WL 403930,

at *19, *29 (D.N.M. Jan. 7, 2015) (finding that having three attorneys present for a

deposition was reasonable).  Having multiple attorneys and paralegals work on a single

task is not unreasonably duplicative.  *See United States ex rel. Baker v. Cmty. Health Sys.,

Inc.*, Civ. No. 05-279 WJ/ACT, 2013 WL 10914086, at *15 (D.N.M. Aug. 9, 2013) ("The

repeating of certain tasks performed by multiple attorneys … is a reflection of the

layered and progressive process inherent in legal representation….").  Given the

complexities of the case and the size of the administrative and case record about the

Site, the Court considers proper the time claimed for corresponding about, negotiating,

and revising the scope of the deposition, reviewing discovery materials, and conferring with experts.

Based on the above, the Court awards Plaintiffs $14,822.13 in attorneys' fees arising from American Linen's failure to produce an adequately prepared Rule 30(b)(6) designee, broken down as follows:

| Attorney or Paralegal | Hourly Rate | Hours Awarded | | | | | | | | | Fee Award |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Noticing | Pre-Depo Meet and Confer | Outline | Exhibit Prep. | Review Materials and Confer with Experts | Other Prep. | Attendance | Post-Depo Meet and Confer | Total | |
| Ms. Ferrell | $360.00 | 2.5500 | 3.400 | 5.0667 | 0.0000 | 0.7000 | 6.1333 | 6.1000 | 2.3000 | 26.2500 | $9,450.00 |
| Ms. Hammitt | $225.00 | 3.5500 | 0.200 | 6.8667 | 0.0000 | 0.4000 | 0.4000 | 0.000 | 4.3000 | 15.7167 | $3,536.25 |
| Mr. Mederios | $190.00 | 0.0000 | 0.0000 | 0.000 | 0.0000 | 0.0000 | 0.0000 | 4.2000 | 0.2000 | 4.4000 | $836.00 |
| Ms. Wightman | $160.00 | 0.7250 | 0.000 | 0.000 | 0.0000 | 0.0000 | 0.0000 | 0.0000 | 0.6000 | 1.3250 | $231.88 |
| Mr. Baker | $60.00 | 0.000 | 0.000 | 1.0667 | 7.4467 | 0.0000 | 0.0000 | 0.0000 | 0.00 | 8.5333 | $768.00 |
| **Totals** | | 6.8250 | 3.6000 | 13.0000 | 7.4467 | 1.1000 | 6.5333 | 10.3000 | 7.4000 | 56.2250 | **$14,822.13** |

ii.   DRY CLEANING AND PCE INVESTIGATION

The Court also reduces the time claimed for investigating American Linen's PCE use and dry-cleaning activities.  For an eighteen-month investigation, Plaintiffs claim a total of 336.1401 hours: (i) 130.35 hours by Mr. Marten, Mr. Phillips, Ms. Ferrell, Ms. Hammitt, Ms. Wightman, Mr. Baker, and Ms. Goodrich to identify, locate, correspond with, and interview former American Linen employees and other fact witnesses; (ii)

74.15 hours by Ms. Ferrell, Ms. Hammitt, Mr. Medeiros, Ms. Wightman, Mr. Ross, Mr. Baker, and Ms. Goodrich to search for and obtain documentary evidence of American Linen's dry-cleaning operations and PCE use, including public records requests to the New Mexico Environment Department ("NMED"), the Environmental Protection Agency, and the New Mexico Regulatory Commission; researching and subpoenaing dry-cleaning manuals and other documents from manufacturers and suppliers; searching the New Mexico State University ("NMSU") Branson Library and the Las Cruces Thomas Branigan Memorial Library for relevant documents; and communicating with experts about these documents; (iii) 45.799 hours by Mr. Marten, Ms. Ferrell, Ms. Hammitt, Mr. Medeiros, Ms. Wightman, Mr. Ross, and Mr. Baker preparing for and taking Raymundo Castillo's deposition and exploring deposing Casper Lutz; (iv) 49.325 hours by Mr. Marten, Ms. Ferrell, Ms. Hammitt, Ms. Wightman, Mr. Ross, and Mr. Baker researching, preparing, and propounding a second set of written discovery requests on American Linen; (v) 10.2071 hours by Mr. Marten, Ms. Ferrell, Ms. Hammitt, Ms. Wightman, and Mr. Baker drafting and revising memoranda, timelines, and investigation budgets; (vi) 5.925 hours by Mr. Marten, Ms. Ferrell, Ms. Hammitt, Ms. Wightman, and Mr. Baker coordinating the investigation in general; (vii) 8.05 hours by Ms. Ferrell, Ms. Hammitt, and Mr. Baker researching American Linen's assets and insurance coverage; (viii) 10.384 hours by Mr. Marten, Ms. Ferrell, Ms. Hammitt, and Mr. Baker doing other tasks that are unrelated to the investigation or lack

the specificity for the Court to assess their relation to the investigation; and (ix) 1.95

hours by Mr. Marten, Ms. Hammitt, and Mr. Baker investigating the arranger claim.

Not all of these hours, though, arise from American Linen's failure to supplement its

disclosures and discovery responses.

    a.  <u>American Linen's Failure to Supplement is Not the "But-for"</u>
              <u>Cause of Every Claimed Hour</u>

      Plaintiffs have not shown that American Linen's failure to supplement its

disclosures and discovery responses in a timely manner is the but-for cause of each

hour claimed for investigation American Linen's historical operations and PCE use.  In

*Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178 (2017), the Supreme Court held that

"the court can shift only those attorney's fees incurred because of the misconduct at

issue" when sanctioning that misconduct under the Federal Rules of Civil Procedure.

137 S Ct. at 1186 & n.5; *see also id.* at 1187 ("The [sanctioning] court's fundamental job is

to determine whether a given legal fee …would or would not have been incurred in the

absence of the sanctioned conduct. The award is then the sum total of the fees that,

except for the misbehavior, would not have accrued.").  The Supreme Court cautioned,

though, that trial courts "need not, and indeed should not, become green-eyeshade

accountants" when determining the causal relationship between sanctioned conduct

and a claimed legal fee.  *See id.* at 1187.  "The essential goal in shifting fees is to do

rough justice, not to achieve auditing perfection," so "a district court may take into

account its overall sense of a suit [and] decide … that all (or a set percentage) of a

particular category of expenses … were incurred solely because of a litigant's bad-faith

conduct." *Id.* (internal quotation marks and brackets omitted).

Here, not every attorney fee claimed by Plaintiffs resulting from its investigation

of American Linen's PCE use and dry-cleaning operations is a product of American

Linen's failure to supplement its blanket denials of dry-cleaning operations and PCE

use within a reasonable time of Larry Hartman's deposition.  Even if American Linen

had admitted to conducting dry cleaning with PCE at its facilities (as it eventually did

in October 2020 in its responses to Plaintiffs' requests for admission, *see doc. 264-5* at 7-

8), Plaintiffs still would have had to investigate the disposal and spillage of PCE at these

facilities as part of establishing the causation element of their owner/operator claim.

