# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**CITY OF LAS CRUCES AND DONA ANA COUNTY,**

   **Plaintiff,**

**vs.**             **CV No. 17 -0809 JCH**

**THE LOFTS AT ALAMEDA, LLC;
AMERICAN LINEN SUPPLY OF NEW
MEXICO, INC.; RAWSON LEASING
LIMITED LIABILITY CO.; and
CHISHOLM'S-VILLAGE PLAZA L.L.C.,**

   **Defendants.**

## MEMORANDUM OPINION AND ORDER

This case is before the Court on *Defendant American Linen Supply of New Mexico, Inc.'s Motion to Dismiss Plaintiffs' Second Amended Complaint* [Doc. 317]. The issue is whether Plaintiffs have failed to state a claim under Rule 12(b)(6) against Defendant American Linen Supply of New Mexico, Inc. ("American Linen"). Plaintiffs have filed a response [Doc. 323] and American Linen has submitted a reply brief. [Doc. 331]. After considering the arguments of counsel and the law, the Court concludes that the motion to dismiss should be denied.

## FACTUAL ALLEGATIONS

In their Second Amended Complaint [Doc. 306] ("the complaint"), Plaintiffs—both local government entities—allege that all the Defendants, including American Linen, have released hazardous substances into the soil and groundwater in or near Las Cruces, New Mexico, and that the release of these substances has contributed to a plume of contaminated groundwater

approximately 1.8 miles long and .5 miles wide known as the Griggs & Walnut Ground Water Plume ("the Site"). Plaintiffs, who have spent millions of dollars investigating and remediating the pollution, and who will continue to incur costs into the future for the installation and maintenance of an appropriate water treatment system, seek both a declaratory judgment against and a money judgment from the Defendants, including American Linen, for their past, present, and future costs in responding to the hazards at the Site.

Plaintiffs allege that starting in approximately 1938, dry cleaning operators under various names owned and operated dry cleaning facilities on both N. Main St. and N. Church St. in Las Cruces ("the facilities"), with American Linen owning and/or operating the facilities since 1949. Plaintiffs allege that according to records of the City of Las Cruces, American Linen possessed dry cleaning equipment in the 1970s that used a hazardous substance known as perchloroethylene, also known as "perc," or "PCE." According to the Second Amended Complaint, "[f]or up to 80 years of dry-cleaning operations at these Facilities, hazardous substances, including PCE, were used and released to the soil and groundwater at and to the Site." Doc. 306 at ¶ 23. The Plaintiffs further allege:

> [D]uring at least the 1970s and 1980s, and potentially for many years before, American Linen instructed its employees to dispose of PCE-laden dry cleaning waste, including sludge, filter material, and still bottoms[1], into a dumpster outside the Facilities as part of its waste-handling operations. This PCE waste disposal resulted in PCE migrating into groundwater and contributed to the contamination of the Site.

---

[1] Unsure of the meaning of the phrase "still bottoms," the Court found the following generic definition online. During the solvent recovery process, solvents are separated from contaminants using distillation. Still bottoms are the residual waste material from the solvent recovery processes and are usually collected in 55-gallon drums. *See* https://www.cleanplanetchemical.com/is-your-solvent-waste-wasting-your-money/

Doc. 306 at ¶ 25. Plaintiffs allege that PCE has been detected in the soil at American Linen's facilities. *Id*. at ¶¶ 33, 36.

In their complaint, Plaintiffs also allege that American Linen was responsible for the dumping of hazardous PCE at a second location, the Las Cruces Flood Control Dam ("the Dam"), located about 3.2 miles east of the facilities:

> [D]uring the 1970s and 1980s, American Linen arranged for a local pumper truck hauler, Jesus Villanueva, to remove PCE dry cleaning waste from its Facilities. American Linen's PCE waste was dumped and released to bare soil near the Las Cruces Flood Control Dam ("Dam"), located approximately 3.2 miles east of the American Linen Facilities, where it migrated to groundwater and contributed to contamination of the Site.

*Id*. at ¶ 24. Plaintiffs further assert:

> On January 22, 2010, [the New Mexico Environment Department ("NMED")] received a citizen's complaint from a former employee, Victor Jasso[2], reporting that large amounts of PCE dry cleaning waste from American Linen's Facilities had been dumped near the Dam.
> Mr. Jasso further alleged that American Linen arranged for a local septage hauler to remove PCE dry cleaning waste spilled at its Facilities. He stated that this PCE waste was then dumped from the open truck to bare soil near the Dam.
> NMED investigated Mr. Jasso's complaint and found PCE in soil vapor at the indicated areas near the Dam.
> The PCE that was dumped near the Dam migrated to groundwater….

---

[2] As a general rule, when a party presents matters outside of the pleadings for consideration, the court must either exclude that evidence or convert the motion to one for summary judgment. *Alexander v. Oklahoma*, 382 F.3d 1206, 1214 (10th Cir. 2004). However, American Linen argues that because Plaintiffs referenced Mr. Jasso's deposition testimony in their Second Amended Complaint, the Court can and should consider other testimony from his deposition without converting their motion to dismiss to a motion for summary judgment. *See* Doc. 317 at 8. Plaintiffs do not object to this procedure, and in fact both parties have attached portions of Mr. Jasso's deposition testimony to their respective briefs. Doc. 317-1 and Doc. 323-1. The Tenth Circuit has held that a district court may consider documents attached to or referenced in the complaint if they "are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Jacobsen v. Deseret Book Co*., 287 F.3d 936, 941 (10th Cir. 2002). Here, because both parties have invited the Court to consider Mr. Jasso's deposition testimony in ruling on the Rule 12(b)(6) motion, the Court will do so without converting it to one for summary judgment.

Modeling conducted in July 2020 shows that American Linen's disposal of PCE at the Dam is a major cause of future response costs at the Site.

*Id*. at ¶ 41-45.

In his deposition, Mr. Jasso testified that the perc used by American Linen had an "obnoxious smell," and that being around it made you "high all the time, kind of be, you know, in another world." Doc. 323-1 at depo. pp. 25, 37. He testified that when you touched the perc, it dried your skin and turned it white. *Id*. at depo. p. 36. In addition, Jasso stated that when they cleaned the dry-cleaning equipment coils, they were left with sludge that he knew contained perc based on both the smell and the way it affected his skin when he touched it. *Id*.

Finally, Plaintiffs allege that "American Linen, by its own action, contract, agreement, or otherwise, arranged for the disposal of hazardous substances, including PCE, at and near its Facilities and at other locations, such as at and near the Dam, within the meaning of 42 U.S.C. § 9607(a)(3)." *Id.* at ¶ 60. Plaintiffs allege that NMED investigated Mr. Jasso's complaint and found PCE in soil vapor at the area near the Dam described by Jasso. *Id*. at ¶ 43. According to the complaint, the PCE from American Linen's facilities that was dumped near the Dam not only migrated to groundwater and has contributed, and is still contributing, to the contamination at the Site, but also is a major cause of future response costs. *Id*. at ¶ 44-45.

Plaintiffs assert three causes of action against American Linen: cost recovery under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. §§ 9601 et seq., contribution under CERCLA, and a request for declaratory judgment holding American Linen liable "for past and future costs necessary to respond to and abate the release or threated release of hazardous substances at or from the Site."

4

## LEGAL STANDARD

When the Court reviews a Rule 12(b)(6) motion to dismiss for failure to state a claim, "all well-pleaded factual allegations in the complaint are accepted as true and viewed in the light most favorable to the nonmoving party." *Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006) (quotation marks omitted). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.' " *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

## DISCUSSION

### I.     Overview of CERCLA

In 1980, Congress enacted CERCLA in response to "the serious environmental and health risks posed by industrial pollution." *United States v. Bestfoods*, 524 U.S. 51, 55 (1998). CERCLA states that "any person may commence a civil action on his own behalf ... against any person (including the United States and any other governmental instrumentality or agency, to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of any [applicable] standard, regulation, condition, requirement, or order...." 42 U.S.C. § 9659(a)(1). CERCLA provides a private right of action under two specific provisions, Section 107 and Section 113. Section 113(f)(1) & (2) provides private litigants the right to seek contribution, and Section 107(a) allows them to seek cost recovery. *Id*.; 42 U.S.C. §§ 9607(a), 9613(f)(1) & (2). These

provisions complement each other and offer distinct rights "to persons in different procedural circumstances." *Consol. Edison Co. of N.Y. v. UGI Utils., Inc*., 423 F.3d 90, 99 (2d Cir. 2005).

Under CERCLA, there are four potentially responsible parties that may be held liable under Sections 107 and 113. Two of these include the owner and operator of a facility, or any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of. 42 U.S.C. § 9607(a) and (b). With respect to Plaintiff's owner/operator claim, American Linen argues that Plaintiffs have failed to adequately allege a plausible theory of migration of PCE from its Facility to the Site. American Linen also argues that Plaintiffs have failed to state a claim against it under the third category of liability reserved for "arrangers." An arranger is a person or entity who by contract or agreement "arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances." 42 U.S.C. § 9607(a)(3). Arranger liability ensures that owners of hazardous substances may not free themselves from liability by selling or otherwise transferring a hazardous substance to another party for the purpose of disposal. *See Burlington Northern and Santa Fe Ry. Co. v. Unites States*, 556 U.S. 599, 609-10 (2009). Plaintiffs' arranger claim relates to their allegations that American Linen had an agreement with Jesus Villanueva to remove dry-cleaning waste containing PCE from its facility and then dispose of it, which he did by dumping it at the Dam.

II.      **American Linen's Arguments for Dismissal**

      A.      <u>**Failure to Plead Required Knowledge As an Arranger**</u>

              1.      **Knowledge that PCE Was Hazardous**

Arranger liability ensures that owners of hazardous substances cannot escape liability by transferring a hazardous substance to another party for the purpose of disposal. *See Burlington N.*, 556 U.S. at 609-10. American Linen argues that the Court should dismiss claims brought against it as an arranger "because Plaintiffs cannot prove that American Linen knew or understood wastewater that might contain PCE to be a hazardous substance at the time of the alleged arrangement." [Doc. 317 at 3]. To begin with, it is not Plaintiffs' burden to *prove* anything at this stage of the proceedings; rather, a Rule 12(b)(6) motion merely tests the sufficiency of the allegations in the complaint. Therefore, the question before the Court is whether the allegations of the Second Amended Complaint are sufficient to assert an arranger claim under CERCLA.

As described above, Plaintiffs allege that starting around 1938 American Linen released dry-cleaning waste containing PCE to the soil and groundwater at and to the Site. Doc. 306 at ¶ 23. Plaintiffs further allege that in the 1970s and 1980s, American Linen arranged for a pumper truck hauler to remove PCE waste from its facilities, and that the waste was released to bare soil near the Las Cruces Flood Control Dam, where it then migrated to groundwater. *Id.* at ¶ 24. Finally, they allege that "during at least the 1970s and 1980s, and potentially for many years before," American Linen had instructed its employees to dispose of PCE dry-cleaning waste in a dumpster outside its facilities, causing PCE migration into groundwater and contributing to contamination of the Site. *Id.* at ¶ 25. Plaintiffs allege that in 2010, NMED received a citizen's complaint from a former employee of American Linen reporting that large amounts of PCE from American Linen's facilities had been dumped near the Dam, including some transported by a local septage hauler.

7

Doc. 306 at ¶¶ 41-42. The Second Amended Complaint does not allege a time frame during which the dumping occurred, nor does it contain express allegations that American Linen had actual knowledge that its dry-cleaning waste contained a hazardous substance at the time it released the waste or arranged for someone to take it away. American Linen argues that the arranger claim should be dismissed because Plaintiffs have failed to allege such knowledge. The Plaintiffs argue that allegations of intent are unnecessary because CERCLA is a strict liability statute.

Few courts have addressed the issue presented by the allegations in this case: whether an arranger defendant must know that the material it disposed of is hazardous. Understanding arranger liability under CERCLA begins with *Burlington Northern and Santa Fe Ry. Co. v. United States*, 556 U.S. 599 (2009). The Supreme Court did not reach the question presented here, but it did highlight the importance of the intent of an arranger. In that case the arranger defendant, Shell Oil Company, sold useful products containing hazardous substances to a distributor, which then allowed the chemicals to seep into the soil. *Id*. at 602-04. After the distributor went out of business, the plaintiffs sued Shell Oil for arranger liability under CERCLA, asserting that Shell was liable because it knew that minor, accidental spills of a hazardous chemical occurred during its transfer from the common carrier to the distributor's storage tanks after the product had come under the distributor's stewardship. The *Burlington Northern* Court disagreed, concluding that Shell was not liable as an arranger because it did not intend that "at least a portion of the product be disposed of during the transfer process," but rather intended to sell this distributor "an unused, useful product." *Id*. at 612. It held that Shell's "mere knowledge that spills and leaks continued to occur [was] insufficient grounds for concluding that Shell 'arranged for' the disposal of [the products] within the meaning of § 9607(a)(3)." *Id*. at 613.

The *Burlington Northern* court reasoned that because CERCLA does not specifically define what it means to "arrang[e] for" disposal of a hazardous substance, the phrase should be given its ordinary meaning. *Id*. at 610-11. The Supreme Court stated that arranger liability undoubtedly attaches under § 9607(a)(3) when an entity "enter[s] into a transaction for the sole purpose of discarding a used and no longer useful hazardous substance." *Burlington Northern*, 556 U.S. at 610. On the other end of the spectrum, "an entity [can] not be held liable as an arranger merely for selling a new and useful product[3] if the purchaser of that product later, and unbeknownst to the seller, disposed of the product in a way that led to contamination." *Id*. However, the Court noted that things become murky when the arrangements "fall between these two extremes," such as when "the seller has some knowledge of the buyers' planned disposal," or the seller's "motives for the 'sale' of a hazardous substance are less than clear." *Id*. In these circumstances, "the determination whether an entity is an arranger requires a fact-intensive inquiry that looks beyond the parties' characterization of the transaction as a 'disposal' or a 'sale' and seeks to discern whether the arrangement was one Congress intended to fall within the scope of CERCLA's strict-liability provisions." *Id*. In deciding what types of arrangements fall into this category, the Supreme Court concluded that arranger liability under CERCLA implicitly creates an exception to the statute's strict liability provisions. *See id*. at 611. Specifically, the Court held that "the word 'arrange' [in the statute] implies action directed to a specific purpose," and, consequently, "an entity may qualify as an arranger under § 9607(a)(3) when it takes intentional steps to dispose of a hazardous substance." *Id*. The question of whether an arranger must know that the substance in question is hazardous was not before the Court, and therefore the Court did not address it.

---

[3] Neither party is arguing that American Linen sold its dry-cleaning waste as a new or useful product. *See* Doc. 317 at 10. Thus, this appears to be purely a disposal case.

Lower courts have struggled to apply *Burlington Northern* in a variety of contexts. In *Appleton Papers, Inc. v. George A. Whiting Paper Co.*, 2012 WL 2704920 (E.D. Wis. July 3, 2012) (unpublished), the Court was presented with an arranger claim against a paper company involved in recycling "broke," the trim, cuttings, and other waste created during the process of making and coating paper. The "broke" turned out to contain hazardous polychlorinated biphenyls ("PCBs"), but at the time, PCBs were not recognized as posing an environmental hazard. The paper company sold the broke to a recycling mill whose conversion of the broke discharged PCBs into a river, which resulted in extensive environmental contamination. After a bench trial, the court concluded that the company that discarded the broke was not liable as an arranger in part because "it lacked knowledge that broke, a byproduct of its manufacturing process, could be hazardous." *Id.* at *12. The *Appleton Papers* court also cited "the underlying purpose of arranger liability under CERCLA," which it defined as "to deter and, if necessary, to sanction parties seeking to evade liability by 'contracting away' responsibility." *Id.* at 11 (quoting *United States v. Gen. Elec. Co.*, 670 F.3d 377, 382 (1st Cir. 2012)). It noted that "it is difficult to find that the disposer was trying to evade liability where "the dangerousness of the product is unknown to the would-be arranger." *Id.* Imposing liability on those with no knowledge, the *Appleton Papers* court reasoned, would not result in deterrence because "people who do not even suspect that their product is harmful are not in a position to be deterred." *Id.* The court reasoned that it is "doubtful that a defendant can *ever* be found to be an arranger if he did not know the substance in question is hazardous." *Id.* at 11 (emphasis in original). Because the arranger in *Appleton Papers* was disposing of paper scraps that it did not know and would not suspect to be hazardous, the court concluded it was not liable as an arranger.

Importantly, the *Appleton Papers* court noted that factual context is key. For example, an arranger cannot turn a blind eye to the disposal of substances that it *should* know are hazardous. "Clearly liability may attach if the arranger did not know about the *specifics* of the hazard in question (e.g., that PCBs are harmful) if, for example, the product is obviously or inherently dangerous, such as large drums of oil or other chemicals." *Id.* (emphasis in original). In *Appleton Papers*, the arranger was ridding itself of "seemingly harmless bales of paper scraps," *id.*, that "few people would suspect . . . could be a hazardous substance." *Id.* at 10. The court suggested that the outcome would have been different if the arranger should have known the substance was hazard just by its very nature—i.e., drums of chemicals. As the *Appleton Papers* court stated:

> [W]hen the *Burlington Northern* court notes that "if an entity were to enter into a transaction for the sole purpose of discarding a used and no longer useful hazardous substance," it is implicit or assumed in such a statement that the entity *knew* or at least suspected that the substance was harmful.

*Id.* at 11 (quoting *Burlington Northern*, 556 U.S. at 610) (emphasis in original). Under *Appleton Papers*, implicit knowledge based on the nature of the substance is enough to support arranger liability.

Five years later in *Town of Islip v. Datre*, 245 F. Supp. 3d 397 (E.D.N.Y. 2017), the court looked at both *Appleton Papers* and *Burlington Northern*, among other decisions, in assessing whether to dismiss claims against an alleged arranger when the complaint alleged no facts to support an inference that the arranger knew the substance in question was hazardous. In *Islip*, thousands of tons of construction and demolition debris, contaminated fill materials, brick, metal, and other debris were dumped in a public park. *Id.* at 405-06. The complaint alleged that the arranger defendants "had knowledge of the disposal of the materials they arranged to transport," but it did not allege that they knew the material contained hazardous substances. *Id.* at 424-25.

Further, the complaint lacked allegations that would "give rise to an inference that they knew, *or should have known*, of the material's hazardous nature." *Id*. at 425 (emphasis added). The *Islip* court concluded that in the absence of facts supporting at least the inference of knowledge, the claims for arranger liability should be dismissed. *Id*. at 425.

In reaching that conclusion, the court relied on three things. First, it pointed out that in *Burlington Northern*, the Court stated that liability attaches when an arranger takes "intentional steps to dispose of a hazardous substance." *Id*. at 423 (quoting *Burlington Northern*, 556 U.S. at 611). The *Islip* court argued that the Supreme Court could have omitted the term "hazardous" from its holding if it believed that knowledge of the hazardous nature of the substance were irrelevant. *Id*. It then pointed to cases that have relied on *Burlington Northern* to describe the requisite intent. *Id*. (citing, *inter alia*, *United States v. Gen. Elec. Co*., 670 F.3d 377, 383 (1st Cir. 2012) ("[F]ollowing *Burlington Northern*, a discernible element of intent to dispose of a hazardous substance is necessary for an entity to be sanctioned pursuant to § 9607(a)(3).") and *Team Enters. v. W. Inv. Real Estate Trust*, 647 F.3d 901, 908 (9th Cir. 2011) ("[A]ctions taken with the intent to dispose of a hazardous substance are sufficient for arranger liability.")). Second, the *Islip* court reasoned that "requiring knowledge of the substance's hazardous nature comports with CERCLA's purpose of preventing responsible parties from 'contracting away' their liability and deterring them from attempting to do so." *Id*. Finally, the *Islip* court concluded that the knowledge requirement is consistent with the language of CERCLA, which explicitly attaches arranger liability to a person who arranges for disposal of hazardous substances. *Id*. at 424. The court agreed with *Burlington Northern* that the word "arrange" implies an action directed to a specific purpose—in this case, disposal of not just any substance, but of a hazardous substance. *Id*. Thus, the *Islip* court held that "for arranger liability to apply, a plaintiff must establish that the defendant who arranged for the

disposal of material knew, *or should have known*, that the material contained hazardous substances." *Id*. (emphasis added).[4]

This Court concurs with *Appleton Papers* and *Town of Islip*—both cases upon which American Linen relies—that one cannot be liable an arranger unless one knew or should have known that the material for which they arranged disposal contained a hazardous substance. This standard acknowledges the need for the requisite state of mind as explained above, yet does not allow for polluters to avoid liability by simply claiming ignorance. If the polluter should have known that the materials contained a hazardous substance, it can still be held liable. In this case, the arranger claim focuses on the assertion that American Linen arranged for others to move dry cleaning waste from its facility to the Dam. Plaintiffs' Second Amended Complaint contains no allegations from which one could reasonably infer that American Linen had actual knowledge that the dry-cleaning waste contained a hazardous substance. That is not the end of the discussion, however, because the question remains as to whether one could infer from the allegations that American Linen *should have known* that the dry-cleaning waste it hired Jesus Villanueva to move from its facilities and dump at the Dam over a period of two decades contained a hazardous substance.

The Court concludes that based on the allegations of the Second Amended Complaint (including the Jasso deposition to which it refers), one can reasonably infer that American Linen should have known that its dry-cleaning waste contained a hazardous substance. Plaintiffs allege that during the 1970s and 1980s, American Linen disposed of dry-cleaning waste—including

---

[4] Some district courts have adopted this standard for arranger liability. *See, e.g., Borough of Edgewater v. Waterside Construction, LLC*, 2021 WL 2680148 at *8 (D.N.J. Jun. 30, 2021) (unpublished).

sludge, filter material, and still bottoms (described at footnote 1, *infra*)—not only at its own facility, but also arranged for Jesus Villanueva to dispose of dry-cleaning waste at the Dam using a pumper truck. Thus, Plaintiffs allege that American Linen was arranging for disposal of large amounts of liquid chemicals. Furthermore, these chemicals had an "obnoxious odor" that not only made American Linen employees feel "high" but also dried out their skin and turned it white when they touched it. These are not characteristics of a harmless substance. As noted in *Appleton Papers*, items "such as large drums of oil or other chemicals," are "obviously or inherently dangerous" and those who arrange for their disposal cannot claim lack of knowledge. *Appleton Papers,* 2012 WL 2704920 at *11 (E.D. Wis. July 3, 2012) (unpublished). In other words, the dry-cleaning waste in this case is not like the seemingly harmless paper scraps in *Appleton Papers* because Plaintiffs have adequately alleged that American Linen should have known that the still bottoms, sludge and filter material containing "perc" or PCE were hazardous in nature.

American Linen attempts to argue that its dry-cleaning waste was more akin to the construction site waste in *Town of Islip*. That construction waste was purportedly dumped to aid in grading and sodding a soccer field, but upon closer inspection, those constructions materials were found to contain asbestos, pesticides, and heavy metals. However, there were no allegations in *Town of Islip* to support the inference that the defendant should have known that the construction debris contained any hazardous substances. That is not the case here, where the complaint alleges the dumping of apparently strong liquid chemicals.

Thus, Plaintiffs have adequately pled facts from which one can reasonably infer the intent necessary for an arranger claim.

### 2.    Knowledge During the Relevant Time Frame

Next, American Linen argues that it cannot be held liable as an arranger until at least April 4, 1985, because that was the date PCE was designated as a hazardous substance under CERCLA. According to American Linen, it could not have known of the hazard posed by PCE until this official designation was made. American Linen cites no authority that supports the argument that an arranger cannot be held liable for disposal of a hazardous substance until after it has been officially designated as such.

On the other hand, the overwhelming weight of authority holds that as a broadly remedial statute, CERCLA should apply retroactively. Many federal courts have reasoned that Congress clearly indicated its intent that the Act be applied retroactively and that the Act permissibly allocates the burdens of environmental remediation to the parties who created the need for it. *See, e.g., O'Neil v. Picillo*, 883 F.2d 176, 183 n. 12 (1st Cir. 1989) (approving retroactive liability under CERCLA over due process challenge); *United States v. Northeastern Pharm. & Chem. Co.*, 810 F.2d 726, 732-34 (8th Cir. 1986) (affirming district court's conclusion that retroactive application of CERCLA to acts of disposal made before CERCLA's effective date does not violate due process or give rise to a taking of property); *O'Neil v. Picillo*, 682 F. Supp. 706, 729 (D.R.I. 1988), *aff'd*, 883 F.2d 176 (1st Cir. 1989) (holding, without discussion, "that liability for response costs under CERCLA for releases which occurred prior to [December 10,] 1980 [(CERCLA's effective date)] does not offend due process"); *United States v. Shell Oil Co.*, 605 F. Supp. 1064, 1072 (D. Colo. 1985) ("[CERCLA] is by its very nature backward looking. Many of the human acts that have caused the pollution already had taken place before its enactment; physical and chemical processes are at their pernicious work, carrying destructive forces into the future."). This suggests that to be held liable under CERCLA, an arranger need not have actual notice that a substance has officially been designated as hazardous, but only that it knew or should have known that it was hazardous.

15

If it were otherwise, no arranger could ever be held liable for contamination that occurred prior to such designation, and there is no authority to suggest that Congress desired that result. As discussed herein, there are adequate allegations to support the inference that American Linen should have known that its dry-cleaning waste contained a hazardous substance.

### 3.   Futility of Amendment

American Linen argues that due to Plaintiffs' reliance on the testimony of Victor Jasso, it would be futile to amend their complaint to say that American Linen arranged for disposal of PCE after it was designated as a hazardous substance in April of 1985. However, this argument is moot, as the Court has already concluded that Plaintiffs' current allegations support the inference that American Linen should have known about the hazardous nature of the dry-cleaning waste even before that date.

### 4.   Public Policy Considerations

American Linen contends that dismissal of the arranger claim against it would comport with the purpose of arranger liability. Relying again on *Appleton Papers*, American Linen argues that the purpose of arranger liability is to "deter and, if necessary, to sanction parties seeking to evade liability by 'contracting away' responsibility." Doc 317 at 9 (quoting *Appleton Papers*, 2012 WL 2704920 at *11 (quoting *United States v. Gen. Elec. Co.*, 670 F.3d 377, 382 (1st Cir. 2012))). "People who do not even suspect that their product is harmful are not in a position to be deterred," argues American Linen. Doc. 317 at 9 (quoting *Appleton Papers*, 2012 WL 2704920 at *11). However, based on Plaintiffs' allegations, American Linen certainly should have suspected that it's PCE-laden dry-cleaning waste was harmful. As explained above, the courts in both *Appleton Papers* and *Town of Islip* acknowledged that liability will attach not only if the arranger actually knew of the hazardous nature of the substance, but also if the arranger *should* have had that

knowledge. Logic suggests that the statute was designed to deter parties from "contracting away" responsibility in that situation as well. Given the allegations surrounding the nature of the dry-cleaning waste for which American Linen arranged disposal, it is hard to argue that it should not have known of its hazardous nature. Therefore, the Court concludes denial of American Linen's motion to dismiss is consistent with the policy and purpose of CERCLA.

### B.      Failure to Plead Intent

American Linen argues that Plaintiffs have failed to adequately plead that as an arranger it had the intent to dispose of a hazardous substance.

American Linen's first argument hails back to the discussion above—that Plaintiffs cannot plead that it had intent to dispose of a hazardous substance because American Linen did not know, and could not have known, that PCE was a hazardous substance within the meaning of CERCLA during the relevant time period. To be sure, the Supreme Court has held that "To qualify as an arranger, a party must have entered into an arrangement with the intention that at least a portion of the product be disposed of during the transfer process by one or more of the methods described in § 6903(3)." *Chevron Mining Inc. v. United States*, 863 F.3d 1261, 1280 (10th Cir. 2017) (quoting *Burlington Northern*, 556 U.S. at 612). However, as discussed above, Plaintiffs have adequately pled facts to support the inference that American Linen should have known that PCE was a hazardous substance, and that is enough under *Burlington Northern* and its progeny—particularly those cases cited by American Linen, such as *Appleton Papers* and *Town of Islip*.

Second, American Linen argues that Plaintiffs' allegations regarding its "arrangement" are conclusory. American Linen contends that Plaintiffs' allegation that it "arranged for a local pumper truck hauler, Jesus Villanueva, to remove PCE dry cleaning wastes from its Facilities" is inadequate because it alleges no facts regarding the nature of the arrangement. *See* Doc. 317 at 14.

Again, this argument fails. The Tenth Circuit has stated that for arranger liability to attach, the arranger must arrange for the transport or disposal of the hazardous substances "by contract, agreement or otherwise." *Raytheon Constructors, Inc. v. Asarco Inc*., 368 F.3d 1214, 1219 (10th Cir. 2003).  The Jasso deposition contains allegations that an American Linen supervisor, Manuel Medina, had an understanding with a local pumper truck driver, Jesus Villanueva, to pump the used PCE from American Linen's facility into his tanker truck and haul it away. Doc. 323-1 at depo. p. 50. It was Mr. Medina's practice to inform Mr. Villanueva when his services would be needed and at what time he should arrive at the American Linen facility to remove the used perc. *Id*. at 54-55, 63, 135. Finally, Jasso testified that he witnessed Mr. Villanueva dumping the used PCE, sludge, and water used to rinse out stills near the Dam. *Id*. at 56-58. Further, American Linen concedes that its dirty PCE was not a useful product with the potential to be sold or used for another purpose. Taken together, these allegations are sufficient to support a reasonable inference that American Linen had an agreement with Jesus Villanueva to take used PCE from its facility and dispose of it elsewhere.

C. <u>**Failure to Plead a Plausible Theory of Migration**</u>

American Linen's final argument relates to Plaintiffs' claims against it not as an arranger, but as the owner/operator of the Facilities where it allegedly disposed of hazardous dry-cleaning waste on the premises. American Linen contends that Plaintiffs failed to allege sufficient facts to demonstrate that any PCE released at its facilities caused contamination or increased response costs at the Site approximately one mile away.

1. **Timeliness**

Plaintiffs' first response is that American Linen's Rule 12(b)(6) motion to dismiss the owner/operator claim is untimely. As the rule directs, any motion asserting a 12(b) defense must

be made before filing an answer. Fed. R. Civ. P. 12(b). In this instance, the owner/operator claims against American Linen were present in the previous version of Plaintiffs' complaint [Doc. 79], which they amended only to add the arranger claim. American Linen answered that prior amended complaint, but it did not move to dismiss the owner/operator claims. Thus, Plaintiffs assert that American Linen has lost the right to do so now. American Linen declined to discuss this argument in its reply brief.

This argument presents an interesting procedural question—whether an amended complaint revives a defendant's opportunity to file a motion to dismiss a claim that it has previously answered. The Court can find no Tenth Circuit authority on this issue. However, it appears that many courts have held that once a claim has been pled, the defendant must assert his 12(b)(6) motion; the right to file a motion to dismiss for failure to state a claim is not revived when the claim is pled again in an amended complaint. *See, e.g., Rowley v. McMillan*, 502 F.2d 1326, 1333 (4th Cir. 1974) ("An unasserted defense available at the time of response to an initial pleading may not be asserted when the initial pleading is amended."); *Sears Petroleum & Transport Corp. v. Ice Ban America, Inc*., 217 F.R.D. 305, 307 (N.D.N.Y. 2003) ("While it is true that an amended complaint ordinarily supersedes a prior complaint, and renders it of no legal effect[,][i]t is also true that if the amended complaint also contains new matter, the defendant may bring a second motion under Rule 12 to object to the new allegations only." (citations omitted)); *Wafra Leasing Corp. 1999-A-1 v. Prime Capital Corp.*, 247 F. Supp. 2d 987, 999 (N.D. Ill.2002); *Fed. Agr. Mortg. Corp. v. It's A Jungle Out There, Inc*., 2005 WL 3325051, at \*5 (N.D. Calif. Dec. 7, 2005) (unpublished). *Brooks v. Caswell*, 2016 WL 866303 at \*2-3 (D. Ore. Mar. 2, 2016) (unpublished). *See also* Wright & Miller, FEDERAL PRACTICE & PROCEDURE, § 1388 (3d ed. 2004) ("The filing of an amended complaint will not revive the right to present by motion defenses that were available

but were not asserted in timely fashion prior to the amendment of the pleading; conversely, a Rule 12 defense that becomes available because of new matter in the amended complaint may be asserted by motion.").

In light of the foregoing, the Court agrees that a motion to dismiss the owner/operator claims is untimely. Plaintiffs pled those claims in the First Amended Complaint, and in response American Linen failed to raise its Rule 12(b)(6) defense. Unfortunately for American Linen, the filing of the Second Amended Complaint does not give it a second bite at the apple.

**IT IS THEREFORE ORDERED** that *Defendant American Linen Supply of New Mexico, Inc.'s Motion to Dismiss Plaintiffs' Second Amended Complaint* [Doc. 317] is **DENIED**.

_____
SENIOR UNITED STATES DISTRICT JUDGE