# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

CITY OF LAS CRUCES, *et al.,*

      Plaintiffs/Counterclaim Defendants,

v.                                                                      Civ. No. 17-809 JCH/GBW

THE LOFTS AT ALAMEDA, LLC; AMERICAN LINEN
SUPPLY OF NEW MEXICO, INC.; RAWSON LEASING
LIMITED LIABILITY CO.; and CHISHOLM'S-VILLAGE
PLAZA, LLC,

      Defendants/Counterclaim Plaintiff,

and

AMERICAN LINEN SUPPLY OF NEW MEXICO, INC.

      Crossclaimant,

v.

THE LOFTS AT ALAMEDA, LLC; RAWSON LEASING
LIMITED LIABILITY CO.; and CHISHOLM'S-VILLAGE
PLAZA, LLC,

      Crossclaim-Defendants,

and

AMERICAN LINEN SUPPLY OF NEW MEXICO, INC.

      Third-Party Plaintiff,

v.

ESTATE OF JESUS TERESO VILLANUEVA, SR., deceased,
BERTHA VILLANUEVA, individually and o/b/o ESTATE
OF JESUS TERESO VILLANUEVA, SR., and VICTOR A.
JASSO,

      Third-Party Defendants.

## ORDER DIRECTING DEFENDANT AMERICAN LINEN SUPPLY OF NEW MEXICO, INC. TO PAY ATTORNEY'S FEES AND OTHER REASONABLE EXPENSES

THIS MATTER comes before the Court on the Affidavit of Jessica K. Ferrell in Response to Court Order Granting Plaintiffs' Motion for Protective Order Quashing American Linen's 30(b)(6) Deposition Notices to Jacobs Engineering Group, Inc., Daniel B. Stephens & Associates, Inc., and John Shomaker & Associates, Inc. and Denying American Linen's Motion to Compel Plaintiffs to Designate Witnesses Pursuant to Fed. R. Civ. P. 30(b)(6) and 37(a)(3)(B)(ii).  *See doc. 460.*  Having reviewed the Affidavit, its attached exhibits (*docs. 460-1, 460-2, 460-3*), and Defendant American Linen Supply of New Mexico, Inc.'s ("American Linen") objections (*doc. 465*) and exhibits (*docs. 465-1, 465-2, 465-3, 465-4*) and being fully advised in the premises, the Court AWARDS Plaintiffs $23,980.68 in attorney's fees and other reasonable expenses to bring their Motion for Protective Order Quashing American Linen's 30(b)(6) Deposition Notices to Jacobs Engineering Group, Inc., Daniel B. Stephens & Associates, Inc., and John Shomaker & Associates, Inc. (*doc. 384*) ("Plaintiffs' Motion for Protective Order") and oppose American Linen's Motion to Compel Plaintiffs to Designate Witnesses Pursuant to Fed. R. Civ. P. 30(b)(6) and 37(a)(3)(B)(ii) (*doc. 389*) ("American Linen's Motion to Compel")) (collectively "Cross Motions to Compel and for Protective Order").

## I.    BACKGROUND

Several months ago, the parties filed and briefed Cross Motions to Compel and for Protective Order about the propriety of Rule 30(b)(6) depositions noticed to Plaintiffs' environmental consultants: Jacobs Engineering Group, Inc. ("JEGI"), Daniel

B. Stephens & Associates, Inc. ("DBSA"), and John Shomaker & Associates, Inc. ("JSAI").  *See docs. 384, 389, 401, 408, 413, 416.*  After conducting a hearing on these and five other pending discovery motions, the Court granted Plaintiffs' Motion for Protective Order, denied American Linen's Motion to Compel, and "award[ed] Plaintiffs the reasonable expenses that they incurred to bring their [Motion for Protective Order] and to oppose American Linen's Motion to Compel" pursuant to Federal Rule of Civil Procedure 37(a)(5).  *Doc. 435* at 119-20, 141 ("Protective Order") (concluding that the "deposition notices' untimeliness, the plain violation of Rule 30(b)(6)'s reasonable particularity requirement, and the concomitant undue burden prevent[ed] a finding that American Linen's position was substantially justified or that an award of expenses would be unjust").  Since then, the Court has overruled American Linen's timely objections to its Protective Order, *see doc. 474* at 19, and declined to reconsider its decision to do so, *see doc. 490* at 6.

The Court's Protective Order directed Plaintiffs to "file an affidavit detailing the reasonable expenses, including attorney's fees, that they incurred to bring their Motion for Protective Order … and to oppose American Linen's Motion to Compel."  *Doc. 435* at 143.  The Court extended the deadline for Plaintiffs to file this affidavit to allow them to review its then-forthcoming order about another expense award before filing their affidavit for the instant expense award.  *See doc. 438.*  On December 29, 2021, Plaintiffs timely filed an expense affidavit, claiming $92,668.66 in attorney's fees and other

expenses ($89,508.66 for the former and $3,160.00 for the latter).  *See doc. 460* at 23.  On

January 10, 2022, American Linen timely filed objections to Plaintiffs' affidavit.  *See docs.*

*462, 465.*

## II.   LEGAL STANDARD

Where the Court grants or denies a discovery motion and finds that the losing

party's positions on that motion lack substantial justification, Federal Rule of Civil

Procedure 37(a)(5) requires the Court to order the party who opposed the granted

motion or brought the denied motion (or the attorney advising that party) to pay the

reasonable expenses, including attorney's fees, incurred by the movant in making the

granted motion or the non-movant in opposing the denied motion.  Fed. R. Civ. P.

37(a)(5)(A), (B).  "'[R]easonable' does not necessarily mean actual expenses."  *Thomas v.*

*Capital Sec. Servs., Inc.*, 836 F.2d 866, 879 (5th Cir. 1988).  "A reasonable attorney's fee is

reasonable compensation, in light of all the circumstances, for the time and effort

expended by the attorney for the party, no more and no less."  *Centennial Archaeology,*

*Inc. v. AECOM, Inc.*, 688 F.3d 673, 679 (10th Cir. 2012) (cleaned up).  To determine a

reasonable fee, the Court "must arrive at a 'lodestar' figure by multiplying the hours

[the winning party's] counsel reasonably spent on the litigation by a reasonable hourly

rate."  *Jane L. v. Bangerter*, 61 F.3d 1505, 1509 (10th Cir. 1995).

III.   **ANALYSIS**

Only $23,980.68 of the claimed $92,668.66 in attorney's fees and expenses is

reasonable.  Plaintiffs claim reasonable hourly rates for all members of their legal team

except for Tanya Nesbitt, but the hours they claim are not similarly reasonable.  Some of

the claimed hours were not spent making Plaintiffs' Motion for Protective Order or

opposing American Linen's Motion to Compel, and the total hours claimed for most

activities falling with this scope are exorbitant.

A.  REASONABLENESS OF PLAINTIFFS' CLAIMED RATES

Based on the evidence before the Court, the hourly rates that Plaintiffs claim for

most members of their legal team are reasonable.  "The establishment of hourly rates in

awarding attorneys' fees is within the discretion of the trial judge who is familiar with

the case and the prevailing rates in the area."  *Lucero v. City of Trinidad*, 815 F.2d 1384,

1385 (10th Cir. 1987).[1]  The rate "should reflect rates in effect at the time the fee is being

established by the court, rather than those in effect at the time the services were

performed."  *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983).  "Unless the subject of

the litigation is so unusual or requires such special skills that only an out-of-state

attorney possesses, the fee rates of the local area should be applied even when the

---

[1] *Lucero* and many of the cases to which the Court cites in this award assess the reasonableness of attorney's fees claimed pursuant to 42 U.S.C. § 1988.  The Tenth Circuit has held that this caselaw is applicable to attorney's fees and expenses awarded pursuant to Federal Rule of Civil Procedure 37.  *See Centennial Archeology*, 688 F.3d at 679-80.

lawyers seeking fees are from another area." *Lippoldt v. Cole*, 468 F.3d 1204, 1225 (10th Cir. 2006) (internal quotation marks and citations omitted).  These rates are what "lawyers of reasonably comparable skill, experience, and reputation in the relevant community," *id.* at 1224-25 (internal quotation marks and citation omitted), "practicing in the area in which the litigation occurs would charge for their time," *Ramos*, 713 F.2d at 555.  The Court previously found "no reason to depart from New Mexico rates in this case," *see doc. 454* at 5, and sees no reason to change that finding here.

Plaintiffs, as the fee applicants, bear the burden to produce evidence—in addition to their attorney's own affidavit—that their requested rates align with the local market rate for CERCLA litigation by comparable counsel.  *See Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).  "Evidence 'is typically established through the affidavits of local attorneys who practice in the same field as the attorneys seeking the fees.'"  *Strobel v. Rusch*, No. CIV 18-0656 RB/JFR, 2021 WL 371575, at *2 (D.N.M. Feb. 3, 2021) (quoting *Mosaic Potash Carlsbad, Inc. v. Lintrepid Potash, Inc.*, No. 16-cv-0808 KG/SMV, 2018 WL 2994412, at *3 (D.N.M. June 14, 2018)).  It may also include economic surveys conducted by state bar associations about local rates, *see Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1256 & n.1 (10th Cir. 1998), as well as "the rate charged by the losing counsel," *Sussman v. Patterson*, 108 F.3d 1206, 1212 (10th Cir. 1997).  Ignoring the parties' evidence about prevailing market rates is an abuse of discretion.  *See United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1234-35 (10th Cir. 2000).  "Only if the district court

does not have adequate evidence of prevailing market rates for attorney's fees may it, 'in its discretion, use other relevant factors, including its own knowledge, to establish the rate.'" *Mosaic*, 2018 WL 2994412, at *1 (quoting *Case*, 157 F.3d at 1257, and citing *United Phosphorus*, 205 F.3d at 1234).

The evidence before the Court about the prevailing market rates for CERCLA litigation in New Mexico is threefold: (i) a declaration from Jeffrey J. Wechsler, American Linen's lead counsel and an environmental attorney with twenty years of experience and national recognition "as a leading attorney in the area of environmental law," that $250.00/hour is the market rate for attorneys whose experience, reputation, and skill are comparable to his and that of Mr. Rose (a senior counsel with more than forty-five years of experience and national recognition "as a leading attorney in the area of environmental law"), *see doc. 316-3* at ¶¶ 2-3, 5; (ii) a second declaration from Mr. Wechsler, stating, *inter alia*, that "$360.00 per hour[2] is beyond the prevailing market rate for senior attorneys in New Mexico firms for CERCLA litigation" and reiterating that $250.00/hour is the market rate for him, Mr. Rose, and Ms. Dalrymple (a shareholder with comparable experience but not comparable reputation), *see doc. 465-2* at ¶¶ 2-3, 5-6, 8 (footnote added); and (iii) an excerpt from The Economics of Law Practice in New

---

[2] The Court awarded Ms. Ferrell $360.00/hour in its earlier fee award based on analogies to "recent caselaw about the hourly rates for commercial and complex litigation in New Mexico" since a declaration from Mr. Wechsler was the only "evidence before [it] about the prevailing market rates for CERCLA litigation in New Mexico" and this evidence was "inadequate." *See doc. 454* at 7-8, 10.

Mexico—a study commissioned by the State Bar of New Mexico—stating that $269.00/hour and $271.00/hour were the mean and median standard hourly billing rates respectively for local environmental/water attorneys in 2016, *see doc. 465-3* at 2-3. The record also contains an affidavit from Ms. Ferrell, which like her affidavit in the Court's earlier expense award, *see doc. 308*, provides evidence about the qualifications for Plaintiffs' legal team but no evidence about the prevailing market rate for CERCLA litigation in New Mexico, *see doc. 460* at ¶¶ 5-11, 22-27. Frustratingly, the record again contains no affidavits from neutral environmental law practitioners in New Mexico about this rate.[3]

   This evidence before the Court lacks sufficient adequacy to preclude consideration of other relevant indicia for reasonable market rates. Consistent with its earlier expense award, *see doc. 454* at 7, the Court assigns little persuasive value to declarations about reasonable market rates from declarants involved in the expense dispute that lack corroboration in the record, *cf. Lucero*, 815 F.2d at 1385-86 (affirming a district judge's consideration of evidence outside the record for prevailing market rates where the only evidence in the record was an affidavit from the party claiming

---

[3] The Court acknowledges American Linen's positions that "[t]he environmental bar in New Mexico is small, as is the number of CERCLA cases pending in this state," that much of this "bar is represented in the instant case," that Mr. Wechsler is counsel in *In re Gold King Mine Release in San Juan County*, No. 1:16-cv-00465-WJ-LF, another CERCLA case involving other members of this bar, and that Mr. Louis is local counsel in *Chevron Mining v. United States*, No. 1:13-cv-00328-PJK-JFR, a third CERLA case involving other members of the New Mexico CERCLA bar. *See doc. 465* at 13-14. The entirety of the New Mexico CERCLA bar, however, is not involved in these three cases nor do Plaintiffs have the same conflicts as American Linen in obtaining affidavits from members of this bar involved in those cases but not this one.

attorney's fees).  Here, the New Mexico Bar study undermines, rather than confirms, Mr. Wechsler's statements about the local rate for CERCLA litigators.  The 2016 mean and median rates for environmental/water litigation in New Mexico exceed Mr. Wechsler's opinion about the current rate for members of Plaintiffs' legal team by roughly twenty dollars/hour.  *Compare doc. 465-3* at 3 (stating that the mean and median rates for the environmental/water bar in 2016 were $269.00/hour and $271.00/hour respectively), *with doc. 316* at ¶¶ 2-3, 5 (declaring that $250.00/hour is the local rate for attorneys comparable to Mr. Wechsler and Mr. Rose), *and doc. 465-2* at ¶¶ 3, 5, 8 (same). While it is an imperfect fit given that the adjustment is based on a nationwide, not statewide, inflation rate for legal services, it is also notable that the 2016 mean and median rates equate to approximately $334.81/hour and $337.36/hour in current dollars. *See* U.S. Bureau of Labor Statistics, Databases, Tables & Calculators by Subject: PCU5411--5411--(2016-2022), https://data.bls.gov/cgi-bin/srgate (enter "PCU5411--5411--" into series id(s) window; then click "next"; then select "2016" from the "from" drop-down window under specify year range; then click "retrieve data").  As for the adequacy of the study for determining current market rates, the study's objectivity makes it more probative than Mr. Wechsler's declarations.  But its age and lack of information about rates for varying skill levels, experience, and reputation render the study insufficient to preclude the Court from considering other evidence about the reasonable market rates for the members of Plaintiffs' legal team.

Considering the complexity of this case, both of Mr. Wechsler's declarations, the

New Mexico Bar Study, and other indicia of the New Mexico rate for CERCLA

litigation—particularly recent caselaw about the hourly rates for commercial and

complex litigation in New Mexico—the Court finds that the following are reasonable

hourly rates for Plaintiffs' legal team:

$360/hour for Jessica Ferrell, a partner with sixteen years of experience in

CERCLA and other environmental litigation and national recognition as a top

environmental lawyer in these fields). *See doc. 465-3* at 3 (stating six years ago that the

local environmental/water bar's mean and median rates were $269.00/hour and

$271.00/hour respectively); *cf. Got Prods. LLC v. Zepto LLC*, No. CIV 18-0893 RB/LF, 2020

WL 1288568, at *3 (D.N.M. Mar. 18, 2020) (awarding $375/hour two years ago to a

founding partner with more than twenty years of experience to enforce a settlement

agreement in a commercial case that was not high-end or complex and did not pose

unique legal issues); *Los Alamos Nat'l Bank, N.A. v. Fidelity Bank*, 1:18-cv-00613-KG-JHR,

2019 WL 4816692, at *1, *5 (D.N.M. Oct. 1, 2019) (awarding $350/hour in a contract

dispute to a partner with eleven years of experience two and a half years ago); *Augé v.*

*Stryker Corp.*, No. 14-cv-1089 KG/SMV, 2017 WL 4355974, at *4 (D.N.M. Sept. 28, 2017)

(awarding $350/hour for a partner experienced in patent litigation four and a half years

ago); *XTO Energy, Inc. v. ATD, LLC*, No. CIV 14-1021 JB/SCY, 2016 WL 5376322, at *1,

*10, *14 (D.N.M. Aug. 22, 2016) (awarding $350/hour to a partner with thirteen years of

experience and national recognition as a top insurance lawyer in a high-end insurance case almost six years ago).

$340/hour for Tanya Nesbitt, a partner with more than thirteen years of experience who lacks a national reputation as a top environmental lawyer comparable to that of Ms. Ferrell.  *See doc. 465-3* at 3 (stating six years ago that the local environmental/water bar's mean and median rates were $269.00/hour and $271.00/hour respectively); *cf. Los Alamos Nat'l Bank*, 2019 WL 4816692, at *1, *5 (awarding $350/hour in a contract dispute to a partner with eleven years of experience two and a half years ago); *XTO Energy, Inc.*, 2016 WL 5376322, at *1, *10, *14 (awarding $350/hour to a partner with thirteen years of experience and national recognition as a top insurance lawyer in a high-end insurance case almost six years ago).  Plaintiffs contend that the local rate for Ms. Nesbitt is the same as that for Ms. Ferrell.  *See doc. 460* at ¶ 6.  Ms. Nesbitt, however, has not only been practicing law for three fewer years than Ms. Ferrell but much of her practice has not been in the subfield of environmental law.  *See doc. 460* at ¶ 24 (stating that Ms. Nesbitt has six years of experience as an environmental law practitioner).  More importantly, Ms. Nesbitt lacks a national reputation comparable to that of Ms. Ferrell as a top environmental lawyer.  Therefore, the Court finds that the local rate for her services is less than that for Ms. Ferrell.

$175/hour for Jack Ross and James Pollack, both of whom are second-year associates.  *See doc. 465-2* at ¶¶ 7-8 (stating that the market rate for a second year

associate whose practice focuses on environmental law is $175.00/hour); *doc. 465-3* at 3
(stating six years ago that the local environmental/water bar's mean and median rates
were $269.00/hour and $271.00/hour respectively); *cf. Got Prods.*, 2020 WL 1288568, at *2-
3 (awarding $175/hour for a second-year associate to enforce a settlement in a
commercial litigation that was not high end or complex).

$90/hour for David Baker, a paralegal with more than thirty years of experience
in complex federal litigation. *See doc. 316-3* at ¶ 6 (asserting that $60/hour for paralegals
experienced in environmental litigation, including those with more than twenty years
of experience, is commensurate with the local rate); *cf. Bernhard v. Meow Wolf, Inc.*, No.
CIV 21cv-0509 RB/SCY, 2022 WL 1421820, at *2-3 (D.N.M. May 5, 2022) (awarding
$100/hour to paralegals with more than twenty years of experience); *Got Prods.*, 2020
WL 1288568, at *3 (awarding $85/hour to paralegals two years ago in a commercial case
that was not high end or complex); *Payne v. Tri-State Careflight, LLC*, No. CIV 14-1044
JB/KBM, 2016 WL 5376321, at *13 (D.N.M. Aug. 16, 2016) (finding that $90/hour was a
reasonable rate for paralegal services in a wage and hour dispute almost six years ago).

Relying on Mr. Wechsler's declarations, American Linen insists that any rate
above $250.00/hour for Ms. Ferrell and Ms. Nesbitt is unreasonable and a departure
from the local rates for their services. *See doc. 465* at 15. The Court disagrees. The
evidence cited by American Linen for this contention is Mr. Wechsler's declarations and
the New Mexico Bar Study. *See id.* at 13-15 (citing *doc. 316-3, doc. 465-2,* and *doc. 465-3*).

As explained above, the Court assigns little persuasive value to the declarations since Mr. Wechsler is involved in this fee dispute and his statements are undermined, rather than corroborated, by more objective evidence in the record.  Ms. Ferrell's experience and reputation place local rates for her services within the first quartile of those charged by the New Mexico environmental bar, while Ms. Nesbitt's experience places her rates within at least the second quartile.  Mr. Wechsler's affidavit, though, places these attorneys' current rates within the third or fourth quartiles of rates from six years ago. *See doc. 465-3* at 3.  Additionally, the 2016 rates for the local environmental/water bar were approximately eight percent higher than those for the local commercial ligation bar, *see id.*, a bar whose higher end members have repeatedly been found by this Court to have local rates in excess of $360.00/hour since 2017, *see, e.g., Got Prods.*, 2020 WL 1288568, at *3; *Fallen v. GREP Sw., LLC*, 247 F. Supp. 3d 1165, 1198 (D.N.M. 2017).  This evidence outweighs Mr. Wechsler's assertion that "$360.00 per hour is beyond the prevailing market rate for senior attorneys in New Mexico firms for CERCLA litigation," *see doc. 465-2* at ¶ 3.

Finally, Plaintiffs treat the hourly rates that the Court awarded in its earlier expense award as "law of the case."  *See doc. 460* at ¶ 5.  This approach is problematic for at least two reasons.  First, the Court determines reasonable rates based upon the evidence before it.  New evidence (such as adequate evidence for local rates or evidence that the Court should not follow the local rate) requires the Court to redetermine these

rates.  Second, as noted earlier, hourly rates found by the Court must "reflect [those] in effect at the time the fee is being established." *Ramos*, 713 F.2d at 555.  Current market rates for members of a legal team may differ from the market rates for their services at the time of earlier expense awards.  Therefore, the Court does not adopt the rates awarded in its earlier expense award as the rates for this award.  The fact that the awarded rates for some members of Plaintiffs' legal team are the same in both awards is a product of the Court concluding that the local rates for their services have not changed since its previous expense award.

## B.  REASONABLENESS OF PLAINTIFFS' CLAIMED ATTORNEY HOURS

Turning to the issue of reasonable hours, Plaintiffs have failed to establish that most of the hours that they have claimed for bringing their Motion for Protective Order and opposing American Linen's Motion to Compel are reasonable.  "Counsel for the party claiming the fees has the burden of proving hours to the district court by submitting meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks." *Case*, 157 F.3d at 1250.  The Court must then scrutinize such records to "ensure that the … attorneys have exercised 'billing judgment'" by "winnowing the hours actually expended down to the hours reasonably expended." *Id.* (quoting and citing *Ramos*, 713 F.2d at 553); *see also Ramos*, 713 F.2d at

553 ("It does not follow that the amount of time *actually* expended is the amount of time *reasonably* expended.").

The Court assesses reasonableness based on the following factors: (i) whether the task would normally be billed to a paying client; (ii) the amount of time spent on a given task; (iii) the complexity of the task; (iv) the number of reasonable strategies pursued; (v) the responses necessitated by maneuvering of the other side; and (vi) whether any of the claimed hours are duplicative. *See Case*, 157 F.3d at 1250. The Court, though, need not "identify and justify each disallowed hour" or "announce what hours are permitted for each legal task." *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1202 (10th Cir. 1986). Instead, the Court may impose "[a] general reduction of hours claimed in order to achieve what the court determines to be a reasonable number" so long as it provides sufficient reason for doing so. *Id.* at 1203; *see also id.* (affirming a district court's percent reduction of hours to account for the excessive time an inexperienced counsel spent developing the case); *Carter v. Sedgwick Cnty.*, 36 F.3d 952, 956 (10th Cir. 1994) (affirming a district court's percent reduction of hours to eliminate "hours that were unnecessary, irrelevant and duplicative").

Here, Plaintiffs have generally provided detailed summaries of tasks their legal team completed, broken down by month, timekeeper, activity, and hours expended measured in six-minute increments. *See doc. 460* at ¶ 32; *see generally doc. 460-2.* The hours claimed for each task reflect billing judgment. *See doc. 460* at ¶ 32 (explaining that

the hours claimed reflect "contemporaneously recorded individual billing entr[ies]");

*see generally doc. 460-2* (citing to an invoice number for all hours claimed except for those

spent preparing the affidavit and exhibits in December 2021).  For block billings that

include time spent on tasks unrelated to the Cross Motions for Protective Order and to

Compel (such as briefing other discovery disputes), Plaintiffs have reduced the billed

time claimed proportionately.  *See doc. 460* at ¶ 32 n.6.  Plaintiffs also downward

adjusted the hours claimed for briefing, oral argument preparation, and fee affidavit

preparation and did not claim hours spent on other activities to follow the logic of the

Court's previous expense award.  *See id.* at ¶¶ 13-14.  However, the total hours Plaintiffs

claim for nineteen different activities related to the Cross Motions to Compel and for

Protective Order remain excessive and include hours not incurred in making their

Motion or opposing that of American Linen.

> 1.  *Activity 1: Objections to JSAI's & DBSA's Deposition Notices*

None of the 19.7 hours spent by Mr. Ross and Ms. Ferrell to draft, edit, review,

and serve objections to JSAI's and DBSA's deposition notices, *see id.* at ¶ 34, are

recoverable under the Court's expense award.  Federal Rule of Civil Procedure

37(a)(5)—the authority under which the Court awarded Plaintiffs their reasonable

expenses, *see doc. 435* at 119-20—limits expenses to those Plaintiffs "incurred in making"

their Motion for Protective Order and "in opposing" American Linen's Motion to

Compel.  *See* Fed. R. Civ. P. 37(a)(5)(A), (B).  The Supreme Court has further clarified

that sanctions imposed under the Federal Rules of Civil Procedure "can shift only those attorney's fees incurred because of the misconduct at issue." *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017). The misconduct at issue for expenses awarded pursuant to Federal Rule of Civil Procedure 37(a)(5) is taking and maintaining substantially unjustifiable positions about a discovery matter. *See* Fed. R. Civ. P. 37(a)(5).

Therefore, like the hours claimed by Plaintiffs for the meet and confer process in the Court's earlier expense award, *cf. doc. 454* at 29-30, hours spent objecting to JSAI's and DBSA's deposition notices were not incurred in making or opposing the parties' Cross Motions to Compel and for Protective Order. American Linen took and maintained positions on these notices that the Court later found substantially unjustified after and in response to Plaintiffs' objections to these notices. Therefore, hours spent preparing and serving these objections are not awardable.

## 2. *Activities 2-3, 5-6, 8, and 11: Briefing Cross Motions*

Only 41.2 of the hours claimed by Plaintiffs to brief the parties' Cross Motions for Protective Order and to Compel are reasonable. Plaintiffs claim a total of 174.24 hours to brief these motions, broken down as follows: (i) 8.8 hours for Mr. Ross to draft a motion for protective order to quash the notice for JEGI's deposition that was later consolidated into Plaintiff's Motion for Protective Order, *see doc. 460* at ¶ 35 ("Activity 2); *doc. 460-2* at 17; (ii) 69.57 hours for Mr. Ross, Ms. Ferrell, Ms. Nesbitt, and Mr. Baker

to draft, revise, and finalize Plaintiffs' Motion and communicate with DBSA about information needed for that Motion, *see doc. 460* at ¶ 36 ("Activity 3"); *doc. 460-2* at 18; (iii) 5.05 hours for Mr. Ross, Ms. Ferrell, and Ms. Nesbitt to review American Linen's response to Plaintiffs' Motion for Protective Order and outline Plaintiffs' reply, *see doc. 460* at ¶ 38 ("Activity 5"); *doc. 460-2* at 20; (iv) 33.99 hours for Ms. Nesbitt, Ms. Ferrell, Mr. Ross, and Mr. Pollack to research, draft, edit, and finalize Plaintiffs' reply to their Motion for Protective Order, *see doc. 460* at ¶ 39 ("Activity 6"); *doc. 460-2* at 21; (v) one hour for Ms. Ferrell and Ms. Nesbitt to communicate with DBSA and JSAI about information needed for Plaintiffs' Motion for Protective Order, *doc. 460* at ¶ 41 ("Activity 8"); *doc. 460-2* at 23; and (vi) 55.83 hours for Ms. Ferrell, Ms. Nesbitt, Mr. Pollack, Mr. Ross, and Mr. Baker to draft, revise, and finalize Plaintiffs' Response to American Linen's Motion to Compel, *doc. 460* at ¶ 44 ("Activity 11"); *doc. 460-2* at 26.

As noted by the Court in its earlier expense award, "[c]ourts in the Tenth Circuit have occasionally found that multiple attorneys spending approximately thirty hours on a discovery motion is reasonable." *Doc. 454* at 32 (citing *Fish v. Kobach*, No. 16-21-05-JAR, 2018 WL 3647132, at *6 (D. Kan. Aug. 1, 2018)). Having multiple attorneys write and revise on a motion is not inherently duplicative. *See Fox v. Pittsburgh State Univ.*, 258 F. Supp. 3d 1243, 1257 (D. Kan. 2017) ("As most attorneys know, the drafting process and editing process for legal writing are different."). "The fact that … an associate[] would draft, revise and edit [a discovery motion], while … partners …

would review, revise and finalize [that motion] is not duplicative—it is both reasonable and thorough." *United States ex rel. Baker v. Cmty. Health Sys., Inc.*, Civ. No. 05-279 WJ/ACT, 2013 WL 10914086, at *15 (D.N.M. Aug. 9, 2013). The Court, though, must ensure that the allocation of work between partners and associates aligns with the complexity and needs of the case and avoid compensating associate level tasks at a partner rate. *See Xtreme Coil Drilling Corp. v. Encana Oil & Gas (USA), Inc.*, 958 F. Supp. 2d 1238, 1259 (D. Colo. 2013). It must also be careful not to reimburse the prevailing party for the costs of developing its associates. *Cf. Case*, 157 F.3d at 1253 (holding that hours spent for an attorney familiarizing himself with the general area of law should be absorbed in the firm's overhead).

With these principles in mind, the Court substantially reduces the hours claimed for Activities 2-3, 5-6, and 11. Plaintiffs' Motion for Protective Order, their reply to that Motion, and their Response to American Linen's Motion to Compel totaled twenty-six, fourteen, and twenty-five pages respectively and raised numerous issues with the deposition notices for JEGI, DBSA, and JSAI. *See generally docs. 384, 408, 413* (arguing that Plaintiffs had standing to challenge the notice for JEGI's deposition and that the notices were untimely, unduly burdensome, lacked reasonably particularized topics, and improperly sought expert testimony, legal conclusions, and discovery outside of that authorized on the arranger claim). None of these issues were legally complex, but some (such as the scope of arranger claim discovery and the burdensomeness of the

noticed topics) entailed complicated facts that necessitated consultation with experts and review of groundwater models and a lengthy administrative record.  The numerosity of the issues also made briefing the Cross Motions more time intensive than the usual discovery motion, with one caveat.  Reasonable time spent on Plaintiffs' Response to the Motion to Compel is less than that for the usual response brief, as the Response involved the same issues as Plaintiffs' Motion for Protective Order.  *See VanMeter v. Briggs*, CV 18-0970 RB/JHR, 2020 WL 954771, at *4 (D.N.M. Feb. 27, 2020) (reducing the hours awarded for a response brief addressing issues raised in a cross motion to account for duplicative briefing).

Given the numerous issues involved, their legal simplicity but factual complexity, and the duplication inherent in the three briefs, the Court finds that 40 hours is a reasonable amount of time for Plaintiffs' legal team to have spent researching, drafting, and revising briefing for the Cross Motions to Compel and for Protective Order.  *See id.* (awarding 31.79 hours for two partners to brief cross motions for protective order and to compel individuals' depositions); *Ad Astra Recovery Servs., Inc. v. Heath*, Case No. 18-1145-JWB-ADM, 2020 WL 4346965, at *2-3, *6 (D. Kan. July 29, 2020) (awarding 29.3 hours for a senior partner and junior associate to brief issues about relevancy, work-product, and attorney-client privilege in a motion to compel a complete response to a single interrogatory).

Turning to the distribution of these 40 hours amongst the five members of Plaintiffs' legal team, the Court declines to replicate Plaintiffs' top-heavy allocation of hours in its award.  A partner (either Ms. Ferrell or Ms. Nesbitt) billed approximately sixty-five percent of the 173.04 hours claimed in Activities 2-3, 5-6, and 11 to draft and finalize briefs for the Cross Motions to Compel and for Protective Order, while a second-year associate (either Mr. Ross or Mr. Pollack) billed approximately thirty-two percent of these hours and Mr. Baker, a paralegal, billed approximately three percent of these hours.  "[A]ssigning more work to partners than associates is not per se unreasonable."  *Catholic Benefits Ass'n LCA v. Azar*, Case Nos. CIV-14-240-R, CIV-14-685-R, 2018 WL 3876615, at *10 (W.D. Okla. Aug. 15, 2018).  But due to the simplicity of the legal issues raised in the Cross Motions to Compel and for Protective Order, the Court believes that a fifty-fifty split between partners and associates/paralegal is more appropriate here.  The Court, though, retains Plaintiffs' relative allocation of work between Ms. Ferrell and Ms. Nesbitt within the partner share and between Mr. Baker and the second-year associates within the non-partner share.

Accordingly, the Court awards Plaintiffs $10,340.63 for work performed by their legal team in Activities 2-3, 5-6, and 11, broken down as follows: (i) $3,600.00 for 10 hours of reasonable work performed by Ms. Ferrell; (ii) $3,400.00 for 10 hours of reasonable work performed by Ms. Nesbitt; (iii) $168.75 for 1.875 hours of reasonable

work performed by Mr. Baker; and (iv) $3,171.88 for 18.125 hours of reasonable work performed by the combination of Mr. Ross and Mr. Pollack.

As for Activity 8, the Court finds that the time Plaintiffs claim for their attorneys to communicate with DBSA and JSAI to obtain information relevant to their legal analysis is reasonable, as these companies were the deponents for the disputed deposition notices.  However, it makes two changes to the hours that fall within Activity 8's scope: (i) it omits 0.5 hours spent by Ms. Nesbitt on August 24, 2021, in a call with JSAI employees about their declarations from the Activity 8 award because that time is better considered in the context of Activity 15; and (ii) it adds 0.7 hours spent by Ms. Ferrell and Ms. Nesbitt on August 18, 2021, to communicate with DBSA about a former DBSA employee on August 18, 2021 (which Plaintiffs had included in Activity 3).  The Court finds that the 1.2 hours spent by Ms. Ferrell and Ms. Nesbitt to consult with DBSA and JSAI and these companies' employers on August 6, 2021, August 18, 2021, and August 19, 2021, is reasonable and awards $416.00 for this time.

### 3.  *Activities 4, 7, 12, and 15: Exhibits for Cross Motions*

Only 15 of the hours claimed by Plaintiffs to prepare exhibits for the parties' Cross Motions to Compel and for Protective Order are reasonable.  Plaintiffs claim a total of 38.39 hours to prepare these exhibits, broken down as follows: (i) 3.8 hours for Ms. Nesbitt and Mr. Baker to identify and compile exhibits for Plaintiffs' Motion for Protective Order, *see doc. 460* at ¶ 37 ("Activity 4"); *doc. 460-2* at 19; (ii) one hour for Ms.

Ferrell and Mr. Baker to compile and review exhibits to the reply brief, *see doc. 460* at ¶ 40 ("Activity 7"); *doc. 460-2* at 22; (iii) 3.4 hours spent for Ms. Ferrell, Ms. Nesbitt, and Mr. Baker to identify and prepare exhibits for Plaintiffs' Response to American Linen's Motion to Compel, *see doc. 460* at ¶ 45 ("Activity 12"); *doc. 460-2* at 28; and (iv) 30.19 hours for Ms. Ferrell, Ms. Nesbitt, Mr. Ross, and Mr. Baker to meet with DBSA and JSAI about the declarations from these companies' Rule 30(b)(6) representatives (which Plaintiffs attached as exhibits to their Response to American Linen's Motion to Compel), organize these meetings, and draft and finalize the declarations, *see doc. 460* at ¶ 48 ("Activity 15"); *doc. 460-2* at 31-32.

　　Plaintiffs attached the following exhibits to their briefing of the Cross Motions: (i) copies of the notices for JSAI's, DBSA's, and JEGI's depositions, *see docs. 384-1, 384-2, 384-3*; (ii) emails and letters from the parties' meet and confer process, *see docs. 384-4, 408-1, 408-2, 408-3*; (iii) declarations from Nicole Sweetland (DBSA's Chief Executive Officer) and Steven Finch (JSAI's Vice President, Principal Hydrogeologist, and Geochemist) about the burdens posed by American Linen's deposition notices, *see docs. 408-4, doc. 408-5*; (iv) the curriculum vitae of DBSA's project and quality assurance manager for the Superfund Site underlying this litigation at the time of noticed topics, *see doc. 384-5*; (v) a list of documents about which American Linen asked Plaintiffs' expert during his deposition, *see doc. 384-6*; and (vi) a copy of Plaintiffs' initial disclosures, *see doc. 413-1*.

The Court finds that 7 of the 8.2 hours claimed in Activities 4, 7, and 12 for Mr. Baker, Ms. Ferrell, and Ms. Nesbitt to prepare exhibits in groups (i), (ii), (iv), (v), and (vi) are reasonable.  The 1.2 hours claimed for Mr. Baker to review documents referenced in the remedial investigation and to calculate volumes and pages for reference in Plaintiffs' Motion for Protective Order, on August 19, 2021, *see doc. 460-2* at 19, is time spent briefing that Motion, not preparing exhibits for that Motion.  Therefore, it awards Plaintiff $1,428.50 for seven hours spent on Activities 4, 7, and 12 preparing exhibits in groups (i), (ii), (iv), (v), and (vi), broken down as follows: (i) $355.50 for 3.95 hours by Mr. Baker; (ii) $425.00 for 1.25 hours by Ms. Nesbitt; and (iv) $648.00 for 1.8 hours by Ms. Ferrell.

As for Activity 15 (which covers hours spent preparing exhibits in group (iii)), the Court finds the 30.19 hours claimed by Plaintiffs for their legal team to obtain declarations from Ms. Sweetland and Mr. Finch exorbitant.  The Court recognizes that obtaining a declaration from a third party requires bringing that party up to speed about the topics the declaration needs to cover and reviewing and revising the declaration to ensure that it addresses these topics.  But these activities (which do not include the time the party spent drafting and revising the declaration) should not reasonably take thirty hours.

Ms. Sweetland's and Mr. Finch's declarations cover the same four topics: (i) the declarant's background; (ii) the Superfund Site; (iii) the declarant's role vis-à-vis that

Site, and (iv) the burdens posed by the noticed depositions. *Compare doc. 408-4* (Ms. Sweetland's declaration), *with doc. 408-5* (Mr. Finch's declaration). Many of the paragraphs in the fourth topic are almost identical, except for numbers related to the applicable notices. *Compare doc. 408-4* at ¶¶ 21-26 (identifying the number of topics and questions noticed; estimating the amount of billable time needed to prepare to testify on these issues; and emphasizing preparatory challenges posed by broad language in the notices, the declarant's other responsibilities, the lack of other individuals able to testify on the topics, and the unlikelihood that the noticed topics could be covered within the time allowed for the deposition), *with doc. 408-5* at ¶¶ 16-22 (same).

Considering the overlap of these declarations, the Court finds that four hours per declaration is a reasonable amount of time for members of Plaintiffs' legal team to have spent reviewing and revising the exhibit and communicating with the declarant about its content. The Court divides this time between Ms. Nesbitt and Ms. Ferrell at a four to one ratio since these two attorneys performed all but 0.56 of the hours claimed in Activity 15, Ms. Nesbitt worked four times as many hours as Ms. Ferrell on this Activity, and it is reasonable to have attorneys of Ms. Nesbitt's and Ms. Ferrell's experience coordinate the production of declarations and review their content. Therefore, the Court awards Plaintiffs $2,752.00 for the eight hours their legal team spent on Activity 15, broken down as follows: (i) $2,176.00 for 6.4 hours spent by Ms.

Nesbitt coordinating and reviewing Ms. Sweetland's and Mr. Finch's declarations; and

(ii) $576.00 for 1.6 hours spent by Ms. Ferrell on the same.

 4. *Activities 9-10, 13-14, and 16-17: Hearing on Parties' Cross Motions*

Only 12.72 of the hours claimed by Plaintiffs to prepare for and provide oral

argument at a hearing on the parties' Cross Motions to Compel and for Protective Order

are reasonable.  Plaintiffs claim a total of 53.04 hours for the hearing, broken down as

follows: (i) 8.43 hours for Ms. Ferrell, Ms. Nesbitt, Mr. Pollack, and Mr. Baker to prepare

for the hearing on Plaintiffs' Motion for Protective Order, *see doc. 460* at ¶ 42 ("Activity

9"); *doc. 460-2* at 24; (ii) 1.8 hours for Ms. Nesbitt, Mr. Ross, and Mr. Baker to review

American Linen's Motion to Compel, *doc. 460* at ¶ 43 ("Activity 10"); *doc. 460-2* at 25;

(iii) 19.99 hours for Ms. Nesbitt, Mr. Pollack, and Mr. Baker to prepare for the hearing

on American Linen's Motion to Compel, *see doc. 460* at ¶ 46 ("Activity 13"); *doc. 460-2* at

29; (iv) 5.5 hours for Ms. Ferrell, Mr. Pollack, and Ms. Nesbitt to strategize and

communicate with Plaintiffs' experts about technical arguments relating to the parties'

Cross Motions, *see doc. 460* at ¶ 47 ("Activity 14"); *doc. 460-2* at 30; (v) 12.87 hours for

Ms. Ferrell, Ms. Nesbitt, Mr. Pollack, Mr. Ross, and Mr. Baker to prepare for the hearing

on the Cross Motions (as a fraction of the time they spent to prepare for the hearing on

these Motions and five other discovery motions), *see doc. 460* at ¶¶ 49-50 ("Activity 16");

*doc. 460-2* at 33; and (vi) 4.45 hours for Ms. Nesbitt, Ms. Ferrell, and Mr. Ross to attend

the hearing on the Cross Motions and other discovery motions in person and 0.84 hours

for Mr. Baker attend attending the hearing remotely, *see doc. 460* at ¶ 51 ("Activity 17");

*doc. 460-2* at 34.

     The number of hours reasonably spent preparing for a hearing depends on the

number of issues presented and their complexity.  *See Drain v. Wells Fargo Bank, Minn.,*

*NA,* Civ. No. 04-0399 MV/KBM, 2007 WL 9706142, at *2 (D.N.M. Sept. 18, 2007).  Courts

in the Tenth Circuit generally find that preparation for a hearing on a discovery dispute

does not reasonably exceed ten hours.  *See Hall v. SelectQuote Ins. Servs.,* Civ. No. 20-450

MV/GJF, 2021 WL 214693, at *4 n.7 (D.N.M. Jan. 21, 2021) (holding that 4.6 hours was a

reasonable amount time for one attorney to prepare for and attend a hearing on a

motion to compel written discovery); *Blackburn v. United States,* Case No. 2:18-cv-00116-

DBB-EJF, 2020 WL 1930063, at *4 (D. Utah Apr. 21, 2020) (holding that 6 hours was a

reasonable amount of time for one attorney to prepare for a hearing on three short form

motions to compel document production); *Nutritional Biomimetics, LLC v. Empirical Labs*

*Inc.,* Civil Action No. 16-cv-01162-KMT, 2017 WL 10777667, at *4 (D. Colo. Sept. 1, 2017)

(holding that 5.4 hours was a reasonable amount of time for two attorneys to prepare

for a hearing on a motion to compel and for sanctions).

     Here, as noted earlier, the Cross Motions for Protective Order and to Compel

involved numerous simple legal issues, some of which have complex underlying facts.

Given the nature and numerosity of these issues, the Court finds that 9 hours is a

reasonable length of time for Plaintiffs' legal team to have spent preparing for oral

argument in Activities 9-10, 13-14, and 16.  The Court does not replicate Plaintiffs'

staffing ratio when dividing these hours amongst the members of Plaintiffs' legal team

since Mr. Baker's share in that ratio is for hours spent preparing hearing binders and

making case citation lists, *see doc. 460-2* at 24-25, 29, which are non-recoverable clerical

tasks, *see Flitton v. Primary Residential Mortg., Inc.*, No. 2:03CV481DAK, 2009 WL

1357206, at *3, *8 (D. Utah May 7, 2009) (holding that preparing hearing binders is an

un-awardable clerical task); *Fox*, 258 F. Supp. 3d at 1256 (same).  Omitting Mr. Baker's

hours from the claimed hours leaves a staffing ratio of approximately four to two to one

between Ms. Nesbitt, Ms. Ferrell, and either Mr. Ross or Mr. Pollack.  The Court finds

this ratio reasonable as both Ms. Nesbitt and Ms. Ferrell provided oral argument at the

hearing, the Court gave the parties permission to split argument between two attorneys,

and Ms. Nesbitt handled most of the argument on topics specific to the Cross Motions.

Therefore, the Court awards Plaintiffs $2,898.75 for nine hours spent on Activities 9-10,

13-14, and 16, broken down as follows: (i) $1,747.60 for 5.14 hours by Ms. Nesbitt; (ii)

$925.20 for 2.57 hours by Ms. Ferrell; and (iii) $225.75 for 1.29 hours by the combination

of Mr. Ross and Mr. Pollack.

 As for Activity 17, the Court awards some, but not all, of the hours claimed for

Plaintiffs' legal team to attend the hearing and provide oral argument about the Cross

Motions.  Hours claimed by both Ms. Ferrell and Ms. Nesbitt to attend and provide oral

argument at the hearing are reasonable, as the Court gave permission before the

hearing for parties to divide oral argument between two attorneys due to the numerous issues raised by the Cross Motions and other discovery motions presented at the hearing. Most of the two-hour-and-twenty-four-minute hearing was spent on broad discovery disputes applicable to the Cross Motions or issues specific to the depositions of DBSA, JSAI, and JEGI. *See doc. 430.* Hours claimed for Mr. Baker to provide remote research assistance to Ms. Ferrell and Ms. Nesbitt during the hearing are also reasonable. *Cf. Bohannon v. Facebook, Inc.*, Case No. 12-cv-01894-BLF, 2016 WL 3092090, at *10 (N.D. Cal. June 2, 2016) (finding reasonable some hours spent by an attorney drafting questions, identifying documents, and noting unclear answers during a deposition). However, hours claimed by Plaintiffs for Mr. Ross to attend the hearing in-person are not appropriately reimbursed since he did not give oral argument and the note taking and strategic input that he provided could have been replicated by either Ms. Ferrell or Ms. Nesbitt when they were not giving oral argument. Therefore, the Court awards Plaintiffs $1,079.00 for 3.72 hours spent by their legal team on Activity 17, broken down as follows: (i) $374.40 for 1.04 hours by Ms. Ferrell; (ii) $629.00 for 1.85 hours by Ms. Nesbitt; and (iii) $75.60 for 0.84 hours by Mr. Baker.

     5. *Activities 18 & 19: Expense Affidavit & Exhibits*

Only 27 of the hours claimed by Plaintiffs to prepare Ms. Ferrell's expense affidavit and associated exhibits are reasonable. Plaintiffs claim a total of 73.8 hours for this preparation, broken down as follows: (i) 32.95 hours for Ms. Ferrell, Ms. Nesbitt,

Mr. Ross, Mr. Pollack, and Mr. Baker to draft the instant expense affidavit and revise it

to comply with an expense award that the Court issued during drafting, *see doc. 460* at ¶

52 ("Activity 18"); *doc. 460-2* at 35-36; and (ii) 40.85 hours for Ms. Ferrell, Mr. Pollack,

and Mr. Baker to prepare the spreadsheet attached as an exhibit to the instant fee

affidavit and revise the spreadsheet to comply with the expense award that the Court

issued during preparation, *see doc. 460* at ¶ 53 ("Activity 19"); *doc. 460-2* at 37-38.

  Courts inside and outside the Tenth Circuit are split as to whether the reasonable

expenses incurred "in making" or "in opposing" a motion to compel or for protective

order include expenses incurred to prepare the fee affidavit for the expense award.

*Compare Maese v. Lamey (In re Lamey)*, No. 14-13729 ta7, Adv. No. 15-1030 t, 2015 WL

6666244, at *7 (Bankr. D.N.M. Oct. 30, 2015) (gathering cases in favor of awarding these

expenses), *with Lincoln v. State Farm Fire & Cas. Ins. Co.*, 1:18-cv-00652-MV-LF, 2019 WL

11623918, at *1 (D.N.M. June 13, 2019) (not awarding these expenses), *and Fed. Deposit

Ins. Corp. v. Broom*, Civil Action No. 12-cv-03145-PAB-MEH, 2013 WL 5567452, at *3 (D.

Colo. Oct. 9, 2013) (same).  Courts refusing to award these expenses ground their

analysis in text of Federal Rule of Civil Procedure 37(a)(5) and assert that these expenses

cannot be "incurred in making [or opposing] the motion," *see* Fed. R. Civ. P. 37(a)(5)(A),

(B), since they postdate the motion's adjudication, *see, e.g., Weaver v. Stringer*, CIVIL

ACTION No. 1:18-00052-N, 2019 WL 1495279, at *5 (S.D. Ala. Apr. 4, 2019); *Addington v.

Mid-American Lines*, 77 F.R.D. 750, 751 (W.D. Mo. 1978).  By contrast, courts awarding

expenses for drafting the fee affidavit justify their awards on one of two grounds: (i) the principle in the context of fee-shifting statutes that "'time spent in preparing, presenting, and trying attorney fee applications is compensable as part of the reasonable fee' award," *e.g.*, *Schroeder v. H&R Block E. Enters., Inc.*, No. 3:11-cv-00507, 2013 WL 1249052, at *1 (M.D. Tenn. Mar. 27, 2013) (quoting *Gonter v. Hunt Valve Co., Inc.*, 510 F.3d 610, 620 (6th Cir. 2007)); *see also Cobell v. Norton*, 231 F. Supp. 2d 295, 306-07 (D.D.C. 2002) (citing *Env't Def. Fund v. EPA*, 672 F.2d 42, 62 (D.C. Cir. 1982), and *Sierra Club v. EPA*, 769 F.2d 796, 811 (D.C. Cir. 1985)); and (ii) the "'but for' concept" underlying all of Rule 37's expense award provisions: "'expenses incurred in obtaining the order' should encompass all expenses, whenever incurred, that would not have been sustained had the opponent conducted itself properly," *see Aerwey Lab'ys, Inc. v. Arco Polymers, Inc.*, 90 F.R.D. 563, 565-66 (N.D. Ill. 1981) (quoting Federal Rule of Civil Procedure 37(a)(4)).[4]

The Court finds that the courts awarding fee affidavit expenses based on the "but for concept" underlying all of Rule 37's expense award provisions have the best reading of Rule 37(a)(5). The Tenth Circuit has declared that courts must interpret this Rule in accordance with its purpose, rather than focusing on the particularities of its individual words in isolation. *See Centennial Archaeology*, 688 F.3d at 681-82. That purpose is to "deter the abuse implicit in carrying or forcing a discovery dispute to court when no

---

[4] Federal Rule of Civil Procedure 37(a)(4) is now Federal Rule of Civil Procedure 37(a)(5).

genuine dispute exists."  Fed. R. Civ. P. 37(a)(5) advisory committee's note to 1970

amendment; *see also Centennial Archaeology*, 688 F.3d at 679 (defining the purpose of fee-

shifting provisions in statutes and the Federal Rules of Civil Procedure as "protect[ing]

and further[ing] legal rights by removing a disincentive to vindicating those rights …

and creating a disincentive to violating them or failing to compensate victims for

violations").  Barring the prevailing party in a discovery dispute from receiving the

reasonable expenses incurred to obtain expenses awarded pursuant to Rule 37(a)(5)

reduces the Rule's deterrent effect by creating a disincentive—additional

nonrecoverable expenses—for the prevailing party to claim the expenses awarded.  *See*

*McCarthy v. Ameritech Publ'g, Inc.*, 763 F.3d 488, 494 (6th Cir. 2014) (holding that fee

application expenses may be awarded under Rule 37(a)(5)); *cf. Booker v. Stauffer Seeds*

*Inc. (In re Stauffer Seeds, Inc.)*, 817 F.2d 47, 50 (8th Cir. 1987) (awarding fee affidavit

expenses based on the deterrence rationale in a Rule 37(b) expense award).

Turning to the issue of what is a reasonable number of hours for Plaintiffs' legal

team to have spent on preparing the fee affidavit for this fee award, the Court finds the

32.95 hours that Plaintiffs claim in Activity 18 for this preparation exorbitant.  The

instant fee affidavit and the fee affidavit from the earlier expense award not only have

the same structure and legal analysis but contain many of the very same paragraphs.

*Compare doc. 308* at ¶¶ 1-5, 7-9, 17-18, 22, 24, *with doc. 460* at ¶¶ 1-4, 7-11, 22-23, 25, 27.

The differences between the two affidavits reflect the following: (i) incorporations of

findings and analysis from the Court's earlier expense award, *see doc. 460* at ¶¶ 5-6, 13-21; (ii) the addition of backgrounds for Ms. Nesbitt, Mr. Pollack, Mr. Finch, and Ms. Sweetland, *see id.* at ¶¶ 24, 26, 29-30; and (iii) updating the descriptions for tasks falling within the scope of the expense award, *see id.* at ¶¶ 28, 31-55.  Consistent with the above reductions in hours that have averaged eighty percent, the Court finds that seven hours is a reasonable amount of time for Plaintiffs' legal team to have spent in Activity 18 preparing the fee affidavit, awards $1,750.00 in fees for that time, divided as follows: (i) $700.00 for 4 hours performed by the combination of Mr. Ross and Mr. Pollack; (ii) $540.00 for 1.5 hours performed by Ms. Ferrell; and (iii) $510.00 for 1.5 hours performed by Ms. Nesbitt.  The Court does not include Mr. Baker in this award because hours he spent coordinating, drafting, and editing the fee affidavit are duplicative of those spent by other members of the legal team.

As for hours spent preparing the fee affidavit spreadsheet in Activity 19, the Court finds that the 40.85 hours Plaintiffs claim for preparing the attorney fee spreadsheet are unreasonable.  Preparing this spreadsheet required Plaintiffs to review six months' worth of invoices and timekeeping records to identify billable hours responsive to the Court's expense award, group these records into nineteen different activities to facilitate analysis, and reduce the hours claimed in each activity to account for analysis from the Court's earlier fee award.  *See id.* at ¶ 32.

American Linen contends that preparing this spreadsheet is a non-reimbursable clerical task. *See doc. 465* at 17. This contention misreads caselaw. Compiling "statistical and financial data" is a reimbursable task. *See Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989) (holding that expenses awardable under § 1988 include worked performed by a paralegal that might otherwise be performed by a lawyer, such as "compilation of statistical and financial data"); *cf. Fox*, 258 F. Supp. 3d at 1256 (defining clerical tasks as "filing, organizing files, making copies, printing, ordering file folders, organizing boxes, updating files with correspondence and pleadings, and preparing files for storage").

Turning to a reasonable amount of hours to spend compiling the spreadsheet, the Court starts at its previous expense award where it found that 58.7 hours was a reasonable amount of time to review and prepare a spreadsheet about twenty-two months' worth of invoices and time-keeping records. *See doc. 454* at 38. Using the hour to month ratio in that award as a starting point and upwardly adjusting the reasonable hour total to account for grouping tasks into nineteen activities (which was not performed in the previous award), the Court finds that 20 hours is a reasonable amount of time to have spent compiling and revising the fee affidavit spreadsheet in Activity 19, and awards $2,546.00 for this time, divided as follows: (i) $666.00 for 1.85 hours spent by Ms. Ferrell reviewing and editing the spreadsheet; (ii) $350.00 for 2 hours spent by Mr. Pollack reviewing the spreadsheet for reasonableness; and (iii) $1,530 for 17 hours

spent by Mr. Baker compiling the spreadsheet.  The Court awards Plaintiffs at the market rate for Ms. Ferrell and Mr. Pollack's services even though they claim Mr. Baker's rate for these services, *see doc 460* at ¶ 32, because reviewing the spreadsheet for reasonableness requires some legal expertise and so is not the exclusive purview of a paralegal, *cf. doc. 454* at 37 (awarding Plaintiffs hours spent by Ms. Ferrell "reviewing historical bills for responsive expenses" at the paralegal rate since it could have been done by a paralegal).

6.  *Adjustments to the Lodestar*

American Linen urges the Court to adjust the lodestar award downward to account for Plaintiffs' top-heavy billing and limited success on the discovery disputed in the Cross Motions to Compel and for Protective Order.  *See doc. 465* at 24-26.  The Court does not do so for two reasons.  First, the Court considered and addressed American Linen's concerns about top-heavy billing when dividing the reasonable hours for each Activity amongst the various members of Plaintiffs' legal team.  Second, the Court disagrees that Plaintiffs enjoyed only partial success on the Cross Motions due to American Linen ultimately receiving the Court's permission to depose JSAI and DBSA on certain issues, some of which fell within the scope of the topics originally noticed for their depositions.  As stated in an earlier order, American Linen's "argument overlooks the specific issue raised by these Motions and addressed by the [Protective] Order: whether Defendant could depose DBSA and JSAI pursuant to the notices issued on July

9, 2021.  Defendant did not prevail on this issue or these Motions."  *Doc. 474* at 5 (citing *doc. 435* at 97-11, 141-42).

### C.  REASONABLENESS OF PLAINTIFFS' OTHER EXPENSES

Only $770.00 of the expenses claimed by Plaintiffs are reasonable.  Plaintiffs claim a total of $3,090.00 in expenses broken down as follows: (i) $390.00 in expenses for two hours billed by JSAI for Mr. Finch to communicate with Plaintiffs about and prepare a declaration to support Plaintiffs' Motion for Protective Order; *see doc. 460* at ¶ 55 ("JSAI Time"); *doc. 460-2* at 14; and (ii) $2,700.00 for 15 hours billed by DBSA for Ms. Sweetland to communicate with Plaintiffs about and prepare an analogous declaration and assist in briefing the Cross Motions for Protective Order and to Compel, *see doc. 460* at ¶ 54 ("DBSA Time"); *doc. 460-2* at 15.[5]

Reasonable expenses are those "[i]tems … normally itemized and billed in addition to the hourly rate," not "costs … normally absorbed as part of … firms' overhead."  *See Ramos*, 713 F.2d at 559.  For the purposes of Federal Rule of Civil Procedure 37(a)(5), these expenses include the reasonable fee a movant paid to hydrologists like Mr. Finch and Ms. Sweetland to prepare a declaration used to make or oppose a discovery motion, *see Beck v. Test Masters Ed. Servs.*, 289 F.R.D. 374, 387 (D.D.C. 2013), or provide consultation relevant to briefing that motion, *see Enterasys Networks*,

---

[5] American Linen misreads Plaintiff claimed expense as "a request for reimbursement to [Plaintiffs'] consultants."  *See doc. 465* at 23.  Plaintiffs, though, have already compensated their consultants for their time.  They seek a reimbursement of the expenses they incurred to do so.

*Inc. v. DNPG, LLC*, Civil No. 04-CV-209-PB, 2006 WL 1644598, at *2 (D.N.H. June 12, 2006).

The Court calculates a reasonable fee for a declarant to prepare a declaration and consult on briefing under the lodestar method.  American Linen has conceded that the $195.00/hour paid to Mr. Finch and the two hours that he spent preparing his declaration are reasonable if the Court finds the fee that Plaintiffs paid him reimbursable.  *See doc. 465* at 23 n.12.  The Court interprets that concession to apply equally to $190.00/hour and $174.00/hour that Plaintiffs paid Ms. Sweetland to "prepare [her] declaration" and "assist with brief, declaration," *see doc. 460-2* at 15, respectively. Turning to the hours for which Plaintiffs compensated Ms. Sweetland for these services, the Court finds the ten hours that Ms. Sweetland spent preparing her declaration unreasonable and reduces them to the two hours that Mr. Finch spent on the same task. As for the five hours Ms. Sweetland spent assisting with briefing and her declaration, billing entries for members of Plaintiffs' legal team on dates that Ms. Sweetland provided these services indicate that these hours were spent on the declaration, rather than consultation relevant to the briefing.  *See id.* at 5-6.  Therefore, the Court finds these hours duplicative of the two that it is already awarding for Ms. Sweetland to complete that declaration.

Therefore, the Court awards Plaintiffs $770.00 for fees paid to Mr. Finch and Ms. Sweetland, broken down as follows: (i) $390.00 for two hours Mr. Finch spent preparing

his declaration; and (ii) $380.00 for two hours Ms. Sweetland spent preparing her declaration.

### D. OUTRAGEOUS EXCESSIVENESS OF PLAINTIFFS' FEE AFFIDAVIT

American Linen contends that the Court should deny Plaintiffs all their claimed expenses for submitting an expense request that is "outrageously excessive." *See doc. 465* at 9-11 (citing *United States v. $114,700.00 in U.S. Currency*, Civil Action No. 17-cv-00452-CMA-GPG, 2020 WL 5076762, at *5 (D. Colo. Aug. 26, 2020)). Several circuit courts of appeals hold that where a court has the discretion to award attorney's fees under a fee-shifting statute, that discretion extends to denying a fee request altogether for being outrageously excessive. *See, e.g., Clemens v. N.Y. Cent. Mut. Fire Ins. Co.*, 903 F.3d 396, 398 (3d Cir. 2018) (Pennsylvania Bad Faith Statute); *Envtl. Def. Fund, Inc. v. Reilly*, 1 F.3d 1254, 1258-60 (D.C. Cir. 1993) (CERCLA); *Fair Hous. Council of Greater Wash. v. Landow,* 999 F.2d 92, 97 (4th Cir. 1993) (Civil Rights Attorney's Fees Award Act). These holdings' purpose is to "deter attorneys from 'mak[ing] unreasonable demands, knowing that the only unfavorable consequence of such misconduct would be reduction of their fee to what they should have asked for in the first place.'" *Case*, 157 F.3d at 1254 (quoting *Brown v. Stackler*, 612 F.2d 1057, 1059 (7th Cir. 1980)). The Tenth Circuit has neither endorsed nor rejected this doctrine. *See id.*

The Court need not decide whether to adopt this doctrine here because, even if it were good law in this Circuit, the Court would not exercise its discretion to deny

Plaintiffs their expense award in its entirety.  The Court, though, notices Plaintiffs that the expenses claimed in this award border on outrageously excessive.  Plaintiffs seek $92,668.66 in expenses for 360 hours spent briefing cross motions to compel and for protective order raising simple legal issues, preparing for and giving oral argument on these motions, and preparing a fee affidavit.  *See 460-2* at 13.  Worse, they do so right after the Court awarded them $79,491.41 in reasonable expenses for American Linen's substantially unjustified opposition to a different motion to compel, production of an inadequately prepared Rule 30(b)(6) designee, and failure to supplement its disclosures about PCE use in a timely manner.  *See generally doc. 454* (awarding $23,633.85 for the motion to compel and fee affidavit preparation).  The notion that reasonable expenses incurred over a six-month period to brief simple cross discovery motions, argue these motions at a hearing, and prepare a free affidavit for reasonable expenses incurred in doing so would be seventeen percent *more* than the reasonable expenses incurred over a twenty-two-month period to brief a discovery motion, investigate American Linen's operational history for eighteen months, take the deposition of an inadequately prepared corporate deponent, and prepare a fee affidavit for these issues is obviously flawed.  It resembles the incentive-problem that the outrageously excessive doctrine attempts to deter.

However, the Court finds that, if this doctrine were good law, giving Plaintiffs a third strike at claiming reasonable expenses is a better exercise of its discretion.

Deterring a victor in a discovery dispute from claiming outrageously excessive expenses by denying all expenses claimed to have been incurred in making and/or opposing a motion on that dispute has a cost—not deterring the loser of that dispute for taking and maintaining substantially unjustifiable positions.  That cost does not outweigh the benefit here.  Nonetheless, future claims which in the Court's opinion significantly exceed reason may be subject to summary denial pursuant to this doctrine.

## IV.    CONCLUSION

For the reasons above, the Court AWARDS Plaintiffs reasonable expenses and attorney's fees in the sum of $23,980.68.  American Linen is HEREBY ORDERED to tender this sum to Plaintiffs in full **within forty-five (45) days of this Order.  If a party files objections or otherwise appeals this order, this deadline will be suspended in favor of one set in the Order resolving the objections/appeal.**

**IT IS SO ORDERED.**

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE