IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CITY OF LAS CRUCES, *et al.,*

    Plaintiffs/Counterclaim Defendants,

v.                                                                                                    Civ. No. 17-809 JCH/GBW

THE LOFTS AT ALAMEDA, LLC; AMERICAN LINEN
SUPPLY OF NEW MEXICO, INC.; RAWSON LEASING
LIMITED LIABILITY CO.; and CHISHOLM'S-VILLAGE
PLAZA, LLC,

    Defendants/Counterclaimant,

and

AMERICAN LINEN SUPPLY OF NEW MEXICO, INC.

    Crossclaimant,

v.

THE LOFTS AT ALAMEDA, LLC; RAWSON LEASING
LIMITED LIABILITY CO.; and CHISHOLM'S-VILLAGE
PLAZA, LLC,

    Crossclaim-Defendants,

and

AMERICAN LINEN SUPPLY OF NEW MEXICO, INC.

    Third-Party Plaintiff,

v.

ESTATE OF JESUS TERESO VILLANUEVA, SR., deceased,
BERTHA VILLANUEVA, individually and o/b/o ESTATE
OF JESUS TERESO VILLANUEVA, SR., and VICTOR A.
JASSO,

    Third-Party Defendants.

**MEMORANDUM OPINION AND ORDER**
**SUSTAINING OBJECTIONS IN PART AND OVERRULING OBJECTIONS IN PART**

    **THIS MATTER** comes before the Court on Defendant American Linen Supply of New Mexico, Inc.'s Objections to Order Directing Defendant to Pay Attorney Fees and Costs in Amount of $79,491.41, Doc. 454. *See* Doc. 461. The Court, having considered the Order Directing Defendant American Linen Supply of New Mexico, Inc. to Pay Attorney's Fees and

Costs (Doc. 454 ("Initial Discovery Expense Award")), Defendant American Linen's objections (Doc. 461), and the parties' briefing on these objections (Doc. 467; Doc. 469), OVERRULES the objections IN PART and SUSTAINS the objections in PART and DIRECTS Defendant American Linen to tender Plaintiffs the sum of $74,470.41.

## BACKGROUND

This expense dispute arises in an action under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.*, for cost recovery and contribution to costs incurred by Plaintiffs to clean up the Griggs & Walnut Ground Water Plume Superfund Site, a hazardous waste site in Las Cruces, New Mexico contaminated with perchloroethylene ("PCE"). *See generally* Doc. 79; Doc. 306. Near the conclusion of discovery on Plaintiffs' Amended Complaint, Magistrate Judge Gregory B. Wormuth sanctioned Defendant American Linen for "producing an inadequately prepared Rule 30(b)(6) designee and failing to supplement its initial disclosures and discovery responses in a timely manner" after the March 29, 2019, deposition of Larry Hartman—one of Defendant's former employees. Doc. 304 at 65 ("Initial Discovery Sanctions Order"); *see also id.* at 54-59. Pursuant to Federal Rules of Civil Procedure 37(a)(5), 37(c)(1), and 37(d)(3), the Magistrate Judge awarded Plaintiffs as sanctions "the reasonable expenses that they incurred to depose [Michael] Lutz[1] on April 1, 2019, investigate Defendant's dry-cleaning operations and PCE use from March 30, 2019[,] to October 5, 2020, and bring [their] Motion to Compel and for Sanctions." *Id.* at 66 (footnote added); *see also id.* at 49-54, 59-63. The Court overruled Defendant's objections to these sanctions a few months later. *See* Doc. 348 at 12-14.

---

[1] Mr. Lutz, Defendant's President and Chief Executive Officer, was Defendant's designee for its Rule 30(b)(6) deposition.

Meanwhile, on February 8, 2021, Plaintiffs timely filed an expense affidavit, claiming $228,135.46 in attorney's fees and other expenses. *See* Doc. 308 at ¶ 56. Defendant raised the following objections to this sum on February 16, 2021: (i) its conduct was not a "but-for cause" of numerous hours Plaintiffs claimed for investigating its dry-cleaning operations and PCE use during the awarded period, particularly hours occurring after Plaintiffs' counsel interviewed Raymundo Castillo—another one of Defendant's former employees—about these topics on April 1, 2019; hours spent researching dry-cleaning equipment and communicating with dry-cleaning equipment companies; and hours spent searching archives for documents about its operational history, *see* Doc. 316 at 4-10; (ii) the hours claimed by Plaintiffs for the Rule 30(b)(6) deposition were unreasonable, *see id.* at 10-11; (iii) the hours claimed by Plaintiffs to bring their Motion to Compel and for Sanctions and expense affidavit were excessive, *see id.* at 11-12; and (iv) the hourly rates claimed by Plaintiffs for the members of their legal team did not reflect the local rates for their services, *see id.* at 12-18.

On December 15, 2021, the Magistrate Judge found that Plaintiffs had incurred $79,491.41 in reasonable expenses to depose Defendant's unprepared Rule 30(b)(6) designee, investigate Defendant's dry-cleaning operations and PCE use from March 30, 2019, to October 5, 2020, bring their Motion to Compel and for Sanctions, and prepare their expense application. *See* Doc. 454. Two weeks later, Defendant objected to this finding. *See* Doc. 461. Plaintiffs filed a timely response defending the award a few weeks later, *see* Doc. 467, after the parties stipulated to an extension of their deadline to do so, *see* Doc. 464. Briefing was complete on Defendant's objections to the Magistrate Judge's Initial Discovery Expense Award on February 2, 2022, *see* Doc. 471, with the filing of Defendant's reply, *see* Doc. 469.

3

**LEGAL STANDARD**

Under Rule 72(a) of the Federal Rules of Civil Procedure, the Court shall consider a party's objections to a magistrate judge's non-dispositive pretrial order and "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A). The "clearly erroneous" standard requires affirmance of the magistrate judge's factual findings unless the district judge "is left with the definite and firm conviction that a mistake has been committed." *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)); *see also Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir. 1988) ("To be clearly erroneous, a decision must strike [the Court] as more than just maybe or probably wrong; it must … strike [the Court] as wrong with the force of a five-week-old, unrefrigerated dead fish."). Review pursuant to a "contrary to law" standard is plenary; however, "it is extremely difficult to justify alteration of the magistrate judge's non-dispositive actions by the district judge." 12 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3069 (3d ed. 2020).

The Tenth Circuit has a "firm waiver rule," *Wardell v. Duncan*, 470 F.3d 954, 958 (10th Cir. 2006), wherein "[i]ssues raised for the first time in objections to the magistrate judge's [decision] are deemed waived," *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996); *see also United States v. Garfinkle*, 261 F.3d 1030, 1031 (10th Cir. 2001) ("In this circuit, theories raised for the first time in objections to the magistrate judge's report are deemed waived."). Contesting an issue before the magistrate judge based on one theory or set of facts does not preserve argument on that issue as to other theories or other sets of facts. *See ClearOne Commc'ns v. Biamp Sys.*, 653 F.3d 1163, 1184-85 (10th Cir. 2011) (holding that a defendant did not preserve its argument that imposing common attorneys' fees and related expenses jointly and

4

severally against all defendants violated a state statute abolishing joint and several liability where the defendant's arguments against joint and several liability before the magistrate judge did not include argument that the state statue barred such an award).

## ANALYSIS

Defendant objects to the Magistrate Judge's Initial Discovery Expense Award as contrary to law and/or clearly erroneous on three grounds: (I) the $37,741.28 awarded to Plaintiffs for investigating Defendant's dry-cleaning operations and PCE "is not the least severe sanction available to adequately deter and punish [it] for its failure to timely supplement," Doc. 461 at 21; *see also id.* at 21-24; (II) the $12,702.00 awarded to Plaintiffs for preparing their expense affidavit is not recoverable "under any provision of Rule 37," *see id.* at 24-25, and, in the alternative, is disproportional to the expense award as a whole, *see id.* at 25-27; and (III) Defendant's failure to supplement was not the but-for cause for most of the hours awarded to Plaintiffs for investigating Defendant's dry-cleaning operations and PCE use because (A) the case was stayed for much of that investigation, suspending the parties' discovery rights and obligations, *see id.* at 13-16; (B) Defendant would have supplemented its positions on dry-cleaning and PCE use earlier had Plaintiffs disclosed to it the increasing evidence for these operations that they were gathering during the investigation, *see id.* at 16-18, 20, and (C) Plaintiffs conducted parts of their investigation, including documentary investigation, for purposes other than disproving Defendant's denials that it had never conducted dry-cleaning or used PCE, and there is no way to distinguish investigation costs that Plaintiffs would have incurred but for these denials from the costs of the investigation that Plaintiffs would have pursued anyways, *see id.* at 19-21.  The objection to the Magistrate Judge's finding that Defendant's failure to supplement caused the entirety of the documentary investigation is the only objection that is both meritorious and procedurally proper.

I. CHALLENGES TO THE SEVERITY OF THE MAGISTRATE JUDGE'S EXPENSE AWARD ARE NOT PROPERLY BEFORE THE COURT

Defendant's objection to the $37,741.28 awarded by the Magistrate Judge to Plaintiffs for Defendant's failure to supplement as contrary to law for not being "the least severe sanction available to adequately deter and punish" its discovery misconduct, *see id.* at 21, is a disguised, disfavored request for reconsideration. The Magistrate Judge determined in his Initial Discovery Sanctions Order that sanctioning Defendant "for the reasonable costs, including attorney's fees, incurred by Plaintiffs to research Defendant's dry-cleaning operations and PCE use from March 30, 2019[,] until October 5, 2020," was the least severe sanction for its failure to supplement. *See* Doc. 304 at 62. The Court overruled Defendant's objection to this determination. *See* Doc. 315 at 24-25; Doc. 348 at 12-14. The Court sees no reason to revisit the propriety of sanctioning Defendant for the reasonable expenses of this investigation just because the Magistrate Judge has now determined the total amount of those expenses.

Defendant cites to no authority for the proposition that the Court must consider whether a monetary sanction is the least severe sanction necessary to deter discovery misconduct when assessing what sanction to impose (monetary or otherwise), when determining the scope of a monetary sanction, and when fixing the sum for that monetary sanction. In addition to being nothing more than persuasive authority, two of the four district court cases cited by Defendant in its briefing only address the severity question at the first stage of the sanction process— determining which of the monetary and other sanctions provided by the Federal Rules of Civil Procedure is most appropriate for the discovery misconduct at issue. *See Williamson v. United Parcel Serv., Inc.*, Case No. 19-cv-2506-KHV-TJJ, 2021 WL 601844, at *4 (D. Kan. Jan. 28, 2021) (barring the use of witnesses and information not disclosed in interrogatory responses or initial and supplemental disclosures, and documents not produced in response to a request for

production as a sanction for repeated failures to comply with discovery obligations and court orders); *Sender v. Mann*, 225 F.R.D. 645, 658 (D. Colo. 2004) (imposing the fees and costs of taking the discovery depositions of witnesses testifying at trial as a sanction for providing initial disclosures that lacked the detail and clarity to permit informed decision making about witness depositions).

In the third case, *Cherrington Asia Ltd. v. A&L Underground, Inc.*, 263 F.R.D. 653 (D. Kan. 2010), the movant sought a specific sum of monetary sanctions for, *inter alia,* the non-movant not providing an adequately prepared Rule 30(b)(6) designee. *See Cherrington*, 263 F.R.D. at 656. After determining that the Rule 30(b)(6) deponent did not properly prepare its designee and such conduct was sanctionable under Federal Rule of Civil Procedure 37(d)(1)(A), the District Court for the District of Kansas asserted that "[a]ny determination of the proper monetary sanction requires consideration of … the minimum amount necessary to deter future misconduct," *see id.* at 662 (citing *White v. Gen. Motors Corp.*, 908 F.2d 675, 684-85 (10th Cir. 1990)), and concluded that the sum sought was this minimum amount and awarded it as sanctions, *see id.* at 662-63. Therefore, even if *Cherrington* were binding authority (which it is not), it does not stand for the proposition that the Court must determine whether a monetary sanction is the least severe sanction to discourage misconduct when fixing the sum of this sanction, after it has already considered severity when determining whether to impose a monetary sanction as opposed to a different sanction and defining the scope of that monetary sanction.

Finally, the fourth case cited by Defendant in its briefing— *Paycom Payroll, LLC v. Richison*, No. CIV-09-488-W, 2011 WL 13112251, (W.D. Okla. June 8, 2011)—is similarly inapposite. There, the District Court for the Western District of Oklahoma deferred judgment on

the amount of attorney fees and costs that it should award as sanctions under Federal Rules of Civil Procedure 11 and 37 for intentionally misrepresenting contacts with the forum state in an affidavit attached to a motion to dismiss for lack of personal jurisdiction and suppressing evidence about these contacts during jurisdictional discovery. *See Paycom Payroll*, 2011 WL 13112251, at *4-5. In its Rule 11 analysis, that court noted that it had to make a specific finding about the minimum amount of fees and costs needed to adequately deter the undesirable behavior when determining the type and amount of sanctions to impose. *See id.* at *4. Besides being merely persuasive precedent, *Paycom Payroll* does not stand for the proposition that the Court must assess whether the sum of a monetary sanction is the minimum amount necessary to deter discovery misconduct after finding that the scope of that monetary sanction was this amount. Indeed, no case cited by Defendant does.

## II. AWARDING PLAINTIFFS $12,702.00 FOR PREPARING THEIR FEE AFFIDAVIT IS BOTH LAWFUL AND APPROPRIATE

Defendant's objections to the Magistrate Judge's decision to award Plaintiffs $12,702.00 for hours their legal team spent preparing their expense affidavit have procedural and substantive flaws. Procedurally, Defendant waived argument that the fee-shifting provisions in Federal Rule of Civil Procedure 37 do not allow the Court to shift the reasonable expenses that Plaintiffs incurred to make their expense application by not raising this issue before the Magistrate Judge. *See Marshall*, 75 F.3d at 1426; *cf.* Doc. 316 at 11-12 (challenging only the reasonableness of hours claimed for the expense application). Substantively, awarding parties the reasonable expenses that they incurred to prepare an expense application is appropriate under each of the provisions in Federal Rule of Civil Procedure 37 under which the Magistrate Judge awarded Plaintiffs expenses in his Initial Discovery Sanctions Order. And the Magistrate Judge's findings of reasonable expenses are not clearly erroneous.

The texts of Federal Rule of Civil Procedure 37(c)(1)(A)—the provision under which the Magistrate Judge awarded Plaintiffs the reasonable expenses that they incurred to "investigate [Defendant's] dry-cleaning operations and PCE use" over an eighteenth month period due to Defendant "not supplementing its initial disclosures and interrogatory responses in a timely manner," *see* Doc. 304 at 54, 59-63—and Federal Rule of Civil Procedure 37(d)(3)—the provision under which the Magistrate Judge awarded Plaintiffs the reasonable expenses that they incurred "to depose Mr. Lutz on April 1, 2019[,] and bring the instant Motion to Compel and for Sanctions," *see id.* at 49-53—are similar: both provide for "payment of the reasonable expenses, including attorney's fees, caused by the failure" to supplement or appear for a deposition. *See* Fed. R. Civ. P. 37(c)(1)(A), (d)(3). Courts interpret the broad causal language in these and other analogous provisions in Federal Rules of Civil Procedure 11 and 37 to extend to reasonable expenses incurred to present an expense application. *See McCarthy v. Ameritech Publ'g, Inc.*, 763 F.3d 488, 493-94 (6th Cir. 2014) (Rule 37(b)(2)(C), Rule 37(c)(1)(A), Rule 37(c)(2), Rule 37(d)(3), and Rule 37(f)); *Silva v. Witschen*, 19 F.3d 725, 733 n.15 (1st Cir. 1994) (Rule 11); *In re Stauffer Seeds, Inc.*, 817 F.2d 47, 50 (8th Cir. 1987) (Rule 37(c)(2)).

The Court concurs with these courts' approach since it accords with the text and purpose of Federal Rules of Civil Procedure 37(c)(1)(A) and (d)(3). Textually, the causal language in these Rules poses a but-for test. *See Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186-87 & n.5 (2017). Reasonable expenses incurred to prepare an expense application satisfy this test; litigants do not incur the expense of preparing an application for expenses awarded under Federal Rules of Civil Procedure 37(c)(1)(A) and (d)(3) unless an opponent fails to supplement or does not appear for a deposition. As for these Rules' purpose, the general purpose of all of Rule 37 fee-shifting provisions "is to protect and further legal rights by removing a

9

disincentive to vindicating those rights (namely, the cost of retaining attorneys to pursue the rights) and creating a disincentive to violating them … (namely, the cost of paying for the victims' attorneys)." *Centennial Archaeology, Inc. v. AECOM, Inc.*, 688 F.3d 673, 679 (10th Cir. 2012). Reimbursing a party for the reasonable expenses it incurs to apply for expenses awarded pursuant to Federal Rules of Civil Procedure 37(c)(1)(A) and (d)(3) reduces the barrier that costs pose to obtaining the expense award that deters discovery misconduct and, by adding to the size of the expense award, creates further disincentive for misconduct in the first place.

As for Federal Rule of Civil Procedure 37(a)(5)—the provision referenced by the Magistrate Judge when finding it appropriate to assign Defendant the full reasonable costs of Plaintiffs' Motion to Compel and for Sanctions, including the parts that "relate to compelling complete responses to interrogatories and request for production" which fall outside the ambit of Federal Rule of Civil Procedure 37(d)(3), *see* Doc. 304 at 53—its text differs from the rules discussed above: it limits the award or reasonable expenses to those "incurred in making the motion." *See* Fed. R. Civ. P. 37(a)(5). As noted by the Magistrate Judge in another expense award in this case, *see* Doc. 513 at 30-31, some courts read this text to preclude an award for the costs of preparing an expense affidavit under Rule 37(a)(5). *See Weaver v. Stringer,* CIVIL ACTION NO. 1:18-00052-N, 2019 WL 1495279, at *5 (S.D. Ala. Apr. 4, 2019); *Addington v. Mid-Am. Lines,* 77 F.R.D. 750, 751 (W.D. Mo. 1978). Other courts find such costs awardable for one of two reasons: (i) the fee-shifting statute principle that "'time spent in preparing, presenting, and trying attorney fee applications is compensable as part of the reasonable fee' award," *see, e.g., Schroeder v. H&R Block E. Enters., Inc.*, No. 3:11-cv-00507, 2013 WL 1249052, at *1 (M.D. Tenn. Mar. 27, 2013) (quoting *Gonter v. Hunt Valve Co.,* 510 F.3d 610, 620 (6th Cir. 2007)); *see also Cobell v. Norton*, 231 F. Supp. 2d 295, 306-07 (D.D.C. 2002)

10

(citing *Env't Def. Fund v. EPA*, 672 F.2d 42, 62 (D.C. Cir. 1982), and *Sierra Club v. EPA*, 769 F.2d 796, 811 (D.C. Cir. 1985)); or (ii) the "'but for' concept" underlying all of Rule 37's expense provisions—"'expenses incurred in obtaining the order' should encompass all expenses, whenever incurred, that would not have been sustained had the opponent conducted itself properly," *see Aerwey Labs, Inc. v. Arco Polymers, Inc.*, 90 F.R.D. 563, 565-66 (N.D. Ill. 1981) (quoting Federal Rule of Civil Procedure 37(a)(4)).

The Court concurs with the Magistrate Judge that Rule 37(a)(5) is best read to authorize awarding the reasonable expenses incurred to apply for expenses awarded pursuant to the Rule. While such expenses may be incurred after a party has filed a motion to compel, the Court must not read the text of Rule 37(a)(5) in a vacuum but rather in light of its compensatory and deterrent purposes. *See Centennial Archaeology*, 688 F.3d at 681-82. "[A]dequate deterrence is enhanced if the district court is able to charge noncompliant or evasive litigants for the costs of the fee application—an application directly attributable to their own conduct." *McCarthy*, 763 F.3d at 494; *see also Booker*, 817 F.2d at 50.

Turning to Defendant's objection to the number of hours that the Magistrate Judge awarded Plaintiffs to prepare their expense application, *see* Doc. 461 at 25-27, the Court concludes that the Magistrate Judge did not clearly err when finding that Plaintiffs reasonably spent 92.6833 hours doing so. Defendant is correct that "fees awarded for the preparation of the fee application must be proportionate to the fees incurred in preparation of the motion to compel." *See id.* at 26. After all, the tail must not wag the dog. But proportionality varies from context to context. In some instances, as shown by the cases cited by Defendant, *see id.*, courts reduce hours claimed to prepare an application for expenses awarded in a discovery dispute by the aggregate percent reduction of the hours claimed to arise from the sanctioned misconduct,

11

*see Tequila Centinela, S.A. de C.V. v. Bacardi & Co.*, 248 F.R.D. 64, 72 (D.D.C. 2008), or by a percentage unrelated this reduction, *see Schroeder*, 2013 WL 1249052, at *2. In other circumstances, as exhibited in a case cited by Defendant, *see* Doc. 461 at 26, courts just identify specific numbers of hours as reasonable quantities of time to spend on tasks, *see In re Lamey*, No. 14-13729 ta7, Adv. No. 15-1030 t, 2015 WL 6666244, at *7 (Bankr. D.N.M. Oct. 30, 2015). There is no bright line rule that expenses arising from preparing an expense application must not exceed a certain percentage of the award (such as the ten percent argued by Defendants, *see* Doc. 461 at 27).

Here, the Initial Discovery Sanctions Order awarded Plaintiffs reasonable expenses arising over a twenty-two-month period from February 2019 to November 2020. *See* Doc. 304 at 66; Doc. 308-2 at 1. During this time, the compensation of Plaintiffs' legal team periodically changed as it experienced turnover and its members had to work on other competing projects. *See* Doc. 308 at ¶ 18. Combing through almost two years' worth of invoices to identify responsive expenses from the work of ten people is a time-intensive task. Accordingly, the Court concludes that the Magistrate Judge did not clearly err in concluding that Plaintiffs' legal team reasonably spent 92.6833 hours coordinating and discussing the preparation of their expense application, researching and drafting this application, and preparing the exhibits attached to this application—including a forty-page spreadsheet listing responsive expenses.

    III.    **DEFENDANT'S FAILURE TO SUPPLEMENT CAUSED MOST EXPENSES AWARDED FOR PLATINFFS' INVESTIGATION**

Defendant's final set of objections is that compensating Plaintiffs for hours spent investigating and obtaining additional evidence of its dry-cleaning operations and PCE use beyond taking Raymundo Castillo's deposition is contrary to law since its failure to supplement was not the but-for cause for these hours. *See* Doc. 461 at 13-21. It provides three reasons for

why its discovery misconduct did not cause Plaintiffs to incur all, or at least some, of these hours: (A) its failure to supplement did not cause Plaintiffs to investigate it during the stay, as the stay suspended the parties' duties to supplement, *see id.* at 14-16; (B) Plaintiffs could have obviated the need for their investigation by disclosing the additional evidence that they found about Defendant's dry-cleaning operations and PCE use, particularly statements from Mr. Castillo that Defendant had conducted these activities, *see id.* at 16-18 & n.9, 20-21; and (C) Plaintiffs would have pursued much of their investigation even if Defendant had timely supplemented its disclosures and discovery responses to admit that it had conducted dry-cleaning and used PCE in order to gather evidence for the causation element of their claims; and there is no way to distinguish the investigation that Plaintiffs would not have pursued but for Defendant's failure to supplement from the investigation that they would have pursued otherwise, *see id.* at 16, 19-20.  Only the final reason has some merit, but only as to the extent that it challenges the Magistrate Judge's conclusion that all of the hours spent by Plaintiffs on their documentary investigation are attributable to Defendant's failure to supplement.

      A. *Objection to Causation of Investigation During the Stay*

Defendant's argument that its failure to supplement did not cause Plaintiffs to investigate its dry-cleaning operations and PCE use during the stay is procedurally and substantively flawed. Procedurally, Defendant waived the argument that the suspension of its duty to supplement during the stay precludes a finding that its discovery misconduct caused Plaintiffs to incur investigatory expenses during the stay since it did not raise this argument before the Magistrate Judge.  In *ClearOne Communications, Inc. v. Biamp Systems*, 653 F.3d 1163 (10th Cir. 2011), the Tenth Circuit held that a litigant had not preserved the argument that a statute barred joint and several liability for common attorneys' fees and expenses because, while the litigant

contested the propriety of joint and several liability for such fees and expenses before the magistrate judge, he did not do so on that ground. *ClearOne*, 653 F.3d at 1184-85. Similar to the *ClearOne* litigant, Defendant contested but-for causation before the Magistrate Judge, but not on the theory that the suspension of its duty to supplement during the stay means that its failure to supplement before the stay did not cause Plaintiffs to accrue investigation expenses during the stay. *See* Doc. 316 at 6-10. Defendant, therefore, did not preserve its but-for causation argument on this theory.

Substantively, the Court also disagrees that the suspension of Defendant's obligation to supplement during the stay means that its failure to supplement was not a but-for cause of the expenses Plaintiffs incurred to investigate its dry-cleaning operations and PCE use during the stay. A but-for cause is "the cause without which the event could not have occurred," *United States v. Burkholder*, 816 F.3d 607, 613 (10th Cir. 2016), and is required to shift attorney's fees and expenses for discovery misconduct, *see Haeger*, 137 S. Ct. at 1187.

Defendant's failure to supplement its initial disclosures and discovery responses denying that it had ever conducted dry-cleaning operations or used PCE within a reasonable time of incurring a duty to do so is a but-for cause of Plaintiffs incurring expenses during the stay to investigate these activities. The Court stayed the case on August 21, 2019, *see* Doc. 189, almost five months after Mr. Hartman's deposition on March 29, 2019, *see* Doc. 233-6 at 1, which triggered Defendant's duty to supplement, *see* Doc. 304 at 55-57. Had Defendant discharged this duty within a reasonable time of the deposition, it would have supplemented its disclosures and discovery responses before the stay to no longer deny conducting dry-cleaning operations and using PCE. *See Carroll v. SAFECO Ins. Co. of Am.*, Civil Action No. 20-cv-00219-REB-NYW, 2020 WL 7664731, at *3 (D. Colo. Dec. 24, 2020) (finding a three-month delay in

supplementation unreasonable). Plaintiffs then would not have continued to gather evidence to prove these facts during the stay.[2]

### B. *Objection to Failure to Mitigate*

Defendant's second objection to the investigation expense award is based on Plaintiffs not disclosing the increasing evidence of its dry-cleaning operations and PCE use that they obtained during their investigation and affording it the opportunity to reconsider its disclosures and discovery responses in light of this evidence. *See* Doc. 461 at 16-18 & n.9, 20-21. Framed as a but-for causation argument, this objection actually contends that the expenses awarded to Plaintiffs for Defendant's failure to supplement are unreasonable since Plaintiffs did not mitigate Defendant's sanctions exposure. *Cf. King v. Fleming*, 899 F.3d 1140, 1155 (10th Cir. 2018) ("The injured party [in the Rule 11 context] has a duty to mitigate costs by not overstaffing, overresearching or overdiscovering clearly meritless claims."). Based on Defendant's argument, mitigation in this context would have involved presenting Defendant with increasing evidence that its positions about its historic dry-cleaning operations and PCE use in its initial disclosures and discovery responses needed supplementation and requesting to meet and confer about these positions, which would have prompted Defendant to supplement those disclosures and responses at an earlier date, obviating the need for additional investigation. The Magistrate Judge, though, rejected the notion that Defendant would have supplemented at an earlier date if presented with this evidence. *See* Doc. 454 at 25-27. His finding is not clearly erroneous.

---

[2] Defendant disputes the propriety of Plaintiffs gathering evidence for their claims against it during the stay. *See* Doc. 461 at 4-8, 15. Whether aspects of Plaintiffs' investigation of Defendant during the stay violated the Court's orders imposing and extending the stay is not properly before the Court. To the extent that the propriety of the investigation affects the propriety of the Magistrate Judge's expense award, the Court notes that Defendant did not argue before the Magistrate Judge that the Court must deny compensation for hours spent investigating Defendant's dry-cleaning operations and PCE use during the stay on the basis that the investigation violated the terms of the stay. *See generally* Doc. 316. Therefore, Defendant has waived this argument. *See ClearOne*, 653 F.3d at 1184-85.

Assuming without deciding that Plaintiffs had to mitigate the expenses they were incurring from Defendant's failure to supplement by presenting Defendant with more and more evidence that its disclosures and discovery responses required supplementation, the Court lacks a definite and firm conviction that Defendant would have taken the initiative to change its positions about dry-cleaning and PCE use if presented with this evidence. In December 2019, Plaintiffs attached to a brief about extending the stay archival records showing that Defendant had once possessed dry-cleaning equipment and PCE drums to support its contention that Defendant had conducted dry-cleaning and used PCE.[3] *See* Doc. 199 at 6 (citing Doc. 200-13). This additional evidence did not push Defendant to revise its positions about dry-cleaning operations or PCE use shortly after the stay lifted and its duty to supplement resumed. On August 21, 2020, Mr. Castillo testified during his deposition that Defendant conducted dry-cleaning with drums of a cleaning chemical. *See* Doc. 233-12 at 13:6-8, 34:21-35:6. This additional evidence did not cause Defendant to supplement its positions on dry-cleaning operations and PCE use on its own accord. Defendant's insistence otherwise, *see* Doc. 461 at 18 & n.9, ignores both the timing and method of its supplementation. Defendant waited until October 5, 2020, to revise these positions and only did so in response to a request for admission, *see* Doc. 248; Doc. 258-3 at 3, and under the specter of accruing liability if Plaintiffs later proved that it conducted dry-cleaning and used PCE, *see* Fed. R. Civ. P. 37(c)(2). The request for admission, not Mr. Castillo's testimony, prompted Defendant to update its position about its dry-cleaning operations and PCE use.

---

[3] Defendant quibbles that Plaintiffs did not formally produce the archival documents until August 11, 2020. *See* Doc. 461 at 18 n.9. For the purposes of apprising Defendant about the additional evidence that its initial disclosures and discovery responses needed supplementation, the Court sees no difference between attaching these documents to briefing and producing them via discovery. Attaching the documents as an exhibit to briefing still provided Defendant with more evidence that its positions on dry-cleaning operations and PCE use needed an update.

### C. *Objection to Causation of Investigation Expenses*

Defendant's objection that Plaintiffs would still have incurred much of the investigatory expenses awarded by the Magistrate Judge if it had supplemented in a timely manner has some merit as to the hours awarded for documentary research but otherwise overstates the accuracy with which courts must determine but-for causation when imposing attorney's fees as a sanction for misconduct under the Federal Rules of Civil Procedure. As noted by the Magistrate Judge in his Initial Discovery Expense Award, *see* Doc. 454 at 20-21, while courts' "fundamental job is to determine whether a given legal fee … would or would not have been incurred in the absence of the sanctioned conduct[,] trial courts undertaking that task 'need not, and indeed should not, become green-eyeshade accountants.'" *Haeger*, 137 S. Ct. at 1187 (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)). Rather, "'[t]he essential goal' in shifting fees is 'to do rough justice, not to achieve auditing perfection.'" *Id.* (quoting *Fox*, 563 U.S. at 838). Courts administering this rough justice "may take into account their overall sense of a suit[] and may use estimates in calculating and allocating an attorney's time," *Fox*, 563 U.S. at 838, including by "decid[ing], for example, that all (or a set percentage) of a particular category of expenses … were incurred solely because of a litigant's … conduct," *Haeger*, 137 S. Ct. at 1187.

The Magistrate Judge did just that. Taking into account his overall sense of this case based on the information and argumentation that the parties provided when briefing the expense award, he estimated the percentages of Plaintiffs' witness investigation, document investigation, public records requests, and additional written discovery that were caused by Defendant's failure to supplement. *See* Doc. 454 at 21-23 (finding the failure to supplement caused fifty percent of the witness investigation, all the document investigation, fifty percent of public records requests, and twenty-five percent of additional written discovery). Therefore, Defendant's contention that its failure to supplement did not necessitate any of these investigatory activities, while phrased as

17

challenging the Magistrate Judge's causation assessment as contrary to law, actually challenges the Magistrate Judge's causation findings as clearly erroneous.

Most of the Magistrate Judge's findings exhibit no such error. His task was to make "rough" estimates of the extent to which Defendant's failure to supplement caused different aspects of the Plaintiffs' investigation, s*ee Haeger*, 137 S. Ct. at 1187, which the Court may only disturb if it has a "definite and firm conviction that a mistake has been committed," *Ocelot Oil Corp.*, 847 F.2d at 1464. Defendant cites Plaintiffs' earlier insistence that discovery responses containing anything less than "information about American Linen's: historical purchase volumes, throughput, and use of PCE; suppliers and supplies; spills or releases, and the steps taken to clean or mitigate them; PCE dry cleaning machines, and equipment used," *see* Doc. 263 at 8, would be prejudicial to their ability to determine Defendant's contribution to the contamination as evidence that "[m]ost—if not all—of Plaintiffs' investigatory efforts were to find evidence showing American Linen released sufficient PCE at its building on Main Street to migrate through soil and groundwater a mile east to the affected areas of the Superfund Site," *see* Doc. 461 at 19 (citing Doc. 263 at 8). The Court concurs that Plaintiffs' investigation—like their first set of written discovery, *see* Doc. 264-3—sought to answer more than the yes-or-no questions of whether Defendant conducted dry-cleaning and whether Defendant used PCE. However, the Magistrate Judge's estimates that fifty percent of Plaintiffs' witness investigation and public records requests and twenty-five percent of additional written discovery sought to answer these yes-or-no questions (and so are attributable to Defendant's failure to supplement) does not leave the Court with a definite and firm conviction of error.

The same cannot be said for the Magistrate Judge's conclusion that Plaintiffs would not have pursued any dry-cleaning manufacture research, any manufacture subpoenas, or any part of their archival research at the New Mexico State University's Branson Library and the Las Cruces

Thomas Branigan Memorial Library if Defendant had updated its disclosures and discovery responses to admit to conducting dry-cleaning operations and using PCE. Plaintiffs' first set of requests for production sought documents about "[t]he size, throughput, nature and scope of work or operations conducted at [Defendant's] Facility, including … dry cleaning," "the layout, configuration, brand, model and plumbing of any … dry-cleaning equipment," "the processes, machinery, and materials …used for any … dry cleaning," and "[t]he nature and type of fabrics and materials generally … dry cleaned … at the Facility." *Id.* at 15. An earlier admission about conducting dry-cleaning operations and using PCE would not have yielded information on all these topics. So, the Court concludes that, like the witness investigation, Plaintiffs would have pursued fifty percent of their non-public records document investigation[4] even if Defendant had supplemented its disclosures and discovery responses in a timely manner. Therefore, it reduces the Magistrate Judge's award by $5,021.00.

IV. **PLAINTIFFS ARE NOT ENTITLED TO THE REASONABLE EXPENSES INCURRED TO DEFEND THE MAGISTRATE JUDGE'S EXPENSE AWARD**

Plaintiffs request the Court to award them the reasonable expenses they incurred to respond to Defendant's objections to the Magistrate Judge's Initial Discovery Expense Award. *See* Doc. 467 at 20 & n.17. Assuming without deciding that the Court may award the reasonable expenses incurred to defend against objections to an expenses award, awarding such expenses is inappropriate here, as the Court has sustained Defendant's objections in part.

**IT IS HEREBY ORDERED** that:

---

[4] This investigation corresponds to the "Archive, Equip., & Other Doc. Search" column in the table in the Magistrate Judge's Initial Discovery Expense Award. *See* Doc. 454 at 27.

(1)     Defendant American Linen's Objections to Order Directing Defendant to Pay Attorney Fees and Costs in Amount of $79,491.41, Doc. 454 are **SUSTAINED IN PART AND OVERRULED IN PART**.

(2)     Defendant American Linen shall **TENDER** Plaintiffs the sum of $74,470.41 **within forty-five (45) days of the issuance of this Order**.

_____
SENIOR UNITED STATES DISTRICT JUDGE