IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CITY OF LAS CRUCES AND DONA ANA
COUNTY,

      Plaintiffs,

vs.                                Civ. No. 17-809 JCH/GBW

THE LOFTS AT ALAMEDA, LLC;
AMERICAN LINEN SUPPLY OF NEW
MEXICO, INC.; RAWSON LEASING
LIMITED LIABILITY CO.; and
CHISHOLM'S-VILLAGE PLAZA L.L.C.,

      Defendants, Third-Party Plaintiff,

v.

ESTATE OF JESUS TERESO
VILLANUEVA, SR., Deceased, BERTHA
VILLANUEVA, Individually and o/b/o
ESTATE OF JESUS TERESO VILLANUEVA, SR.,
and VICTOR A. JASSO,

      Third-party Defendants.

## MEMORANDUM OPINION AND ORDER

      This case is before the Court on *Plaintiffs' Motion to Dismiss Counterclaims, Third-Party Claims, and to Strike Affirmative Defenses Contained in American Linen's Second Answer* [Doc. 487]. American Linen has filed a response [Doc. 500] and Plaintiffs have filed their reply [Doc. 508]. After consideration of the pleadings in question, the arguments of counsel in the briefs, and

the applicable legal precedents, the Court concludes that the motion should be granted in part and denied in part as described herein.

## DISCUSSION

This is a case brought under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601-9675. On February 3, 2021, Plaintiffs filed their Second Amended Complaint [Doc. 306]. On March 24, 2022, American Linen filed its Answer to Second Amended Complaint [Doc. 479].[1] That pleading includes American Linen's numerous affirmative defenses to Plaintiffs' claims [Doc. 479 at 8-22], American Linen's counterclaims against Plaintiffs [*Id.* at 23-51], American Linen's cross-claims against its former co-defendants [*Id.* at 52-59], and its third-party claims against Bertha Villanueva and Victor Jasso [*Id.* at 60-66].

## I.  American Linen's Affirmative Defenses

Plaintiffs have moved under Rule 12(f) to strike every affirmative defense pled by American Linen that is not specifically enumerated within CERCLA.

Section 107(a) of CERCLA provides that potentially responsible persons ("PRPs") are liable for, among other things, "(A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan; [and] (B) any other necessary costs of response incurred by any other person consistent with the national contingency plan." 42 U.S.C. § 9607(a)(4)(A)-(B). There are four categories of PRPs under § 107(a): "(1) owners; (2) operators; (3) arrangers; and (4)

---

[1] In addition to Defendant American Linen, Plaintiffs' Second Amended Complaint also asserts claims against Defendants The Lofts at Alameda, LLC; Chisholm's -Village Plaza, LLC; and Rawson Leasing Limited Liability Co. However, Plaintiffs appear to have resolved their claims against these other entities, leaving American Linen as the sole defendant in the case. However, American Linen has now filed crossclaims against its former co-defendants. This Memorandum Opinion and Order does not address American Linen's crossclaims.

transporters" of hazardous substances. *Chevron Mining Inc. v. United States*, 863 F.3d 1261, 1270 (10th Cir. 2017) (citing 42 U.S.C. § 9607(a)(1)-(4)). Plaintiffs have alleged claims against American Linen as an owner, operator, and arranger. Plaintiffs' Second Amended Complaint, Doc. 306, at ¶¶ 59-60.

Courts have construed § 107(a) as imposing strict liability on PRPs, as well as joint and several liability regardless of fault. *See Pub. Serv. Co. of Colo. v. Gates Rubber Co*., 175 F.3d 1177, 1181 (10th Cir. 1999). Defenses to § 107(a) actions were limited to acts of God, acts of war, or establishing that the owner was an "innocent owner." *Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc*., 596 F.3d 112, 120 (2d Cir. 2010) (citing 42 U.S.C. § 9607(b); Michael B. Gerrard & Joel M. Gross, *Amending CERCLA: The Post–SARA Amendments to the Comprehensive Environmental Response, Compensation, and Liability Act* 54 (2006)). But apportionment is proper under § 107(a) when there is a reasonable basis for determining the contribution of each cause to a single harm, though the burden of proving reasonable apportionment lies with CERCLA defendants seeking to avoid joint and several liability. *Burlington N. & Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 614 (2009).

Plaintiffs are correct that CERCLA permits only enumerated statutory defenses to liability. *See Blasland, Bouck & Lee, Inc. v. City of North Miami*, 283 F.3d 1286, 1304 (11th Cir. 2002); *Velsicol Chemical Corp. v. Enenco, Inc*., 9 F.3d 524, 530 (6th Cir. 1993) (holding that the doctrine of laches may not bar CERCLA cost recovery action); *Gen. Elec. Co. v. Litton Indus. Automation Sys.*, 920 F.2d 1415, 1418 (8th Cir. 1990) (holding that CERCLA does not provide for an unclean hands defense to liability), *overruled on other grounds*, *Key Tronic Corp. v. United States*, 511 U.S. 809 (1994). However, courts have allowed that while CERCLA does not permit equitable defenses to § 107 liability, equitable factors may be considered in the allocation

of contribution shares. *See Franklin County Convention Facilities Auth. v. Am. Premier Underwriters, Inc.*, 240 F.3d 534, 549 (6th Cir. 2001); *Town of Munster, Ind. v. Sherwin-Williams Co.,* 27 F.3d 1268, 1270-71 (7th Cir. 1994); *Smith Land & Imp. Corp. v. Celotex Corp.*, 851 F.2d 86, 90 (3d Cir. 1988) (concluding that under CERCLA the doctrine of caveat emptor is not a defense to liability for contribution but may be considered in mitigation of the amount due), *cert. denied*, 488 U.S. 1029 (1989).

The parties and the Court are in agreement that the non-statutory defenses plead and enumerated by American Linen can do nothing to avert a possible finding of American Linen's liability, despite the fact that some are alleged to "bar" Plaintiffs' claims; the relevance of these defenses is limited to apportionment of contribution shares. *See* Doc. 500 at 26-28 (admitting that American Linen's non-statutory defenses bear only upon apportionment of costs). It is not unusual for defendants to plead defenses that pertain to damages as well as those applicable to liability. And, the Court agrees with American Linen that Plaintiffs are not prejudiced by these averments because they require no response from Plaintiffs.

Accordingly, the court will deny Plaintiffs' motion to strike affirmative defenses under Rule 12(f) with the understanding that the non-statutory defenses cannot be used to avoid liability.

## II.    American Linen's Counterclaims Against Plaintiffs City and County

American Linen has pled six counterclaims against the City of Las Cruces and one counterclaim against Dona Ana County. All of the counterclaims are for contribution to response costs under CERCLA's § 9613(f), and all ask the Court to apportion zero percent of liability for those costs to American Linen.

A.    **Legal Standard**

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Ashcroft v. Iqbal*, the Supreme Court articulated the pleading standard of Rule 8 as follows:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

556 U.S. 662, 678 (2009) (citations omitted). "To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must first comply with Rule 8(a)(2)" *Carroll v. Lamour*, Case No. 20-10879, 2021 WL 1207359, at *2 (E.D. Mich. Mar. 31, 2021). *See also Tartt v. Magna Health Sys.*, No. 13-CV-8191, 2016 WL 6585281, at *4 (N.D. Ill. Nov. 7, 2016), *aff'd*, 2017 WL 4772538 (7th Cir. Feb. 14, 2017) (noting that "[t]o avoid dismissal for failure to state a claim upon which relief can be granted under Rule 12(b)(6), a complaint must first comply with Rule 8(a)"). "Rule 8 serves the important purpose of requiring plaintiffs to state their claims intelligibly so as to inform the defendants of the legal claims being asserted." *Mann v. Boatright*, 477 F.3d 1140, 1147 (10th Cir. 2007). "'Something labeled a complaint but written more as a press release, prolix in evidentiary detail, yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint.'" *Id*. at 1148 (quoting *McHenry v. Renne*, 84 F.3d 1172, 1180 (9th Cir. 1996)).

B.    <u>Analysis</u>

Plaintiffs argue that American Linen's counterclaims violate Rule 8's requirement that a pleader set forth a short, plain statement to state a claim. The Court agrees.[2] American Linen's counterclaims are unnecessarily wordy and detailed. They contain lengthy, highly detailed quotations from EPA Administrative Orders, as well as from reports written by remediation contractors and environmental consultants. The quotations and summaries from these reports and findings go on for many pages; they read more like an argument than a short, plain statement of facts that form the basis for American Linen's request for relief. Most of that information could be summarized in a way that complies with Rule 8(a).

American Linen's counsel are skilled and experienced; the Court is confident that they can prepare counterclaims that satisfy Rule 8(a) and well as Rule 12(b). Accordingly, Plaintiffs' motion to dismiss will be granted, but the Court gives American Linen leave to file amended counterclaims no later than 14 days after entry of this Memorandum Opinion and Order.

III.    **American Linen's Third-Party Claims Against Villanueva and Jasso**

American Linen alleges that Jesus Villanueva, who died in 2016, owned and operated a pumper truck company called "Chuy's Septic Tank Service." Doc. 479 at 60, ¶ 3. Impleader defendant Bertha Villanueva is Jesus Villanueva's widow. The parties appear to agree that American Linen hired Jesus Villanueva and his company to haul waste away from American Linen's Main Street Facility in his pumper truck, though American Linen does not allege that fact specifically in its third-party complaint. It does allege that there was no formal contract

---

[2] The Court does not agree with Plaintiffs' contention that American Linen's counterclaim is a shotgun pleading merely because at the beginning of each count, it incorporates by reference all the preceding paragraphs of the counterclaim. As American Linen correctly notes, this is a common pleading practice in the District of New Mexico.

between it and Villanueva, and that owners and managers at American Linen had no knowledge of Villanueva's unlawful disposal practices. *Id*. at 62, ¶ 15. Finally, American Linen alleges that Villanueva disposed of materials containing PCE at the Las Cruces Flood Control Dam. Doc. 479 at 61, ¶ 8. It asserts a claim for transporter liability against Bertha Villanueva both individually and on behalf of the Estate of Jesus Villanueva (*see* caption, Doc. 479 at 1).

As to Victor Jasso, its former employee, American Linen alleges that he assisted Jesus Villanueva in the disposal of materials containing PCE at the Las Cruces Flood Control Dam on two occasions in 1982. Doc. 479 at 61, ¶¶ 8-9. Jasso was at home on his day off, not on duty as an American Linen employee, when Villanueva picked Jasso up in his pumper truck. *Id*. at 62, ¶¶ 4, 17. It alleges that the two people who made the decision to dispose of the contaminants at the dam were Villanueva and Jasso. *Id*. at ¶ 21.

### A.    Plaintiffs' Standing to Move to Strike or Dismiss Claims <u>Against Villanueva and Jasso</u>

As an initial matter, American Linen argues that Plaintiffs lack standing to ask the Court to strike or dismiss claims against Villanueva and Jasso without demonstrating that they have Plaintiffs consent to do so on their behalf. However, Rule 14, which governs third-party claims, is clear: "*Any party* may move to strike the third-party claim, to sever it, or to try it separately." Fed. R. Civ. P. 14(a)(4) (emphasis added). This provision has been explained by the Advisory Committee on the 1963 amendment to Rule 14(a) as an indication of the court's power to strike a third-party claim "if it is obviously unmeritorious and can only delay or prejudice the disposition of plaintiff's claim." *See* Advisory Committee Note on the 1963 Amendment to Rule 14(a). *See also* Wright & Miller, 6 Fed. Prac. & Proc. § 1460 (3d ed. April 2022 update) ("Rule 14 also permits any party to move to strike the third-party claim.").

In that vein, courts considering the issue have allowed plaintiffs to move to dismiss third party claims on grounds that a plaintiff has an interest in seeing its claims fairly and promptly adjudicated. *See, e.g., Cantu v. Flanigan*, No. CV-05-3580, 2006 WL 8440242 at *5 (E.D.N.Y. May 24, 2006); *Perez Cruz v. Fernandez Martinez*, 551 F. Supp. 794, 799 (D.P.R. 1982) ("Plaintiffs' interest in the expedient resolution of their claims, however, is sufficient to give them standing" to contest third-party complaint). Further, "[a]lthough Rule 14(a) has never expressly provided for a motion to dismiss third-party claims, the federal courts have entertained both motions to dismiss and to strike and have not drawn distinctions between them." Wright & Miller, Fed. Prac. & Proc. § 1460 (citing *Zurich American Ins. v. Lord Elec. Co. of Puerto Rico*, 828 F. Supp. 2d 462, 467 (D.P.R. 2011)). Thus, Rule 14 permits Plaintiffs to move to strike or dismiss the third-party claims.

American Linen cites several cases to dispute Plaintiffs' standing to challenge the third-party claims. However, none of them are Rule 14 interpleader cases and therefore they are distinguishable and unpersuasive; Rule 14 expressly allows Plaintiffs to file their motion to dismiss or strike third party claims. Accordingly, the Court concludes that Plaintiffs do have standing under Rule 14 to challenge American Linen's third-party claims.

### B.   American Linen's Prior Representations Regarding Additional Claims

Plaintiffs argue that American Linen's third-party claims should be stricken because American Linen previously promised the Court that it would not "file materially new crossclaims or counterclaims." *See* Doc. 487 at 19. Plaintiffs assert that American Linen made this representation at the February 18, 2021, Rule 16 Scheduling Conference conducted by U.S. Magistrate Judge Wormuth. The clerk's minutes [Doc. 318], which are the only record of that proceeding, state:

> The Court asked American Linen whether it intended to file materially new crossclaims/counterclaims if the Court denied its MTD. [Counsel for American Linen] explained that American Linen did not intend to file materially new crossclaims or counterclaims, so new discovery would only be needed on the arranger claim in Plaintiffs' Second Amended Complaint.

Doc. 318 at 2. Thus, it appears that the parties and the court did not discuss the prospect of third-party claims. Plaintiffs argue that the third-party claims will require discovery beyond what the parties discussed with the court at the hearing and that it is unfair to add third parties at this late stage of the litigation.

In response, American Linen contends that Plaintiffs were themselves years late in bringing their arranger claims to the case that they unfairly repudiated the parties' discovery agreement relating to the arranger claims. It also asserts that after the Rule 16 Scheduling Conference it obtained evidence in support of its third-party claims that it did not have at the time of the hearing.

On the record currently before it, the Court concludes that American Linen did not break a promise to the Court. The discussion at the Rule 16 Scheduling Conference did not relate to third-party claims, only to counterclaims and cross claims. Therefore, American Linen's representations at the conference do no constitute grounds to strike its third-party claims.

## C.    Liability of Bertha Villanueva Individually As A Transporter

CERCLA imposes liability for cleanup costs on a "transporter" of a hazardous substance. A transporter is "any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person . . ." 42 U.S.C.A. § 9607(a)(4).

There are no allegations that Bertha Villanueva was in any way personally involved with transporting any hazardous substance. Thus, any claims against her in her individual capacity

must be dismissed. This leaves only the possibility of claim against her as spouse and representative of the community property estate she shared with Jesus Villanueva.

American Linen argues that New Mexico is a community property state and that Jesus Villanueva's dumping of waste is a community tort for which the community property estate remains liable after his death. Noting that sole proprietors like Jesus Villanueva may be held liable under CERCLA, American Linen contends that CERCLA liability should be imputed to Villanueva's community property estate. American Linen further argues that creditors of community debt have standing to bring actions against a community property estate because "community debts remain the joint obligation of both parties upon the death of one spouse" and therefore surviving spouses are individually liable for community debts. Doc. 500 at 5 (quoting *Asprey v. Raabe-Asprey*, No. 29,216, 2009 WL 6677931, at *2 (N.M. Ct. App. May 6, 2009) (finding wife, as representative of the community property estate, responsible for repaying loan taken out by husband during the marriage).[3] However, *Asprey* did not address the specific question of whether a liability one spouse has incurred as a transporter or other potentially responsible party ("PRP") under CERCLA could become a community debt.

Some courts have imposed CERCLA liability on those who have inherited from potentially responsible parties. For example, in *United States v. Martell*, 887 F. Supp. 1183, 1188 (N.D. Ind. 1995), a former operator of a chemical waste disposal facility died during the pendency of a CERCLA action. The *Martell* court found that his estate could be held liable for CERCLA expenses under the "trust fund" approach, since the estate never would have had access to certain assets if the operator had lived and been made to pay response costs. *Id*. *See*

---

[3] The *Asprey* court also notes that while a surviving spouse may be individually liable for the community debt, satisfaction of the debt is limited to only those assets which constitute community property. 2009 WL 6677931, at *2.

*also Soo Line R. Co. v. B.J. Carney & Co.*, 797 F. Supp. 1472, 1484 (D. Minn. 1992) (denying motion to dismiss by estate of corporation's deceased former president, stating, "property received by inheritance is not automatically excluded from CERCLA liability.").

On the other hand, more recently courts have concluded that those who inherit from PRPs under CERCLA should not be held liable. Plaintiffs cite *Wells Fargo Bank, N.A. v. Renz*, 795 F. Supp. 2d 898, 917 (N.D. Cal. 2011). In that case, the plaintiff argued that an alleged polluter's wife was a "covered person" under CERCLA because her deceased husband's dry-cleaning business was "presumed to be a community property business" and she was liable by virtue of having shared in the profits of the business. The court declined to impose liability in the absence of any legal authority that the wife was herself a PRP, noting that the "relevant question for determining operator liability is whether the defendant played an active role in running the facility." *Id.* at 917. *See also Chesapeake & Potomac Tel. Co. v. Peck Iron & Metal Co.*, 814 F. Supp. 1285 (E.D. Va. 1993) (fully disseminated and closed estates of polluters whose beneficiaries do not remain involved in decedent's activities which gave rise to CERCLA liability are not responsible for cleanup costs); *Norfolk S. Ry. Co. v. Shulimson Bros. Co.*, 1 F. Supp. 2d 553 (W.D.N.C. 1998) (heirs of deceased partners in polluting scrap metal business were not liable under CERCLA where the estates were administered and closed under state law, and no heir was involved in operation of the business). These district court decisions suggest that Bertha Villanueva cannot be held liable, as there are no allegations that she participated in transporting any hazardous substance.

At least one circuit court of appeals has rejected American Linen's argument. In *ASARCO, LLC v. Goodwin*, 756 F.3d 191 (2d Cir. 2014), ASARCO tried to persuade the court that a decedent's personal liability under CERCLA should transfer to those who benefit from the

decedent's estate pursuant to the "trust fund doctrine." *Id.* at 199. The Second Circuit rejected that logic, noting that "where federal statutory regulation is comprehensive and detailed, as CERCLA is, we presume that matters left unaddressed are left subject to the disposition provided by state law." *Id.* (quoting *Price Trucking Corp. v. Norampac Indus.*, 748 F.3d 75, 84 (2d Cir. 2014) (internal quotation marks omitted)). Because Congress has not included within CERCLA a scheme for imposing liability on a spouse who is a beneficiary of the marital estate, the reasoning in *Goodwin* would preclude American Linen's claim against the Villanueva estate.

The weight of authority suggests that CERCLA does not extend to impose liability upon the community property estate of a PRP after the PRP's death—particularly where, as here, the surviving beneficiary of that estate (Bertha) did not participate in the unlawful activity. Ultimately, however, this Court need not decide whether American Linen may go after the Villanuevas' community property estate, because even if the estate is legally responsible for any CERCLA liability incurred by Jesus' business during the marriage, New Mexico's non-claim statute bars American Linen's third-party claim. This issue is further discussed, *infra*.

### D.  Effect of New Mexico's "Non-Claim" Statute, § 45-3-803

Plaintiffs argue that if American Linen's claims arose before Jesus Villanueva's death in 2016, then American Linen's third-party claims against Jesus Villanueva's estate are time barred by N.M. Stat. Ann. § 45-3-803(A)(1), the "non-claim statute of limitations," which sets a one-year limitations period for claims against a decedent's estate if the claim arose *before* the decedent's death:

> All claims against a decedent's estate that arose before the death of the decedent, …, whether due or to become due, absolute or contingent, liquidated or unliquidated or founded on contract, tort or other legal basis, if not barred earlier by another statute of limitations or nonclaim statute, are barred against the estate, the personal representative and the heirs, devisees and nonprobate transferees of

the decedent unless presented within the earlier of the following: (1) one year
after the decedent's death …

Alternatively, § 45-3-803(C)(2) of the non-claim statute provides that if a claim arises *after* the
decedent's death, a claimant has only four months after his demise to assert its claim. Here, it is
alleged that Jesus Villanueva passed away in 2016, so American Linen's claim against his
estate—which it asserted in 2022—would be untimely regardless of which section of the statute
applies.

However, the New Mexico statute removes the time constraints for claims against those
with applicable insurance coverage. It permits "to the limits of the insurance protection only, a
proceeding to establish liability of the decedent or the personal representative for which the
decedent or personal representative is protected by liability insurance." N.M. Stat. Ann. § 45-3-
803(D)(2).

American Linen argues that New Mexico's non-claim statute does not bar its claims
against the Villanueva estate or two reasons. First, it contends that CERCLA preempts the New
Mexico non-claim statute. Second, it argues that even if the non-claim statute is not preempted,
the statute's exception for claims covered by insurance applies. The Court does not agree with
either proposition.

### 1.    Preemption

American Linen argues that its claim against the Villanueva estate is not time-barred
because CERCLA preempts New Mexico's non-claim statute, N.M. Stat. Ann. § 45-3-803. The
Court disagrees because, as explained below, § 45-3-803 is a statute of repose that is not
preempted by § 9613(g) of CERCLA.

In *CTS Corp. v. Waldburger*, 573 U.S. 1 (2014), the Supreme Court examined whether CERCLA's § 9658 preempted a North Carolina statute of repose applicable to tort actions. *Id*. at 3-4, 12. That section of CERCLA imposes a statute of limitations that begins to run when a plaintiff discovers, or reasonably should have discovered, that the harm in question was caused by a "contaminant." *Id*. at 4. The North Carolina statute, in contrast, prohibits tort claims brought more than ten years after the last culpable act of the defendant. *Id*. at 6. Ultimately, the Supreme Court concluded that the answer turned on whether § 9658 preempts state statutes of repose as well as statutes of limitations. *Id* at 7.

The *Waldburger* Court began with an explanation of the difference between statutes of limitations and statutes of repose. A statute of limitations creates a time limit for suing in a civil case based on the date when the claim accrued, which is typically when the injury occurred or was discovered. *Id*. at 7-8. On the other hand, a statute of repose places an outer limit on the right to sue starting not when the claim accrued, but rather from the date of the defendant's last culpable act or omission, even if that period ends before the plaintiff has discovered or even suffered an injury. *Id*. at 8. Both types of statutes encourage plaintiffs to diligently pursue known claims, but statues of repose "effect a legislative judgment that a defendant should be free from liability after the legislatively determined period of time." *Id*. at 9 (citation and quotation omitted).

As explained in *Waldburger*, because N.M. Stat. Ann. § 45-3-803 provides that a defendant may not be sued more than one year after his or her death, its limitation on actions is not triggered by when a claim accrues or when a plaintiff has notice of a claim. Thus, it is a statute of repose rather than a statute of limitations.

To determine whether CERCLA's § 9613(g) preempts the New Mexico non-claim statute, which is a statute of repose, the Court must ascertain the intent of Congress. *Cal. Fed. Sav. & Loan Ass'n v. Guerra*, 479 U.S. 272, 280 (1987). Under *Guerra*, congressional intent is demonstrated (1) where Congress expressly states its intent to preempt; (2) where Congress's scheme of federal regulation is sufficiently comprehensive to give rise to a reasonable inference that it leaves no room for the state to act; and (3) where state law actually conflicts with federal law. *Id*. at 280-81.

(a) <u>Expressed Intent</u>

The Court must determine whether in enacting § 9613(g) Congress expressed an intent to preempt state statutes of repose like § 45-3-803. *Waldburger* is not directly on point because in that case, the Supreme Court examined the congressional intent behind Section § 9658 of CERCLA, which is not at issue in this case. Rather, what is at issue is the statute of limitations for recovery of costs and contribution under Sections 9613(g)(2) and (3). However, *Waldburger's* analytical framework is instructive.

The *Waldburger* Court conducted a thorough analysis of § 9658, including its language providing that state law applies unless explicitly excepted. *See* § 9658(a)(2) ("Except as provided in paragraph (1), the statute of limitations established under State law shall apply in all actions brought under State law for personal injury . . ."). Therefore, it concluded that § 9658 preempts a state law only when its express language sets forth an exception to § 9658's general rule that state law applies. *Id*. at 12-13. Second, the Court pointed out the federal statute's repeated use of the phrase "statute of limitations," and the absence of the phrase "statute of repose" as lack of Congressional intent to preempt state statutes of repose. *Id*. at 13-17. Third, the Court noted that § 9658 provides for equitable tolling for minor and incompetent plaintiffs. This supports the

15

conclusion that § 9658 does not preempt statutes of repose, which cannot be delayed by estoppel or tolling. *Id*. at 17.

Here, Section 9613(g) lacks some of the indicia of Congressional intent present in Section 9658. On one hand, Section 9613(g) does not explicitly state that it preempts state statutes of repose, and it contains no express provision that state law applies except where otherwise provided in the statute. Further, § 9613(g) does not use the phrase "statute of limitations," nor does it use "statute of repose." Therefore, neither of these criteria used in *Waldburger* applies here, and neither sheds light on the intent of Congress. However, § 9613(g) does provide for equitable tolling of limitations periods for minor and incompetent plaintiffs—a mechanism that applies to statutes of limitations only, not to statutes of repose. In *Waldburger*, the Supreme Court found this to be an "unambiguous textual indication" against preemption. *Id*. at 17. Therefore, this feature of § 9613(g) suggests a lack of intent to preempt state statutes of repose. *See* U.S.C. § 9613(g)(6) (setting forth a tolling of time limitations for minors and incompetents); *Waldburger*, 573 U.S. at 17 ("It would be odd for Congress, if it did seek to pre-empt statutes of repose, to pre-empt not just the commencement date of statutes of repose but also state law prohibiting tolling of statutes of repose—all without an express indication that § 9658 was intended to reach the latter."). In the absence of any other indication of Congress' intent, the express language of § 9613(g) strongly suggests that the state statute of repose is not preempted. This is particularly true in light of the presumption against preemption: "Because the States are independent sovereigns in our federal system, the Court assumes that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Id*. at 18-19 (citations and quotations omitted).

(b) <u>Comprehensiveness</u>

Under *Guerra*, the court must next consider whether CERCLA's regulatory scheme is sufficiently comprehensive to give rise to a reasonable inference that it leaves no room for regulation by the states.

On one hand, CERCLA imposes wide-ranging liability in an effort to promote cleanup of hazardous waste at the expense of those responsible for the contamination. *Marsh v. Rosenbloom*, 499 F.3d 165, 178. (2d Cir. 2007). On the other, the *Waldburger* Court noted that CERCLA is not a complete remedial framework, but rather leaves to state law "judgments about causes of action, the scope of liability, the duration of the period provided by statutes of limitations, burdens of proof, rules of evidence, and other important rules governing civil actions." 573 U.S. at 18. Finally, the *Waldburger* Court discussed the public policy disfavoring preemption, which is "consistent with both federalism concerns and the historic primacy of state regulation of matters of health and safety." *Id*. at 19 (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)). Based on the foregoing, the Supreme Court concluded that § 9658 of CERCLA did not preempt state statutes of repose. *Id. See also Burlington Northern & Santa Fe Ry. Co. v. Poole Chem. Co., Inc*., 419 F.3d 355, 362-64 (5th Cir. 2005) ("the reach of the plain language of § 9658 does not extend to statutes of repose").

*Waldburger*'s reasoning applies with equal force here. CERCLA is not a complete remedial framework. The Court concludes that CERCLA is not so comprehensive that it would preempt state statutes limiting claims against the estates of deceased persons.

(c) <u>Conflict between state and federal law</u>

The Court turns to the third preemption scenario: whether New Mexico law actually conflicts with CERCLA. An actual conflict between state and federal law exists when

"compliance with both federal and state regulations is a physical impossibility," *Guerra*, 479 U.S. at 281 (quoting *Fla. Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142-43 (1963)), or when state law is "an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," *Guerra*, 479 U.S. at 281 (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67, (1941)).

It is not physically impossible to comply with the limitations periods enumerated in CERCLA's § 9613(g) as well as with New Mexico's statute of repose. As long as a CERCLA plaintiff files its claim within either one year or four months of a putative defendant's death (depending on when the claim accrued relative to the death), it also may meet the limitations period enumerated in § 9613(g). The fact that a CERCLA plaintiff "might find it impossible to comply with both statutes in some circumstances is not enough to establish an actual conflict between the two" statutes. *Marsh v. Rosenbloom*, 499 F.3d 165, 178 (2d Cir. 2007). Furthermore, much like the Delaware law in *Marsh*, the New Mexico statute of repose is not an obstacle to the accomplishment of CERCLA's objectives. *See id.* at 178-79. "CERCLA recognizes … that recovery will not always be possible and manifests no intent that funds that once belonged to a party responsible for contamination should be frozen indefinitely or traced infinitely." *Id.* at 179.

Finally, public policy does not suggest a finding of preemption. Absent clear congressional intent to the contrary, federal preemption of state law is not favored. *See English v. Gen Elec. Co.*, 496 U.S. 72, 79. (1990). This is especially true in areas of law traditionally occupied by the states. *Id.* Probate law—which is implicated by New Mexico's non-claim statute—is one of those areas. *Witco Corp. v. Beekhuis*, 38 F.3d 682, 689 (3d Cir. 1994) ("Long-standing precedent recognizes that federal claims against decedents' estates are subject to state probate laws and procedures, unless federal law specifically provides otherwise.") (citing *Pufahl*

*v. Estate of Parks*, 299 U.S. 217, 225 (1936) and *Forrest v. Jack*, 294 U.S. 158, 162-63 (1935)).

New Mexico's § 45-3-803 prohibits claims against a decedent's estate after an established period

of time. The chief aim of the New Mexico statute is "the speedy administration and closing" of a

decedents' estates. *Levers v. Houston*, 49 N.M. 169, 178 (1945). Accordingly, the Court finds

there is no conflict between CERCLA and the New Mexico statute that would justify

preemption, particularly in the area of probate law.

### (d) Decisions from other courts

The clear weight of authority from federal courts is to find that CERCLA does not

preempt state statutes of repose similar to N.M. Stat. Ann. § 45-3-803. *See, e.g., Marsh v.

Rosenbloom*, 499 F.3d 165, 177-180 (2d Cir. 2007) (finding that CERCLA's § 9613(g) does not

preempt Delaware statute prohibiting lawsuits against defunct corporations after a three-year

windup period, observing that the field of corporate law is traditionally occupied by the states

and that it was possible in some instances to comply with both CERCLA and the Delaware

statute); *Louisiana-Pacific Corp. v. ASARCO, Inc.*, 5 F.3d 431 (9th Cir. 1993) (finding that

CERCLA's § 9613(g) did not preempt Washington statute which prescribed time within which a

dissolved corporation retained its capacity to be sued). In *Witco Corp. v. Beekhuis*, 38 F.3d 682,

688 (3d Cir. 1994), the Third Circuit addressed the question of whether CERCLA's § 9613(g)(3)

limitation period of three years for contribution claims pre-empted the Delaware non-claim

statute, which provided that all claims against a decedent's estate must be brought within eight

months of the decedent's death. The Court concluded that CERCLA did not preempt the non-

claim statute because there was no actual conflict—that is, it was physically possible for a

CERCLA claimant to file within the three-year CERCLA § 9613(g) limitations period and eight-

month period established by Delaware nonclaim statute governing administration of decedents' estates.

In contrast, American Linen relies on *Freidenberg-NOK Gen. P'ship v. Thomopoulos*, No. C91-297-L, 1991 WL 325290 (D.N.H. Dec. 9, 1991), an unpublished district court case that predates *Waldburger Marsh*, and *Witco*. Although *Thomopoulos* did conclude that CERCLA preempted New Hampshire's state non-claim statute, 1991 WL 325290 at *3-4, its reasoning has been overtaken by that of the Supreme Court in both *Waldburger* and *O'Melveny & Myers v. FDIC*, 512 U.S. 79, 88 (1994). In *O'Melveny*, the Court held that "there is no federal policy that the fund should always win," and "'more money' arguments" alone are insufficient to justify displacement of state law. *Id*. at 88 (discussing interplay of state and federal law in the context of the Financial Institutions Reform, Recovery, and Enforcement Act). Accordingly, this Court concludes that CERCLA does not preempt N.M. Stat. Ann. § 45-3-803.

### 2. Insurance Exception

American Linen employs a second argument to avoid the application of the statute of repose embodied in N.M. Stat. Ann. § 45-3-803: it assumes that Jesus Villanueva must have had liability insurance for his small business in 1982, when American Linen alleges that he transported and illegally dumped materials containing PCE. Based on this assumption, American Linen contends that it should be permitted to sue his estate for the limits of that insurance pursuant to N.M. Stat. Ann. § 45-3-803(D)(2).

As Plaintiffs point out, American Linen's third-party complaint is devoid of any allegation that Villanueva carried commercial liability insurance for his sole proprietorship forty years ago. In light of the lack of allegations regarding whether Villanueva had liability insurance to cover the claim, Plaintiffs argue that American Linen's claims against Villanueva's estate are

time barred regardless of whether the four-month or one-year limitations period applies. In response, American Linen admits that it has not alleged any facts regarding Villanueva's insurance coverage but contends that it is "reasonable to infer that Villanueva had some form of commercial general liability insurance for his business," [Doc. 500 at 10]. American Linen asserts that although it has not pled as much, it should be given the benefit of the doubt because it pled a sort of catch-all allegation—that "all conditions precedent" for its claims against Villanueva have been met.

Unfortunately for American Linen, its statement that it has met "all conditions precedent" is conclusory and lacks an adequate factual foundation. "[A] claim is facially plausible if the plaintiff has pled 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *George v. Urban Settlement Servs*., 833 F.3d 1242, 1247 (10th Cir. 2016) (quoting *Hogan v. Winder*, 762 F.3d 1096, 1104 (10th Cir. 2014)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility" that a defendant is liable to the plaintiff. *Ashcraft v. Iqbal*, 556 U.S. 662, 678 (2009). The lack of facts pled here, far from allowing the Court to draw a reasonable inference, raises merely the "sheer possibility" that there is an applicable insurance policy and that the insurance exception to the non-claim statute applies.

In light of the lack of factual allegations to support application of § 45-3-803(D)(2)'s insurance exception, American Linen's claims against Ms. Villanueva on behalf of Jesus Villanueva's estate are barred by the non-claim statute and will be dismissed.

**E.**   **Liability of Victor Jasso Individually As A Transporter**

   *1.   Allegations and Evidence to Be Considered*

Both parties agree that this motion to dismiss should not be converted to one for summary judgment. Doc. 487 at 15 n.10; Doc. 500 at 11. They also agree that the Court may consider Victor Jasso's deposition transcripts without converting the motion to one under Rule 56; indeed, both parties cite them and appear to concur in their authenticity. Docs. 487-1, 500-3, and 500-7. Finally, on at least one prior occasion the Court has used Jasso's deposition transcript in deciding a motion to dismiss with the agreement of the parties. See Doc. 475 at 3 n.2. Accordingly, the Court considers Jasso's deposition but analyzes the motion under Rule 12(b)(6).

In American Linen's third-party complaint against Jasso for transporter liability, it alleges that Victor Jasso (its former employee) assisted Jesus Villanueva in the disposal of materials containing PCE at the Las Cruces Flood Control Dam on two occasions in 1982. Doc. 479 at 61, ¶¶ 8-9. It alleges that Jasso was at home on his day off, not on duty as an American Linen employee, when Villanueva picked Jasso up in his pumper truck. *Id*. at 62, ¶¶ 14, 17. It alleges (in rather conclusory fashion, given the testimony from Jasso discussed below) that the two people who made the decision to dispose of the contaminants at the dam were Villanueva and Jasso. *Id*. at ¶ 21.

The testimony from Jasso's deposition that is relevant to alleged transporter liability is as follows. On two occasions, Villanueva stopped by Jasso's house because Jasso lived just two and a half blocks from American Linen. Jasso Depo., 3/22/2019, Doc. 487-1 at 4 of 10. On those occasions, Villanueva asked Jasso if he wanted to take a ride with Villanueva. *Id*. at 5 of 10. The two went to the dam, and Villanueva emptied out the contents of the tank of his pumper truck.

*Id*. at 5 of 10. When asked whether he and Villanueva discussed the decision to take the waste to the dam or somewhere else, Jasso replied, "No, that was his job. He knew what he was doing. You know, I figured that was him. You know, I just went along for the ride because he stopped at my house and asked me if I wanted to tag along." *Id*. at 8-9 of 10.

2.   <em>Requirements for Transporter Liability</em>

Transporter liability arises when "any person accepts ... any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites *selected by such person*, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance." 42 U.S.C. § 9607(a)(4) (emphasis added).

CERCLA does not define the meaning of "accept," and there appear to be a dearth of cases discussing the issue. Interestingly, this Court recently addressed the meaning of that word in the context of CERCLA liability in *In re Gold King Mine Release in San Juan County, Colo., on Aug. 5, 2015*, 2022 WL 17093503 (D.N.M. Nov. 21, 2022) (Johnson, C.J.). At issue in that case was whether a party "accepted" a hazardous substance. The *Gold King* court cited with approval the plain meaning of the term "accept" as defined by the Merriam-Webster dictionary: "to be able or designed to take or hold (something supplied or added)." *Id*. at *2. This Court sees no reason to depart from this dictionary definition and will apply it in this case.

The term "transport" "means the movement of a hazardous substance by any mode." 42 U.S.C. § 9601(26). Furthermore, the Tenth Circuit has expressly noted that "transporter liability is predicated on site selection by the transporter." *U.S. v. Hardage*, 985 F.2d 1427, 1435 (10th Cir. 1993). However, some courts outside the Tenth Circuit have broadened transporter liability to those who have had substantial input into site selection. *See, e.g., Tippins Inc. v. USX Corp*., 37 F.3d 87, 94 (3rd Cir. 1994) (stating that "a person is liable as a transporter not only if it

ultimately selects the disposal facility, but also when it actively participates in the disposal decision to the extent of having had substantial input into which facility was ultimately chosen."). *U.S. v. USX Corp.*, 68 F.3d 811, 820 (3rd Cir. 1995) ("Liability as a 'transporter' is established by showing that a person accepted hazardous substances for transport and either selected the disposal facility or had substantial input into deciding where the hazardous substance should be disposed.").

Therefore, in order to survive a motion to dismiss, American Linen must successfully plead facts to show that Victor Jasso both "accepted" a hazardous substance for transport and that at a minimum he had substantial input into deciding where to dispose of the materials in Villanueva's pumper truck.

### 3.    Analysis

The Court concludes that American Linen's third-party complaint fails to state a claim for transporter liability against Jasso. First, American Linen alleges no facts to support the inference that Jasso "accepted" a hazardous substance. According to the third-party complaint as well as Jasso's testimony, Villanueva was the owner of the pumper truck containing the PCE. He drove to Jasso's home and invited Jasso to go for a ride with him on a Saturday while Jasso was off duty from work. There are no facts to suggest that Jasso did or would have been able to take Villanueva's truck or its contents from Villanueva or to "hold" them or exercise control over them in any meaningful sense. Thus, the facts do not suggest a reasonable inference that Jasso accepted a hazardous substance for transport.

Second, the third-party complaint does not plead facts to show that Jasso either selected the dam as a disposal site or had substantial input into deciding on that location. The facts pled demonstrate that essentially Villanueva showed up at Jasso's home on a lark and asked him to go

for a ride. Jasso testified that it was Villanueva, not him, who chose the dam as a disposal site because "that was his job" and "he knew what he was doing," whereas Jasso was just "tagging along." True, American Linen has alleged that the two people who made the decision to dispose of the contaminants at the dam were Villanueva and Jasso. But in this case, that allegation is a legal conclusion. It is not supported by alleged facts. The facts that are in the record—American Linen's factual allegations combined with Jasso's deposition testimony—do not support a reasonable inference that Jasso participated in site selection.

Therefore, the Plaintiffs' motion to dismiss the transporter claim against Jasso will be granted.

### F.    Allegations of Harassment and Intimidation of Witnesses

Having concluded that the third-party claims against Bertha Villanueva and Victor Jasso should be dismissed, the Court will not reach Plaintiffs' arguments regarding harassment and intimidation of witness, as those arguments are now moot.

**IT IS THEREFORE ORDERED** that *Plaintiffs' Motion to Dismiss Counterclaims, Third-Party Claims, and to Strike Affirmative Defenses Contained in American Linen's Second Answer* [Doc. 487] is **GRANTED IN PART** and **DENIED IN PART** as follows:

(1)    the Court will deny Plaintiffs' motion to strike affirmative defenses under Rule 12(f) with the understanding that the non-statutory defenses are relevant to apportionment of damages only, not to liability;

(2)    Plaintiffs' motion to dismiss American Linen's counterclaims is granted, but the Court gives American Linen leave to file amended counterclaims no later than 14 days after entry of this Memorandum Opinion and Order;

(3)     Plaintiffs' motion to dismiss American Linen's third-party claims against Bertha Villanueva in her individual capacity and on behalf of the estate of Jesus Villanueva is granted; and,

(4)     Plaintiffs' motion to dismiss American Linen's third-party claims against Victor Jasso is granted.


_____
SENIOR UNITED STATES DISTRICT JUDGE