# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

CITY OF LAS CRUCES, *et al.*,

      Plaintiffs/Counterclaim Defendants,

v.                                        Civ. No. 17-809 JCH/GBW

THE LOFTS AT ALAMEDA, LLC; AMERICAN LINEN
SUPPLY OF NEW MEXICO, INC.; RAWSON LEASING
LIMITED LIABILITY CO.; and CHISHOLM'S-VILLAGE
PLAZA, LLC,

      Defendants/Counterclaimant,

and

AMERICAN LINEN SUPPLY OF NEW MEXICO, INC.

      Crossclaimant,

v.

THE LOFTS AT ALAMEDA, LLC; RAWSON LEASING
LIMITED LIABILITY CO.; and CHISHOLM'S-VILLAGE
PLAZA, LLC,

      Crossclaim-Defendants,

and

AMERICAN LINEN SUPPLY OF NEW MEXICO, INC.

      Third-Party Plaintiff,

v.

ESTATE OF JESUS TERESO VILLANUEVA, SR., deceased,
BERTHA VILLANUEVA, individually and o/b/o ESTATE
OF JESUS TERESO VILLANUEVA, SR., and VICTOR A.
JASSO,

      Third-Party Defendants.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER comes before the undersigned pursuant to the Honorable Judge Herrera's order of reference regarding the appropriate remedy for the hearsay in James Bearzi's June 3, 2019, report and untimeliness of the August 4, 2020, rebuttal report, *doc. 514*, and pursuant to Defendant American Linen's Motion of American Linen to Designate Substitute Expert Witness and Amend Expert Disclosures Pursuant to Fed. R. Civ. P. 16(b) and 26(a)(2)) ("Motion to Substitute"), *doc. 522*.  Having reviewed the supplemental briefing submitted by the parties on the appropriate remedy for the expert report hearsay, *docs. 519*, *520*, as well as the Motion to Substitute and its attendant briefings and exhibits, *docs. 522, 534, 536, 543, 544*, having conducted a hearing on these issues, *see doc. 557*, and being otherwise fully advised in the premises, I RECOMMEND that the Court: (1) DENY American Linen's Motion to Substitute (*doc. 522*); and (2) ADOPT Plaintiffs' requested remedy of striking Mr. Bearzi's June 3, 2019, and August 4, 2020, reports and preventing Mr. Bearzi from testifying at trial as to those reports.

I.    **FACTUAL AND PROCEDURAL BACKGROUND**

A.  **Litigation Overview**

Plaintiffs City of Las Cruces and Doña Ana County bring suit under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601 *et seq.* ("CERCLA"), seeking recovery for and contribution to response costs associated with the remediation of a hazardous waste site in Las Cruces, New Mexico.

*See generally docs. 79, 306*.  In 2018, Plaintiffs filed their first amended complaint which brought owner/operator and contribution claims against several Defendants, including Defendant American Linen ("American Linen").  *See doc. 79* at ¶¶ 20-25, 57, 65.  In February 2021, Plaintiffs filed a second amended complaint in which Plaintiffs asserted a new theory of liability against American Linen as an "arranger" for disposal of hazardous substances.  *See doc. 306* at ¶¶ 60, 65.

On April 14, 2022, Plaintiffs filed a motion to dismiss the counterclaims, third-party claims, and affirmative defenses which American Linen included in its answer to Plaintiffs' second amended complaint.  *Doc. 487*.  On December 15, 2022, the Honorable Judith C. Herrera dismissed American Linen's counterclaims against the City of Las Cruces and Doña Ana County without prejudice and dismissed American Linen's third-party claims against Bertha Villanueva, the Estate of Jesus Villanueva, and Victor Jasso with prejudice.  *Doc. 576* at 25-26.  American Linen filed an amended answer on December 29, 2022, in which it reasserted its counterclaims against Plaintiffs.  As of the date of this Proposed Findings and Recommended Disposition (PFRD), the remaining claims in the case are Plaintiffs' owner/operator, contribution, and arranger claims against American Linen, *see generally doc. 306*; American Linen's counterclaims against Plaintiffs, *see doc. 580* at 24-38; and American Linen's crossclaims against Rawson Leasing Limited Liability Co., The Lofts at Alameda, LLC, and Chisholm's-Village Plaza, LLC, *see id.* at 39-46.

### B. Discovery Overview

The first discovery period commenced in September, 2018, after Plaintiffs filed their first amended complaint. *See doc. 87.* After several extensions and stays in the case, the undersigned set the deadline for fact discovery as October 9, 2020. *See doc. 214.*

During the first discovery period, Plaintiffs' expert witnesses, Peter Krasnoff and Steve Helgen, produced multiple expert reports, including initial reports on April 8, 2019, *see doc. 151*, rebuttal reports on June 3, 2019, and July 16, 2019, *see docs. 166*, *175*, and supplemental reports on August 4, 2020, *see doc. 227.* American Linen's expert witness, James Bearzi, produced an initial report on June 3, 2019, *see doc. 162*, and a second report (originally called a supplemental report by American Linen) on August 4, 2020, *see doc. 226.*

 In March 2021, after Plaintiffs filed their second amended complaint, the undersigned reopened discovery to give American Linen an opportunity to conduct discovery on the new claim. *Doc. 332.* During the second discovery period, Plaintiffs produced an expert report on the arranger claim on April 26, 2021, *doc. 344*, and rebuttal reports on June 25, 2021, *doc. 361*, and American Linen's expert, Mr. Bearzi, produced a third expert report on the arranger claim on May 26, 2021, *see doc. 351.* Plaintiffs also conducted a deposition of Mr. Bearzi on July 22, 2021. *See doc. 520-5 at 1.*

Throughout discovery, there have been several disputes between Plaintiffs and American Linen which, in addition to the reopening of discovery, have served to

4

prolong this litigation for over four years.  In February 2021, the undersigned assessed attorneys' fees against American Linen after finding that it had acted in "willful ignorance" when it failed to supplement its initial disclosures and discovery responses with information about its use of PCE.  *Doc. 304* at 61.  After the second discovery period, the parties filed seven motions on a variety of discovery matters. *Docs. 384-390.* The undersigned again assessed attorneys' fees against American Linen based on two of these motions.  *Doc. 435* at 119-20.

### C.  Factual and Procedural History of the Instant Discovery Dispute

The instant discovery dispute began on October 23, 2020, when Plaintiffs moved to strike Mr. Bearzi's initial expert report and supplemental report.  *See generally doc. 261.*  On August 2, 2022, Judge Herrera issued her Memorandum Opinion and Order of Reference, which granted Plaintiffs' Motion to Strike (*doc. 261*) in part based on its finding that Mr. Bearzi's initial report is improper under Federal Rule of Civil Procedure 26(a)(2)(B) because it "demonstrate[s] a lack of independent analysis to support his stated opinions" and because the opinions it contains "rel[y] extensively" on "the reports of two other experts in this case, Thomas Johnson and Jan Kool" as well as the expert for the EPA.  *Doc. 514* at 7.  Judge Herrera also held that Mr. Bearzi's second "supplemental report" was in fact an untimely rebuttal report.  *Id.* at 12.  Judge Herrera then referred the procedural remedy for the improper reports ("Remedy Issue") to the undersigned.  *Id.*

5

Following the Court's reference of the Remedy Issue to the undersigned, this Court ordered the parties to submit supplemental briefing "on the appropriate procedural remedy (or remedies) for the hearsay in the June 3, 2019, report and the untimeliness of the August 4, 2020, rebuttal report." *See doc. 516* at 2.  Plaintiffs filed their Brief on Appropriate Remedy for American Linen's Expert Report Violations on August 19, 2022, *see doc. 519*, and Defendant American Linen filed its Memorandum of Points and Authorities in Response to Order for Supplemental Briefing on Motion to Strike and Exclude Defendant's Expert on September 2, 2022, *see doc.* 520.

Then, on September 12, 2022, American Linen filed its Motion of American Linen to Designate Substitute Expert Witness and Amend Expert Disclosures Pursuant to Fed. R. Civ. P. 16(B) and 26(A)(2) ("Motion to Substitute") in which it explained that Mr. Bearzi no longer wished to serve as an expert witness for American Linen, and it requested that the Court permit it to substitute a new expert witness for Mr. Bearzi and to submit corrected expert reports. *See doc.* 522.  According to American Linen, *see id.* at 11, as well as testimony from Mr. Bearzi, *see doc. 557* at 2, Mr. Bearzi resigned as an expert witness for American Linen due to retirement and family considerations at some point after this Court issued its August 2, 2022, order finding Mr. Bearzi's initial and second report to be improper.  Plaintiffs filed their response to the Motion to Substitute on September 29, 2022, *see doc. 534*, and Defendant Chisholm's-Village Plaza, LLC filed its response to the Motion to Substitute on October 3, 2022, *see doc. 536*.  American Linen

6

replied on October 13, 2022.  *See docs. 543, 544.*

On October 21, 2022, the Court held a hearing on the Remedy Issue, Defendant American Linen's Motion to Substitute (*doc. 522*), and Defendant American Linen's Motion to Strike (*doc. 531*).[1]  Briefing on both the Remedy Issue and Defendant American Linen's Motion to Substitute, has concluded, *see doc. 516, doc. 528* (denying Plaintiffs' leave to file a reply to American Linen's supplemental briefing response), *doc. 545*, and both issues are ready for decision.  Because the adjudication of the Motion to Substitute resolves the Remedy Issue, *see infra* Section III, the undersigned will address the Motion to Substitute first.

## II.   MOTION TO SUBSTITUTE

### A.  Legal Standard

American Linen's Motion to Substitute its expert witness is a request for the Court to modify its scheduling order deadlines for expert witness disclosures after the deadlines have already passed.[2]  As such, American Linen must show not only "good cause" for the Court to modify the scheduling order, Fed. R. Civ. P. 16(b)(4), but also that its failure to substitute its expert before the deadline is attributable to "excusable neglect," Fed. R. Civ. P. 6(b)(1)(B); *see also CGB Diversified Servs., Inc. v. Forsythe,* Case

---

[1] Defendant American Linen's Motion to Strike (*doc. 531*) has since been adjudicated.  *See doc. 563.*
[2] During the first discovery period, the deadline for American Linen's expert disclosure was ultimately set as June 3, 2019.  *See doc. 156* at 1.  During the second discovery period, the Court permitted American Linen to disclose a new expert by May 26, 2021, *see doc. 332* at 9, although it chose not to do so.

No. 20-cv-2120-TC-TJJ, 2021 WL 672168, at *1 (D. Kan. Feb. 22, 2021) (stating that where a plaintiff's expert disclosures deadline passed before it filed its motion for an amended scheduling order, both the "good cause" and "excusable neglect" standards applied).

Courts consider the following factors when determining whether a movant has shown good cause for a modification of the scheduling order in the context of substituting an expert:

> (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in court, and (4) bad faith or willfulness in failing to comply with the court's order.

*Summers v. Mo. Pac. R.R. Sys.*, 132 F.3d 599, 604 (10th Cir. 1997).

Courts also frequently associate good cause with a party's diligence in conducting discovery, and "[g]ood cause is likely to be found when the moving party has been generally diligent, the need for more time was neither foreseeable nor its fault, and refusing to grant the continuance would create a substantial risk of unfairness to that party." *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 988 (10th Cir. 2019) (internal brackets and quotations omitted) (quoting 3 James Wm. Moore, Moore's Federal Practice – Civil § 16.14[1][b] (3d ed. 2019)). By contrast, "[c]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Id.* at

989 (internal brackets omitted) (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d

604, 609 (9th Cir. 1992)).

The excusable neglect standard "requires both a demonstration of good faith by

the [movant] and also it must appear that there was a reasonable basis for not

complying within the specified period." *Stark-Romero v. Nat'l R.R. Passenger Co.*

*(AMTRAK)*, 275 F.R.D. 544, 547 (D.N.M. 2011) (quoting *Anderson v. Bank of Am.* (*In re*

*Four Seasons Sec. Laws Litig.*), 493 F.2d 1288, 1290 (10th Cir. 1974)).  Under Rule 6(b),

"inadvertence, ignorance of the rules, and mistakes construing the rules do not

constitute excusable neglect." *Quigley v. Rosenthal*, 427 F.3d 1232, 1238 (10th Cir. 2005).

### B.  Analysis

In its Motion to Substitute, American Linen asks that the Court modify its

scheduling order to allow American Linen to disclose one, or multiple, new experts and

to submit new expert reports, *see generally doc. 522*.  American Linen suggests that

Plaintiffs be permitted to depose the new expert, and it offers to "pay for the reasonable

costs Plaintiffs will incur to prepare and appear for a deposition of the new expert (as

well as any co-authors, if necessary)." *Id.* at 17.  Plaintiffs ask the Court to deny

American Linen's Motion to Substitute and argue that Plaintiffs would be "severely

prejudiced" by the delay that would be caused by substitution as well as the litigation

advantage that substitution would create for American Linen.  *Doc. 534* at 14-16.

Plaintiffs also argue that American Linen did not show diligence because it "did

nothing to prepare for the contingency that Mr. Bearzi might withdraw or be excluded." *Id.* at 12. The Court agrees with Plaintiffs and finds that American Linen has not shown good cause under the *Summers* factors to substitute its expert witness. It has also not shown excusable neglect regarding its failure to move to substitute its expert before the deadlines set by the Court expired.

     i.   The *Summers* Factors

      a. *Prejudice*

Because Plaintiffs would be prejudiced by American Linen's late expert disclosure, the first *Summers* factor weighs against permitting substitution.

The late substitution of an expert witness creates prejudice when the substitution prevents the opposing party from "fully litigat[ing] the case and defend[ing] against the new testimony." *Rimbert v. Eli Lilly and Co.*, 647 F.3d 1247, 1255 (10th Cir. 2011). American Linen claims that Plaintiffs already know what information the new expert reports will contain because American Linen's new experts' "analysis will [not] result in opinions significantly different from those expressed in the Bearzi reports" and the new reports will "reach the same results as all the other defense experts' opinions, which Plaintiff have been aware of and preparing for since April of 2019." *Doc. 522* at 17. As a result, American Linen argues that there is no prejudice to Plaintiffs because the new reports will not create a "meaningful change in testimony" *id.* at 16-17 (citing *Baumann*

*v. Am. Family Mut. Ins. Co.*, 278 F.R.D. 614, 616 (D. Colo. 2012)), that would require

Plaintiffs to alter their litigation or defense strategy, *see id.* at 15-17.

      American Linen's argument fails to account for the severe deficiencies in Mr.

Bearzi's reports.  The purpose of an expert opinion is to "set forth the substance of the

direct examination," *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 953 (10th Cir. 2002)

(quoting Fed. R. Civ. P. 26(a)(2) advisory committee's note to 1993 amendment), and

this substance includes the "basis and reasons" for an expert's opinions as well as the

"facts or data considered by the witness" in forming his opinions, Fed. R. Civ. P.

26(a)(2)(B).  The basis and reasons for an expert's opinions are arguably the most

important part of the opinion, as they provide the substance that the opposing party can

use to refute the expert's claims.  As determined by this Court, Mr. Bearzi's initial report

was missing any indication that Mr. Bearzi conducted the "independent analysis" that

would provide the basis and reasons for his opinions.  *Doc. 514* at 7.  In other words, the

reports previously provided by American Linen do not meaningfully advise Plaintiffs

the basis and reasons for Mr. Bearzi's conclusions.  Thus, even if American Linen's new

reports reach the same conclusions as those in Mr. Bearzi's report and the other

defendants' expert reports, the underlying analysis will be completely new to Plaintiffs.

      The novel analysis that would be contained in American Linen's new expert

reports will create a "meaningful change in testimony," *see Baumann*, 278 F.R.D. at 616,

and this change will prejudice Plaintiffs.  Courts have found that there is no prejudice if

the new report of the substitute expert stays within the "four-corners" of the original

expert's report. *Martin v. Interstate Battery Sys. of Am., Inc.*, Case No. 12-CV-184-JED-

FHM, 2016 WL 4400972, at *2 (N.D. Okla. Aug. 18, 2016); *see also Sinclair Wyo. Refining

Co. v. Pro-Inspect, Inc.*, Civil No. 12-CV-196-J, 2014 WL 12768315, at *3 (D. Wyo. Jan. 29,

2014) (finding no prejudice where the new expert opinion was "expected to be

substantially similar to that of [the original opinion]").  In its Motion to Substitute,

American Linen cites to a variety of cases in which the court found that the substituted

expert's report did not, or would not, substantially differ from the original expert's

report. *Doc. 522* at 15-17.  None of these cases, however, involved a situation in which

the original expert's report was found to be utterly inadequate by the court.  Here, the

amount of new information and analysis that American Linen's new expert must add to

the reports in order for the reports to be in compliance with the Federal Rules means

that it would be impossible for the new expert reports to stay "within the 'four-corners'

of the original reports."  At a minimum, American Linen's new expert or experts would

be augmenting Mr. Bearzi's conclusions with the crucial bases and reasons for those

conclusions.  In fact, American Linen has not established that its putative expert or

experts even agree with all of Mr. Bearzi's conclusions.  Presumably, these experts will

form their own conclusions based on their own analysis.  But, even assuming their

conclusions end up identical to those of Mr. Bearzi, Plaintiffs' litigation preparation up

to now, including their own expert reports, cannot be responsive to American Linen's

experts' brand-new analysis.  Plaintiffs will thus be prejudiced by having to pay their experts to review the reasoning employed by the new expert or experts as they prepare for trial.

In addition to the new work for Plaintiffs' experts, Plaintiffs' counsel (not to mention the Court) will be burdened by having to closely police the new reports to ensure that American Linen's new expert did not produce opinions that are substantially different from those in Mr. Bearzi's original report.  *See Sinclair*, 2014 WL 12768315, at *3 (holding that "to the extent [the new expert] introduces new material; that is, opinions beyond the scope of the [original report], [the opposing party] is not precluded from filing motions in limine" to strike the new material).  The new and original reports will likely be difficult to compare given the new analysis required in the new reports.  In any event, the high likelihood of disputes – and the attendant motion practice – surrounding this issue will further increase the litigation costs to Plaintiffs.

The final notable prejudice to Plaintiffs is a tactical one.  American Linen seeks to identify new experts which would necessarily be disclosing new bases and analysis. These experts would benefit from access to every single expert report, deposition, and discovery response from all parties that have been produced up to this point, including documents that would not have been available to American Linen or Plaintiffs when they originally produced their reports.  For example, American Linen would be able to produce a new initial report with the benefit of Plaintiffs' and other Defendants'

supplemental and rebuttal reports[3] and the depositions of Plaintiffs' experts and Mr. Bearzi.  Because Plaintiffs would not be afforded a similar opportunity to prepare reports with the benefit of three-plus years of discovery, American Linen would gain a fundamental litigation advantage as a result of their failure to produce proper expert reports in the first place.

> ### b.  Ability to Cure

Because the prejudice that Plaintiffs would experience should American Linen be granted leave to substitute its expert witness is unlikely to be cured unless the Court permits a complete reopening of expert discovery for both parties, the second *Summers* factor also weighs against permitting substitution.

American Linen argues that any prejudice would be cured by giving Plaintiffs "ample opportunity to conduct discovery on any new reports," including giving Plaintiffs a chance to depose the new witnesses.  *Doc. 522* at 17.  American Linen further states that it "is prepared to pay for the reasonable costs" of Plaintiffs to depose the new expert.  *Doc. 522* at 17.  Even with these concessions, the prejudice cannot be cured.

First, American Linen's offer unrealistically assumes a common understanding of what those "reasonable costs" are.  The complexities of expert discovery in this case take it outside the universe of typical cases where the costs of a deposition can be easily

---

[3] Defendant United States produced a rebuttal report on June 3, 2019, *doc. 161*, and a supplemental report on July 18, 2019, *doc. 178*.  Neither of these reports would have been available to American Linen before they submitted their initial expert report on June 3, 2019.  *See doc. 162*.

cabined and accounted for.  Plaintiffs' counsel's preparation for the deposition(s) in coordination with its experts would be extensive and expensive.  Undoubtedly, the parties will find themselves engaged in another round of protracted litigation over recoverable fees and costs.

Second, Plaintiffs' experts would need to be permitted to produce new rebuttal reports since Plaintiffs' original rebuttal reports were in response to reports that contained no basis for their conclusions and that were provided two and a half years ago.  In fact, curing the litigation advantage described above would necessitate a near restart on expert discovery for both parties.  *See Scholl v. Pateder*, Civil Action No. 1:09-cv-02959-PAB-KLM, 2011 WL 3684779, at *5 (D. Colo. Aug. 22, 2011) ("Given that [the moving party's] expert disclosure violations essentially require expert discovery to start anew as it relates to [the expert's] opinions and any rebuttal opinions, including the provision of new reports and the reopening of depositions, . . . the prejudice to [the non-moving party] cannot be readily cured."); s*ee also Sonrisa Holding, LLC v. Circle K Stores, Inc.*, 835 F. App'x 334, 344 (10th Cir. 2020) (prohibiting a party from redoing its inadequate expert reports because "while [the prejudiced party] may have had *some* ability to cure the prejudice, this ability was constrained by costs and court-imposed deadlines").

In short, any attempt to cure the prejudice to Plaintiffs would be massively expensive and lead to an exceptionally long delay in litigation that is already in its sixth

year.

### c.   *Disruption to the Trial Date*

American Linen's request to substitute its expert is not reasonable under the third *Summers* factor which asks the court to consider if substitution would cause a disruption to the trial date.  Although American Linen is correct that "[t]here is no trial setting" in this case, *doc. 522* at 14, it fails to acknowledge that American Linen's involvement in this case has been ongoing for over four years, *see Cohlmia v. Ardent Health Servs., LLC*, 254 F.R.D. 426, 433 (N.D. Okla. 2008) (refusing to permit a party to correct their inadequate expert reports under an analogous legal standard to the *Summers* factors in part because permitting new reports would "prolong[] the [expert] process even longer and increase[e] the expense to all parties" in a case that had "been on file for more than three years").  American Linen also fails to acknowledge that the principal reason thus far for the lack of a trial setting is protracted discovery disputes between the parties, rather than external factors related to the Court's schedule, such as existed in two of the cases to which American Linen cites.  *See Rimbert*, 647 F.3d at 1254 (permitting the plaintiff to substitute his expert in part because the trial schedule had been vacated by the court after the case was reassigned and the new judge "understandably required additional time to familiarize herself with the case"); *Williamson v. Metro. Prop. & Cas. Ins. Co.*, No. 1:15-CV-958 JCH/LF, 2018 WL 1135536, at *1 (D.N.M. Feb. 28, 2018) (reopening discovery to allow a substitute expert in part

because trial had not been set "due to the congestion of the Court's docket").  Under American Linen's logic, the parties could continue to engage in discovery disputes and then rely on a lack of a trial date to justify prolonging discovery indefinitely.  I am unwilling to conclude that a lack of a trial date is a viable reason for extending discovery, and the trial setting, once again.

Further, Plaintiffs' Motion to Dismiss Counterclaims, Third-Party Claims and to Strike Affirmative Defenses Contained in American Linen's Second Answer (*Doc. 487*), which American Linen identifies as a source of delay and an additional reason that trial has not been set, *see doc. 522* at 15, has been resolved by the Court, *see doc. 576*.  The Court's Memorandum Opinion and Order on Plaintiffs' Motion to Dismiss dismissed American Linen's third-party claims against Victor Jasso and claims against Bertha Villanueva in her individual capacity and on behalf of the estate of Jesus Villanueva.  *Id.* at 25.  Had these third-party claims remained, the parties would have needed to conduct discovery on the new claims, and there would have been an additional justification to reopen discovery.  Without these claims, however, the only reason for an extension of discovery is American Linen's failure to follow the Federal Rules of Civil Procedure and submit adequate expert reports.  I do not recommend extending discovery and further delaying trial based on this reason alone.

*d. Bad Faith*

Finally, I am not willing to find that American Linen acted in bad faith under the fourth *Summers* factor, but the lack of bad faith does not outweigh my findings as to the other factors. *See Jacobsen*, 287 F.3d at 954 (acting in "good faith alone [is] not [] enough to overcome the other factors" such as prejudice to the opposing party). Although there is no direct evidence that American Linen's failure to adhere to the Federal Rules with regard to its expert disclosures was a willful attempt to delay litigation or prejudice Plaintiffs, American Linen's lack of diligence in making any attempt to remedy its expert disclosures up to now (described in greater detail in the next section), leads me to conclude that the bad faith factor is at most neutral and thus does not weigh either in favor of or against permitting substitution.

ii.   *Diligence and Excusable Neglect*

In addition to failing to show good cause for substituting its experts under the *Summers* factors, American Linen has failed to show diligence in correcting the problems that led to its need to substitute its expert. It has also failed to show excusable neglect for its failure to move to substitute its expert before the appropriate deadlines.

American Linen argues that it "exercised diligence" in relation to substituting its expert because it located a new expert and moved the Court to substitute its expert within a short time frame after learning that Mr. Bearzi would not be available to continue as American Linen's expert. *Doc. 522* at 10-14. While it may be true that

American Linen was diligent in locating a new expert *after* Judge Herrera issued her

order finding American Linen's initial and second report improper in August of 2022,

American Linen displayed a serious lack of diligence throughout the expert discovery

process up to that point.  Plaintiffs filed their motion to strike Mr. Bearzi's initial and

second reports in October of 2020.  *See doc. 261.*  In the almost two years between the

filing of that motion and this Court's order finding the reports to be improper,

American Linen took no steps to correct their expert disclosures.  I do not find

persuasive American Linen's argument that a party displays diligence when it does

nothing to prepare for crisis but then acts quickly once the crisis is in full effect.  *Cf.*

*Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 897 (1990) ("a litigant's failure to buttress its

position because of confidence in the strength of that position is always indulged in at

the litigant's own risk").

    In fact, it does not appear that American Linen even spoke with Mr. Bearzi to

ensure that he would be available to fix the reports should the Court find them

improper.  American Linen's Motion to Substitute strongly implies that American Linen

had not spoken with Mr. Bearzi about Plaintiffs' motion to strike and the possibility that

Mr. Bearzi may need to redo his reports and undergo additional depositions until *after*

Judge Herrera's order was issued in August of 2022.  *See doc. 522* at 10 (stating that after

Judge Herrera's order was issued, counsel "notified Mr. Bearzi and began discussing

with him his role and tasks" but "[a]s the scope of potentially 'curing' his report became

more apparent, including the potential for further deposition and trial testimony, Mr.

Bearzi expressed concern").  Had American Linen worked more closely with Mr. Bearzi

in the interim period, it may have learned sooner that Mr. Bearzi was unavailable to

continue serving as its expert, and the substitution issue could have been addressed

earlier.  *See LNC Invs., Inc. v. First Fid. Bank*, No. 92 Civ. 7584(CSH), 2000 WL 1290615, at

*3 (S.D.N.Y. Sep. 12, 2000) (denying a motion to substitute and stating that "had counsel

for [the defendant] inquired at [an earlier time] into [its expert's] availability in case of

need at the second trial, they would have learned that [the expert] had retired for

medical reasons").  Regardless of what conversations occurred when between American

Linen's counsel and Mr. Bearzi, American Linen's lack of diligence in addressing the

problems with its expert and his reports mean that American Linen will need to start

from scratch on its expert discovery, nearly two years after being notified of the

problems with its reports and over four years after American Linen's entry into this

case.

In response to the premise that American Linen should have been more

proactive in correcting its reports and substituting its expert, American Linen argues

that it was "not unreasonable to continue to rely upon the Bearzi reports," *doc. 522* at 10,

even in the face of Plaintiffs' motion to strike, and that it "would be an anathema to the

courts" if a party "move[d] to substitute every expert to [sic] whom a colorable

challenge is made," *doc. 543* at 7.

American Linen's argument ignores the fact that, notwithstanding the pending motion to strike the Bearzi reports, Mr. Bearzi would be a necessary witness at trial. While the substitution of Mr. Bearzi is far more problematic given the fundamental deficiencies in his reports as reflected in the order granting Plaintiffs' Motion to Strike, American Linen was responsible for monitoring his availability for trial regardless of how Judge Herrera might rule.  Based on the briefing and hearing on the instant motion, it appears that counsel for American Linen had no meaningful contact with Mr. Bearzi from early August 2021 until early August 2022.  They certainly were not checking in with him to ensure his availability for a trial in the coming years.

While this gap in contact might be forgiven in the ordinary case, this circumstance was not typical.  Mr. Bearzi's reports were the subject of a pending motion to strike which would require significant work to remedy if granted.  Of course, a party need not move to substitute every expert against whom a colorable challenge is made. However, the party should take appropriate steps to prepare for the potential outcome that it may need to remedy its report, including, at the very least, ensuring that its expert is willing to participate in that remedy process.

This conclusion is particularly true here where the Bearzi reports were in clear violation of the Federal Rules.  This Court's ruling on the propriety of Mr. Bearzi's reports was not a close call, *see, e.g., doc. 514* at 7 ("*nothing* in Bearzi's first report seems to suggest that he undertook [the required] analysis") (emphasis added), and the Court

cited to a wealth of existing case law which indicates that an expert witness may not simply adopt the work of another expert without conducting independent analysis, *id.* at 5-7. Indeed, the requirement that an expert must "demonstrate [the] basis for concluding that another individual's opinion . . . [is] reliable," *TK-7 Corp v. Estate of Barbouti*, 993 F.2d 722, 732 (10th Cir. 1993), is not a "novel or unfounded interpretation" of the Federal Rules, *Pickard v. United States*, Case No. 18-2372-JWL, 2021 WL 463371, at *3 (D. Kan. Feb. 9, 2021). American Linen's failure to follow the Federal Rules in the first instance coupled with its failure to take any proactive steps to correct its improper reports after it was put on notice by Plaintiffs of this well-established law is not diligent or excusable. *See Corral v. Home Depot U.S.A., Inc.*, Civ. No. 13-555 JCH/CG, 2014 WL 12787984, at *3 (D.N.M. Sept. 30, 2014) (finding a "lack of good faith" in a party who failed to take steps to "correct the defects in her experts' reports" for two months following the filing of the opposing party's motion to strike); *Pickard*, 2021 WL 463371, at *3 (finding that a party was not diligent when it failed to move to substitute its expert after learning from opposing counsel that its expert disclosure was likely not in compliance with the Federal Rules); *see also Harlas v. Barn, LLC*, Civil Action No. 18-cv-02320-RM-NYW, 2019 WL 7290928, at *7 (D. Colo. Oct. 1, 2019) (striking a party's expert reports under an analogous legal standard because there were "some suggestions that Plaintiff willfully disregarded any indication of deficiencies in [her expert's] disclosure").

Lastly, American Linen argues that even if it did have concerns that the Court might find its reports to be inadequate, it reasonably believed that it would not need to redo its expert reports because Mr. Bearzi's deposition cured any problems with the reports.[4]  *See doc. 543* at 8.  I disagree.  It is true that, under certain circumstances, courts have allowed a party to continue to trial with an inadequate expert report if the deposition cures the report.  *See Jager v. Andrade-Barraza,* Civ. No. 18-743 GBW/CG, 2019 WL 6896643, at \*6-7 (D.N.M. Dec. 18, 2019) (finding that the expert's "deposition mitigated the prejudice caused by [the] violation" in his report in part because he "provided greater detail about his opinions, and the bases for those opinions").  However, the question of whether a deposition cures an expert report requires a highly fact-specific inquiry.  *See, e.g., Gillum v. U.S.,* 309 F. App'x 267, 270 (10th Cir. 2009) (denying a motion to strike plaintiff's inadequate expert report because the defendant "knew the substance of [the expert's] expected testimony" due to the expert's deposition *as well as* the plaintiff's "response to the motion in limine, which also discussed the reasons and bases for [the expert's] conclusion").  As a result, American Linen's reliance on Mr. Bearzi's deposition as a cure for its inadequate reports was a tenuous position, particularly in a case where, as American Linen frequently states, expert testimony is critical.  *See, e.g., doc. 522* at 12-13.  American Linen's position with

---

[4] The Court does not need to reach the issue of whether Mr. Bearzi's deposition cured his inadequate reports in order to decide American Linen's Motion to Substitute.  Thus, the Court will not take a position on this issue.

regard to Mr. Bearzi's deposition is yet another example where American Linen's counsel failed to act diligently to ensure that it was adhering to the Federal Rules during the discovery process.

<em>iii.    Dispositive Effect of Denying the Motion to Substitute</em>

Because expert testimony is critical to a party's ability to defend itself against CERCLA liability, *see Morrison Enters. v. McShares, Inc.*, 302 F.3d 1127, 1131 (10th Cir. 2002), denying American Linen's Motion to Substitute may have a dispositive effect on the liability claims that Plaintiffs have brought against American Linen.  While the full impact of American Linen's expert will be determined by the presiding judge, the undersigned will assume it will be dispositive on the CERCLA liability claim.

In cases where the court is deciding whether to exclude evidence, including expert testimony, under Federal Rule of Civil Procedure 37(c)(1), and the "exclusion of evidence . . . has the necessary effect of a dismissal," the Tenth Circuit has advised courts to "carefully explore and consider the efficacy of less drastic alternatives, ordinarily reserving the extreme sanction of dismissal for cases involving bad faith or willfulness or instances where less severe sanctions would obviously prove futile." *HCG Platinum, LLC v. Preferred Prod. Placement Corp.*, 873 F.3d 1191, 1206 (10th Cir. 2017).  Although American Linen's Motion to Substitute is a motion to reopen the scheduling order under Federal Rules of Civil Procedure 6(b) and 16(b) and is thus not a motion which directly involves Rule 37, denying the motion to substitute in this case

will have a similar effect as excluding expert testimony under Rule 37.  As a result, I

will apply the "lesser-sanctions inquiry" to the facts of this case.  *Id.*

      Given the current posture of the case, the only alternative to denying American

Linen's Motion to Substitute is to grant its Motion and permit American Linen to

disclose a new expert and new reports.[5]  The Court would, at the very least, then need

to permit Plaintiffs to depose the new expert.  In this scenario, the only available

sanction that the Court could assess against American Linen would be attorneys' fees,

such as fees to cover Plaintiffs' costs of deposing the new expert as well as the costs

Plaintiffs incurred in reviewing Mr. Bearzi's reports and deposing Mr. Bearzi.  The

Court would also require that the new expert's reports stay within the "four-corners" of

Mr. Bearzi's reports, although the Court does not consider this restriction to be feasible

given the deficiencies of the Bearzi reports nor to be a meaningful sanction as parties

which substitute their experts are generally required under the case law to adhere to

this requirement.  *See, e.g., Martin*, 2016 WL 4400972, at *2.  As discussed in detail above,

*see supra* pp. 13-15, this alternate scenario would create a myriad of problems that

would impose substantial burdens on Plaintiffs as well as the Court, including

protracted disputes over attorney fees and over whether American Linen's new reports

adhered to the "four-corners" rule.  American Linen is fundamentally asking the Court

---

[5] For example, American Linen has not proposed any alternative involving Mr. Bearzi augmenting his reports and proceeding as American Linen's expert.

to restart the clock on over four years of expert discovery due to its failure to follow the

Federal Rules during the first round of expert discovery and its failure to act diligently

to remedy its errors after it was given notice of the problems.  The lesser sanctions

available to the Court in this instance would not only lead to additional disputes and

wasted judicial resources, but also are unjust given the enormity of American Linen's

request and the resulting prejudice to Plaintiffs.

 Lastly, although I find that less severe sanctions are not appropriate in this case,

I note that the "lesser-sanctions inquiry" described in *HCG Platinum* is typically applied

in instances where the exclusion of evidence leads to dismissal of the entire case.  *See,*

*e.g.*, *HCG Platinum,* 873 F.3d at 1199; *see also Gillum*, 309 F. App'x at 270 (considering the

propriety of excluding expert testimony as a discovery sanction in a medical

malpractice case, where the exclusion "necessarily resulted in the grant of summary

judgment for [the defendant]").  Although the denial of American Linen's motion to

substitute may be dispositive as to Plaintiff's liability claims, it is not dispositive as to

the issue of contribution.  American Linen may still argue that it is not required to

contribute costs under the various equitable factors that courts use to determine

contribution in CERCLA cases.  *See United States v. Colo. & E. R.R. Co.*, 50 F.3d 1530, 1536

& n.5 (10th Cir. 1995).

## III.   REMEDY ISSUE

 I now turn to address the remedy for American Linen's expert reports that Judge

Herrera found to be improper in her Memorandum Opinion and Order of Reference. *Doc. 514*. In their supplemental briefing which provides proposed remedies for the improper reports, Plaintiffs request that the Court exclude Mr. Bearzi's initial and second expert report and prohibit Mr. Bearzi from testifying at trial.[6] *Doc. 519* at 23. Plaintiffs further request that the Court exclude Opinion 6 of Mr. Bearzi's third expert report on the arranger claim because they argue that it suffers from the same hearsay problem that led Judge Herrera to strike Mr. Bearzi's initial report.[7] *Id.* at 5-6. Finally, because Plaintiffs' proposed remedy would leave American Linen without an expert for its owner/operator claims, Plaintiffs ask the Court to find American Linen liable as an owner/operator under CERCLA law by finding two facts as established: (1) "American Linen meets the definition of 'owner' and 'operator' under CERCLA," and (2) American Linen's actions caused some of the toxic spill that Plaintiffs were responsible for remediating. *Id.* at 17-19.

In its supplemental brief, American Linen does not oppose Plaintiffs' request for the Court to strike Mr. Bearzi's inadequate initial and second reports. Rather, it asks that the Court permit it to submit amended reports authored by a new expert. *Doc. 520*

---

[6] Plaintiffs also request that the Court bar any future discovery in this case. *Doc. 519* at 23. Discovery in this case is closed, *see doc. 332*, and this PFRD does not reopen it.

[7] Any issues in Mr. Bearzi's third expert report on the arranger claim are not before the Court, and the Court did not find this report to be improper in its Memorandum Order and Order of Reference on Plaintiff's Motion to Strike. *See doc. 514*. Plaintiffs include the request to strike Opinion 6 in Mr. Bearzi's third arranger report in their supplemental brief on the Remedy Issue. *See doc. 519* at 3. They did not file a separate motion to strike Opinion 6 in the arranger report.

at 5, 24.  American Linen formalized its request to substitute its expert in its Motion to

Substitute.  *See doc. 522*.

For reasons described in detail in Section II, *supra*, I recommend that the Court

deny American Linen's Motion to Substitute (*doc. 522*), which would mean that

American Linen would not be permitted to substitute its expert and produce amended

reports by a new expert.  Given that American Linen's only suggested remedy for the

deficiencies in Mr. Bearzi's initial and second reports is that it be permitted to retain a

substitute expert and file amended reports, I recommend granting Plaintiffs' request to

strike Mr. Bearzi's initial and second reports and prohibit Mr. Bearzi from testifying on

those reports at trial.

I also recommend that the Court decline to adopt without prejudice the other

remedies requested by Plaintiffs in their supplemental brief, including their request to

exclude Opinion 6 in Mr. Bearzi's third expert report and their request that the Court

establish certain facts and find American Linen as liable as an owner/operator, because

these issues are not properly before the Court.  The Court's Order for Supplemental

Briefing ordered the parties to file "briefing on the appropriate procedural remedy (or

remedies) for the hearsay in the June 3, 2019, report and the untimeliness of the August

4, 2020, rebuttal report."  *Doc. 516* at 2.  Plaintiffs' request for the Court to exclude a

portion of a third, unrelated, expert report and their request that the Court establish

liability as to certain claims are disguised motions to strike and for summary judgment,

28

rather than proposed remedies for the improper expert reports.  Plaintiffs may file the

appropriate motions on these issues following the Court's final resolution of the

Remedy Issue.

## IV.  CONCLUSION

For the foregoing reasons, I RECOMMEND that the Court: (1) DENY American

Linen's Motion to Substitute (*doc. 522*); and (2) ADOPT Plaintiffs' requested remedy of

striking Mr. Bearzi's June 3, 2019, and August 4, 2020, reports and preventing Mr.

Bearzi from testifying at trial as to those reports.

_____
GREGORY B. WORMUTH
CHIEF UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**