## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**CITY OF LAS CRUCES AND DONA ANA COUNTY,**

  **Plaintiffs,**

vs.                                                                      **Civ. No. 17-809 JCH/GBW**

**THE LOFTS AT ALAMEDA, LLC;
AMERICAN LINEN SUPPLY OF NEW
MEXICO, INC.; RAWSON LEASING
LIMITED LIABILITY CO.; and
CHISHOLM'S-VILLAGE PLAZA L.L.C.,**

  **Defendants.**

### <u>MEMORANDUM OPINION AND ORDER</u>

This case is before the Court on *Defendant American Linen Supply of New Mexico, Inc.'s Objections to Magistrate's Proposed Findings and Recommended Disposition, Doc. 596* [Doc. 602], filed on March 20, 2023. Plaintiffs have filed their response [Doc. 606], and Defendant American Linen Supply of New Mexico, Inc. ("American Linen") has filed its reply [Doc. 609]. The issue before the Court is whether American Linen should be permitted to name new expert(s) at this late stage of the litigation after its original expert's reports were stricken for being improper and then that expert withdrew from the case entirely. The magistrate judge concluded that given these two circumstances, the only alternatives were to either allow American Linen to name new experts or prohibit it from doing so; there appears to be no middle way, or at least none suggested by American Linen. The magistrate judge conducted a thorough review of the issues and concluded that American Linen's motion to substitute a new expert

should be denied. After reviewing the arguments and authorities offered by the parties as well as the Magistrate Judge's *Proposed Findings and Recommended Disposition* [Doc. 596] ("PFRD"), the Court concludes that the objections to the magistrate judge's recommendations should be overruled and American Linen's request for a new scheduling order to name a new expert witness should be denied.

## DISCUSSION

I.      **The PFRD**

In October of 2020, Plaintiffs moved to strike both the initial and supplemental expert reports of James Bearzi, the designated expert for American Linen. The undersigned judge granted the motion to strike in part, finding that Bearzi's initial report was improper under Rule 26(a)(2)(B) and that his "supplemental" report was in fact an untimely rebuttal report.[1] [Doc. 514] In light of the complex procedural posture of the case and the intricacies of the ongoing discovery process in this CERCLA action, the Court referred the matter to the magistrate judge to determine the proper remedy for Bearzi's improper reports. On September 12, 2022, American Linen filed a motion [Doc. 522] asking to substitute a new expert for Bearzi, who no longer wishes to serve as an expert for American Linen, and to amend its expert disclosures. Plaintiffs objected to this request. On October 21, 2022, the magistrate judge held a hearing on the closely related questions of the proper remedy regarding expert witnesses and American Linen's motion to substitute. On March 6, 2023, the magistrate judge entered his PFRD.

The magistrate judge recommends denying American Linen's motion to substitute a new expert for Bearzi and denying its request to permit new expert to produce amended reports. He also recommends that the Court adhere to its prior ruling that Bearzi's reports were improper and

---

[1] Bearzi's third report, which relates to Plaintiffs' arranger claim against American Linen, has not been the subject of any motion.

prohibiting him from testifying at trial. As grounds for that recommendation, the magistrate judge concluded that American Linen has failed to demonstrate good cause for modifying the scheduling order and has not shown that its failure to substitute its expert before the deadline was due to excusable neglect.

## II.     Standard of Review

This Court's review of the magistrate judge's PFRD is governed by 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72. Under Rule 72(b)(3), "[t]he district judge must determine de novo any part of the magistrate judge's disposition" of a dispositive motion. Similarly, where a party files timely and specific objections to the Magistrate Judge's proposed findings and recommendation, "on ... dispositive motions, the statute calls for a de novo determination, not a de novo hearing." *United States v. Raddatz*, 447 U.S. 667, 674, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980). The magistrate judge viewed his decision as dispositive because the lack of an expert witness would effectively hamstring American Linen's case on the owner/operator claims. In addition, the parties agree that the matter is dispositive and therefore this Court should apply a *de novo* standard of review.

The Court agrees with the parties. "As to any dispositive matter, magistrate authority is limited and the district court must use the *de novo* standard of review." *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1462 (10th Cir. 1988). The Court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate with instructions." Fed. R. Civ. P. 72(b)(3).

The Tenth Circuit has stated that a de novo determination, pursuant to 28 U.S.C. § 636(b), "requires the district court to consider relevant evidence of record and not merely review

the magistrate judge's recommendation." *Griego v. Padilla (In re Griego)*, 64 F.3d 580, 583-84 (10th Cir. 1995). The Supreme Court has noted that, although a district court must make a *de novo* determination of the objections to recommendations under 28 U.S.C. § 636(b)(1), the district court is not precluded from relying on the Magistrate Judge's proposed findings and recommendations. *See United States v. Raddatz*, 447 U.S. at 676, 100 S. Ct. 2406 ("[I]n providing for a 'de novo determination' rather than de novo hearing, Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations.") (quoting 28 U.S.C. § 636(b)(1)).

In conducting a de novo review of the PFRD, this Court has examined the full record, including but not limited to the PFRD itself [Doc. 596], American Linen's objections to the PFRD and associated briefing [Docs. 602, 606, and 609], and American Linen's motion to substitute expert and associated briefing [Docs. 522, 534, 536, 543, and 544]. The Court has also reviewed the briefs [Docs. 519 and 520] the parties filed in response to the magistrate judge's order to file supplemental briefing on the question of the appropriate remedy.

## III.    Analysis

As a preliminary matter, the Court adopts the PFRD's summary [Doc. 596 at 2-7] of the procedural and factual background of both the case generally and this discovery dispute specifically. There has been no objection to that summary by either party.

American Linen asserts four arguments in support of its position that this Court should rejected the PFRD. First, it contends that written discovery and depositions cured the deficiencies in Bearzi's reports. Doc. 602 at 4. Second, American Linen asserts that it has demonstrated good cause to modify the scheduling order under Rule 16(b)(4) to allow it to name

a new expert to testify in lieu of Bearzi. *Id*. at 10. Third, it contends that it has demonstrated that it acted with reasonable diligence in addressing the issues with its expert. *Id*. at 19. Finally, American Linen argues that under *Ehrenhaus*, the Court should impose a lesser sanction because exclusion of its expert witness would have a dispositive effect on the issue of American Linen's liability as an owner/operator for contamination at the Site. *Id*. at 24.

### A.   Written Discovery and Depositions As a Cure for Bearzi's Inadequate Reports

American Linen argues that the magistrate judge erred by failing to consider whether Plaintiffs' deposition of Bearzi cured the deficiencies in his initial report. *See* PFRD, Doc. 596 at 23, n.4 (stating that it need not reach the issue in order to decide the motion to substitute expert). American Linen points to *Jacobsen v. Deseret Book Co*., 287 F.3d 936, 952-53 (10th Cir. 2002), in which the court stated that under Rule 37(c)(1), a party's failure to comply with timely disclosure requirements of Rule 26(a) precludes the use of expert testimony unless the failure was substantially justified or harmless, a determination entrusted to the broad discretion of the district court. American Linen asserts that the magistrate judge should have considered this issue as it relates to Plaintiffs' motion to strike Bearzi as an expert because Plaintiffs had the opportunity to depose Bearzi and therefore cure the deficiencies in his report.

However, the Court agrees with Plaintiffs that the issue of whether Bearzi's deposition cured his inadequate written reports is moot. The Court found Bearzi's reports to be inadequate and untimely, granted the motion to strike them, and tasked the magistrate judge with determining the proper remedy in light of the current posture of the case. Shortly afterwards, American Linen informed the Court that Bearzi had withdrawn from the case entirely. Therefore,

the question of whether his deposition had cured the deficiencies with his reports is moot because Bearzi is no longer a potential witness in the case.

American Linen contends that Bearzi's withdrawal does not end the matter because "it goes directly to whether Plaintiffs now face any prejudice from Bearzi's report and whether they would face any new prejudice if the Court permitted a substitute expert to testify to the same opinions in Bearzi's stead." Doc. 602 at 5. As noted above, the former is moot because Bearzi has removed himself from the case. The latter argument—the question of unfair prejudice against Plaintiffs arising from allowing American Linen to name a new expert who they claim will assert the same opinions as Bearzi—dovetails into the next issue before the Court, which is whether American Linen has shown good cause to modify the scheduling order to allow it to name a new expert witness. The issues are linked because one of the factors to consider in assessing good cause is "the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified." *Summers v. Mo. Pac. R.R. Sys.*, 132 F.3d 599, 604 (10th Cir. 1997). American Linen contends that Bearzi's deposition fully illuminated his opinions, that its proposed new expert Jay Lazarus will put forth the same or similar opinions as Bearzi, and therefore Plaintiffs will suffer no prejudice if American Linen is permitted to substitute him for Bearzi.

However, as discussed more fully in Section B(2)(b) below, Lazarus is not entirely confident in his own opinions, and he suggests that he may need to employ other experts to help him develop those opinions. Therefore, the Court cannot assume that Bearzi's opinions as stated in his deposition with coincide with those of Lazarus and other potential American Linen experts. Under these circumstances, Bearzi's deposition simply cannot cure the fundamental problems with his reports.

**B.      Good Cause to Revise the Scheduling Order**

While a district court has broad discretion to manage the pretrial schedule, the Tenth
Circuit has recognized that a scheduling order can have an outcome-determinative effect on the
case, and "total inflexibility is undesirable." *Summers*, 132 F.3d at 604 (quotation omitted); *see
also 103 Investors I, L.P. v. Square D Co.*, 372 F.3d 1213, 1215-16 (10th Cir. 2004). A
scheduling order that results in the exclusion of evidence is "a drastic sanction." *Summers*, 132
F.3d at 604.

American Linen agrees with the magistrate judge that in order to name a substitute expert
after the deadline, a party must show good cause under Rule 16(b)(4). This Court is in accord as
well. In the Tenth Circuit, determining the existence good cause to modify the scheduling order
turns on four factors:

> (1) the prejudice or surprise in fact of the party against whom the excluded
> witnesses would have testified, (2) the ability of that party to cure the prejudice,
> (3) the extent to which waiver of the rule against calling unlisted witnesses would
> disrupt the orderly and efficient trial of the case or of other cases in court, and (4)
> bad faith or willfulness in failing to comply with the court's order.

*Summers v. Missouri Pac. R.R. Sys.*, 132 F.3d 599, 604 (10th Cir. 1997) (citing *Burks v.
Oklahoma Publ'g Co.*, 81 F.3d 975, 978 (10th Cir. 1996)).

In the circumstances presented here, the issues of prejudice and disruption of the efficient
trial of the case are closely related, as explained below.

**1.      Disruption of the progress of the case**

In *Rimbert v. Eli Lilly and Co.*, 647 F.3d 1247 (10th Cir. 2011), the Tenth Circuit found
that this court abused its discretion in denying a plaintiff's motion for a new scheduling order to
name a previously undisclosed expert witness. The *Rimbert* court stated that "the single most

important fact about the posture of Rimbert's motion for a new scheduling order is that, at the time it was made, there was no longer any impending trial date or pretrial schedule remaining." *Id*. at 1254. Relying heavily on that fact, the Tenth Circuit concluded not only that the pretrial deadlines and trial of the case would not be disrupted, but also that the party opposed to the new deadlines would not suffer significant prejudice.

At the time American Linen filed its motion to substitute expert, there was no set trial date in this case, meaning that allowing the substitution (and therefore setting new discovery and dispositive motion deadlines) would not impinge on already established case management deadlines. Importantly, however, the circumstances giving rise to a lack of a trial date in this case are dramatically different from those in *Rimbert*. That case had recently been transferred from another district judge to this court, which vacated the existing deadlines to familiarize itself with the case. *Rimbert*, 647 F.3d at 1254. Thus, the lack of a trial setting in *Rimbert* could be attributed to court logistics.

In stark contrast, efforts to set this CERCLA case for trial have been impeded by many factors. These include, but are not limited to, the filing of Plaintiffs' second amended complaint [Doc. 306], which prompted not only dispositive motion practice [Doc. 317], but also both an answer [Doc. 479] and an amended answer [Doc. 580] by American Linen. The answer to the amended complaint included not only counterclaims against Plaintiffs, but also cross-claims against Rawson Leasing, The Lofts at Alameda, and Chisholm's-Village Plaza. Further adding to the complexity of the case was American Linen's inclusion in its amended answer of a third-party complaint for contribution, equitable allocation, and declaratory judgment against a former employee, Victor Jasso, and the widow of a retired pumper truck driver, Jesus Villanueva. In addition, the Court granted various extensions of time to answer these new counterclaims, cross-

claims, and third-party claims [Doc. 479]. Second, the foregoing amendments to pleadings and additional claims prompted further dispositive motion practice. [Doc. 487]. Even now, a motion for partial summary judgment [Doc. 547], a motion for attorney's fees [Doc. 568], two motions to strike [Docs. 581 and 601], a motion for summary judgment by Chisholm's-Village Plaza [Doc. 588], and a motion to supplement complaint [Doc. 618] remain pending. Third, the complexity of the subject matter in this case has required extensive, time-consuming discovery, including the reports and depositions of many experts. This discovery was further complicated by the amendments to pleadings described above. Fourth, this unusually complex discovery, compounded by the lack of cooperation among the parties, has led to protracted and virtually unrelenting discovery disputes resulting in the need to extend discovery deadlines, including additional time granted to American Linen [*see, e.g.*, Docs. 332, 435, and 452] to complete discovery. Finally, it bears noting that there are now more than 620 entries on the docket in a case that has reached more than six years of age, with American Linen's involvement now extending over four years. Motion practice between the parties continues to be extensive, with no apparent end in sight. *Rimbert* presented a somewhat different scenario. Although that case was three years old at the time of the motion for a new scheduling order, the case was younger, less complicated, and involved fewer parties; thus, there was significantly better chance of the litigation progressing in a timely manner.

Allowing American Linen to name a new expert will result in significant disruption of this aging case. As the magistrate judge correctly noted, allowing American Linen to name a new expert will essentially set back discovery to the beginning and require a whole new round of expert depositions. That, in turn, will likely inspire additional motion practice, postponing the trial years into the future.

2.       **Prejudice or surprise**

The type of prejudice that rises to the level of warranting the exclusion of a witness's testimony under *Summers* is the inability of the opposing party to fully litigate the case and defend against the new testimony . . ." *Rimbert v. Eli Lilly and Co.*, 647 F.3d 1247, 1255 (10th Cir. 2011). American Linen contends that naming a new expert will not create these issues because Lazarus will not advance opinions that are materially different from those that Bearzi expressed in his written reports and deposition, and because those opinions are the same "as all the other defense experts' opinions, which Plaintiff[s] have been aware of and preparing for Since April of 2019." Doc. 522 at 17.

(a)       *The magistrate judge's opinion*

American Linen argues that the magistrate judge erred in concluding that this factor weighs against allowing substitution of the expert due to the unfair prejudice to Plaintiffs. The magistrate judge concluded that allowing American Linen to name a new expert would prejudice Plaintiffs for three reasons.

First, the magistrate judge was unpersuaded by American Linen's assertion that substituting a new expert would cause no prejudice to Plaintiffs because Lazarus' opinions would not be significantly different from those expressed in the Bearzi reports, with which Plaintiffs have long been familiar. The magistrate judge concluded that American Linen's argument "fails to account for the severe deficiencies in Mr. Bearzi's reports," which do not set forth the bases and reasons for his opinions. Doc. 596 at 11. Noting that as a threshold matter American Linen had not established that American Linen's new expert would agree with all of Bearzi's opinions and analysis, the magistrate judge concluded that whatever analysis Lazarus provided in support of his opinions would be new and "meaningful change in testimony" that

10

would prejudice Plaintiffs, who would have to start from scratch in analyzing Lazarus' opinions. *Id*. The magistrate found that this new work, along with the corresponding expense, was unfairly prejudicial.

Second, the magistrate judge concluded that allowing a new expert would burden both Plaintiffs and the Court with the task of having to scrutinize the new expert reports to ensure that American Linen's new expert did not produce opinions materially different that those expressed by Bearzi, which would be a difficult task in light of the lack of analysis in Bearzi's reports. The magistrate judge concluded that the likely disputes (and resulting motion practice) that would arise from such comparisons would also unfairly increase Plaintiffs' litigation expenses and burden the Court.

Third, the magistrate judge pointed out the tactical advantage that Lazarus and any other American Linen experts would have in having access to all the reports, depositions and discovery responses from every expert in the case to date—including reports from the United States' expert—not available to American Linen and Plaintiffs when they produced their original reports. Based on the foregoing, the magistrate judge concluded that allowing the substitution would create unfair prejudice to Plaintiffs.

(b)    *Analysis*

First, the Court agrees with the magistrate judge that due to the lack of substantive analysis in the Bearzi report, a report written by a new expert—even if the opinions contained therein are identical (which is in doubt, as explained below)—will necessarily contain new reasoning and explanations for those opinions. That, in turn, will require Plaintiffs to consult their experts and incur the expense of deposing Lazarus. Undoubtedly, Plaintiffs will want the opportunity to have their experts create new reports in rebuttal to Lazarus, and after they do so,

American Linen will want to depose them. In other words, we can expect discovery in this aging case to begin anew.

Second, American Linen argues that substituting Lazarus will cause minimal disruption because his analysis will mirror Bearzi's. The Court finds that argument unpersuasive in light of Lazarus' own Declaration [Doc. 522-2]. Although Lazarus avers that he does not expect that his opinions will "significantly differ" from Bearzi's [Doc. 522-2 at 4 ¶ 12], Lazarus states that in order to address unenumerated "technical and scientific issues in which [he does] not have in-depth expertise," he will have colleagues from another company provided him "with research, analysis support, and co-authorship responsibilities as necessary." Doc. 522-2 at 4, ¶ 10. Lazarus' lack of certainty regarding his own opinions, combined with his need to involve other potential experts, means that the nature of his and other witnesses' opinions is in doubt.

Third, as even Lazarus foresees, Plaintiffs would need to depose those additional expert consultants as well, *see id*., creating additional expense and hardship. American Linen, unable to deny this fact, has offered to pay the costs Plaintiffs incur preparing and appearing for the depositions of Lazarus and his potential co-experts. Doc. 522 at 17. However, given the contentiousness of this litigation to date and the parties' ability to agree on almost nothing, the Court concurs with the magistrate judge that the Court cannot reasonably expect that process to go smoothly, much less for the parties to agree on what constitutes a reasonable expense. Inevitably, more protracted litigation over reasonable costs will ensue, taking up more time and postponing the trial even further.

However, in terms of considering prejudice under *Summers*, the Tenth Circuit in *Rimbert* held that the lack of a trial date and pretrial deadlines meant that "there is no reason the district court could not provide ample opportunity for Eli Lilly to test the opinions of the new expert

witness, review the witness's reports, depose the new witness, and adequately defend against that at trial." *Id*. at 1255. The Tenth Circuit relied heavily on this fact in determining that allowing the new expert would not result in prejudice to the opposing party. The *Rimbert* court also concluded that while there were additional expenses that Eli Lilly would incur in deposing the new expert, "extra expense alone is not the type of prejudice contemplated under *Summers*," and the court should not consider them when analyzing prejudice. *Id*. Therefore, under *Rimbert*, the extra expense alone cannot justify a finding of prejudice.

As previously discussed, this case presents significantly different circumstances than *Rimbert*. In that case, litigation had been pending for three, rather than almost six, years when the request for a new scheduling order was made. The *Rimbert* litigation was significantly less complex, involved substantially fewer parties and experts, and was less contentious than this case. As a result, restarting discovery in that case would have been a much less burdensome and time-consuming undertaking. Here, there is a strong possibility that not only Lazarus, but also other professionals, will contribute to a new expert report, thereby multiplying the amount of discovery to be done and the amount of time it will take. In contrast, there was no such complexity to the substitution of a new expert in *Rimbert*.

Finally, the Court agrees with the magistrate judge that having all the other parties' expert opinions before Lazarus writes his report does provide American Linen with a litigation advantage it would not otherwise have had. Lazarus will have the opportunity to study the reports and depositions of all the experts who have been active in the case before issuing his report, while none of Plaintiffs' experts will have had that information. Having seen any weakness in logic or analysis by previous experts, Lazarus can avoid those pitfalls. That

litigation advantage also constitutes prejudice to Plaintiffs and distinguishes this case from *Rimbert*.

### 3.     Ability to cure

The magistrate judge rejected American Linen's argument that any prejudice to Plaintiffs would be cured by giving Plaintiffs the opportunity to conduct discovery on any new expert reports and by shifting the "reasonable costs" of such discovery to American Linen. The magistrate judge concluded that in light of the complexity of the issues in this case (and undoubtedly, the manner in which they have conducted themselves to this point), the parties would likely become locked in additional protracted litigation over recoverable fees and costs. Further, Plaintiffs' experts would need to be permitted to produce new rebuttal reports because their original rebuttal reports—produced in response to the Bearzi reports that contained very little reasoning—would no longer be applicable, and therefore fairness to Plaintiffs would require "a near restart on expert discovery for both parties." Doc. 596 at 15. In such a complex case, this undertaking would be extremely expensive and would cause "an exceptionally long delay in litigation that is already in its sixth year." *Id*. at 15-16.

The Court agrees with the magistrate judge for the reasons previously described herein. The Court is confident that the "cure" proposed by American Linen—taking responsibility for Plaintiffs' costs incurred as a result of the new expert—will only contribute to more contentious motion practice, a waste of judicial resources, and further delay of the trial in this case.

### 4.     Bad faith

The magistrate judge found that American Linen did not act in bad faith in producing an expert report that was inadequate under Rule 26. The Court agrees with the magistrate judge that there is no evidence of bad faith here. However, the magistrate judge also opined that American

Linen's lack of bad faith was counterbalanced by its lack of diligence in remedying the defects in Bearzi's reports, rendering this factor neutral.

This Court agrees. For the reasons this Court discussed in its previous opinion [Doc. 514], the inadequacy of the Bearzi reports was plain to any attorney of even moderate experience. That a motion challenging those reports would be successful should have come as a surprise to no one. Accordingly, to refrain from taking action to remedy the reports shows a lack of diligence—a conclusion further discussed below.

In conclusion, under the specific circumstances of this case, which differ significantly from those is *Rimbert*, the Court concludes that the *Summers* factors weigh against entering a new scheduling order.

### C.      Reasonable Diligence

Citing *Tesone v. Empire Marketing Strategies*, 942 F.3d 979 (10th Cir. 2019), the magistrate judge also considered whether American Linen acted diligently to either meet the expert deadline or move quickly to satisfy it as soon as possible after its expiration. In *Tesone*, the court stated that "the factor on which courts are most likely to focus ... is the relative diligence of the lawyer ... who seek[s] the change. [G]ood cause is likely to be found when the moving party has been generally diligent, the need for more time was neither foreseeable nor its fault, and refusing to grant the continuance would create a substantial risk of unfairness to that party." *Id* at 988 (internal citations and quotations omitted) (citing *Husky Ventures, Inc. v. B55 Invs., Ltd.*, 911 F.3d 1000, 1020 (10th Cir. 2018)).

American Linen argues that it acted with reasonable diligence with respect to the issues that have arisen with its original expert, Bearzi. The magistrate judge disagreed, concluding that

while American Linen may have acted diligently to find a new expert *after* the Court ruled that Bearzi's reports were improper, it had displayed a lack of diligence up to that point. Specifically, he found that American Linen sat on its hands while Plaintiffs' motion to strike Bearzi's reports was pending, awaiting a crisis instead of preparing to remedy the obvious problems with the reports. The magistrate judge inferred from the motion to substitute that "it does not appear that American Linen even spoke with Mr. Bearzi to ensure that he would be available to fix the reports should the Court find them improper." Doc. 596 at 19.  The magistrate judge noted that "[h]ad American Linen worked more closely with Mr. Bearzi in the interim period, it may have learned sooner that Mr. Bearzi was unavailable to continue serving as its expert," but that "it appears that counsel for American Linen had no meaningful contact with Mr. Bearzi from early August 2021 until early August 2022."  *Id*. at 20. Given the fact that American Linen's expert is essential to its case, and the fact that curing the problems with his reports would require significant work, the magistrate judge found American Linen's inaction to be inexcusable.

Based on the record before it, the Court concludes that the magistrate judge was correct in his determination that American Linen should have acted more diligently to replace Bearzi and head off its present difficulties. Bearzi told the magistrate judge on the record that in August of 2021 he had verbally informed counsel for American Linen that he did not want to continue as an expert in the case. Doc. 606-1 at 9 of 11. This occurred about a year before the Court granted Plaintiffs' motion to strike Bearzi's expert reports, and yet American Linen did nothing. Although American Linen dismisses the magistrate judge's finding that it sat on its hands as mere "conjecture," Doc. 602 at 21, it has provided no evidence to the contrary other than its long-established working relationship with Bearzi. *Id.* In fact, Bearzi told the magistrate judge

that his discussions with American Linen's counsel in August of 2022 did not involve him going forward as an expert in the case. Doc. 606-1 at 10 of 11.

Therefore, the Court concludes that American Linen has not shown that it acted with reasonable diligence to cure the issues with Bearzi.

### D.   *Ehrenhaus* Considerations Do Not Change the Result

The magistrate judge assumed, without deciding, that denying American Linen's request for a new scheduling order would have a dispositive effect on Plaintiffs' owner/operator liability claims against American Linen (which are separate from the arranger claim), given the fact that the complexity of CERCLA claims generally require expertise. Doc. 596 at 24. He noted that while denying a motion to substitute a new expert is not precisely the same as excluding evidence under Rule 37(c)(1), in this case it ultimately has a similar effect. *Id*. at 24-25.

In its objections, American Linen states that while it "does not necessarily agree" that its potential lack of expert may have a dispositive effect, Doc. 602 at 24 n.12, "the *Ehrenhaus* factors weigh heavily against the exclusion of the expert testimony and in favor of lesser sanctions." *Id.* at 24. American Linen puts forth five arguments against denial of its motion for new scheduling order. First, it argues that cases should be decided on their merits, not procedural grounds. However, as the magistrate judge correctly noted, denying the motion for new scheduling order, which prohibits American Linen from naming new experts and producing amended reports, does not in any way "decide" or otherwise put an end to this litigation. While it will likely impact the question of American Linen's liability as an owner/operator, there is still the question of American Linen's contribution to any to any cleanup costs—an issue still to be litigated. American Linen may continue to argue that it should not be required to contribute to cleanup costs under the various factors courts consider when assessing contribution. Preventing

American Linen from naming new experts also does not determine the outcome of Plaintiffs' claim that it acted as an "arranger" under CERCLA.

In its second argument, American Linen contends that the factors set forth in *Woodworker's Supply* weigh against the magistrate judge's recommendation. Although American Linen provides no citation, the Court assumes that it is referring to *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999), which addressed failures to disclose information required by Rules 26(a) and 26(e)(1). The court found that the district court has broad discretion to determine whether such failures are justified or harmless, guided by the following factors: (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness. *Id*. Each of these factors has been previously discussed in this opinion; the Court has concluded they do not weigh in favor of American Linen.

Third, American Linen asserts that under *HCG Platinum, LLC v. Preferred Prod. Placement Corp.*, 873 F.3d 1191, 1203 (10th Cir. 2017), the court should attempt to impose lesser sanctions—such as making American Linen pay Plaintiffs' expenses in deposition its new expert—that would be efficacious but not dispositive. The Court has previously discussed the reasons that American Linen's proposed lesser sanction would not be effective in the specific circumstances of this case. It would mean essentially restarting discovery, conducting new rounds of expert reports and depositions, and then enduring protracted disputes over the costs to be borne by American Linen. This is simply unworkable.

Fourth, American Linen contends that the magistrate judge's recommendation is overbroad because it would strike Bearzi's third report, which pertains solely to the arranger

claim and has not been challenged in previous motions. It argues that the magistrate judge would doom American Linen to liability on that claim by preventing it from calling an expert at trial. However, that is an inaccurate depiction of the magistrate judge's recommendation, which was to strike Bearzi's initial and second reports only and prohibit him from testifying on those reports at trial. Doc. 596 at 28. Under the current posture of the case, there is nothing to prevent Bearzi from testifying about the contents of his third report.

Finally, American Linen argues that the magistrate judge has misapplied *HCG Platinum* and *Woodworker's Supply*. The Court disagrees. As previously discussed, denying American Linen's request to name a new expert is not a litigation-ending sanction, or a sanction at all. Second, the denial does not put an end to the litigation, but rather pertains only to the owner/operator claims and leaves open the issue of contribution. Accordingly, *HCG Platinum* does not apply. Even so, like the magistrate judge, this Court has considered the efficacy of the only alternative proposed by American Linen—shifting the costs of new expert depositions—and found it to be unworkable under the circumstances of this case. The Court finds no error by the magistrate judge on this score.

**IT IS THEREFORE ORDERED** that:

(1) *Defendant American Linen Supply of New Mexico, Inc.'s Objections to Magistrate's Proposed Findings and Recommended Disposition, Doc. 596* [Doc. 602] are **OVERRULED**;

(2) *Magistrate Judge's Proposed Findings and Recommended Disposition* [Doc.596] are **ADOPTED**;

(3) Plaintiffs' Motion to Strike American Linen's Expert's Reports [Doc. 261] is **GRANTED**;

(4) The *Motion of American Linen to Designate Substitute Expert Witness and Amend Expert Disclosures* [Doc. 522] is **DENIED**;

(5) Mr. Bearzi's initial (June 3, 2019) and second (August 4, 2020) reports are hereby **STRICKEN**, and he is prohibited from testifying as to the contents of those reports at trial;

(6) The Court declines without prejudice to adopt at this time any other remedy requested by Plaintiffs.

_____
SENIOR UNITED STATES DISTRICT JUDGE