IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CITY OF LAS CRUCES AND DONA ANA
COUNTY,

      Plaintiffs,

vs.                                                      Civ. No. 17-809 JCH/GBW

THE LOFTS AT ALAMEDA, LLC;
AMERICAN LINEN SUPPLY OF NEW
MEXICO, INC.; RAWSON LEASING
LIMITED LIABILITY CO.; and
CHISHOLM'S-VILLAGE PLAZA L.L.C.,

      Defendants.

## MEMORANDUM OPINION AND ORDER

This case is before the Court on six motions: (1) *Motion for Partial Summary Judgment by American Linen Supply of New Mexico, Inc. for Dismissal of the Plaintiffs' Section 107 Claims on Statute of Limitations Grounds* [Doc. 547], (2) *Defendant American Linen Supply of New Mexico, Inc.'s Request for Attorney Fees and Costs . . .* [Doc. 568], (3) *Plaintiffs' Notice of Supplemental Authority and Mootness* [Doc. 573], (4) *Plaintiffs' Motion to Strike Portions of, or for Leave to File a Surreply to, Defendant American Linen's Reply in Support of Motion for Partial Summary Judgment* [Doc. 581], (5) *Defendant Chisholm's-Village Plaza, LLC's Motion for Summary Judgment on Defendant American Linen Supply of New Mexico, Inc.'s Crossclaim for Contribution, Equitable Allocation, and Declaratory Judgment* [Doc. 588], and (6) American Linen's *Motion to Strike or for Leave to File a Surreply…* [Doc. 601]. These motions raise the questions of whether partial summary judgment should be entered in favor of American Linen on

Plaintiffs' claims under Section 107 of CERCLA; if so, the effects of such a judgment on American Linen's cross-claims against Chisholm's-Village Plaza; and whether in refusing to dismiss the Section 107 claim Plaintiffs have engaged in bad faith litigation such that they should have to pay attorney's fees and costs to American Linen. After reviewing all the briefs, including the motions, the respective responses, and the replies, the Court concludes that a surreply to the motion for partial summary judgment is not called for, and that American Linen's motion for summary judgment on the Section 107(a) claims should be granted. The Court also concludes that American Linen's motion for attorney's fees and costs should be granted as further described herein. Finally, the Court finds that American Linen may file a surreply to respond to Chisholm's-Village Plaza's argument that it is entitled to summary judgment on American Linen's crossclaim for contribution under Section 113(f) as a result of the demise of Plaintiffs' Section 107(a) claims.

## **RELEVANT LAW**

The Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") provides that "potentially responsible parties" (PRPs) may be compelled to perform or pay for the cleanup of contaminated sites. There are four elements necessary to establish liability under CERCLA: (1) that hazardous substances were disposed of at a "facility"; (2) that there has been a "release" or "threatened release" of hazardous substances from the facility into the environment; (3) that the release or threatened release has required or will require the expenditure of "response costs"; and (4) that the defendant falls within one of four categories of responsible parties. *See, e.g., City of Colton v. American Promotional Events, Inc.-West*, 614 F.3d 998, 1002-03 (9th Cir. 2010) (citations and quotations omitted); *United States v. CDMG Realty Co.*, 96 F.3d 706, 712 (3d Cir. 1996). The statute includes two provisions that allow parties that incur cleanup costs to recoup all or part of their costs from PRPs: cost-recovery actions under Section

2

107(a)(4)(B) by those who have incurred response costs, and contribution actions by potentially responsible parties under Section 113(f).[1]

The Supreme Court has held that Sections 107(a) and 113(f) provide two "clearly distinct" remedies. *Cooper Indus., Inc., v. Aviall Servs., Inc.*, 543 U.S. 157, 163 n.3 (2004). These remedies complement each other by providing causes of action to persons in different procedural circumstances." *United States v. Atlantic Research Corp.*, 551 U.S. 128, 139 (2007) (internal citation and quotation omitted). First, Section 107(a)(4)(B) of CERCLA allows any person to sue a PRP to recover "any other necessary costs of response" that person has incurred. These lawsuits are known as "cost-recovery" actions. *Cooper Indus.*, 543 U.S. at 163 n.3 ("CERCLA provide[s] for a right to cost recovery in certain circumstances, § 107(a)"). The right to bring a cost-recovery action under CERCLA is available to parties who have incurred necessary costs of response but have neither been sued nor settled their liability under the CERCLA sections governing abatement actions and cost-recovery suits. *See, e.g., Morrison Enters., LLC v. Dravo Corp.*, 638 F.3d 594, 603 (8th Cir. 2011). A PRP is generally held jointly and severally liable for all cleanup costs sought in the suit, even costs attributable to other PRPs. *GP Vincent II v. Estate of Beard*, 68 F.4th 508, 515 (9th Cir. 2023). Cost-recovery actions under Section 107(a) are subject to a six-year statute of limitations, which begins upon the initiation of the remedial action, which is typically a long-term, permanent remedy for the contaminated site. 42 U.S.C. § 9613(g)(2)(B).

---

[1] The EPA and environmental lawyers typically refer to CERCLA provisions by the section number of the provision in the bill that Congress passed, not by the section number of the law as codified in the United States Code. Thus, for instance, 42 U.S.C.A. § 9607 is referred to by the EPA and environmental lawyers as CERCLA § 107. Courts, however, sometimes refer to provisions of CERCLA by using the section numbers of the United States Code, Title 42. For ease of reference, in determining the parallel U.S. Code citation to the CERCLA, in general, CERCLA § 1xx can be found at 42 U.S.C.A. § 96xx. For example, CERCLA § 113 is codified at 42 U.S.C.A. § 9613.

On the other hand, Section 113(f) allows for a remedy of contribution, "defined as the tortfeasor's right to collect from others responsible for the same tort after the tortfeasor has paid more than his or her proportionate share . . ." *U.S. v. Atlantic Research Corp.*, 551 U.S. 128, 138 (2007) (internal citation and quotation omitted).  A PRP that has been required to pay response costs to a federal or state government may assert a contribution claim against other PRPs in court to compel those PRPs to bear an equitable share of those costs according to degree of fault. Section 113(f)(1) states that "Any person may seek contribution from any other person who is liable or potentially liable under section 107(a) . . ."  Section 113(f)(3)(B) provides:

> A person that has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement may seek contribution from any person who is not party to a settlement referred to in [Section 113(f)(2)].

Contribution actions under Section 113(f) are subject to a three-year statute of limitations, which begins on "the date of judgment in any action under [CERCLA] for recovery of [response] costs" or the "entry of a judicially approved settlement with respect to such costs." 42 U.S.C. § 9613(g)(3)(A) and (B).

The Supreme Court has explained the interaction between Sections 107(a) an 113(f) as follows:

> [T]he remedies available in §§ 107(a) and 113(f) complement each other by providing causes of action 'to persons in different procedural circumstances.'... Section 113(f)(1) authorizes a contribution action to PRPs with common liability stemming from an action instituted under § 106 or § 107(a). And § 107(a) permits cost recovery (as distinct from contribution) by a private party that has itself incurred cleanup costs. Hence, a PRP that pays money to satisfy a settlement agreement or a court judgment may pursue § 113(f) contribution. But by reimbursing response costs paid by other parties, the PRP has not incurred its own costs of response and therefore cannot recover under § 107(a). As a result, though eligible to seek contribution under § 113(f)(1), the PRP cannot simultaneously seek to recover *the same expenses* under § 107(a). Thus, at least in the case of

reimbursement, the PRP cannot choose the 6-year statute of limitations for cost-recovery actions over the shorter limitations period for § 113(f) contribution claims.

*United States v. Atlantic Research Corp.*, 551 U.S. 128, 139 (2007) (emphasis added). In other words, PRPs like Plaintiffs who resolve their liability to the United States or an individual state through an administratively or judicially approved settlement can seek contribution from another PRP.

Further, a party that may bring a Section 113(f) contribution action *must* proceed under Section 113(f) and is barred from proceeding with a cost-recovery action under Section 107(a). As the Ninth Circuit noted in *Asarco LLC v. Atlantic Richfield Co.*, 866 F.3d 1108, 1117 (9th Cir. 2017), "every federal court of appeals to have considered the question since *Atlantic Research* has concluded that a party who may bring a contribution action for certain expenses must use the contribution action [under § 113(f)(3)(B) ], even if a cost recovery action [under § 107(a)] would otherwise be available." (internal citations and quotations omitted) (listing decisions from the Ninth, Seventh, Eleventh, Eighth, Third, Second, and Sixth Circuit Courts of Appeals). Although the Tenth Circuit has not addressed the interplay of Sections 107(a) and 113(f) since the Supreme Court's decision in *Atlantic Research*, there is no reason to believe it would reach a different conclusion. In fact, district courts within the Tenth Circuit have followed the approach taken by the other circuits. *See, e.g., Stratus Redtail Ranch LLC v. Int'l Bus. Machines Corp.*, No. 19-CV-02611-CMA-NYW, 2020 WL 6119864, at *6 (D. Colo. Mar. 24, 2020); *Fansteel Metals, Inc. v. Muskogee City-County Port Authority*, No. 21-CV-102-RAW, 2022 WL 3018416, at *3 (E.D. Okla. 2022).

5

**BACKGROUND**

This central issue in this case is who bears liability for cleaning up groundwater pollution in the Griggs & Walnut Ground Water Plume ("the Site") near Las Cruces, New Mexico, and how those costs should be apportioned. The case began in 2017 with the filing of the original Complaint [Doc. 1]. In that pleading, Plaintiffs sued the United States for response costs under CERCLA's Section 107(a), Doc. 1 at ¶¶ 34-43, and for declaratory relief under Section 113(g)(2). *Id.* at ¶¶ 45-48. The United States counterclaimed against Plaintiffs for response costs and declaratory judgment. Docs. 20, 78. In 2018, Plaintiffs filed their Amended Complaint [Doc. 79] against the United States, but this time added American Linen, three other "dry cleaner defendants,"[2] and two individuals[3] as defendants. In their Amended Complaint, Plaintiffs asserted claims for response costs against all defendants as owner/operators and against the United States as an arranger under § 9607(a). Doc. 79 at ¶ 52-63. Plaintiffs also asserted claims against American Linen and the other dry cleaner defendants for contribution under § 9613(f)(1)[4], *id.* at ¶ 64-65, as well as declaratory

---

[2] The other dry cleaner defendants are The Lofts at Alameda, LLC, Rawson Leasing Limited Liability Co., and Chisholm's-Village Plaza L.L.C. Plaintiffs are no longer pursuing claims against these three defendants.

[3] The individuals are Jose and Yvonne Coronado. Plaintiffs' claims against them have since been dismissed.

[4] Notably, the Amended Complaint cites Section 9613(f)(1), not Section 9613(f)((3)(B), which specifically governs the right to contribution by "a person who has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement" from "any person who is not party to a settlement…" As will be further discussed elsewhere, this pleading choice serves as a point of contention between Plaintiffs and American Linen as to the scope of Plaintiffs' contribution claims.

relief under Section 9613(g)(2). The United States again counterclaimed against Plaintiffs for both response costs and contribution. Doc. 110.

By July 30, 2020, the Plaintiffs had finalized a settlement with the United States, and the Court entered a Consent Decree [Doc. 225] addressing the claims between those parties. The Consent Decree provided that its objection was to "resolve the claims of United States against [Plaintiffs]," as well as those by Plaintiffs "that have been or could have been asserted against the United States with regard to the Site[.]" Doc. 225 at 11, ¶ 5. Further, the Consent Decree provides that the "matters addressed" therein were "all response actions taken or to be taken and all response costs incurred or to be incurred, at or in connection with the Site, by the United States, 'Plaintiffs', or any other person." *Id*. at 47, ¶ 93. American Linen was not a party to the Consent Decree.

In early February of 2021, Plaintiffs filed their Second Amended Complaint [Doc. 306] against American Linen and three other defendants, having previously dismissed their claims against the two individuals. Plaintiffs asserted a claim against all the defendants for response costs under § 9607(a). As to American Linen specifically, Plaintiffs alleged that it is liable under § 9607(a) as both an owner/operator and an arranger. Doc. 306 at ¶ 59-60. Plaintiffs also alleged that all defendants, including American Linen, are liable under Section 113(f)(1)—notably, not under Section 114(f)(3)(B)—for contribution to cleanup costs incurred by Plaintiffs. Less than two weeks later, the remaining parties filed their Joint Status Report and Provisional Discovery Plan ("JSR") [Doc. 313]. In the "Stipulations" section on page 5 of that document, the parties stated: "By virtue of Plaintiffs' settlement of its claims against the United States [], the only remaining claims in this case are those for contribution pursuant to CERCLA Section 113." Doc. 313 at 5.[5]

---

[5] Shortly after the filing of the JSR, the magistrate judge held a Rule 16 scheduling conference with all parties to discuss discovery. *See* Doc. 318 (clerk's minutes). According to the minutes,

At this point, the parties' arguments with respect to the Section 107(a) claim become puzzling. American Linen moved for summary judgment [Doc. 547] on Plaintiffs' Section 107(a) claim. In that motion, American Linen does not argue that it is entitled to summary judgment for the most obvious reasons: that under CERCLA those claims are precluded by the consent decree or because Plaintiffs have agreed in the JSR to dropping their Section 107 claims. Instead, American Linen argues that summary judgment is appropriate on statute of limitations grounds. Plaintiffs responded, arguing the motion for summary judgment should be denied as untimely because it was not filed within 30 days of the close of discovery. Doc. 565 at 1. Plaintiffs then admit that their Section 107(a) claims are untenable, stating "[E]ntry of the Consent Decree on July 30, 2020—not the statute of limitations—precludes Plaintiffs from maintaining claims under § 107(a)." *Id*. at 2. *See also id*. at 3 ("American Linen was correct [] when it said recognized that it would only need to defend against Plaintiffs' pending § 113(f) contribution claims post-Consent Decree—not their § 107(a) claims.") (internal quotations omitted). Despite that recognition, Plaintiffs do not concede that the motion for summary judgment should be granted; instead, they argue that they may still recover response costs from American Linen under § 113(f)(3)(B). *Id*. at 14.

Before filing its reply in support of its motion for summary judgment, American Linen filed its *Request for Attorney Fees and Costs Under 28 U.S.C. § 1927 and the Court's Inherent Authority* [Doc. 568]. In that motion, American Linen argues that Plaintiffs "manifest[ed]

---

Plaintiffs' counsel took the position that American Linen's recent filings had voided the parties' discovery agreement in the JSR. The minutes then go on to record the parties' positions on various discovery matters. However, there is no indication that any party disavowed the stipulation on the Section 107(a) claims; indeed, there is no mention whatsoever of the Section 107(a) claims.

intentional and reckless disregard of the law and of their duties to the Court, resulting in unreasonable multiplication of proceedings…" *Id* at 1. American Linen points out that Plaintiffs have refused to dismiss their Section 107 claims despite acknowledging those claims are prohibited by their settlement with the United States and entry of the Consent Decree, and that this refusal has required American Linen to expend unnecessary effort and resources on those baseless claims. It argues that despite stating both privately and in court filings that they would remove the § 107 claims, Plaintiffs' attorneys have not done so, forcing American Linen to continue to defend those claims and file a motion for summary judgment. *Id.* at 1-2. American Linen points out that this has delayed resolution of issues in the case. American Linen also contends that Plaintiffs have failed to amend their Rule 26(a)(1)(A)(iii) damages disclosure to reflect that their payments and that of the Department of Defense to the EPA reduce American Linen's potential liability. *Id.* at 3.

A week later, American Linen filed its reply[6] in support its motion for summary judgment. [Doc. 570]. A week after that, counsel for Plaintiffs seemed to remember that they had stipulated to the dismissal of Section 107(a) claims, writing to American Linen's counsel demanding that American Linen withdraw both its motion for summary judgment and its motion for attorney's fees because they are "premised on the false assertion that Plaintiffs have not dismissed their Section 107 claim against American Linen." Doc. 572-3 at 2. Inexplicably, again Plaintiffs did not concede that American Linen is entitled to summary judgment on the Section 107(a) claims, nor did they offer to file a Notice of Stipulation of Dismissal or any other pleading to effectuate the dismissal of their Section 107 claims. Instead, pointing to the February 11, 2021, stipulation that

---

[6] Plaintiffs moved to strike portions of American Linen's reply brief for including new facts and arguments, or in the alternative to allow them to file a surreply.

the only remaining claims "are those for contribution pursuant to CERCLA Section 113," Plaintiffs demanded that American Linen withdraw its motions for summary judgment and sanctions. American Linen refused.

Eight days after the reply brief was filed, Plaintiffs filed two documents: their response [Doc. 572] to American Linen's motion for sanctions and a *Notice of Supplemental Authority and Mootness* [Doc. 573][7]. In the latter, Plaintiffs state that in the course of preparing their response to the motion for sanctions, they were "reminded that the parties had in fact stipulated to dismissal of Plaintiffs' 107(a) claim on February 11, 2021. In light of the immaterial nature of that dismissal, and lack of any practical effect on the litigation, Plaintiffs' counsel had not recalled it." Doc. 573 at 1. Plaintiffs then assert that stipulation in the JSR renders moot the motion for summary judgment and "most of the Motion for Sanctions." *Id*. at 2.

**DISCUSSION**

I.    **Motion to Strike American Linen's Reply Brief [Doc. 581][8]**

Plaintiffs ask the Court to either strike portions of American Linen's reply in support of its motion for summary judgment, or to allow them to file a surreply. At the heart of the motion lie two separate concerns. First, Plaintiffs point out that the reply contains new "supplemental material facts" in violation of the Local Rules, as well as argument based on those facts. Second, they contend that the reply contains arguments that Plaintiffs should not be permitted to amend their complaint, which they have not requested. They ask the Court to either disregard these arguments or let them file a surreply to address them.

---

[7] American Linen filed a response [Doc. 578] to the Notice of Supplemental Authority. The Court discusses both filings below.

[8] American Linen filed a response [Doc. 583] and Plaintiffs filed a reply [Doc. 586].

The Court will deny this motion to strike. As explained in further detail below, summary judgment will be granted to American Linen on Plaintiffs' Section 107(a) claim. The Court reaches that decision without need to reference any of the arguments in American Linen's reply in support of the motion for summary judgment, and therefore a surreply is unnecessary.

II.    **American Linen's Motion for Partial Summary Judgment on § 107(a) Claim**

A.    <u>**The Parties' Arguments**</u>

Oddly, American Linen does not argue that it is entitled to summary judgment for the most obvious reasons: that under CERCLA those claims are precluded by the consent decree or because Plaintiffs have agreed to drop their Section 107(a) claims. American Linen does not make the straightforward statutory argument that it should be granted summary judgment on the § 107(a) claims because Section 113(f)(3)(B) provides that having settled with the United States, Plaintiffs may only seek contribution under § 113. It also does not argue that it is entitled to summary judgment on the Section 107(a) claims because Plaintiffs have stipulated in the JSR that only the § 113 claims remained in the case but then failed to follow through by having the claim dismissed.[9]

Instead, American Linen argues that summary judgment on the Section 107(a) claim is appropriate on statute of limitations grounds. Doc. 547 at 9. This, in turn, would require the Court to determine as a matter of law whether Plaintiffs are attempting to recover for a "removal action" or a "remedial action," the latter of which is consistent with a more permanent remedy taken instead of or in addition to a removal action. *Id.* at 10. American Linen asserts that Plaintiffs' Section 107(a) claim is untimely regardless of whether one applies the three-year statute of

---

[9] American Linen did mention in a footnote, however, that Plaintiffs had stated *in a brief filed in a separate case pending before a different judge* that their cost recovery claims should be dismissed. *See* Doc. 547 at 23 n.9. However, such a statement lacks effect in this case.

limitations after completion of a removal action or the six-year limitations period applicable to a remedial action. It argues that Plaintiffs' "removal action[10]" was filed three years after the end of the three-year limitations period, while their remedial action was filed eleven months after the six-year limitations period. *Id*. at 9-18. American Linen then argues that Plaintiffs cannot use Section 113(f)(1) or (f)(3)(B) to recover response costs. *Id*. at 18. Rather, it contends that Plaintiffs' claim is limited to costs incurred after November 6, 2017, when the EPA issued its Unilateral Administrative Order for Operation and Maintenance to the Plaintiffs.

In response, Plaintiffs argue the motion for summary judgment should be denied as untimely because it was not filed within 30 days of the close of discovery. Doc. 565 at 1. Plaintiffs then admit that their Section 107(a) claims are untenable, stating "[E]ntry of the Consent Decree on July 30, 2020—not the statute of limitations—precludes Plaintiffs from maintaining claims under § 107(a)." *Id*. at 2. *See also id*. at 3 ("American Linen was correct [] when it recognized that it would only need to defend against Plaintiffs' pending § 113(f) contribution claims post-Consent Decree—not their § 107(a) claims.") (internal quotations omitted). Despite that recognition, Plaintiffs do not concede that the motion for summary judgment should be granted, nor do they offer to file a stipulated motion to dismiss their Section 107(a) claims.  Instead, Plaintiffs argue

---

[10] The term "removal action" is commonly used to refer to efforts to reduce environmental contamination and the resulting threat to health and safety. *See, e.g., New York v. Next Millennium Realty, LLC*, 160 F. Supp. 3d 485, 509 (E.D.N.Y. 2016) ("Measures taken to minimize and mitigate contamination, but not to permanently eliminate it, are properly classified as removal actions.") (citation and quotation omitted); CERCLA § 101, 42 U.S.C.A. § 9601(23); *MPM Silicones, LLC v. Union Carbide Corporation*, 966 F.3d 200, 219 (2d Cir. 2020), as amended, (Aug. 13, 2020) ("Removal actions are undertaken to deal with threats to human health or the environment which require an immediate response"—"they are generally not so ambitious as to seek to eliminate or permanently contain the source of contamination. They do not generally aim to serve as permanent solutions.") (internal citation and quotation omitted).

that while they may no longer seek response costs under § 107(a), "nothing forecloses a party from seeking [those costs] under § 113(f)(3)(B)." *Id*. at 14. Plaintiffs then assert that as a result of the foregoing, the only relevant statute of limitations is the three-year limitations period found in § 113(g)(3)(B). Notably absent from Plaintiffs' response is any explanation of why they had failed to take procedural action to dismiss their admittedly defunct § 107(a) claims, even after stipulating that they were no longer viable, or a concession that American Linen is entitled to summary judgment on those claims.

In addition to asserting that American Linen's motion for summary judgment is untimely, Plaintiffs argue that the motion should be denied on its merits. Confusingly, this centers around the argument that Plaintiffs can still recover under their *other* cause of action, Section 113(f). First, they contend that they do not need § 107(a) to recover all their costs from American Linen because after entry of the Consent Decree, Plaintiffs' damages claims now lie under § 113(f), through which they can recover all of their future and past response costs, including any they would have recovered under § 107(a). Doc. 565 at 12. Plaintiffs acknowledge that their Second Amended Complaint ("SAC") references § 113(f) generally but not § 113(f)(3)(B) specifically, but they assert that both sections apply here and that the SAC is sufficiently pled under notice pleading standards. Doc. 565 at 12 n.7. Second, Plaintiffs contend that under § 113(g)(3)(B), the applicable statute of limitations is three years, which expired on July 29, 2023, three years after the entry of the Consent Decree. Doc. 565 at 18. In the alternative, Plaintiffs contend if the Court agrees with American Linen that Plaintiffs can recover certain costs only under § 107(a), then Plaintiffs may still recover costs incurred before November 6, 2017, because the statute of limitations should be equitably tolled. Doc. 565 at 19. Plaintiffs argue that equitable tolling is appropriate because American Linen misled Plaintiffs for years about its past use of PCE. *Id*.

13

B.     <u>Analysis</u>

American Linen is entitled to judgment as a matter of law on Plaintiffs' claims under Section 107(a). The Court reaches this conclusion for two related, but independent, reasons.

First, as previously discussed, a party (like Plaintiffs) who settles its CERCLA liability with a state or federal government, thereby obtaining immunity from contribution claims, is limited to bringing contribution claims and cannot bring cost recovery claims. Thus, CERCLA does not permit Plaintiffs' Section 107(a) claims to go forward against American Linen. CERCLA does allow Plaintiffs to seek contribution under Section 113(f). The parties do not have a serious disagreement on this point of law, and Plaintiffs have acknowledged that CERCLA does not permit them to go forward with the Section 107(a) claims.

The lack of dispute on this matter underlies the second reason the Court will grant American Linen summary judgment on the Section 107(a) claims, and that is this—the parties have stipulated to the dismissal of those claims, and that stipulation was never withdrawn. At the conference before the magistrate judge, Plaintiffs did retract their agreement to certain discovery matters, but they did *not* withdraw their stipulation that the Section 107(a) claims should be dismissed. Far from it, the Plaintiffs have acknowledged that their Section 107(a) claim is defunct and relied upon the stipulation to argue for *denial* of the motion for summary judgment as a moot point. As both parties agree that Plaintiffs' Section 107(a) claim cannot go forward against American Linen, it is a straightforward matter to enter summary judgment in favor of American Linen, which is the relief requested in the motion. For the two reasons stated above, that relief (and therefore the motion) will be granted. For the same reasons, *Plaintiffs' Notice of Supplemental Authority and Mootness* [Doc. 573], which is essentially a motion asking the Court to summarily deny American Linen's motion for summary judgment, will be denied.

The Court rejects American Linen's argument that the motion for summary judgment is untimely under Rule 56(b) of the Federal Rules of Civil Procedure, which provides that "[u]nless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery." Indeed, the necessity of filing the motion was prompted by Plaintiffs' own failure to take the timely and necessary procedural action of dismissing their Section 107 claim after agreeing that it could not go forward.

Unfortunately, the parties have needlessly muddied the waters in briefing a motion for summary judgment on the Section 107(a) claim by spending many pages arguing about the nature and scope of a *different* cause of action—contribution under CERCLA's Section 113—and what damages, if any, Plaintiffs can recover through that claim. In fact, the parties have spread out the briefing on Section 113(f) issues among various motions. For example, the question of the interplay between the statute of limitations and whether Plaintiffs are required to specifically reference Section 113(f)(3)(B) in the Amended Complaint was addressed in American Linen's motion for partial summary judgment [Docs. 547, 565, and 570], American Linen's motion for sanctions [Docs. 568, 572, and 577], and Plaintiffs' motion to strike [Docs. 581, 583, and 586]. While that is certainly an appropriate topic for litigation, it is needlessly confusing to include it on multiple motions pertaining to the Section 107(a) claim. As a result, the Court will not address the topic here, but will return to those arguments in a future opinion addressing the scope of Plaintiffs' Section 113 claim.

## III.    Motion for Attorney's Fees and Costs [Doc. 568]

### A.    <u>Arguments of the Parties</u>

American Linen asks the Court to award it attorney fees and costs incurred[11] due to Plaintiffs' "intentional and reckless disregard of the law and of their duties to the Court." Doc. 568 at 1. It argues that when Plaintiffs entered into the Consent Decree, the scope of their case necessarily changed—an alteration that Plaintiffs recognized—but that they refused to conform their complaint to the new legal landscape. Specifically, American Linen states that "[a] settling [PRP] that resolves its liability [sic] [against] the United States is entitled contribution protection under § 113(f)(2) for the maters addressed in the Consent Decree and can no longer bring § 107 claims for those matters for which the settling PRP enjoys contribution protection. Despite knowledge of these changes resulting from the entry of the Consent Decree, Plaintiffs reasserted their § 107 claims in the Second Amended Complaint." Doc. 568 at 2. American Linen asserts that it is "constrained to direct its case according to the pleadings" and therefore by refusing to dismiss the Section 107 claims despite stipulating that they were no longer viable, Plaintiffs forced American Linen to file a motion for summary judgment. *Id*. at 3. According to American Linen, Plaintiffs intentionally retained the Section 107 claim as leverage to ask for leave to amend their Section 113(f) claim, and that this is an improper, bad faith purpose. *Id*.

In response [Doc. 572], Plaintiffs argue that they should not be sanctioned because they stipulated to dismiss their Section 107(a) claims, and although they forgot about this stipulation, once they realized the stipulation had been made, they contacted American Linen to afford it the opportunity to withdraw its motion for sanctions. *Id*. at 2. Plaintiffs take no responsibility for affirmatively including a Section 107(a) claim in their SAC after entry of the consent decree that precluded such a claim or for continuing to litigate the Section 107(a) claim. Nor do Plaintiffs take

---

[11] American Linen does not enumerate the fees and costs to which it is entitled—for example, fees incurred in preparing certain briefs or particular discovery.

responsibility for their failure to take procedural steps (such as filing a stipulated notice or motion) to dismiss the Section 107(a) claim, even after they had been reminded of their stipulation. Rather, Plaintiffs contend that their counsel have engaged in no improper conduct and disregarded no duty. *Id*. at 3. To the contrary, Plaintiffs argue that the Court should sanction American Linen for filing its motion for summary judgment and motion for sanctions despite the existence of the stipulation. *Id*.

**B.**    **Legal Standard**

28 U.S.C. § 1927 provides that "[a]ny attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Sanctions under Section 1927 are appropriate when an attorney acts recklessly or with indifference to the law; is cavalier or bent on misleading the court; intentionally acts without a plausible basis; or when the entire course of the proceedings is unwarranted. *Steinert v. Winn Group, Inc*., 440 F.3d 1214, 1221 (10th Cir. 2006) (quoting *Dominion Video Satellite, Inc. v. Echostar Satellite L.L.C*., 430 F.3d 1269, 1278 (10th Cir. 2005)). Section 1927 imposes "a continuing duty upon attorneys to dismiss claims that are no longer viable." *Jolly Grp, Ltd. v. Medline Indus., Inc*., 435 F.3d 717, 720 (7th Cir. 2006). An attorney's actions are measured under the standard of objective bad faith. *Braley v. Campbell*, 832 F.2d 1504, 1512 (10th Cir. 1987).

The Court also has authority under its own inherent power to deter frivolous and abusive litigation and to promote justice and judicial efficiency by imposing monetary sanctions. *See Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764-67 (1980); *Braley*, 832 F.2d at 1510 n.4; *Link v. Wabash R. Co*., 370 U.S. 626, 632 (1962) (recognizing the well-acknowledged inherent power of a court to levy sanctions in response to abusive litigation practices).

17

C.      **Analysis**

As the Court has explained in Part II, *supra*, American Linen is entitled to summary judgment on Plaintiffs claims for response costs under CERCLA Section 107(a). If the Court finds that Plaintiffs pursued and refused to dismiss the Section 107 claims in bad faith or for an improper purpose, American Linen may be entitled to recover attorneys' fees and costs.

First, the Court finds that Plaintiffs multiplied the proceedings by continuously refusing to dismiss their Section 107(a) claim against American Linen despite acknowledging that the claim is not viable. For example, in correspondence with American Linen in the second half of 2020, *see* Doc. 565-1, Plaintiffs acknowledged the problems with their Section 107(a) claim yet still included it in the Second Amended Complaint in February 2021. *See also* Doc. 568-1 at 6 (Email dated December 4, 2020, from Plaintiffs to American Linen stating, "If the Court adopts Judge Wormuth's recommendation and allows Plaintiffs to amend their complaint, Plaintiffs will remove their 107 claims against all parties in that amended complaint."); Doc. 565-1 at 4-5 (same). In a separate case in which Plaintiffs sued their insurers, *City of Las Cruces, et al. v. Traveler's Indem. Co.,* No. 2:14-cv-931 MV/KRS (D.N.M. 2014), Plaintiffs represented to another federal district judge that they had "agreed to dismiss their CERCLA Section 107 claims against American Linen and proceed exclusively under Section 113, since the settlement with the United States precludes them from maintaining the Section 107 claims." *Id*., Doc. 199 (Nov. 2, 2020, status report) at 4. The record is replete with instances of Plaintiffs agreeing that their Section 107 claim should be dismissed, but over a period of years Plaintiffs never took action to dismiss it, even disputing that American Linen's motion for summary judgment on that claim should be granted. This intransigence has multiplied the proceedings by forcing the parties to continue to correspond about

the Section 107(a) claim and by forcing American Linen to file their motion for partial summary judgment.

Second, the Court also finds that with respect to the Section 107(a) claim, Plaintiffs have acted recklessly or with indifference to the law, and that they intentionally acted without a plausible basis in violation of 28 U.S.C. § 1927. As the Court has already explained, Plaintiffs refused to move to dismiss the claim even though it was precluded by the consent decree and even after Plaintiffs had stipulated to its dismissal. Even now, in the briefing on the motion for summary judgment and the motion for sanctions, Plaintiffs have failed to offer a good faith basis for refusing to file a motion to dismiss the Section 107(a) claim. Plaintiffs seem to defend themselves entirely on the inclusion of a one-sentence stipulation buried within a 42-page JSR. However, this argument is not objectively reasonable; any lawyer with any litigation experience whatsoever would understand that there would need to be a motion to dismiss such a claim. Plaintiffs suggest that by stipulating to dismissal of the Section 107(a) claims in the JSR, the matter had come to an end and they had fulfilled their ethical obligations. The Court is unconvinced. The operative pleading in the case, the Second Amended Complaint, still asserts a Section 107(a) claim against American Linen. Plaintiffs had a duty to file a motion to dismiss the claim after entering into the stipulation. Procedurally, this is not only correct, but simple. Plaintiffs failed to take that action, allowing it to linger for years. Moreover, the Court is not persuaded that Plaintiffs' counsel subjectively believed that this single sentence in a JSR had served to dispose of the Section 107 claim. The latter conclusion is supported by the following two paragraphs of this opinion.

As far as justifying including their Section 107(a) claim in the Second Amended Complaint despite having just entered into the Consent Decree, Plaintiffs state, "When Plaintiffs moved to amend, they were not focused on formally changing any claims to reflect the effect of the Consent

Decree because those would not change the substance of the litigation, and they believed they would be addressed by agreement of the parties at the appropriate time without issue. Namely: elimination of American Linen's § 113(f) claims against Plaintiffs, and Plaintiffs proceeding under § 113(f)(3)(B)." Doc. 572 at 5. The meaning of this unusual statement is unclear to the Court. However, one reasonable interpretation is that Plaintiffs view this as a "no harm, no foul" situation. Another is that Plaintiffs kept the Section 107(a) claim in the Second Amended Complaint to use as a lever to gain concessions for its purported Section 113(f)(3)(B) claim, which Plaintiffs had actually pled as one arising under Section 113(f)(1). Regardless, Plaintiffs knew that their Section 107(a) claim lacked merit, but they continued to pursue it.[12] "Continuing to pursue claims after a reasonable attorney would realize they lacked merit can warrant sanctions under § 1927." *Frey v. Town of Jackson, Wyo.*, 41 F.4th 1223, 1245 (10th Cir. 2022).

Third, the evidence suggests that Plaintiffs retained the Section 107(a) claim as a club to wield in order to obtain concessions from American Linen. As noted above, it appears that Plaintiffs may have kept the claim as leverage against American Linen's arguments against Plaintiffs' Section 113(f) claim. *See also* Doc. 568 at 18-19. The Court is in agreement with American Linen on this point.

For all of the foregoing reasons, the Court concludes that sanctions against Plaintiffs under both 28 U.S.C. § 1927 as well as the Court's inherent power is necessary and proper.

---

[12] Plaintiffs argue that "[e]ven if Plaintiffs had not stipulated to dismissal, there is no binding authority in the Tenth Circuit that would have required them to do so." Doc. 572 at 11 n.7. They then point out that the Tenth Circuit has not joined the many other circuits that have analyzed the interplay between Sections 107(a) and 113(f) after *Atlantic Research*. While this may be true, there is also absolutely no authority or evidence to suggest that the Tenth Circuit would go against the overwhelming weight of authority from the other Circuit Courts.

D.   **Remedy**

American Linen has not explained the precise fees and costs to which they believe they are entitled, leaving the Court to craft an appropriate remedy. As the Court has explained, despite stipulating to dismissal of the Section 107(a) claims, Plaintiffs refused to take procedural action and improperly forced American Linen to file a motion for summary judgment. Therefore, American Linen should recover *reasonable* attorney's fees incurred in doing so.

However, the Court is reluctant to grant American Linen all of its fees for filing its motion for summary judgment because the brief filed was much longer and more complex than it needed to be. Rather than simply pointing out the fact that the Section 107(a) claim was both barred by law and that Plaintiffs had stipulated to its dismissal, American Linen filed a much longer brief incorporating intricate arguments regarding the statute of limitations and ancillary arguments regarding the Section 113(f) claim. In the Court's view, this approach unnecessarily complicated the issues related to the motion for summary judgment. In fact, the Court did not rely on American Linen's reply at all in deciding the motion for summary judgment.

Similarly, American Linen included in its motion for sanctions a great deal of argument on matters that the Court considers outside the scope of a motion on the Section 107(a) claim, such as a discussion of Plaintiffs' actions on discovery matters and the scope of the Section 113(f) claim. The Court does not agree with American Linen that these arguments were necessary to disposition of the Section 107(a) claim. Instead, the Section 107(a) claim can be disposed of, and at that point the Court and the parties can move on to separately analyze the scope of Plaintiffs' Section 113(f) claim. In fact, that is precisely how the Court plans to approach these issues, as it will discuss the Section 113(f) claim, and whether it may be amended or supplemented, in a separate opinion.

In light of the foregoing, the Court will award American Linen 50% of its attorney's fees and costs incurred in preparing its motion for summary judgment [Doc. 547] and 40% of those incurred in preparing its reply [Doc. 570]. The Court awards American Linen 100% of the fees and costs incurred in preparing its response [Doc. 578] to Plaintiffs' Notice of Supplemental Authorities and Mootness. Finally, the Court awards American Linen 50% of the fees and costs incurred in preparing its motion for sanctions [Doc. 568] and 80% of the fees and costs incurred in preparing its reply [Doc 577].

In accordance with the preceding paragraph, American Linen must file its motion for fees and costs with supporting documentation no later than 45 days after entry of this Memorandum Opinion and Order.

## IV. Chisholm's-Village Plaza's Motion for Summary Judgment [Doc. 588] and American Linen's Motion for Leave to File a Surreply [Doc. 601]

### A. <u>Background</u>

When Plaintiffs filed their first amended complaint against American Linen, it not only answered but also counterclaimed against Plaintiffs and crossclaimed against its co-defendants, The Lofts at Alameda, LLC; Rawson Leasing Limited Liability Co.; and Chisholm's-Village Plaza, LLC. [Doc. 111]. American Linen alleged that if it was found to be jointly and severally liable to Plaintiffs under CERCLA Sections 106(a) and 107(a), it is then entitled to contribution under Section 113(f)(1) from Chisholm's-Village Plaza ("Chisholm's") and the other co-defendants "for their share of any sums that American Linen may be compelled to pay." *Id*. at 15, ¶ 24. When Plaintiffs filed their Second Amended Complaint [Doc. 306], American Linen again asserted the same Section 113(f)(1) crossclaims for contribution against Chisholm's [Doc. 479 at

58] and the other dry cleaner co-defendants.[13] In the current posture of the case, as more fully discussed above, Plaintiffs are no longer seeking to hold American Linen liable for cleanup costs under Section 107(a); whatever claims Plaintiffs still have against American Linen are in the form of contribution under Section 113(f).

Currently before the Court is Chisholm's motion for summary judgment on American Linen's crossclaim against it for contribution [Doc. 588]. In its motion for summary judgment, Chisholm's argues that it has established a complete, third-party affirmative defense to American Linen's crossclaim. In addition, Chisholm's argues that American Linen is judicially estopped from seeking contribution from it because American Linen's own expert, who also initially opined on Chisholm's behalf, testified that Chisholm's could not have contributed to contamination at the Site, a position that American Linen had previously adopted.

On the same day both American Linen [Doc. 593] and Plaintiffs [Doc. 592] responded to Chisholm's motion. In its response, American Linen counters the extensive legal and factual arguments raised by Chisholm's third-party affirmative defense. However, in their response, Plaintiffs point out that the stipulation between Plaintiffs and American Linen to dismiss the Section 107(a) claims has rendered American Linen's contribution claims against its co-defendants, including Chisholm's, moot. Doc. 592 at 9-11.[14] Plaintiffs state:

> Plaintiffs have settled their claims against Chisholm's, Rawson Leasing, and The Lofts at Alameda (collectively, "the Settled Defendants), so do not oppose judgment against American Linen's crossclaims and dismissal of all the Settled

---

[13] American Linen also asserted third-party claims for contribution against Bertha Villanueva, surviving spouse of Jesus Villanueva, and Victor Jasso. Doc. 479 at 60-65. Those claims have been dismissed. Doc. 576 at 6-26.

[14] Plaintiffs, though taking the position that American Linen's contribution claim is now moot, in the alternative also countered Chisholm's substantive arguments relating to its third-party defense.

> Defendants from this litigation. The Court need not reach the factual allegations or merits of the arguments advanced in the MSJ, however, as American Linen's crossclaims became inoperative upon dismissal of Plaintiffs' § 107(a) claims….[D]istrict courts in the Tenth Circuit and around the country have found that a defendant who is sued *only* for contribution under § 113(f) cannot maintain contribution claims of its own.

Doc. 592.

In its reply brief [Doc. 597], Chisholm's essentially adopts Plaintiffs' argument, citing many of the same cases cited by Plaintiffs demonstrating that dismissal of Plaintiffs' Section 107(a) claim against American Linen has mooted American Linen's contribution claims. Chisholm's had not made this argument in its original motion. Chisholm's also advances a new argument regarding the absence of admissible evidence to controvert Plaintiffs' expert's theory of liability. Chisholms' reply brief does not return to any of its original arguments, nor does it attempt to counter the arguments set forth by American Linen in its response.

American Linen then filed its motion [Doc. 601] requesting that the Court either strike Chisholm's reply brief or grant it leave to file a surreply. Chisholm's and Plaintiffs both [Docs. 603 and 604] oppose the motion. However, the Court recognizes that American Linen has not had the opportunity to respond to the arguments Chisholm's raised in its reply brief or those raised by Plaintiffs in their response. As those arguments may be dispositive of American Linen's crossclaim for contribution, fairness and due process demand that American Linen be given the opportunity to respond to them. Therefore, American Linen's request for leave to file a surreply will be granted in part. American Linen must file its surreply no later than fourteen (14) days after entry of this Memorandum Opinion and Order. The Court denies the portion of the motion asking it to strike Chisholm's reply.

**IT IS THEREFORE ORDERED** that:

(1)     The *Motion for Partial Summary Judgment by American Linen Supply of New Mexico, Inc. for Dismissal of the Plaintiffs' Section 107 Claims on Statute of Limitations Grounds* [Doc. 547] is **GRANTED** for the reasons stated herein, and the Court will enter a separate, partial final judgment on that claim;

(2)     *Defendant American Linen Supply of New Mexico, Inc.'s Request for Attorney Fees and Costs . . .* [Doc. 568] is **GRANTED** as described herein;

(3)     Attorney's fees are awarded against Plaintiffs' counsel and in favor of American Linen in the percentages described above. American Linen must file an appropriate motion with supporting documentation no later than 45 days after entry of this Memorandum Opinion and Order;

(4)     *Plaintiffs' Notice of Supplemental Authority and Mootness* [Doc. 573], which the Court construes as a motion for summary denial of Defendant's motion for partial summary judgment, is **DENIED**;

(5)     *Plaintiffs' Motion to Strike Portions of, or for Leave to File a Surreply to, Defendant American Linen's Reply in Support of Motion for Partial Summary Judgment* [Doc. 581] is **DENIED**; and

(6)     American Linen's *Motion to Strike or for Leave to File a Surreply…* [Doc. 601] is **GRANTED IN PART**, and American Linen may file its surreply to Chisholm's motion for summary judgment no later than fourteen (14) days after entry of this Memorandum Opinion and Order.

_____
SENIOR UNITED STATES DISTRICT JUDGE