# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**CITY OF LAS CRUCES AND DONA ANA COUNTY,**

      **Plaintiffs,**

**vs.**                              **Civ. No. 17-809 JCH/GBW**

**THE LOFTS AT ALAMEDA, LLC;
AMERICAN LINEN SUPPLY OF NEW
MEXICO, INC.; RAWSON LEASING
LIMITED LIABILITY CO.; and
CHISHOLM'S-VILLAGE PLAZA L.L.C.,**

      **Defendants.**

## <u>MEMORANDUM OPINION AND ORDER</u>

The matter before the Court is *Defendant Chisholm's-Village Plaza, LLC's Motion for Summary Judgment on Defendant American Linen Supply of New Mexico, Inc.'s Crossclaim for Contribution, Equitable Allocation, and Declaratory Judgment* [Doc. 588]. Defendant American Linen Supply of New Mexico, Inc. ("American Linen") and Plaintiffs each filed a response [Docs. 592 and 593], and Chisholm's-Village Plaza L.L.C. ("Chisholm's") filed its reply [Doc. 597]. American Linen filed a surreply [Doc. 647] after the Court granted it leave to do so. Most recently, on October 2, 2024, Chisholm's moved [Doc. 656] to supplement the evidentiary record on its motion for summary judgment with a letter dated September 22, 2024, from the New Mexico Environment Department stating the Chisholm's has successfully remediated all contamination that was released from its property.

Chisholm's motion for summary judgment raises the question of whether American Linen may continue to pursue CERCLA contribution claims against its co-defendant Chisholm's now that American Linen is no longer defending itself against Plaintiffs' Section 107(a) claim for joint and several liability for cleanup costs. After reviewing the parties' arguments and the applicable legal authorities, the Court concludes that American Linen may not do so, and that Chisholm's motion for summary judgment should be granted. Further, summary judgment should be entered in favor of the other cross-claim defendants for the same reason. The Court also concludes that the time is ripe to determine the method of apportionment of cleanup costs, and that it will use the UCFA, also known as the proportionate share method.

## DISCUSSION

The Court has set forth the legal and factual background of the case more fully in previous Memorandum Opinions and will not repeat those discussions here. *See, e.g.,* Docs. 481, 514, 576, 638, and 639. Relevant to the motion currently before it, the Court has previously entered summary judgment in favor of Defendant American Linen Supply of New Mexico, Inc. ("American Linen") on Plaintiffs' Section 107(a) claims against it. Doc. 638 at 14-15; Doc. 641.

## I.     The Parties' Arguments

In its motion, Chisholm's argues two grounds for summary judgment. First, it contends that the undisputed material facts show that it has established the "third party defense" to American Linen's crossclaim for contribution under CERCLA's § 113(f). Doc. 588 at 13-20. The defense requires the proponent to show that the release of a hazardous substance and the damages resulting therefrom were caused solely by an act or omission of a third party not in a contractual relationship with the defendant. *See* § 107(b)(3). According to Chisholm, § 107(b)(3) creates a complete affirmative defense because a party that successfully asserts an affirmative

defense to liability for response costs under § 107(a) is not liable for contribution under § 113(f). *Id*. at 13. Second, Chisholm's contends that judicial estoppel bars the crossclaim because American Linen has asserted in this case—through both expert reports offered by James Bearzi— that Chisholm's property was not the source of contamination at the Griggs & Walnut Ground Water Plume ("the Site").

In their response, Plaintiffs note that they do not oppose summary judgment because Plaintiffs had settled their own claims against Chisholm's as well as defendants Rawson Leasing and The Lofts at Alameda, and because "American Linen's crossclaims became inoperative upon dismissal of Plaintiffs' § 107(a) claims." Doc. 592 at 1. In the alternative, Plaintiffs argue that if the Court reaches the merits Chisholm's motion should be denied because genuine issues of material fact remain. They contend that there are flaws in Chisholm's arguments, much of its evidence is inadmissible hearsay or comes from excluded expert reports or "outdated, incomplete, and mischaracterized historical documents." *Id*. at 2.

In its response, American Linen acknowledges that it has taken the position that none of the dry cleaner defendants (including itself) have contributed any PCE to the Site, but asserts that it pled its § 113(f) contribution claim against Chisholm's and the other dry cleaners in the alternative, and that those claims will survive only if Plaintiffs are allowed to advance their claims against American Linen under the migration theory advocated by their expert, Steven Helgen. Doc. 593 at 7 of 30. American Linen asserts that until the Helgen Theory is rejected, Chisholm's is a potentially responsible party ("PRP") subject to the same liability that American Linen faces under the Helgen Theory, and American Linen is entitled to maintain its contingent crossclaims for contribution. *Id*. On the other hand, American Linen states that if the Court does not reject Helgen's analysis, then Chisholm's Innocent landowner affirmative defense fails

because Chisholm's has failed to meet its burden to show the absence of a genuine issue of material fact on each element of the defense. Finally, American Linen argues that judicial estoppel does not apply to a contingent crossclaim. Notably, American Linen's response brief does not mention the fact that Plaintiffs had previously stipulated to dismissal of their § 107(a) claims against American Linen, leaving only their § 113(f) contribution claims against it.

In its reply brief, Chisholm's picks up on Plaintiff's argument that American Linen can no longer maintain a crossclaim for contribution against Chisholm's now that American Linen is not facing § 107(a) claims asserted by Plaintiffs. Chisholm's points out that in defending a §113(f) contribution claim alone, American Linen may be held liable only for its own proportionate share of the release of hazardous substances, and therefore it cannot look for contribution from any other party, including Chisholm's. Doc. 597 at 2. It also argues that American Linen lacks expert testimony to support a contribution crossclaim. In terms of the substantive arguments advanced by American Linen in its response brief, Chisholm's argues that American Linen cannot rely on Helgen's expert report because it is inadmissible hearsay with respect to Chisholm's liability.

The Court granted American Linen leave to file a surreply to address new arguments it did not have the opportunity to discuss in its response brief. In that surreply, American Linen acknowledges that dismissal of its § 113(f) contribution crossclaims is appropriate because Plaintiffs no longer have a § 107(a) claim against American Linen. Doc. 647 at 3. However, American Linen also argues that it is not appropriate to dismiss its crossclaim unless the Court also determines the contribution allocation method that it will employ in this case, which is typically done at the time settlements are presented to the Court for approval (something that did not occur in this case). American Linen points out that CERCLA's § 113(f)(1) instructs courts to

allocate response costs using "equitable factors" that the court deems appropriate. 42 U.S.C. § 9612(f)(1). The statute does not specify the factors or methodology that courts should use. American Linen argues that the type of allocation method employed affects not only the potential liability of American Linen as well as the parties' strategies at trial. Doc. 647 at 4-8.

American Linen has asked for expedited ruling on this issue so that the parties have a better understanding of their relative positions before their upcoming settlement conference with the magistrate judge. It also points to the parties' prior briefing on the allocation issue. Because more than a month has passed since the filing of American Linen's surreply and Plaintiffs have made no request to respond to the arguments therein, it is reasonable for the Court to infer that Plaintiffs agree that issue of contribution allocation method is ripe for decision. It is also reasonable to infer that, like American Linen, Plaintiffs are standing on their prior briefs on this issue.

## II.    Analysis

### A.    Summary Judgment Should Be Entered on American Linen's Crossclaims

Now that Plaintiffs' § 107(a) claims against American Linen are no longer viable, American Linen can no longer look to others for contribution under § 113(f).

In *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 166 (2004), the Supreme Court reversed a decision of the Fifth Circuit, which had concluded that a PRP could obtain contribution from other PRPs regardless of whether the first PRP has been sued under § 106 or §107. *Id*. at 165. The Supreme Court disagreed, reasoning that the Fifth Circuit's decision was not consistent with the language of CERCLA's § 113(f)(1):

> The first sentence, the enabling clause that establishes the right of contribution, provides: "Any person may seek contribution ... during or following any civil action under section 9606 of this title or under section 9607(a) of this title," 42 U.S.C. § 9613(f)(1) (emphasis added). The natural meaning of this sentence is

that contribution may only be sought subject to the specified conditions, namely, "during or following" a specified civil action.

*Id*. at 165-66. Therefore, in the absence of a claim or a judgment against American Linen for response costs under Section 107(a), it can be held liable only for contribution for its own fair and proportionate share of liability. With that being the case, American Linen has no need to look to others for contribution.

Federal district courts examining this question both before and after *Cooper Industries* have reached the same conclusion. As one court put it,

Defendants in a contribution action are liable for no more than their several, equitable share of cleanup costs. Only one who has incurred more than its fair-and-several share of cleanup liability may maintain an action for contribution. Therefore, as a matter of logic, contribution defendants, as well as the parties brought in by the contribution defendants, who can by definition owe to contribution plaintiffs no more than their fair-and-several share of cleanup liability, cannot themselves maintain contribution actions of their own.

*City of Merced v. Fields*, 997 F. Supp. 1326, 1332 (E.D. Cal. 1998) (internal citations omitted). *See also Atl. Richfield Co. v. NL Indus., Inc*., No. 20-CV-00234-NYW-KLM, 2022 WL 3577261, at *6 (D. Colo. Aug. 19, 2022) ("[I]n order to assert contribution claims pursuant to Section 113(f), [claimant] must carry the burden of showing that it faces an inequitable distribution of common liability among liable parties.") (internal quotation and citation omitted); *Tronox Worldwide LLC v. Atl. Richfield Co*., No. CIV-07-1017-HE, 2012 WL 1493733, at *2 (W.D. Okla. Apr. 27, 2012) ("Courts generally hold that § 113(f) contribution-defendants cannot assert their own contribution claims against others because such defendants are only liable for their fair share of response costs in the first place.").

When Plaintiffs' Section 107(a) claim was pending against American Linen, it was an action that exposed American Linen to liability for which it could have sought contribution. The

Court has granted summary judgment in favor of American Linen on Plaintiff's Section 107(a) claim, and therefore American Linen cannot be held jointly and severally liable for cleanup costs under that provision. Accordingly, American Linen's crossclaim is not now "following" any judgment for which it may seek contribution as required by Section 113(f)(1). Therefore, Chisholm's motion for summary judgment should be granted. Furthermore, as pointed out by both Plaintiffs and Chisholm's, American Linen's crossclaims for contribution against the other dry cleaner defendants, Rawson Leasing and The Lofts at Alameda, suffer from the same defect. Accordingly, the Court will grant summary judgment in favor of all the dry cleaner crossclaim defendants on American Linen's claims for § 113(f) contribution.

### B.  Allocation Methodology

CERCLA's cost-shifting scheme is found in § 107(a), 42 U.S.C. § 9607(a), which imposes strict liability on four classes of PRPs. Although CERCLA does not expressly provide for joint and several liability between the four classes of PRPs, the statute has been consistently interpreted to impose joint and several liability. The Tenth Circuit has explained CERCLA's scheme for recovering cleanup costs and apportioning liability as follows:

> A government entity (Federal, State or Indian) or a party who did not contribute to the waste may recover all of its expenditures in a traditional § 107(a) "cost recovery" action against any PRP. Liability will be strict, joint and several. A PRP who contributed to the waste may recover from other PRPs a portion of the costs it expended in cleaning up the site in a contribution action under § 113(f). The liability of the other PRPs will be defined by § 107, but under § 113(f), that liability will be several, and the total cleanup costs—including responsibility for "orphan shares"—will be equitably apportioned among all the PRPs, with the court being able to consider any factors it deems relevant.

*Sun Co. v. Browning-Ferris, Inc.*, 124 F.3d 1187, 1193 (10th Cir. 1997) (internal citation omitted). CERCLA does not limit the equitable factors a court may consider. As the quotation above indicates, the Tenth Circuit and other courts have recognized that courts have wide

discretion in the equitable apportionment of orphan shares. *See Agere Sys., Inc. v. Advanced Envtl. Tech. Corp.*, No. 02-3830, 2007 WL 9706955, at \*1 n.4 (E.D. Penn. Oct. 29, 2007) ("The determination of which parties should bear the burden of the orphan share, and how much of the burden, if any, each party should bear, is discretionary.") (citing cases).

Under § 113(f)(2), a person who has resolved its liability to the United States or to a State in a judicially approved settlement is not liable for contribution, and that settlement reduces the potential liability of other PRPs "by the amount of the settlement." However, § 113(f)(2) does not apply here, as none of the remaining parties are the United States or a State. As noted above, CERCLA does not specify the factors or methodology that courts should use to equitably allocate response costs among liable parties when the claimant is not the United States or a State.[1] Rather, CERCLA charges a district court to "allocate response costs among liable parties using such equitable factors as the court determines are appropriate." § 113(f)(1).

When a statute does not provide an approach for determining how to credit settlements in cases involving settlements with less than all the jointly and severally liable tortfeasors, courts generally look to either the Uniform Contribution Among Tortfeasors Act (UCATA), sometimes referred to as the pro tanto approach, or the Uniform Comparative Fault Act (UCFA), often referred to as the proportionate share or pro rata approach. *See, e.g., McDermott, Inc. v. AmClyde*, 511 U.S. 202, 208-09 & n. 8, 217 (1994). The UCATA and the UCFA are model acts proposed by the National Conference of Commissioners on Uniform State Laws that advocate competing methods of accounting for a settling party's share when determining the amount of a non-settling defendant's liability. *See id.* at 209 n. 8. As American Linen noted in its surreply,

---

[1] CERCLA § 113(f)(2)—which mandates a pro tanto settlement credit—only applies to the United States' claims.

the parties have already submitted written arguments regarding which method to use, with American Linen arguing for the UCFA [*see* Docs. 302 at 14-22; 500 at 24-25; 568 at 7, 15-16; 593 at 19-20, and 647 at 7-10] and Plaintiffs arguing for the UCATA [*see* Docs. 311 at 8-12; 508 at 11; 572 at 18-20 & n.16; 592 at 20-22].[2] There are important differences between the two methods of apportioning damages.

The UCFA—the proportionate share, pro rata approach—provides that when an injured party settles with one of multiple tortfeasors, the settlement does not discharge the non-settling tortfeasors but reduces the injured party's claims against them by the amount of the settling tortfeasor's proportionate share of the damages. *See* UCFA § 6. A court that employs the UCFA proportionate share method must therefore "determine the responsibility of all firms that have settled, as well as those still involved in the litigation." *Am. Cyanamid Co. v. Capuano*, 381 F.3d 6, 20 (1st Cir. 2004) (internal quotation marks omitted). The court must make a factual determination of the proportional responsibility of the settled defendants, whether they are seated at trial or not. "The nonsettling tortfeasors will be responsible only for their proportionate share of the costs, even if the settling tortfeasor settles for less than its fair share of the injury. Under this approach, an injured party who settles for too little may not receive full recovery." *AmeriPride Servs. Inc. v. Texas E. Overseas Inc.*, 782 F.3d 474, 484 (9th Cir. 2015).

In contrast, the UCATA—or "pro tanto" approach—provides that when a plaintiff settles with one of two or more tortfeasors for the same injury, the settlement does not discharge the non-settling tortfeasors but instead reduces the plaintiff's claims against them by the dollar amount of the settlement. *See* UCATA (Revised) § 4(a) (1955). "If the settling tortfeasor settles for less than its proportionate share of the injury, the nonsettling tortfeasors will end up paying

---

[2] Chisholm's has also argued for the UCFA. *See* Doc. 588 at 20-22.

more than their proportionate share." *AmeriPride Servs.*, 782 F.3d at 484. While this approach encourages early settlement, *see McDermott*, 511 U.S. at 214-15, it also gives rise to a potential for unfairness or collusive settlements, *see Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1230 (9th Cir. 1989). To address this problem, courts employing the UCATA pro tanto approach for often conduct "good-faith hearings" before approving a settlement. *McDermott*, 511 U.S. at 213. "When such hearings are required, the settling defendant is protected against contribution actions only if it shows that the settlement is a fair forecast of its equitable share of the judgment." *Id.*

In this case, the Consent Decree involved multiple parties from the federal government (EPA and the Federal Defendants) and several payments between three different parties: 1) payments from Plaintiffs to EPA totaling approximately $2 million, 2) payment of about $860,000 from the Federal Defendants to EPA, and 3) payments from the Federal Defendants to Plaintiffs. Rawson Leasing has also settled with Plaintiffs for a small amount totaling around $67,500. Plaintiffs settled with The Lofts and Chisholm's for no money.

Under the circumstances, the Court concludes that the UCFA, or the proportionate share approach, is the most equitable and best suited to this case. The approach is equitable because each party would pay only for the percentage of contamination that it caused according to the evidence in the case. No party can be "lumped in" with another PRP, nor can its liability be dictated or affected by a settlement agreement among other PRPs in which it had no part. Here, Plaintiffs settled their claims against the other three dry cleaner defendants for a negligible amount. As a result, there is a significant danger that the pro tanto method would result in American Linen being forced to pay a disproportionately greater share of response costs relative to the harm it actually caused, which would be unfair. Using the UCFA method, on the other hand, means that any judgment against American Linen or any other party would be based on the

percentage of the unpaid response costs for which it is responsible, which is the most equitable outcome in the Court's view. Furthermore, this allocation method does not require a pretrial fairness hearing, along with the associated discovery into the circumstances surrounding Plaintiffs' settlements, that would further delay the trial in this case.

This decision is not without precedent in this Circuit. The Tenth Circuit Court of Appeals has declined to dictate an allocation method in CERCLA cases, stating that district courts have discretion to use either UCATA or UCFA, whichever approach they consider appropriate to the case. That court has specifically allowed the proportionate share allocation method in cases where, as here, some defendants have settled their liability and others have not. For example, in *Tosco Corp. v. Koch Indus., Inc.*, 216 F.3d 886, 897 (10th Cir. 2000), the Court declined to reverse the district court for deciding to apply the pro rata method where one defendant chose to settle its liability, while another decided to go to trial:

> Sun opted to settle its liability for a fixed amount in order to avoid the uncertainty of unknown future costs. Koch chose not to settle for a fixed amount. We believe where, as here, a responsible party chooses to go to trial and future response costs are likely to be incurred, but the exact amount remains unknown, a judgment on proportional liability is an appropriate remedy.

*Id*. Similarly, the First and Ninth Circuits also afford discretion to district courts to use the allocation method best suited to the case. In *AmeriPride Servs., Inc. v. Texas E. Overseas Inc.*, 782 F.3d 474, 486 (9th Cir. 2015), the court analyzed the text of CERCLA and concluded that "[t]he requirement that courts apply the UCATA pro tanto approach for government settlements in § 9613(f)(2), and the lack of any such a requirement in private party settlements, leads to the conclusion that Congress did not intend to impose a uniform requirement for a particular approach in private party settlements." Thus, the Ninth Circuit found that district courts should have the discretion to determine the most equitable method of accounting for settlements

11

between private parties in a contribution action. *Id.* at 477. *See also Am. Cyanamid Co. v. Capuano*, 381 F.3d 6, 21 (1st Cir. 2004) (declining to mandate an allocation approach and stating, "CERCLA provides the district court with the discretion to allocate response costs among liable parties, and we believe that determining how a settlement affects the liability of the non-settling parties is within that discretion.").

The Court is aware that some federal courts have chosen the UCATA, or pro tanto, method of allocation in CERCLA cases. *See e.g., City and County of Denver v. Adolph Coors Co.*, 829 F. Supp. 340, 345-46 (D. Colo. 1993). For example, in *Atl. Richfield Co. v. American Airlines, Inc.*, 836 F. Supp. 763, 766 (N.D. Okla. 1993), while the court acknowledged that the method of allocation is a matter for judicial discretion, it chose the pro tanto credit rule. However, *Atlantic Richfield* is distinguishable because in that case the court was not concerned that application of the pro tanto rule would result in non-settling defendants being assessed an inequitable portion of the response costs. *Id.* That is not the case here, where there is a significant danger of American Linen being required to pay a disproportionate share. The Seventh Circuit has gone so far as to require district courts to apply the UCATA on the grounds that the UCFA would undermine the text of CERCLA. *See Akzo Nobel Coatings, Inc. v. Aigner Corp.*, 197 F.3d 302, 306 (7th Cir. 1999). The *Akzo Nobel* court concluded that "[e]xtending the pro tanto approach of § 113(f)(2) to claims under § 113(f)(1) enables the district court to avoid what could be a complex and unproductive inquiry into the responsibility of missing parties." *Id.* at 308. However, the Seventh Circuit stands alone in mandating the pro tanto approach. The Tenth Circuit affords district courts discretion, which this Court exercises in choosing equitable allocation.

Accordingly, the Court will apply the UCFA proportionate share method, as it is the most equitable and appropriate under the facts of this case.

**IT IS THEFOREFORE ORDERED** that *Defendant Chisholm's-Village Plaza, LLC's Motion for Summary Judgment on Defendant American Linen Supply of New Mexico, Inc.'s Crossclaim for Contribution, Equitable Allocation, and Declaratory Judgment* [Doc. 588] is **GRANTED**, and judgment on American Linen's crossclaims for § 113(f) contribution will be entered in favor of The Lofts at Alameda, LLC; Rawson's Leasing LLC; and Chisholm's-Village Plaza, LLC.

**IT IS FURTHER ORDERED** that the Court will apply the UCFA, proportionate share method of equitable allocation at trial in this case.


_____
SENIOR UNITED STATES DISTRICT JUDGE