**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**CITY OF LAS CRUCES and DONA ANA COUNTY,**

**Plaintiffs,**

**vs.** **Civ. No. 17-809 JCH/GBW**

**THE LOFTS AT ALAMEDA, LLC; AMERICAN LINEN SUPPLY OF NEW MEXICO, INC.; RAWSON LEASING LIMITED LIABILITY CO.; and CHISHOLM'S-VILLAGE PLAZA L.L.C.,**

**Defendants.**

**MEMORANDUM OPINION AND ORDER**

This case is before the Court on *Defendant American Linen Supply Of New Mexico, Inc.'s Motion for Reconsideration Or, In The Alternative, Motion For An Order Certifying For Interlocutory Appeal* [Doc. 627]. In the motion, Defendant American Linen asks the Court to reconsider its Memorandum Opinion and Order [Dkt. No. 623] ("the MOO"), in which it denied American Linen's objections to the magistrate judge's order recommending against modifying the scheduling order to permit American Linen to substitute a new expert after most of the discovery in the case had been complete. American Linen also argues that if the Court does not agree with American Linen on reconsideration, it should certify its decision to the Tenth Circuit for interlocutory appeal. The Plaintiffs have filed their response [Doc. 630], and American Linen replied [Doc. 631]. After reviewing the arguments of the parties, the Court concludes that the

motion to reconsider should be granted, and Defendant American Linen should be permitted to identify a new expert witness.

## LEGAL STANDARD

"Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). Therefore, a motion for reconsideration is properly granted only when "the court has misapprehended the facts, a party's position, or the controlling law." *Id*.

"But once the district court enters judgment, the public gains a strong interest in protecting the finality of judgments." *Nelson v. City of Albuquerque*, 921 F.3d 925, 929 (10th Cir. 2019). Because of that strong interest, the Tenth Circuit has said that these motions are "not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Id*. (quoting *Servants of the Paraclete*, 204 F.3d at 1012). The Supreme Court has emphasized the same point: "Rule 59(e) permits a court to alter or amend a judgment, but it 'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.'" *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (citation omitted).

## FACTUAL BACKGROUND

Understanding American Linen's arguments requires a lookback at the events surrounding American Linen's former expert James Bearzi's withdrawal from the case. Bearzi produced an initial report on June 3, 2019, *see* Dkt. No. 162, and a second report (originally called a "supplemental report" by American Linen) on August 4, 2020. Dkt. No. 226. On October 23, 2020, Plaintiffs moved to strike Mr. Bearzi's initial expert report and supplemental report.

Dkt. No. 261. In March 2021, after Plaintiffs filed their second amended complaint, the magistrate judge reopened discovery to give American Linen an opportunity to conduct discovery on Plaintiffs' new arranger claim. Dkt. No. 332. Bearzi produced a third expert report on the arranger claim on May 26, 2021. Dkt. No. 351. Plaintiffs also conducted a deposition of Bearzi on July 22, 2021. Then, on August 2, 2022, the undersigned struck Bearzi's inadequate initial report, held that the "supplemental report" was an untimely rebuttal report, and struck that as well. Dkt. No. 261. The Court referred the procedural remedy for the improper reports to the magistrate judge, who ordered supplemental briefing. Dkt. No. 516.

On September 2, 2022, American Linen asked to designate a new expert under Rule 37(c). Dkt. No. 520 at 5. Ten days later, on September 12, 2022, American Linen filed a motion seeking that same relief under Rule 16(b). Dkt. No. 522. In that motion, American Linen stated that Bearzi no longer wished to serve as an expert witness and had resigned after the Court issued its August 2, 2022, order finding his initial and "supplemental" reports to be improper. After full briefing, *see* Dkt. Nos. 534, 536, 543, and 544, the magistrate judge held a hearing on October 21, 2022, on American Linen's motion to substitute. That hearing included testimony by Bearzi to the effect that (1) Bearzi had verbally informed American Linen in August of 2021 that he did not wish to continue to serve as an expert and (2) that upon learning that he was scaling back his work, American Linen did not ask him to continue his work as an expert in this case. Dkt. No. 606-1. The magistrate judge appears to have found this testimony credible. In his March 6, 2023, Proposed Findings and Recommended Disposition [Dkt. No. 596], the magistrate judge stated that "[b]ased on the briefing and hearing on the instant motion, it appears that counsel for American Linen had no meaningful contact with Mr. Bearzi from early August 2021 until early

August 2022. They certainly were not checking in with him to ensure his availability for a trial in the coming years." *Id*. at 21.

## DISCUSSION

American Linen asserts that the Court should reconsider its ruling on four grounds, all of which appear for fall under "the need to correct clear error or prevent manifest injustice" as the basis for reconsideration. First, American Linen argues that the Court applied an inappropriate standard of decision by conflating the standard for substitution of a new expert in place of its former expert, James Bearzi, with standard for imposing sanctions under Rule 37(c). Second, it contends that the Court did not understand the substantive law underlying the contribution claim and the effects its order would have on American Linen's ability to defend that claim. Third, American Linen argues that the Court misapplied Tenth Circuit law regarding the substitution of experts. And finally, it contends that the Court had a mistaken view of the facts concerning American Linen's diligence.

### I. Intermingling Rule 37 Analysis and Substitution of Expert Witness

American Linen argues that both the magistrate judge and the undersigned improperly "intermingled" the analysis of whether American Linen should be sanctioned under Rule 37(c) for the deficient Bearzi report with the determination of whether American Linen should be permitted to name a new expert after Bearzi withdrew from the case. American Linen contends that the Court should have engaged in a two-step analysis by first addressing the proper sanctions for Bearzi's deficient reports "as if Bearzi were going to continue as American Linen's expert," and only then addressing the substitution issue. American Linen cites no authority for this two-step approach.

As grounds for this argument, American Linen argues that the Court should have first acknowledged that Bearzi's deposition testimony cured his deficient expert reports. American Linen further argues that "even if the Court decided the deposition did not cure the deficiencies, the proper remedy is to require Bearzi to amend his report. Had Bearzi not resigned, this case could have proceeded to trial with no prejudice." Dkt. No. 627 at 6 n.4. In other words, American Linen contends that the Court should not have agreed with the magistrate judge that the issue of whether Bearzi's deposition effected a cure was moot because Bearzi had withdrawn and was not going to testify at trial.

Like Plaintiffs, the Court struggles to understand American Linen's argument here. Bearzi did resign, and he was not going to amend his report under any circumstances, much less testify at trial. American Linen's response to that event was to argue that it should be given an opportunity to substitute its expert. Dkt. No. 520 at 5. So the question of whether his deposition "cured" his decidedly inadequate reports was, in fact, moot. In terms of a sanction under Rule 37(c)(1), not permitting Bearzi to testify because of his inadequate reports was moot because Bearzi had withdrawn from the case. If it were not moot, American Linen would not have filed its motion to substitute, which did not mention Bearzi's deposition. As Plaintiffs correctly point out, American Linen only mentioned the deposition in its reply after Plaintiffs argued that substitution would prejudice them. American Linen simply does not explain why it was error for the Court to conclude that Bearzi's reports and the effect of his subsequent deposition were moot. American Linen's argument in no way undermines the conclusion that as a witness going forward in the case, Bearzi's report and deposition were moot. As a result of that conclusion, neither the magistrate judge nor the undersigned were required to review Bearzi's deposition to determine if it cured the omissions from his reports.

In a footnote, American Linen argues that the magistrate judge and the undersigned erred in not reviewing Bearzi's deposition because it was relevant to whether American Linen reasonably believed that Bearzi's deposition cured his inadequate reports and therefore had shown proper diligence. Dkt. No. 627 at 6 n.5. That is an argument to be considered under the "due diligence" consideration of a motion to amend the scheduling order to allow substitution of a new expert. In the MOO the Court did acknowledge that the issue of whether Bearzi's deposition cured the problems with his reports is pertinent to the question of whether permitting American Linen to name a new expert would result in prejudice or surprise to Plaintiffs' detriment, a factor to consider in assessing good cause to modify the scheduling order. Dkt. No. 623 at 6. However, the Court disagrees with American Linen that recognizing that relationship constitutes legal error. The Court also disagrees with American Linen that it was required to review Bearzi's deposition in order to determine whether it cured his reports, because such a review by the Court would have revealed very little about the degree of prejudice to Plaintiffs. Under a set of facts such as presented here, when an expert provides an inadequate report, is deposed, and then withdraws, the degree of prejudice to the opposing party will stem from that party having to spend time and money reviewing the new expert's report and deposing the new expert. Whether the deposition "cures" the faulty report of the first expert shares little light on the prejudice to the opposing party as a result of having to do that extra work.

In short, the Court rejects American Linen's argument and concludes that it did not "improperly intermingle" the substitution analysis with the Rule 37(c) analysis.

## II. <u>Good Cause to Revise the Scheduling Order</u>

American Linen argues that the Court erred in refusing to revise the scheduling order to allow American Linen to name a new expert witness to replace Bearzi. Although the Court

rejects some of the arguments put forth by American Linen, it accepts others. Upon reconsideration of the controlling law, and after re-examining and reweighing the relevant factors, the Court has reached the conclusion that it should allow American Linen to name a new expert.

**A. Legal Standard**

While a district court has broad discretion to manage the pretrial schedule, the Tenth Circuit has recognized that a scheduling order can have an outcome-determinative effect on the case, and "total inflexibility is undesirable." *Summers v. Missouri Pac. R.R. Sys*, 132 F.3d 599, 604 (10th Cir. 1997) (quotation omitted); *see also 103 Investors I, L.P. v. Square D Co*., 372 F.3d 1213, 1215-16 (10th Cir. 2004). However, a party must show good cause under Rule 16(b)(4) to modify a scheduling order. In the Tenth Circuit, determining the existence good cause to modify the scheduling order turns on four factors: (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in court, and (4) bad faith or willfulness in failing to comply with the court's order. *Summers v. Missouri Pac. R.R. Sys*., 132 F.3d 599, 604 (10th Cir. 1997) (citing *Burks v. Oklahoma Publ'g Co*., 81 F.3d 975, 978 (10th Cir. 1996)).

In *HCG Platinum, LLC v. Preferred Prod. Placement Corp*., 873 F.3d 1191, 1203 (10th Cir. 2017), the Tenth Circuit noted that its previous decisions offered "little guidance" on the appropriate analysis "where the exclusion of evidence carries the force and effect of dismissal." In addressing that question, the court held that "where the exclusion of evidence under Rule 37(c)(1) has the necessary effect of a dismissal, as here, district courts should, in conjunction

with the traditional *Woodworker's* inquiry, carefully explore and consider the efficacy of less drastic alternatives, ordinarily reserving the extreme sanction of dismissal for cases involving bad faith or willfulness or instances where less severe sanctions would obviously prove futile." The Tenth Circuit was referring to its previous decision in *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999), in which the court stated that in determining whether to exclude testimony, a court should consider "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Woodworker's Supply, Inc.*, 170 F.3d at 993 (setting forth considerations in determining whether a violation of Rule 26(a)'s disclosure requirements is justified or harmless). Accordingly, the Court will reevaluate each of these factors.

**B. Disruption of the progress of the case**

Before beginning its analysis under *Summers* and *HG Platinum*, the Court turns first to the first consideration it discussed in the MOO—disruption of the progress of the case. The Court notes that it was and remains accurate to state that efforts to set this CERCLA case for trial have been impeded by many factors, including the number claims, the number of parties, the contentiousness of the litigation, and the voluminous motion practice. Dkt. No. 623 at 8. However, due to these factors and the Court's delay in getting out some rulings, the case has not greatly progressed in the time since the motion to reconsider was filed. In the intervening time, the Court has ruled on numerous motions, including American Linen's motion for partial summary judgment, American Linen's request for attorney's fees and costs, and the parties' respective motions to strike. *See* Dkt. No. 638. The Court also has ruled on Plaintiff's motion to supplement their complaint, Dkt. No. 639, held a status conference, Dkt. No. 640, granted the

third-party defendants' motion for summary judgment on American Linen's cross-claims for contribution, Dkt. No. 665, and denied American Linen's motion for summary judgment. Dkt. No. 688. However, while that motion practice was occurring, the parties could also have been reviewing the report of a substitute expert and conducting the necessary follow-up deposition. For most of that time there was no trial date, and although there is now a trial set for November 2026, the case has not yet been tried. With the cross-claims and counterclaims as well as the third-party defendants no longer in the case, the scope of the litigation has narrowed somewhat. In addition, the normal progression of this case has already been significantly disrupted. Rather than aggravate that issue, the Court concludes that this aging case could be extended just a little bit further to allow American Linen to name its expert, which in turn will eventually allow for a full trial on the merits.

This conclusion is supported by the Tenth Circuit's opinion in *Rimbert v. Eli Lilly and Co*., 647 F.3d 1247 (10th Cir. 2011), where the court found that it was an abuse of discretion to deny a plaintiff's motion for a new scheduling order to name a previously undisclosed expert witness. The Tenth Circuit stated that "the single most important fact about the posture of Rimbert's motion for a new scheduling order is that, at the time it was made, there was no longer any impending trial date or pretrial schedule remaining." *Id*. at 1254. Relying heavily on that fact and noting that "a scheduling order which results in the exclusion of evidence is, moreover, a drastic sanction," *id*., the Tenth Circuit concluded not only that the pretrial deadlines and trial of the case would not be disrupted, but also that the party opposed to the new deadlines would not suffer significant prejudice. Notably, the Tenth Circuit said that the opposing parties' expenses that would be incurred testing the substitute expert's opinions were "not the type of prejudice contemplated under *Summers*." *Id*. at 1255. In the end, *Rimbert* was not "a case that had

proceeded normally, and the unique circumstances presented called for flexibility in the discovery schedule." *Id.* at 1256. While the circumstances in *Rimbert* were different than those presented here, the fundamental concerns are similar.

**C. Prejudice or surprise, and the ability to cure**

With regard to the consideration of prejudice or surprise to Plaintiffs stemming from allowing American Linen to name a new expert, the Court concludes that the magistrate judge raised valid concerns but that the prejudice to Plaintiffs can be mitigated to a significant degree.

The magistrate judge correctly noted that Bearzi's deficient expert reports did not put Plaintiffs on sufficient notice as to the content and basis of his opinions. However, the Court notes that Plaintiffs did have the opportunity to depose Bearzi, which gave them the opportunity to flesh out the content and basis of his opinions. Plaintiffs had every motive to do so, as Bearzi was the expert of record for American Linen at the time of his deposition. The magistrate judge also observed that the new expert would likely provide new opinions that would require Plaintiffs to incur additional expenses responding to the change in testimony. While this is true, the Court notes that there are two ways to mitigate that harm to Plaintiffs. First, as is the norm in the Tenth Circuit, American Linen's new expert will be required to express opinions that are *substantially similar* to those expressed by Bearzi. *See, e.g., Smith v. Tahsin Indus. Corp.*, No. 19-590-JWB, 2025 WL 673646 at *3 (N.D. Okla. Mar. 3, 2025); *Sinclair Wyoming Refining Co. v. Pro-Inspect, Inc.*, Civil No. 12-CV-196-J, 2014 WL 12768315 at *3 (D. Wyo. Jan 29, 2014); *Chavez v. Encompass Ins. Co. of Am.*, No. 1:08-CV-2965-TCB, 2010 WL 11586387, at *1 (N.D. Ga. June 8, 2010); *Terra Venture, Inc. v. JDN Real Estate-Overland Park, L.P.*, No. 02-2593-GTV, 2004 WL 5509090 at *1 (D. Kan. June 21, 2004).

Enforcement of the substantial similarity requirement should reduce the unfair prejudice and surprise to Plaintiffs. The Court anticipates that these parties sometimes (if not often) will not agree as to whether a particular opinion is substantially similar (as they have been able to agree on very little in this litigation, to the Court's dismay). However, the Court can resolve those disagreements if it must. The burden to prove substantial similarity will be on American Linen, and therefore it will be in its best interests to not push those boundaries and risk exclusion of its new expert's opinions. Further, the Court will reduce the burden on Plaintiffs by granting them their attorney's fees if they file and win a motion arguing that the new expert's opinions are not substantially similar to Bearzi's.

The other way in which the Court can reduce the prejudice to Plaintiffs is to award them attorneys fees for their efforts responding to a new expert, including but not limited to fees for time spent reviewing the new expert's report, preparing to depose him or her, and time spent working with their own experts who may need to supplement their reports in response to American Linen's new expert. Again, the Court notes and shares the magistrate judge's jaundiced view of the parties' ability[1] (based on their conduct in the case so far) to reach reasonable agreements, thereby requiring the Court to police those disputes. This consideration, like the issue of refereeing disputes over whether the new expert's opinions are "substantially similar" to Bearzi's does place a burden on the Court. However, that burden can be managed.

The magistrate judge also noted the tactical advantage to American Linen's new expert having access to all the reports, depositions and discovery responses from every expert in the case to date—including expert reports from the United States—not available to American Linen and Plaintiffs when they produced their original reports. That advantage certainly exists.

---

[1] In the Court's view, the inability of the attorneys to work together in a reasonable fashion often is detrimental to the interests of their clients.

However, it is also not unusual. In most cases plaintiffs are the first to disclose expert reports, which give a defendant's expert an advantage because that expert has the benefit of the reports that came before. That is the norm—and again, Plaintiffs' experts will have the opportunity to supplement their opinions in response to the new expert if necessary.

In short, amending the scheduling order to allow American Linen to name a new expert will result in some prejudice to Plaintiffs, but it can be mitigated.

**D. Bad faith**

The magistrate judge found that American Linen did not act in bad faith, and the undersigned concurred. Neither party challenges this finding, and therefore the Court will not revisit it here.

**III. Due Diligence**

The magistrate judge noted that "[c]ourts also frequently associate good cause with a party's diligence in conducting discovery, and good cause is likely to be found when the moving party has been generally diligent, the need for more time was neither foreseeable nor its fault, and refusing to grant the continuance would create a substantial risk of unfairness to that party." Dkt. No. 596 at 8 (citing *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 988 (10th Cir. 2019) (internal brackets and quotations omitted) (citation and quotation omitted). The magistrate judge found that American Linen had not acted with diligence to remedy the deficiencies in Bearzi's reports or to communicate with him to ensure his continued ability and willingness to serve as an expert, and the undersigned agreed. American Linen argues that the Court erred based on "mistake of fact." Dkt. No. 627 at 4, 24.

American Linen challenges the conclusion reached by both the magistrate judge and the undersigned that American Linen should have acted sooner to correct Bearzi's inadequate

reports, and that if it had been diligent and stayed in contact with Bearzi, upon whom much of its case presumably hinged, it would have realized sooner that he was not prepared to act as an expert in this case.

The Court sees no error in its evaluation of American Linen's diligence with respect to Bearzi. American Linen's assertions to the contrary, the Court did review the relevant evidence regarding this issue, including but not limited to Bearzi's testimony at the October 21, 2022, hearing conducted by the magistrate judge [Dkt. No. 609-1]; the Second Declaration of Louis Rose [Dkt. No. 522-1]; the Declaration of James P. Bearzi [Dkt. No. 543-1]; and the Declaration of Shelly L. Dalrymple [Dkt. No. 602-1] (which was filed after the magistrate judge entered his Proposed Findings and Recommended Disposition, and which he therefore had no opportunity to review). *See also* MOO, Dkt. No. 623 at 4 (listing the items in the record the Court reviewed in considering the magistrate judge's Proposed Findings and Recommended Disposition, which included all attachments).

The Court recognizes that Bearzi and American Linen's counsel have divergent views regarding what communications occurred between them. American Linen takes issue with the fact that in resolving that conflict, both the magistrate judge and the undersigned judge did not entirely credit counsel's view of those events. However, that credibility determination is not error. Similarly, the Court notes that American Linen has attempted to depict a close working relationship between American Linen and Bearzi that included a mutual understanding that Bearzi intended to continue working for American Linen after August of 2021. Despite this, American Linen presents no evidence of any communications whatsoever with Bearzi between August of 2021 and August of 2022, after the Court granted the motion to strike his reports. This

lack of evidence undermines American Linen's position that it was diligent in making sure that Bearzi was continuing as an expert.

The Court rejects American Linen's argument that its diligence determination was based on a mistake of fact.

**IV. Considerations Under *Ehrenhaus***

When a plaintiff, like the Plaintiffs in this case, asserts a contribution claim under § 113(f), the success of its contribution claim is "dependent on the establishment of a prima facie case of liability under § 107(a)." *County Line Inv. Co. v. Tinney*, 933 F.2d 1508, 1517 (10th Cir. 1991). The elements of a prima facie case of liability under § 107(a) require a showing (1) that American Linen is a "covered person" under CERCLA; (2) that a "release" or "threatened release" of any "hazardous substance" at the site in question has occurred; (3) that the release or threatened release caused Plaintiffs to incur costs; (4) that Plaintiffs' costs are "necessary" costs of response; and (5) that Plaintiffs' response action or cleanup was consistent with the [national contingency plan]. *Morrison Enters. v. McShares, Inc.*, 302 F.3d 1127, 1135-36 (10th Cir. 2002). Then, liability among the parties is to be apportioned using "equitable factors." § 113(f)(1).

Dismissal of a claim (or in this case, what amounts to striking or limiting a defense), is "an essential tool in the sanction toolbox" because "district court judges need to be able to control their courtrooms." *King v. Fleming*, 899 F.3d 1140, 1149-50 (10th Cir. 2018). But it is "an extreme sanction appropriate only in cases of willful misconduct." *Ehrenhaus v. Reynolds,* 965 F.2d 916, 920 (10th Cir. 1992). *Ehrenhaus* lists five factors a court should consider before choosing dismissal as a sanction: "(1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for

noncompliance; and (5) the efficacy of lesser sanctions." *Id*. at 921 (ellipsis and internal citations and quotation marks omitted). The "first three factors, which analyze the wrongdoing and its effects, inform the decision to apply any sanction," and the last two aid the court in deciding which sanction to impose. *King*, 899 F.3d at 1150 & n.15.

American Linen argues that its inability to present expert testimony would gut its defense to the contribution claim, and that is too harsh a sanction under *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992). American Linen contends that Court failed to fully recognize the dispositive (or near-dispositive) effect that American Linen's lack of expert would have on the contribution claim. In response, Plaintiffs argue that American Linen has "all but conceded" its own liability[2] under § 107(a)—though it cites nothing to support that contention—and thereby implies all that is left to consider are the equitable factors. It points out that "where liability is established for contamination that is general and 'indivisible,' such as an underground plume of PCE with no clear singular source, strict liability applies jointly and severally," Dkt. No. 630 at 21, and that courts may consider some equitable factors or none at all, depending on the circumstances of the case. *Id*. at 22.

In its prior MOO, the Court agreed with the magistrate judge that despite its lack of expert, American Linen could still argue in its defense that it should not be required to contribute to cleanup costs under the various equitable factors courts are at liberty to consider when assessing contribution. Upon reconsideration, the Court agrees with American Linen that without an expert, American Linen has no ability to prove Plaintiffs' liability relative to its own for purposes of a contribution claim. It is only logical that in order to prove that American Linen is liable for contribution costs, Plaintiffs must first prove that American Linen contributed to the

[2] This runs contrary to the Court's understanding of American Linen's position in this litigation to date.

PCE in the plume at the Site. This, in turn, requires an explanation of the underground migration of the chemicals from American Linen's premises (or other dump site) to the plume that only an expert hydrologist can analyze and explain. Further, the amount of PCE that American Linen contributed relative to other PRPs, or what American Linen refers to as "volumetric contribution," Dkt. No. 631 at 3, is a relevant and logical consideration that is also likely affected by hydrological factors beyond the knowledge of a layperson. American Linen's relative contribution to the contamination is also an important equitable factor to consider.

In short, the Court concludes that without an expert, American Linen's ability to defend itself at trial will be severely reduced.

## CONCLUSION

In sum, a scheduling order that results in the exclusion of evidence is "a drastic sanction." *Summers v. Missouri Pac. R.R. Sys*, 132 F.3d 599, 604 (10th Cir. 1997). This is particularly true where, as here, that exclusion can be dispositive of the claim at issue. On the other hand, the Court recognizes American Linen's concerning lack of diligence in ensuring that its expert was on track to provide a viable report and trial testimony in the case.

In the end, the Court's reconsideration is based on several factors. These include (1) giving less weight to the prejudice to Plaintiffs because of the mitigation that can be achieved through ensuring that the new expert's testimony is "substantially similar" to Bearzi's and through American Linen compensating Plaintiffs for their attorneys' fees, (2) recognizing the delay in the case to this point, but also appreciating that the additional delay caused by the need for discovery around the new expert is not, in the larger scheme of the case, as heavy a consideration as the court once thought, and (3) giving greater weight to the outcome-determinative effect of denying American Linen the opportunity to name a new expert and to the

public policy in favor of deciding cases on the merits. This does not mean that the Court has overlooked American Linen's lack of diligence or the prejudice to Plaintiffs in allowing it to name a new expert. Rather, it indicates only that after wrestling with the countervailing issues involved, this appears to be the result most in the interest of justice.

The Court will permit American Linen to name a new expert to replace James Bearzi and to disclose a new report. The new expert must put forth opinions that are substantially similar[3] to those expressed by Mr. Bearzi in his reports (such as they are) and at his deposition. If Plaintiffs' experts need to supplement their current reports to respond to American Linen's new expert they may do so. Plaintiffs will be entitled to recover their costs incurred in (1) reviewing Bearzi's reports, (2) deposing Bearzi, (3) reviewing American Linen's new expert report, (4) deposing American Linen's new expert, and (5) supplementing Plaintiffs' expert reports if necessary. Plaintiffs will be permitted to file a motion for attorney's fees relating to the above, and a possible *Daubert* or similar motion challenging American Linen's new expert. No further supplementation of the pleadings and no dispositive motions will be permitted, as the parties have already filed several rounds of such motions.

At the status conference to be held on September 22, 2026, the Court will discuss a timeline for the above to occur in order to accommodate a trial to begin in spring of 2027.

**IT IS THEREFORE ORDERED** that *Defendant American Linen Supply Of New Mexico, Inc.'s Motion For Reconsideration Or, In The Alternative, Motion For An Order*

[3] *See, e.g., Smith v. Tahsin Indus. Corp*., No. 19-590-JWB, 2025 WL 673646 at *3 (N.D. Okla. Mar. 3, 2025); *Sinclair Wyoming Refining Co. v. Pro-Inspect, Inc*., Civil No. 12-CV-196-J, 2014 WL 12768315 at *3 (D. Wyo. Jan 29, 2014); *Chavez v. Encompass Ins. Co. of Am*., No. 1:08-CV-2965-TCB, 2010 WL 11586387, at *1 (N.D. Ga. June 8, 2010); *Terra Venture, Inc. v. JDN Real Estate-Overland Park, L.P*., No. 02-2593-GTV, 2004 WL 5509090 at *1 (D. Kan. June 21, 2004).

*Certifying For Interlocutory Appeal* [Doc. 627] is **GRANTED**, and the Court will permit American Linen to name a new expert to replace James Bearzi within the bounds described herein.

SENIOR UNITED STATES DISTRICT JUDGE