Based on the Court's sense of the suit, this hypothetical investigation would have

entailed identifying and interviewing additional fact witness, albeit on a smaller scale

than the investigation Plaintiffs pursued.  Therefore, the Court finds that American

Linen's failure to supplement caused Plaintiffs to incur only fifty percent of the fees that

they claim for identifying, interviewing, and deposing fact witnesses, coordinating their

investigation of American Linen, and drafting and revising memoranda, timelines, and

budgets related to this investigation.

By contrast, though, the Court finds that American Linen's failure to supplement

is a but-for cause of most of the investigation that Plaintiffs pursued to obtain

documents evincing that American Linen conducted dry-cleaning using PCE.  The

purpose of researching dry-cleaning equipment manufacturers, subpoenaing

documents from these entities, and conducting archival research at the NMSU Branson

Library and the Las Cruces Thomas Branigan Memorial Library was to obtain

documents supporting the proposition that American Linen conducted dry-cleaning

using PCE and overcome American Linen's insistence to the contrary.  *See, e.g., doc. 200-*

*13* at 1, 4 (an account payment authorization from the Las Cruces Urban Renewal

Agency stating that American Linen possessed dry-cleaning equipment and drums of

PCE in 1972).  Therefore, these tasks would not have been necessary had American

Linen retracted its blanket denials of dry-cleaning operations and PCE use after

receiving reasonable notice that they were incorrect.  Therefore, the Court finds that

American Linen's failure to supplement is the but-for cause of the hours spent by

Plaintiffs' attorneys spent on these tasks.

As for public records requests, Plaintiffs pursued them to "uncover hazardous

waste or regulatory investigations related to American Linen."  *See doc. 263* at 4 n.8.

Since such investigations are relevant to not only whether American Linen conducted

dry-cleaning operations using PCE but also to whether these operations caused

contamination, the Court finds that Plaintiffs would have pursued some of these public

records requests even if American Linen had timely supplemented its disclosures and

discovery responses about its historical operations.  Therefore, the Court finds that

22

American Linen's failure to supplement caused Plaintiffs to incur fifty percent of the fees they claim for time their attorneys spent on public records requests.

Similarly, the Court finds that some, but not most, of the fees arising from the additional written discovery propounded upon American Linen are attributable to the company's failure to supplement. Approximately one quarter of the discovery requests served on American Linen on September 3, 2020, *see doc. 234*, seek information about the company's dry-cleaning activities and PCE use, *see doc. 264-5* at 7-8. The other discovery requests seek admissions about employment relationships between American Linen and various fact witnesses, investigations of American Linen by government agencies, the release of PCE at American Linen's facilities, and information and documentation relevant to collecting a judgment against American Linen. *See id.* at 3-11. Therefore, the Court finds that American Linen's failure to supplement is a but-for cause of twenty-five percent of the fees arising from the additional written discovery.

Finally, the Courts finds that American Linen's failure to supplement is not the but-for cause of hours claimed for investigating American Linen's assets, insurance, or liability as an arranger, or tasks of unclear relation[5] to the American Linen investigation.

---

[5] Tasks of unclear relation to the American Linen investigation are the following: (i) time spent by Mr. Marten reviewing a redacted document about the American Linen claim on February 14, 2020, reviewing materials about American Linen for a call with a redacted individual on March 7, 2020, calling a redacted individual on March 9, 2020, unspecified research into American Linen on March 24, 2020, and calling Mr. Baker on March 24, 2020, to assign unspecified research into American Linen; (ii) time spent by Ms. Ferrell doing unspecified work on the liability case against American Linen on October 30, 2019; (iii) time claimed by Mr. Baker to review and catalog unspecified documents production on April 2, 2019, to support an unspecified deposition and expert report on April 3, 2019, and research information for

Plaintiffs would have investigated American Linen's assets, insurance, and arranger

liability regardless of whether American Linen had timely supplemented its blanket

denials of PCE use and dry-cleaning operations.  The tasks of unclear relation to the

American Linen lack the specificity required for the Court to assess their relationship to

American Linen's failure to supplement.  Therefore, the Court awards no fees for hours

claimed on these activities.

### b.  The Remaining Claimed Hours are Reasonable

Turning to the reasonableness of the hours claimed for tasks caused by American

Linen's failure to supplement, the Court finds that, after the time spent on tasks is

reduced to account for causation, the amount of time spent by Plaintiffs on each task

arising from its investigation of American Linen's PCE use and dry-cleaning operations

investigating is reasonable.  Neither of the two arguments that American Linen makes

otherwise is convincing.

First, American Linen contends that investigations pursued by Plaintiffs after

having a telephone call with Raymundo Castillo on April 1, 2019, were unreasonable.  It

insists that Plaintiffs must have learned from this call that Mr. Castillo would testify

---

supplemental expert reports on August 3, 2020; and (iv) time claimed by Ms. Hammitt to have calls with
the case team and clients about defensive discovery, Rule 30(b)(6) depositions, and expert reports on
April 2, 2019, review materials about American Linen on April 3, 2019, discuss redacted content and
American Linen discovery on November 8, 2019, work on redacted informal interviews on March 20,
2020, check in with the City of Las Cruces about City documents related to redacted matters about
American Linen on April 30, 2021, and respond to a request about American Linen's discovery history
and dates of receipt on September 16, 2021.

that American Linen had conducted dry-cleaning with PCE, testimony that "definitively demonstrated that American Linen conducted dry-cleaning at the 525 North Church Street location during the years that Mr. Castillo was employed there." *See doc. 316* at 7.  Hindsight may be twenty-twenty, but foresight is not.  At the time, Plaintiffs had no way of knowing that Mr. Castillo's eventual testimony would prompt American Linen to change its position on its historical dry-cleaning operations and PCE use.  After all, American Linen had not changed its position after similar testimony from Victor Jasso and Mr. Hartman.  So long as American Linen continued to deny ever conducting dry-cleaning operations and ever using PCE, Plaintiffs bore the burden of proof and persuasion on these facts.  Therefore, it was reasonable for Plaintiffs to continue to look for more evidence to establish them.

Second, American Linen argues that Plaintiffs may not recover fees incurred after their interview with Mr. Castillo on April 1, 2019, since they did not timely supplement their initial disclosures to indicate that he had information related to their claims, and waited sixteen months to take Mr. Castillo's deposition.  *See id*.  American Linen insists that "if Plaintiffs had disclosed the information that they obtained from Mr. Castillo to American Linen, American Linen would have considered it and supplemented much sooner."  *Id.*  The Court disagrees.  Mr. Castillo's deposition was not unduly delayed given that this case was stayed from August 21, 2019, through July 17, 2020, *see doc. 189*;

*doc. 214* at 2, and the deposition occurred approximately one month after the end of the stay, *see doc. 233-12* at 1.

The Court is unpersuaded that American Linen would have supplemented its disclosures and discovery responses to retract its blanket denials of PCE use and dry-cleaning operations if Plaintiffs had supplemented their disclosures to include Mr. Castillo as a witness.  As the Court has already noted, *see doc. 304* at 33, 58, passivity defined American Linen's discovery conduct through August 2020.  It took no depositions, served no discovery requests, pursued no internal investigation of its historical operations beyond reviewing its corporate records, and "supplemented" its position about its PCE use and dry-cleaning operations not by amending its disclosures and discovery responses, but rather by retracting its blanket denials in responses to requests for admission.  It also denied having any obligation to answer discovery requests based on information known by former employees whom it could contact and interview with reasonable effort.  *See doc. 279* at 7-8.  Given American Linen's behavior and position on the extent of corporate knowledge, the Court finds that, even if Plaintiffs had supplemented their disclosures to include Mr. Castillo early in their investigation, the mere inclusion of Mr. Castillo as a potential fact witness would not have prompted American Linen to reevaluate its positions about its dry-cleaning activities and PCE use.  Any failure by Plaintiffs to disclose Mr. Castillo as a witness within a reasonable time of discovering the content of his testimony does not bar them

from recovering the reasonable expenses of their investigation of American Linen's

operational history after April 1, 2019.

Having concluded that the hours are reasonable, the Court awards Plaintiffs

$37,741.28 in attorneys' fees arising from the American Linen's failure to supplement,

broken down as follows:

| Attorney or Paralegal | Hourly Rate | Hours Awarded | | | | | | | | Fee Award |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Witness and Document Investigation | | | Coordination | Deps. | Written Discovery | Client Memos, & Budgets | Total | |
| | | Witness | Public Records Requests | Archive, Equip. & Other Doc. Search | | | | | | |
| Mr. Marten | $400.00 | 0.1500 | 0.0000 | 0.0000 | 0.1875 | 0.2500 | 0.3250 | 0.1250 | 1.0375 | $415.00 |
| Mr. Phillips | $390.00 | 21.0875 | 0.0000 | 0.0000 | 0.0000 | 0.0000 | 0.0000 | 0.0000 | 21.0875 | $8,224.13 |
| Ms. Ferrell | $360.00 | 12.2375 | 2.9375 | 7.9750 | 0.2875 | 7.0250 | 3.5625 | 0.4125 | 34.4375 | $12,397.50 |
| Ms. Hammitt | $225.00 | 7.5475 | 1.0000 | 11.6500 | 1.1375 | 2.4995 | 1.5750 | 0.9411 | 26.3506 | $5,928.88 |
| Mr. Medeiros | $190.00 | 0.0000 | 0.0000 | 0.3000 | 0.0000 | 0.7500 | 0.0000 | 0.0000 | 1.0500 | $199.50 |
| Ms. Wightman | $175.00 | 7.7650 | 0.0000 | 10.4500 | 0.3250 | 4.3000 | 1.8188 | 0.0750 | 24.7338 | $4,328.41 |
| Mr. Ross | $150.00 | 0.0000 | 0.4000 | 0.0000 | 0.0000 | 0.6000 | 2.8750 | 0.0000 | 3.8750 | $581.25 |
| Mr. Baker | $90.00 | 6.6500 | 2.7500 | 23.3000 | 1.0250 | 7.4750 | 2.1750 | 3.5500 | 46.9250 | $4,223.25 |
| Ms. Goodrich | $90.00 | 9.7375 | 0.0000 | 6.3000 | 0.0000 | 0.0000 | 0.0000 | 0.0000 | 16.0375 | $1,443.38 |
| Totals | | 65.1750 | 7.0875 | 59.9750 | 2.9625 | 22.8995 | 12.3313 | 5.1036 | 175.5343 | $37,741.28 |

iii.   MOTION TO COMPEL DISCOVERY AND FOR SANCTIONS

Some of the time that Plaintiffs' counsel claims to bring their Motion to Compel

Discovery and for Sanctions (*doc. 263*) is unreasonable.  Plaintiffs' attorneys claim a total

of 95.892 hours, broken down as follows: (i) 6.095 hours by Mr. Marten, Ms. Ferrell, and

Ms. Hammitt corresponding, meeting, and conferring with American Linen about the

discovery dispute; (ii) 7.364 hours by Ms. Ferrell, Mr. Ross, and Mr. Baker reviewing

American Linen's discovery responses and disclosures, Plaintiffs' investigations into

American Linen's PCE use, and compiling internal documents about them; (iii) 31.833

hours by Mr. Marten, Ms. Ferrell, Ms. Hammitt, Mr. Mederios, Mr. Ross, and Mr. Baker

researching, writing, and revising the Motion to Compel Discovery and for Sanctions;

(iv) 3.6 hours by Mr. Mederios and Mr. Baker preparing five exhibits totaling forty-nine

pages for the motion; (v) 33.7 hours by Mr. Marten, Mr. Odell, Ms. Ferrell, Mr.

Mederios, and Mr. Ross researching, writing, and revising the reply brief; (vi) 5.7 hours

by Mr. Baker excerpting 10 pages of American Linen's deposition transcript as an

exhibit for the reply; (vii) 1.75 hours by Mr. Baker preparing binders about the motion

for hearings; and (viii) 5.85 hours communicating by Ms. Ferrell with Plaintiffs about

the briefing.

The Court does not compensate Plaintiffs for 1.75 hours that a paralegal spent

preparing binders for a motions hearing or the 6.095 hours that their attorneys spent

meeting and conferring with American Linen about discovery deficiencies.  The Court

did not set or hold a hearing on Plaintiffs' Motion, so all hours spend preparing for a hearing were unreasonable.

As for time claimed for the meet and confer process, this Court and its sister courts have split over whether such time is recoverable as expenses awarded pursuant to Rule 37(a)(5). *Compare Miller v. Paschall Truck Lines, LLC*, Civ. 20-303 GBW/SCY, 2021 WL 919868, at *2 (D.N.M. Mar. 10, 2021) (not awarding expenses incurred meeting, conferring, and corresponding with opposing party about a discovery dispute), *and VanMeter v. Briggs*, CV 18-0970 RB/JHR, 2020 WL 954771, at *3 (D.N.M. Feb. 27, 2020) (same), *and Lifetime Prods., Inc. v. Russell Brands, LLC*, Case No. 1:12-cv-00026-DN-EJF, 2016 WL 5349728, at *2 (D. Utah Sept. 23, 2016) (gathering cases for the proposition that courts do not award fees or expenses arising from the meet and confer process), *with Pistone v. N.M. Pub. Def. Dep't*, No. 13-cv-0920 MV/SMV, 2015 WL 13666991, at *2 (D.N.M. Feb. 25, 2015) (awarding expenses arising from the meet and confer process), *and DCD Partners, LLC v. Transamerica Life Ins. Co.*, Case No. 2:15-cv-03238-CAS (GJSx), 2018 WL 6252450, at *3 (C.D. Cal. June 13, 2018) (same).  The Tenth Circuit has stated that Rule 37(a)(5) only includes "reasonable expenses incurred … in *filing or opposing a discovery motion*." *Centennial Archaeology*, 688 F.3d at 678 (emphasis added).  The most natural reading of that phrase excludes reimbursement for meeting and conferring before drafting a discovery motion.  *See VanMeter*, 2020 WL 954771, at *3.  Barring bad

faith by the losing party at the meet-and-confer,[6] this Court will adopt such a reading. Thus, it finds that expenses arising from Plaintiffs' attorneys meeting and conferring with American Linen—which preceded their drafting of the Motion to Compel and for Sanctions—are not expenses incurred in the making of that Motion and so does not award them for the 6.095 hours that their attorneys spent doing so.

The Court awards some of the 7.364 hours that Plaintiffs claim for their attorneys and paralegals American Linen's reviewing discovery responses and disclosures and compiling documents about them.  This Court and many of its sister courts have read the phrase "reasonable expenses incurred in making the motion" in Rule 37(a)(5) to exclude expenses incurred reviewing discovery responses and disclosures to assess their adequacy.  *See, e.g.*, *Miller*, 2021 WL 919868, at *2; *Maese v. Lamey (In re Lamey)*, No. 14-13729 ta7, Adv. No. 15-1030 t, 2015 WL 6666244, at *7 (Bankr. D.N.M. Oct. 30, 2015); *Brigham Young Univ. v. Pfizer, Inc.*, 262 F.R.D. 637, 648 (D. Utah 2009).  Initial reviews of discovery responses and disclosures are tasks that litigants perform irrespective of whether they ultimately file a motion to compel.  *See Maese*, 2015 WL 6666244, at *7 (citing *Mosaid Techs. Inc. v. Samsung Elecs. Co.*, 224 F.R.D. 595, 598 (D.N.J. 2004), and

---

[6] In this context, the Court does not find that American Linen engaged in the meet and confer process about Plaintiff's Motion to Compel and for Sanctions in bad faith. Undoubtedly, "[g]ood faith … prohibits parties from 'maintaining an untenable position at worst or a tenuous position at best' during the meet and confer process." *See doc. 435* at 30-31 (quoting *W. Bend Mut. Ins. Co. v. Zurich Am. Ins. Co.*, 308 F. Supp. 3d 954, 958-59 (N.D. Ill. 2018)).  But, although the Court ultimately disagreed with the positions that American Linen took about its discovery obligations during the parties' meet and confer process, *see generally doc. 304*, the positions were not so untenable as to warrant a finding of bad faith for this purpose.

Case 2:17-cv-00809-JCH-GBW   Document 454   Filed 12/15/21   Page 31 of 51

*Tequila Centinela, SA de C.V. v. Bacardi & Co. Ltd.*, 248 F.R.D. 64, 69 (D.D.C. 2008)).

Therefore, expenses associated with initial reviews are not incurred in making the

motion. By contrast, though, expenses arising from additional reviews done while

drafting a motion compel are incurred in making that motion.

Here, Plaintiffs seek compensation for both initial and subsequent reviews of

American Linen's discovery and disclosures. The Court does not award them the 2.6

hours that Mr. Baker, Ms. Ferrell, and Mr. Ross spent on October 5, 2020, reviewing

American Linen's responses to Plaintiffs' second discovery requests, *see doc. 308-2* at 31,

since these reviews are initial reviews of discovery responses that American Linen

served that day, *see doc. 248*. The Court does award Plaintiffs the remaining 4.764 hours

that they claim for Mr. Baker reviewing American Linen's disclosures, responses to

Plaintiffs' first discovery requests, and materials about Plaintiffs' investigation of

American Linen on July 21, 2020, and October 22, 2020, and compiling documents about

these materials on September 25, 2020, and September 27, 2020. *See doc. 308-2* at 26, 30-

31. Mr. Baker's work was not an initial review of discovery responses, but rather part of

the process of preparing Plaintiffs' Motion to Compel about the deficiencies in

American Linen's disclosures and first discovery responses, both of which American

Linen produced well before July 2020. Given the size of the record in the case and the

vast quantities of documents produced, 4.764 hours is a reasonable amount of time for

Mr. Baker to have spent on the claimed document review.

31

Turning to the time claimed for drafting the Motion to Compel and for Sanctions and its reply brief, the Court finds that the total time claimed is excessive.  Courts in the Tenth Circuit have occasionally found that multiple attorneys spending approximately thirty hours on a discovery motion is reasonable.  *See, e.g.*, *Fish v. Kobach*, No. 16-21-05-JAR, 2018 WL 3647132, at *6 (D. Kan. Aug. 1, 2018) (reducing the number of hours claimed by three attorneys to draft, edit, revise, and review a 19-page motion for contempt and its accompanying exhibits from 65 hours to 32 hours).  Having multiple attorneys write and revise on a single motion is not inherently duplicative.  *See Fox v. Pittsburgh State Univ.*, 258 F. Supp. 3d 1243, 1257 (D. Kan. 2017) ("As most attorneys know, the drafting process and editing process for legal writing are different.").  "The fact that … an associate[] would draft, revise and edit [a discovery motion], while … partners … would review, revise and finalize [that motion] is not duplicative—it is both reasonable and thorough."  *United States ex rel. Baker*, 2013 WL 10914086, at *15.

Here, Plaintiffs' Motion to Compel and for Sanctions and their reply totaled a mere twelve and thirteen pages respectively, *see docs. 263*, *288*, and did not raise complex legal issues.  American Linen's discovery misconduct was plain: it answered discovery requests and prepared its Rule 30(b)(6) designee based solely on corporate records in its possession, *see doc. 264-3* at 13, rather than making an effort to do so from all information reasonably available to it, *see doc. 304* at 35-38, 42-44; and it did not further investigate or supplement its disclosures and discovery responses after the

testimony of two former employees provided reasonable notice that its blanket denials of PCE use and dry-cleaning operations were incorrect, *see id.* at 55-57. Plaintiffs had also already briefed the issue of American Linen's Rule 30(b)(6) designee's lack of preparation. *See doc. 257* at 5-7. In light of the simplicity of these issues, the brevity of the briefing, and the overlap between Motion to Compel and for Sanctions and other briefing for which reasonable expenses have not been awarded, the Court finds that a reasonable amount of time to prepare the Motion and its reply is half of that claimed by Plaintiffs. *Cf. Ad Astra Recovery Servs., Inc. v. Heath*, Case No. 18-1145-JWB-ADM, 2020 WL 4346965, at *6 (D. Kan. July 29, 2020 (awarding 29.3 hours for six attorneys to brief a motion to compel); *VanMeter*, 2020 WL 954771, at *4 (awarding 31.79 compensable hours for two attorneys to brief a motion to compel and respond to a cross motion for protective order).

Similarly, the Court finds that only some of the time claimed for preparing exhibits associated with the Motion and its reply is reasonable. Claiming 3.6 hours for preparing five exhibits totaling forty-nine pages for the Motion is reasonable. But claiming 5.7 hours for excerpting ten pages of American Linen's deposition transcript as the sole exhibit for the reply is not. The Court, therefore, reduces that sum by eighty percent.

Likewise, and finally, the Court finds that the only some of the 5.85 hours claimed by Plaintiffs for their attorneys for communicating amongst themselves and

with them about the Motion to Compel and for Sanctions is recoverable in an expense award pursuant to Rule 37(a)(5). Hours spent facilitating clients' review of correspondence sent to an opposing party during the meet and confer process are incurred as part of that process, not in the course of bringing a motion to compel. But hours spent apprising clients about the need to bring a discovery motion and soliciting clients' feedback on that motion are incurred in the course of bring that motion. Therefore, the Court excludes from its award the hour that Ms. Ferrell spent on September 20, 2020, facilitating Plaintiffs' review of an email to American Linen about the parties' discovery dispute. *See doc. 308-2* at 30. The remaining 4.85 hours claimed for communications with Plaintiffs about the Motion to Compel are reasonable.

Based on the above, the Court awards Plaintiffs $10,931.85 in attorneys' fees arising from the Motion to Compel, broken down as follows:

| Attorney or Paralegal | Hourly Rate | Hours Awarded | | | | | | | Fee Award |
|---|---|---|---|---|---|---|---|---|---|
| | | Review Discovery Responses | Client Comm. | Motion to Compel Drafting & Editing | Motion Exhibits | Reply Drafting & Editing | Reply Exhibits | Total Hours | |
| Mr. Marten | $400.00 | 0.0000 | 0.0000 | 0.0825 | 0.0000 | 0.1250 | 0.0000 | 0.2075 | $83.00 |
| Mr. Odell | $380.00 | 0.0000 | 0.0000 | 0.0000 | 0.0000 | 5.7500 | 0.0000 | 5.7500 | $2,185.00 |
| Ms. Ferrell | $360.00 | 0.0000 | 4.8500 | 4.8590 | 0.0000 | 3.3500 | 0.0000 | 13.0590 | $4,701.24 |
| Ms. Hammitt | $225.00 | 0.0000 | 0.0000 | 3.3500 | 0.0000 | 0.0000 | 0.0000 | 3.3500 | $753.75 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Mr. Mederios | $190.00 | 0.0000 | 0.0000 | 0.4500 | 0.5000 | 1.1500 | 0.0000 | 2.1000 | $399.00 |
| Mr. Ross | $150.00 | 0.0000 | 0.0000 | 6.3750 | 0.0000 | 6.4750 | 0.0000 | 12.8500 | $1,927.50 |
| Mr. Baker | $90.00 | 4.7640 | 0.0000 | 0.8000 | 3.1000 | 0.0000 | 1.1400 | 9.8040 | $882.36 |
| **Totals:** | | **4.7640** | **4.8500** | **15.9165** | **3.6000** | **16.850** | **1.1400** | **47.1205** | **$10,931.85** |

### iv.   PRESENTING & PREPARING THE FEE APPLICATION

Most of the time that Plaintiffs claim for their counsel to file the affidavit for attorneys' fees (*doc. 308*) is reasonable.  "An award of reasonable attorneys' fees may include compensation for work performed in preparing and presenting the fee application."  *Mares*, 801 F.2d at 1205; *see also Maese*, 2015 WL 6666244, at *7 (gathering cases for the proposition that "fees incurred drafting the attorney fee affidavit come within the 'making the motion' language of Rule 37(a)(5)(A)").  Plaintiffs claim a total of 114.95 hours[7] of work performed by their attorneys broken down as follows: (i) 3.667 hours by Mr. Marten, Ms. Ferrell, Mr. Mederios, and Mr. Baker reviewing the Court's Order Granting in Part and Denying in Part Plaintiffs' Motion to Compel and for Sanctions;[8] (ii) 8.2167 hours by Mr. Marten, Ms. Ferrell, Mr. Mederios, and Mr. Ross corresponding and coordinating with Plaintiffs about the fee affidavit; (iii) 3.4667 hours

---

[7] The hours columns in the attorney fees tables actually claim a total of 114.75 hours.  *See doc. 308-2* at 34-35.  This sum is 0.2 hours less than the amount that the Court credits Plaintiffs for claiming because subtotals in the description for worked performed Mr. Mederios on February 1, 2021, total 1.6 hours, rather than the 1.4 hours claimed in the hours column.  *See id.* at 35.

[8] The 3.5 hours claimed for Ms. Ferrell to review the Court's Order, summarize it for clients, and start coordinating the data gathering for the feed affidavit do not specify the time spent on each of these tasks.  *See doc. 308-2* at 33.  Therefore, the Court finds that Ms. Ferrell spent a third of the time claimed on each of these three tasks.

by Ms. Ferrell, Mr. Mederios, Mr. Ross, and Mr. Baker coordinating the preparation of

the fee affidavit; (iv) 58.7 hours by Ms. Ferrell, Mr. Mederios, and Mr. Baker reviewing

invoices, bills, and other records to identify expenses responsive the Court's Order and

preparing a spreadsheet about them; (v) 3.4 hours by Mr. Ross hours researching Tenth

Circuit case law about attorney's fees; and (vi) 37.8 hours by Ms. Ferrell, Mr. Mederios,

Mr. Ross, Mr. Baker, and Ms. Goodrich drafting and editing the fee affidavit.

The Court does not award any fees for the time spent by Mr. Marten, Ms. Ferrell,

and Mr. Mederios, and Mr. Baker reviewing its Order Granting in Part and Denying in

Part Plaintiffs' Motion to Compel and for Sanctions on February 1, 2021, the date that

the Order was issued.  This Court and its sister courts do not reimburse parties for

reviewing materials that they would have reviewed irrespective of a sanctions award.

*See Miller*, 2021 WL 919868, at *2; *Mosaid Techs.*, 224 F.R.D. at 598; *Tequila Centinela*, 248

F.R.D. at 69.  Reading the Court's Order for the first time is a task that Plaintiffs'

attorneys and paralegals would have performed regardless of whether the Order

awarded reasonable expenses, so hours spent on it are not part of preparing the expense

application.

The Court also finds the number of hours spent drafting the fee affidavit

excessive given the task's lack of complexity.  The fee affidavit is twenty-five pages in

length, but only a quarter or so those pages contain legal analysis.  *See doc. 308* at 2-8, 25.

The remainder summarize information from attached exhibits about the hours spent by

attorneys and paralegals performing various tasks and these individuals' qualifications. Gathering information about the hours spent is a time-intensive task but is already claimed in the 58.7 hours that Ms. Ferrell, Mr. Mederios, and Mr. Baker spent reviewing invoices, bills, and other records to produce a spreadsheet about these hours. Claiming an additional 37.8 hours to reproduce the content of that spreadsheet in an affidavit is unreasonable. Therefore, the Court reduces the number of hours claimed to prepare the affidavit by fifty percent.

Finally, the Court finds the number of hours claimed by Plaintiffs for their attorneys' communication with them, internal coordination, legal research, invoice review, and exhibit preparation reasonable for the most part. The Court's Order Granting in Part and Denying in Part Plaintiff's Motion to Compel and for Sanction awarded reasonable expenses arising from certain tasks performed between February 2019 and November 2020, a twenty-two-month period. Reviewing invoices and bills from this period to identify responsive expenses, redact privileged information, and prepare an exhibit summarizing these expenses is a time-intensive task. Therefore, spending 58.7 hours performing this task and 3.4667 hours coordinating it is not unreasonable. However, the 5.9 hours that Ms. Ferrell spent on February 3, 2021, February 5, 2021, February 6, 2021, and February 7, 2021, reviewing historical bills for responsive expenses, *see doc. 308-2* at 33-34, is work that could have been by a paralegal. Therefore, the Court awards it at the paralegal rate (i.e., $90/hour).

Based on the above, the Court awards Plaintiffs $12,702.00 in attorneys' fees

arising from the preparation of their attorneys' fee affidavit, broken down as follows:

| Attorney or Paralegal | Hourly Rate | Hours Awarded | | | | | | Fee Award |
|---|---|---|---|---|---|---|---|---|
| | | Client Comm. | Internal Comm. | Invoice Review & Exhibit Prep. | Legal Research | Affidavit Prep. | Total | |
| Mr. Marten | $400.00 | 0.4000 | 0.0000 | 0.0000 | 0.0000 | 0.0000 | 0.4000 | $160.00 |
| Ms. Ferrell | $360.00 | 5.5167 | 1.1667 | 5.9000[9] | 0.0000 | 3.4000 | 15.9833 | $4,161.00 |
| Mr. Mederios | $190.00 | 1.7000 | 0.8000 | 2.5000 | 0.0000 | 0.7500 | 5.7500 | $1,092.50 |
| Mr. Ross | $150.00 | 0.6000 | 1.2000 | 0.0000 | 3.4000 | 10.4500 | 15.6500 | $2,347.50 |
| Mr. Baker | $90.00 | 0.0000 | 0.3000 | 50.3000 | 0.0000 | 3.6500 | 54.2500 | $4,882.50 |
| Ms. Goodrich | $90.00 | 0.0000 | 0.0000 | 0.0000 | 0.0000 | 0.6500 | 0.6500 | $58.50 |
| **Totals:** | | 8.2167 | 3.4667 | 58.7000 | 3.4000 | 18.9000 | 92.6833 | **$12,702.00** |

### 3.  *Reasonableness of Plaintiffs' Claimed Expenses*

Turning to the issue of expenses, only $3,294.15 of the $8,947.33 in expenses

claimed by Plaintiffs are reasonable.  Reasonable expenses are those "[i]tems …

normally itemized and billed in addition to the hourly rate," not "costs … normally

absorbed as part of firms' overhead."  *See Ramos*, 713 F.2d at 559.  Here, they include the

expenses that Plaintiffs incurred to take American Linen's deposition, and some of the

costs that Plaintiffs incurred to take Mr. Castillo's deposition and investigate American

---

[9] These hours are awarded at the paralegal rate of $90/hour.

Linen's PCE dry-cleaning operations and PCE use.  They do not include any of expenses

that Plaintiffs incurred for their attorneys and paralegals to travel to New Mexico for

these purposes.

i.   NON-TRAVEL EXPENSES

The Court awards Plaintiffs some of the non-travel expenses that they incurred

to take American Linen's Rule 30(b)(6) deposition and investigate American Linen's

dry-cleaning operations and PCE use.  "Courts have generally held that the cost of

taking and transcribing depositions" is a type of reasonable expense generally charged

to a client.  *E.g., Ramos*, 713 F.2d at 560 (gathering cases).  Therefore, the expenses

claimed by Plaintiffs in April 2019 for the videographer, court reporter, and scanning

fees for American Linen's Rule 30(b)(6) deposition, *see doc. 308* at ¶ 35; *doc. 308-2 at 37*,

are awardable as claimed.  For April 2019, Plaintiffs also claim that cost of serving Lynn

J. Gore, the owner of American Linen's former laundry solutions supplier, *see doc. 258-1*

at 3, with a subpoena for his deposition, *doc. 308* at ¶ 35; *doc. 308-2 at 37*.  Plaintiffs,

though, never took Mr. Gore's deposition.  *See doc. 264-1* at 1.  Therefore, the Court

excludes expenses related to serving him from its award.

Similarly, the expenses claimed by Plaintiffs in August 2020 to serve Mr. Castillo,

record his deposition, and rent a conference room for his deposition, *see doc. 308* at ¶ 50;

*doc. 308-2 at 40*, are also awardable.  Plaintiffs, though, claim the cost of two witness fees

for Mr. Castillo, *see doc. 308* at ¶¶ 38, 50; *doc. 308-2 at 37, 40*, even though he was

deposed once. Therefore, the Court excludes the witness fee paid to Mr. Castillo in July 2019, *see doc. 308-2* at 37, from its award. The Court also reduces the expenses awarded for Mr. Castillo's deposition by fifty percent to account for its finding that only half this deposition arises from American Linen's failure to supplement.

Courts have also found the fees to search databases during a factual investigation are reasonable expenses generally charged to clients. *See, e.g., Utah Physicians*, 2021 WL 254268, at *21 (CarFax searches). Therefore, the Court awards Plaintiffs the $20.31 that they incurred to obtain copies of documents relevant to American Linen's dry-cleaning activities and PCE use from the NMSU Archives in September 2019. *See doc. 308-2* at 38. American Linen claims that it should not bear this expense because Plaintiffs control these documents. *See doc. 316* at 8. Who controls these documents is immaterial to whether expenses for locating and obtaining digital versions of them arise from American Linen's failure to supplement. Even if Plaintiffs are voluntarily storing hard copies of these documents in the Archives as American Linen claims, their attorneys still had to pay to copy and obtain digital versions of them so Plaintiffs could bear their burdens of proof and production for the American Linen's PCE use and dry-cleaning activities, matters that remained disputed at the time due to American Linen's failure to supplement.

ii.   TRAVEL-RELATED EXPENSES

Most travel-related expenses claimed by Plaintiffs for counsel to attend American

Linen's Rule 30(b)(6) deposition and investigate American Linen's operational history

are not awardable.  The Court cannot award "travel-related expenses incurred solely

because [a party] hired out-of-state attorneys and paralegals" if there was no need to

retain out-of-market counsel.  *Utah Physicians*, 2021 WL 254268, at *20 (citing *Ramos*, 713

F.2d at 559) (refusing to award expenses for airfare, gas, and lodging for out-of-market

counsel to travel to the area of litigation); *see also Three RP Ltd. P'ship v. Dick's Sporting

Goods, Inc.*, Case No. 18-CIV-003-RAW, 2019 WL 7717395, at *4 (E.D. Okla. Apr. 10,

2019) (reducing expenses awarded by the cost of out-of-market counsel to travel to and

from Oklahoma for conferences and depositions).  The Court, though, may award

Plaintiffs the reasonable travel expenses that they incurred for their attorneys to travel

within New Mexico and to states other than New Mexico to investigate American

Linen's dry-cleaning activities and PCE use.  *See Utah Physicians*, 2021 WL 254268, at *21.

The travel expenses claimed by Plaintiffs include expenses for their attorneys to travel

to New Mexico, within New Mexico, and to states other than New Mexico.  Therefore,

the Court will review each trip in turn.

a. <u>Ms. Ferrell's Trip to Las Cruces in March and April 2019 for</u>
<u>American Linen's Deposition</u>

Most expenses claimed for Ms. Ferrell's trip to Las Cruces in March and April

2019 for American Linen's Rule 30(b)(6) deposition arose solely from her needing to

travel to New Mexico for this deposition.  Were Ms. Ferrell counsel from the area, she

would have commuted to and from the deposition in a single day and not incurred

expenses of airfare, lodging, an Uber ride to the airport, and morning or evening meals.

Expenses she incurred during that commute—such as gas and mileage—and

workday—such as a midday meal—would be awardable.  *See, e.g.*, *DeYapp v. Tracy*, No.

Civ. 02-452 JP/RLP, No. Civ. 02-453 JP/RLP, 2006 WL 8443596, at *4 (D.N.M. Oct. 23,

2006) (awarding expenses for travel between Albuquerque, New Mexico and

Farmington, New Mexico for depositions).  Therefore, the Court awards Plaintiffs one

third of the costs of Ms. Ferrell's meals on the day of the deposition, but no other

expenses from this trip.

b. <u>Ms. Hammitt's Investigatory Trip to Las Cruces in May 2019</u>

The Court cannot determine to extent to which the meal and travel expenses

claimed by Plaintiffs for Ms. Hammitt's trip to Las Cruces in May 2019 to interview

Casper Lutz and Billy Watkins were solely because Ms. Hammitt is an out-of-market

attorney.  Plaintiffs bear the burden of establishing the reasonableness of an attorney fee

award and have not presented expenses for this trip in a way that allows the Court to

segregate expenses arising solely from out-of-market travel. *See doc. 308-2* at 37.

Therefore, the Court awards none of the expenses claimed Ms. Hammitt's trip to Las

Cruces in May 2019.

c.  Ms. Hammitt's, Ms. Wightman's, and Ms. Goodrich's
Investigatory Trip to Las Cruces in September 2019

The Court awards some of the travel expenses that Plaintiffs claim for Ms.

Goodrich's, Ms. Hammitt's, and Ms. Wightman's four-night trip to Las Cruces in

September 2019 to conduct research in the NMSU Archives.  Expenses for airfare,

airplane Wi-Fi, transportation to the airport, parking at the airport, rental cars, FedEx,

and meals and hotels the day of air travel were all incurred solely because these

individuals had to travel to New Mexico for this research and so are not awardable.  By

contrast, expenses for gas and meals and hotel rooms in Las Cruces on days spent

conducting research do not rise solely from for Ms. Goodrich, Ms. Hammitt, and Ms.

Wightman being from out of the area.  New Mexico attorneys and paralegals would

have accrued these expenses had they traveled from elsewhere in the state to Las

Cruces for this research.  To eliminate nights in hotels necessitated by their air travel,

the Court awards Plaintiffs half the claimed expenses for Ms. Goodrich's, Ms.

Hammitt's, and Ms. Wightman's lodging.  It also awards Plaintiffs all the expenses

claimed for gas and meals on September 10, 2019, September 11, 2019, and September

12, 2019.[10]  It excludes all other travel expenses for this trip from its award.

### d.  Mr. Phillips Investigatory Trip to Southern New Mexico, El Paso, and Dallas, Texas in October and November 2019

The Court awards some of the travel expenses that Plaintiffs claim for Mr.

Phillips' trip to Las Cruces, El Paso, and Dallas, Texas in October and November 2019 to

interview potential witnesses about American Linen's dry-cleaning activities and PCE

use.  Like Ms. Ferrell's September 2019 trip, expenses claimed for FedEx and airfare to

El Paso are not awardable because Plaintiffs incurred them solely due to hiring out-of-

market counsel.  Relatedly, the Court does not award the expense claimed for airfare to

Dallas since the hours claimed for Mr. Phillips' work during this trip all occurred in Las

Cruces, other parts of Southern New Mexico, or El Paso.  *See doc. 308-2* at 15-17

(claiming hours for worked performed by Mr. Phillips while traveling in October and

November 2019 to interview witnesses in Las Cruces; Anthony, New Mexico; and El

Paso).

Turning to the issues of lodging and meals, the Court does not award the costs of

hotel reservations in an unspecified location expensed on October 10, 2019, *see id.* at 39,

since it cannot determine, based on the information before it, whether the lodging was

---

[10] Unlike for expenses arising from other trips to Las Cruces, the Court does not reduce any of the expenses awarded for the September 2019 trip on account of causation because Plaintiffs only conducted archival research on this trip and American Linen's failure to supplement was the but-for cost of the entirety of the archival research portion of Plaintiffs' investigation.

for the Dallas portion of the trip for which the Court is not awarding expenses.  Nor

does the Court award the cost for a hotel room in El Paso on October 28, 2019—the day

of Mr. Phillips' travel to the area—since Plaintiffs accrued it solely because Mr. Phillips

is an out-of-market attorney who needed to travel to the area the day before conducting

witness interviews and other tasks related to Plaintiffs' investigation of American

Linen.  As for hotel rooms and meals in Las Cruces from October 29, 2019, through

November 10, 2019,[11] *see id.*, the Court awards the meal and hotel-specific expenses at

sixty-two and a half percent reduction—fifty percent to account for its finding that

American Linen's failure to supplement is a but-for cause of only half of Plaintiffs'

witness investigation and twenty-five percent of the remaining fifty percent to account

for Plaintiffs not claiming hours for tasks performed by Mr. Phillips after November 8,

2019 that necessitated him spending the nights of November 8-10, 2019, in Las Cruces,

*see id.* at 16-17.  Plaintiffs also claim a block expense on November 25, 2019, for hotel

rooms, baggage fees, rental car, and gasoline.  *See id.* at 39.  This expenditure contains

expenses incurred solely because Mr. Phillips is an out-of-market counsel (baggage fees

and rental car) as well as expenses that would have been incurred even if Mr. Phillips

were a local attorney (hotel rooms and gasoline).  Because the Court has no way to

---

[11] Plaintiffs have not provided specific dates for Mr. Phillips' trip to Las Cruces, El Paso, and Dallas in
October and November 2019. Based on the limited record before it, the Court finds that Mr. Phillips spent
the nights of October 29, 2019, through November 10, 2019, in Las Cruces. *See doc. 308-2* at 14, 39
(claiming hours for tasks Mr. Phillips performed in Las Cruces on October 29, 2019 and travel expenses
for Mr. Phillips in Las Cruces from October 30, 2019, to November 11, 2019).

segregate the latter form the former, the Court does not award any portion of the block expense.

e.   Mr. Phillips Investigatory Trip to Las Cruces in March 2020

The Court awards a reduced amount for the travel expenses claimed by Plaintiffs for Mr. Phillips' March 2020 trip to interview potential witnesses in Las Cruces about American Linen's dry-cleaning activities and PCE use.  Unlike the October and November 2019 trip, Mr. Phillips traveled to Las Cruces in March 2020 by car as part of an investigatory trip to New Mexico and Texas.  The Court, therefore, considers the mileage Plaintiffs claims for traveling to Las Cruces akin to the mileage that a New Mexico attorney based elsewhere in the state would charge a client to travel to Las Cruces and so does not find that Plaintiffs incurred any portion of this expense solely because they retained out-of-market counsel.  The Court also finds that Plaintiffs did not incur any of the meals and lodging that Mr. Phillips expensed on this trip solely because he is an out-of-market counsel, since the meals and hotel rooms were for days that Mr. Phillips spent on the witness investigation, rather than traveling to the area to conduct that investigation.  The Court, though, reduces each expense awarded for this trip by fifty percent to account only half of the witness investigation arising from American Linen's failure to supplement.

> f. <u>Ms. Ferrell's Trip to Las Cruces in August 2020 for Mr. Castillo's Deposition</u>

Similar to Ms. Ferrell's 2019 trip to Las Cruces for American Linen's deposition, many expenses claimed for Ms. Ferrell's August 2020 trip to Las Cruces for Mr. Castillo's deposition are not awardable. Were Ms. Ferrell from the area, she would have commuted to and from the deposition in a single day and only expensed gas and a midday meal. She would not have expensed airfare, a one-night hotel stay, or morning and evening meals. The Court therefore only awards Plaintiffs the gas for Ms. Ferrell's rental car and one third of the costs of Ms. Ferrell's meals on the day of the deposition. Though, it reduces this award by fifty percent to account for only half of Mr. Castillo's deposition arising from American Linen's failure to supplement. No other expenses for this trip are awarded.

* * *

Based on the above, the Court awards Plaintiffs $3,294.15 in expenses arising from their Rule 30(b)(6) deposition and investigation of American Linen, broken down as follows:

| Claimed Expense | Date | Description | Reduction | Awarded Expense |
|---|---|---|---|---|
| $27.31 | 4/1/2019 | Ms. Ferrell's Meals (American Linen Deposition) | 66.6667% | $9.10 |
| $424.76 | 4/2/2019 | American Linen Deposition Video Recording | 0 | $424.76 |
| $223.07 | 4/3/2019 | American Linen Deposition Scanning | 0 | $223.07 |

| | | | | |
|---|---|---|---|---|
| $1,017.29 | 4/10/2019 | American Linen Deposition Court Recorder | 0 | $1,017.29 |
| $29.14 | 9/10/2019 - 9/12/2019 | Ms. Wightman's Meals (Sept. 2019 Investigatory Trip) | 0% | $29.14 |
| $28.67 | 9/10/2019 - 9/12/2019 | Ms. Hammitt's Meals (Sept. 2019 Investigatory Trip) | 0% | $28.67 |
| $1.59 | 9/10/2019 - 9/12/2019 | Ms. Goodrich's Meals (Sept. 2019 Investigatory Trip) | 0% | $1.59 |
| $5.50 | 9/11/2019 | Gas for Rental Car (Sept. 2019 Investigatory Trip) | 0% | $5.50 |
| $329.96 | 9/10/2019 - 9/12/2019 | Ms. Goodrich's, Ms. Wightman's, & Ms. Hammitt's Lodging (Sept. 2019 Investigatory Trip) | 50% | $164.98 |
| $9.81 | 9/11/2019 | NMSU Archive Fee (Sept. 2019 Investigatory Trip) | 0 | $9.81 |
| $10.50 | 9/12/2019 | NMSU Archive Fee (Sept. 2019 Investigatory Trip) | 0 | $10.50 |
| $463.23 | 10/9/2019, 11/3/2019, 11/4/2019, 11/10/2019 | Mr. Phillips Lodging (Oct.-Nov. 2019 Investigatory Trip) | 62.50% | $173.71 |
| $152.44 | 11/25/2019 | Mr. Phillips Meals (Oct.-Nov. 2019 Investigatory Trip) | 62.50% | $57.17 |
| $679.69 | 3/2/2020, 3/4/2020, 3/5/2020, 3/6/2020, 3/9/2020 | Mr. Phillips Lodging (Mar. 2020 Investigatory Trip) | 50% | $339.85 |
| $10.63 | 3/5/2020, 3/8/2020 | M. Phillips Meals (Mar. 2020 Investigatory Trip) | 50% | $5.31 |
| $662.98 | 3/11/2020 | Mr. Phillips Mileage (Mar. 2020 Investigatory Trip) | 50% | $331.49 |
| $51.12 | 8/21/2020 | Ms. Ferrell's Meals (Mr. Castillo Deposition) | 83.3333% | $8.52 |
| $16.96 | 8/21/2020 | Gas for Rental Car (Mr. Castillo Deposition) | 50% | $8.48 |
| $57.71 | 8/5/2020 | Mr. Castillo Depo. Witness Fee | 50% | $28.86 |
| $125.00 | 8/11/2020 | Mr. Castillo Depo. Process Server | 50% | $62.50 |
| $538.02 | 8/26/2020 | Mr. Castillo Depo. Recorder | 50% | $269.01 |

48

| | | | | | |
|---|---|---|---|---|---|
| $169.69 | 8/19/2020 | Mr. Castillo Depo. Conference Room Rental | | 50% | $84.85 |
| | | | **Total:** | | **$3,294.15** |

### 4. *American Linen's Ability to Pay*

American Linen asks the Court to factor its inability to pay the sum claimed by

Plaintiffs without obtaining a loan into any expense award.  *Doc. 316* at 4 & n.3 (citing

*doc. 316-1*).  "[A]bility to pay must … be considered, not because it affects the

egregiousness of the violation, but because the purpose of monetary sanctions is to

deter attorney and litigant misconduct."  *White v. Gen. Motors Corp.*, 908 F.2d 675, 685

(10th Cir. 1990); *see also Pipeline Prods., Inc. v. Madison Cos.*, Case No. 15-4890-KHV, 2019

WL 2011377, at *3 (D. Kan. May 7, 2019) ("While *White* involved sanctions under Rule

11, its principles apply equally to sanctions under other rules." (ellipsis and citation

omitted)).  Nonetheless, "inability to pay should be treated like an affirmative defense,

with the burden upon the parties being sanctioned to come forward with evidence of

their financial status."  *Dodd Ins. Servs., Inc. v. Royal Ins. Co. of Am.*, 935 F.2d 1152, 1160

(10th Cir. 1991) (internal quotation marks and citation omitted).  The "bald assertion

that [a party is] on the verge of financial collapse is … insufficient to establish an

inability to pay."  *Id.*

Michael Lutz, American Linen's president, asserts that

The only way that American Linen could possibly pay a sanction in the amount
sought by Plaintiffs would be to obtain a loan subject to interest at the market

> rate.  Due to American Linen's current financial state, it is unclear that American
> Linen could obtain a loan in that amount at this time, or what the terms of such a
> loan would be. [And] [a]ssuming that American Linen could get a loan …,
> American Linen would have to pay back the loan according to its terms, which
> would make the cost of the loan considerably more than the amount of the
> sanction over the life of the loan.

*doc. 316-1* at ¶¶ 8–9.  To the extent that these concerns remain for a sanction award that

is approximately one third of the amount sought by Plaintiffs, Mr. Lutz's conclusory

assertions do not bear the burden of establishing American Linen's inability to pay.  *See*

*White*, 908 F.2d at 685 (holding that affidavits claiming that sanctioned entities "would

be forced into bankruptcy if the court imposed [the] requested attorney's fees" were

insufficient to establish an inability to pay).  Therefore, the Court has not considered

American Linen's ability to pay a sanctions award in deciding that award's sum.

### B.  PROPORTIONALITY

American Linen also attempts to relitigate whether its failure to supplement was

substantially justified based on its investigation of its historical operations, its

understanding of these operations, and its belief that it had complied with its discovery

obligations.  *See doc. 316* at 3.  The Court found otherwise when it sanctioned American

Linen for not timely supplementing its disclosures and discovery responses pursuant to

Federal Rule of Civil Procedure 37(c).  *See doc. 304* at 59–62.  American Linen filed

objections to this finding, *see doc. 315* at 18–22 & n.4, which the Court overruled, *see doc.*

*348* at 10–14.  The Court sees no reason to revisit the issue.

## IV.    CONCLUSION

For the reasons above, the Court AWARDS Plaintiffs reasonable expenses and fees in the sum of $79,491.41.  American Linen is HEREBY ORDERED to tender this sum to Plaintiffs in full **within forty-five (45) days of this Order.  If a party files objections or otherwise appeals this order, this deadline will be suspended in favor of one set in the Order resolving the objections/appeal.**

**IT IS SO ORDERED.**

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE